IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| CONSOLIDATED INDUSTRIES, LLC ) <br> d/b/a WEATHER KING PORTABLE ) <br> BUILDINGS, ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JESSE A. MAUPIN, BARRY D. ) <br> HARRELL, ADRIAN S. HARROD, ) <br> LOGAN C. FEAGIN, STEPHANIE L. ) <br> GILLESPIE, RYAN E. BROWN, DANIEL ) <br> J. HERSHBERGER, BRIAN L. LASSEN, ) <br> ALEYNA LASSEN, and AMERICAN ) <br> BARN CO., LLC, ) <br> ) <br>     Defendants. | Civil Action No. 1:22-cv-01230-STA-jay <br><br> Chief Judge S. Thomas Anderson |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL FORENSIC EXAMINATION OF INDIVIDUAL DEFENDANTS' MOBILE PHONES AND OTHER COMPUTER DEVICES**

    Defendants Jesse Maupin, Barry Harrell, Adrian Harrod, Logan Feagin, Stephanie Gillespie, Ryan Brown, Daniel Hershberger, Brian Lassen, and Aleyna Lassen (collectively "Individuals Defendants") claim not to possess text messages and email correspondence central to this case even though they were served with a litigation hold demand at the outset. Belying these claims, third parties have provided Plaintiff ("Weather King") with text messages and emails that the Individual Defendants claim do not exist. Asked to reconcile these discrepancies, the Individual Defendants have refused to provide any explanation.

    The only possible explanation for the Individual Defendants' failure to produce these responsive documents is either: (a) an unacceptable failure of their discovery obligations; or (b) an intentional destruction of relevant information. "The only way to determine if relevant evidence

1

currently exists or previously existed and was lost or destroyed is to conduct a forensic examination" of Defendants' cellular phones and other devices. *Nacco Materials Handling Grp., Inc. v. Lilly Co.*, 278 F.R.D. 395, 405-06 (W.D. Tenn. 2011). The circumstances under which the Individual Defendants have not produced critical documents evidencing their concerted action to put Weather King's Western United States operations out of business—documents that are now known to exist—justifies a forensic examination of their devices and accounts.

## BACKGROUND

The law is well settled that an employee owes an undivided duty of loyalty to his or her employer during the period of employment:

> Under Tennessee law, an employee owes his employer a fiduciary duty of loyalty: "An employee must act solely for the benefit of the employer in matters within the scope of his employment. The employee must not engage in conduct that is adverse to the employer's interests."

*Williams-Sonoma Direct, Inc. v. Arhaus, LLC*, 304 F.R.D. 520, 529 (W.D. Tenn. 2015) (quoting *Efird v. Clinic of Plastic & Reconstructive Surgery, P.A.,* 147 S.W.3d 208, 219 (Tenn. Ct. App. 2003)).

The Individual Defendants egregiously breached that duty of loyalty. Before leaving Weather King *en masse* on June 1, 2022, they unlawfully encouraged each other, other Weather King employees, Weather King dealers, Weather King independent contractors, and others to join a competing enterprise and squeeze Weather King out of its Western United States portable buildings market. As set forth in detail Weather King's Amended Complaint, they covertly did so using Weather King's trade secrets and other resources; all while being employed and paid by Weather King. *See* Doc. 26. Their scheme worked, and Weather King has sustained significant financial losses. Weather King alleges the following causes of action: federal and state trade

secrets act violations, breach of the duty of loyalty, interference with business relations, defamation, conversion, unjust enrichment, civil conspiracy, and aiding and abetting. *Id.*

- **Weather King's Litigation Hold Demand**

The Individual Defendants' communications—particularly during the time period that they were employed by Weather King—are critical in this case. By letters dated June 13, 2022—less than two weeks after their departures from Weather King and four months before Weather King brought suit—Weather King demanded that each of the Defendants preserve documents relevant to Weather King's anticipated claims, including communications with each other and with Weather King's dealers[1] and other business relationships. *See* Litigation Hold Letters, Doc. 1-7.

Evidence that the Individual Defendants, while still employed by Weather King, were encouraging Weather King's business relationship to join them in a competing business enterprise and otherwise launching a competing business that would convert Weather King's entire operational infrastructure is highly probative of Weather King's breach of duty of loyalty and interference claims. These communications may also demonstrate Defendants' misappropriation of Weather King's trade secrets and be pertinent to Weather King's other claims.[2] Recognizing at the outset the significance of such records, Weather King promptly served the litigation hold letters as an attempt to prevent what has apparently occurred—Defendants destroying adverse evidence.

- **Defendants' Discovery Responses**

On January 25, 2023, Weather King served Defendants with written discovery including interrogatories asking each of the Defendants to identify their communications with Weather King

---

[1] Dealers are critical players in the portable buildings industry. Manufacturers, such as Weather King, rely on relationships with independent dealers (who operate inventory lots) to sell buildings to end users. In many respects, a dealer is the true "customer."

[2] As set forth in Paragraph 48 of the Amended Complaint, Defendant Maupin was caught red-handed surreptitiously taking Weather King's sensitive financial information. Doc. 26.

employees (including each other), dealers, and other business relationships in which they discussed the competing business enterprise or encouraged them to leave Weather King. *See, e.g.,* Ex. 1, Harrod Resp. to Interrog. Nos. 3-5. In response, Defendants have provided vague information and essentially claim not to remember anything that happened only a year ago. For instance, Defendant Harrod states: "I had verbal communications with Weather King dealers and employees about my plans to leave," but states "I do not recall the dates or names of the dealers and employees." *Id.*, Resp. to Ig. No. 3; *see also id.*, Resp. to Ig. No. 5 ("I had verbal communications with Weather King dealers but do not recall the exact dates or parties.").[3] Although Weather King repeatedly demanded supplementation, Defendants have not met their discovery obligations.

Weather King also served each of the Defendants with requests for production, asking them to produce communications with each other, other Weather King employees, Weather King dealers, and others. *See, e.g.,* Ex. 1, Harrod Resp. to RFP Nos. 6-15. Inexplicably:

- ➢ ***Not a single Defendant produced a single text message*** (with each other or with anyone else).

- ➢ Only *one* Defendant—Ryan Brown—produced *any* email correspondence.

- ➢ Although Mr. Brown produced more than 300 pages of emails dating back to April 2020, only *one* email was produced during the crucial time period of February-May 2022.

In the meantime, Defendants have attempted to thwart Weather King's ability to obtain responsive information from third parties by moving for a protective order. *See* Doc. 33. In other

---

[3] Similarly, Defendant Maupin has responded that "he had conversations with various dealers and drivers about his departure from Weather King verbally and that the does not recall the dates of such conversations." Ex. 2, Maupin Supp. Resp. to Ig. No. 5. Mr. Maupin has not identified a single one of these "various dealers." Defendant American Barn Co., LLC flatly refused to provide *any* of this information. *See* Ex. 3, ABCO Resp. to Ig. Nos. 6-12.

4

words, Defendants have sought to prevent Weather King from obtaining from third parties communications with Defendants that Defendants claim do not exist (and may be concealing).[4]

- **Contradictory Evidence Obtained from Third Parties**

Defendants' lack of responses and document production cannot be reconciled with limited records Weather King has been able to obtain from third parties. For instance, Defendant Harrod claims that he possesses no text messages or other communications with any current and former Weather King employees (including the other Defendants), Weather King dealers, and others. *See* Ex. 1, Resp. to RFP Nos. 6-12. Yet, Weather King obtained a text message that Mr. Harrod sent to Weather King dealers on May 31, 2022, stating: "Hey guys Stephanie walked out today and quit WeatherKing the new girl Shelby don't say anything to regarding the future." Doc. 1-1, Doc. 26, ¶ 28. In response to interrogatories, Mr. Harrod stated that he "do[es] not recall" the recipients of this text message, further suggesting that he intentionally deleted it from his phone. *See* Ex. 1, Harrod Resp. to Interrog. No. 11.

Defendant Maupin similarly claims that he somehow possesses ***no*** responsive text messages, emails, or any other correspondence with Weather King employees (including the other Defendants), dealers, landlords, and others. Ex. 4, Maupin Resp. to RFP Nos. 6-15. Third parties' responses to subpoenas demonstrate that such documents exist and were at some point in Mr. Maupin's possession, custody, or control. For example, in response to Request for Production No. 13, asking Mr. Maupin to produce correspondence with Troy Buttrey (who was instrumental in providing Defendants with funding and providing rental contract services), Mr. Maupin responded: "None." *Id.* Mr. Buttrey, however, has produced text messages and email correspondence with

---

[4] For example, while claiming that he somehow cannot recall any of the dealers with whom he communicated (while still employed by Weather King) about Defendants' plans (Ex. 1, Resp. to Ig. Nos. 3-5), Defendant Harrod has sought to preclude Weather King from obtaining that information from dealers.

5

Mr. Maupin.  *See, e.g.,* Ex. 5, Buttrey Doc. Prod.  Particularly given Weather King's litigation hold letter, Weather King is entitled to learn the circumstances in which Mr. Maupin has not produced responsive documents that plainly exist.

Similarly, in response to a request to produce "[a]ll correspondence and other documents exchanged with any person or entity related to the leasing or potential leasing of any property located in Arizona or New Mexico," Mr. Maupin represented: "None."  Ex. 4, Response to RFP No. 15.  Yet in response to a subpoena, James and Sharon Kowalzyk (lessors of property in Globe, Arizona, that Weather King used as a sales lot for its portable buildings) produced an email from Mr. Maupin dated March 24, 2022—more than two months before his departure from Weather King—in which Mr. Maupin stated:

> Good afternoon Mr. Jim I hope all is well your way. I know the lease is up May 31st and ***Weather King isn't really wanting to lease lots anymore*** but I do good sales there and you and I go way back. Would it be possible for ***me*** to lease the property so I can keep ***my*** sales lot open and continue to sell there??

Ex. 6, Kowalzyk Doc. Prod. (emphasis added).[5]

For his part, Defendant Brian Lassen claims not to possess any correspondence with any Weather King employees or builders between January 1, 2022, and July 1, 2022.  Ex. 7, B. Lassen Resps. to RFP Nos. 6 & 9.  Weather King, however, has obtained a text that Mr. Lassen sent to other Weather King employees and contractors, including builder Freddie Rodriguez, in which Lassen makes false and defamatory statements about Weather King in an attempt to lure people away from Weather King.  Ex. 8, Freddie Rodriguez Text Message.  And even though the first sentence of the text indicates that Defendants Maupin and Aleyna Lassen were included in the text, *id.*, those Defendants also did not produce the text message (or any other communications).

---

[5] Mr. Maupin's statement that Weather King was no longer interested in leasing the Kowalzyks' property was an outright lie, an egregious breach of his duty of loyalty, and part of Defendants' scheme to sabotage Weather King.  Through Mr. Maupin's deception, Defendants ended up converting Weather King's leasehold interest.

Despite multiple conferral attempts by Weather King, Defendants have not explained why they have not produced these or any other text messages or other correspondence, particularly given Weather King's litigation hold demand. During the meet and confer process, Weather King afforded Defendants the opportunity to reconcile the evidence obtained from third parties with Defendants' steadfast claims that they do not possess responsive documents. *See, e.g.*, Ex. 9, April 19, 2023 Letter to T. Pasternak, p. 2, Maupin Requests 13 & 15. They still have not done so and have only responded: "We are not required to give you an explanation of the facts as they are." Ex. 10, May 5, 2023 Letter to D. Johnson, p. 2, Maupin Requests 13 & 15.

Plainly, Defendants either: (a) have these (and other) records and have not produced them in contravention of their discovery obligations and their representations in their discovery responses; or (b) have spoliated evidence. A forensic examination of Defendants' devices is necessary to resolve the inconsistency in Defendants' responses and, if the responsive documents have indeed been destroyed, to determine the timing and circumstances in which they were destroyed.

**PROPOSED FORENSIC EXAMINATION PROTOCOL**

Based on the foregoing and to mitigate the harm Weather King has sustained by Defendants' failure to comply with their discovery obligations, Weather King requests that the Court implement the following protocol, designed to balance all parties' interests:

1. First, each Defendant should be "ordered to file with the court an affidavit or declaration setting forth in detail each step . . . taken to preserve, search for, and collect potentially relevant information, both electronic and paper, from the time" each Defendant was served with Weather King's June 13, 2022, litigation hold letter "and to the present, the name of the person taking such steps, and the date on which the steps were taken," including "what computers and

files were searched and by whom," and "the search method utilized." *Nacco Materials*, 278 F.R.D. at 407.

2.  The Court should further require each of the Individual Defendants to serve a certification detailing with specificity each device, including but not limited to laptop computers, desktop computers, cell phones, tablets, thumb drives, or other portable electronic or storage devices (collectively "Devices"), in their possession, custody, or control, that: (a) contains or contained any information that refers to, relates to, or was created by Weather King; or (b) was used to communicate with the other Defendants or with other former or current Weather King employees, dealers, builders, drivers, rental companies, and other business relationships after January 1, 2022.

3.  The certification shall also identify all: (a) email accounts; (b) cell phone numbers; (c) cell phone providers; (d) messaging services (including social media); (e) Google drive accounts, Dropbox accounts, and any other cloud-based account that they have used at any time since January 1, 2022.[6]

4.  Each of the Individual Defendants shall tender the Devices to a third-party computer forensic vendor mutually agreed to by the parties or, if the parties cannot agree, selected by the Court.

5.  The selected vendor shall make a forensic image or "golden copy" of each cellular phone and hard drive of each Device and shall return each Device to the respective owner within two business days after the Device is tendered.[7]

---

[6] Defendants refused to respond to interrogatories requesting this information.

[7] If the vendor encounters difficulty with the extraction process, the parties shall work cooperatively to endeavor to resolve any issues and may seek the Court's intervention if necessary.

8

6. Thereafter, the vendor shall perform data searches of the Devices based on search terms agreed upon by the parties.[8]

7. The vendor shall also search for communications between and among the Defendants and other specified individuals, as requested by Weather King.

8. Upon gathering the data requested by Weather King, the vendor shall provide the data to Defendants' counsel.

9. Within seven days of receiving data from the vendor, Defendants' counsel shall provide Weather King's counsel with responsive documents and a privilege log for any responsive documents withheld for privilege.

10. The vendor shall also make determinations, as requested by Weather King, as to the circumstances in which data were downloaded or transferred to or from the device and in which data have been deleted and may attempt to recover deleted data.

11. Using Defendants' login information provided privately to the vendor, and with Defendants' participation in two-factor authentication where applicable, the vendor shall also access Defendants' electronic messaging, cloud-based email, and cloud-based storage accounts to search such accounts and to recover data that Defendants may have attempted to delete.

12. The vendor shall not provide Weather King with any data extracted from the Devices or divulge the contents of any communications or other data ascertained from the Devices unless first approved by Defendants' counsel or the Court.

13. As noted above, Defendants shall fully cooperate with the vendor, including providing all logins and passwords, participating in any two-factor authentication required, and

---

[8] The searches must be relevant to this lawsuit.

identifying relevant third parties' phone numbers and email addresses for conducting tailored searches.

14. As it is contemplated that additional searches may be needed as the litigation progresses, the vendor shall retain the forensic images pending agreement by all parties or further order of the Court.

15. The parties shall meet and confer as it relates to any disputes that may arise. Any unresolved issues may be presented to Magistrate Judge York for resolution.

## LEGAL ARGUMENT

As the Sixth Circuit acknowledged 15 years ago, "forensic imaging is not uncommon in the course of civil discovery." *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008). Nevertheless, "even if acceptable as a means to preserve electronic evidence, compelling forensic imaging is not appropriate in all cases, and courts must consider the significant interests implicated by forensic imaging before ordering such procedures." *Id.* at 460.

"Courts have permitted restrained and orderly computer forensic examinations where the moving party has demonstrated that its opponent has defaulted in its discovery obligations by unwillingness or failure to produce relevant information by more conventional means." *Gammons v. Adroit Med. Sys.*, No. 3:21-CV-173-TAV-DCP, 2022 WL 19731246, at *2 (E.D. Tenn. Nov. 16, 2022) (citations omitted). Defendants have defaulted on their discovery obligations, and so the Court should order just such a restrained and orderly examination of their mobile phones and other electronic data storage devices and accounts.

**I.   A forensic examination is warranted due to deficiencies and inconsistencies in Defendants' discovery responses.**

"Courts have recognized that discrepancies or inconsistencies in the responding party's discovery responses may justify a party's request to allow an expert to create and examine a mirror

10

image of a hard drive." *Hawkins v. Ctr. for Spinal Surgery*, No. 3:12–1125, 2015 WL 3795297, at *1 (M.D. Tenn. June 18, 2015); *see also Gammons*, 2022 WL 19731246, at *3 (quoting same). Although mere suspicion that a party has not fulfilled its discovery obligations is generally insufficient, courts have acknowledged that a forensic examination is proper "when there is more than mere skepticism that a responding party has failed to produce information." *Tenpenny v. Prime Now, LLC*, No. 3:19-cv-0420, 2020 WL 12894958, at *3 (M.D. Tenn. Jan. 8, 2020), *approved* 2020 WL 12894953 (M.D. Tenn. July 16, 2020) (citing *Tingel v. Hebert*, No. 15-626-JWD-EWD, 2018 WL 1726667, at *7 (M.D. La. Apr. 10, 2018)).

Here, Weather King is not merely skeptical that Defendants have not produced responsive documents. Documents provided by third parties show that responsive documents exist and that the Individual Defendants have either deleted them or are falsely claiming not to possess them.

The circumstances in this case are similar to *Ameriwood Indus., Inc. v. Liberman*, No. 4:06-CV-524–DJS, 2006 WL 3825291 (E.D. Mo. Dec. 27, 2006). There, the plaintiff brought suit against several former employees, alleging that they misappropriated confidential information in forming a competing business "while in plaintiff's employ to sabotage plaintiff's business relationships and divert plaintiff's business to themselves." *Id.* at *1. During the course of discovery, the plaintiff obtained an email between one of the defendants and a customer that the defendants did not produce in discovery. *Id.* at *3. Noting that "[i]t is generally accepted that deleted computer files are discoverable," *id.,* the court concluded:

> Considering the close relationship between plaintiff's claims and defendants' computer equipment, and having cause to question whether defendants have produced all responsive documents, the Court will allow an independent expert to obtain and search a mirror image of defendants' computer equipment. . . . "Courts have found that such access is justified in cases involving both trade secrets and electronic evidence, and granted permission to obtain mirror images of the computer equipment which may contain electronic data related to the alleged violation."

11

* * *

> In light of the [customer] email, the Court finds that other deleted or active versions of emails may yet exist on defendants' computers. Additionally, other data may provide answers to plaintiff's other pertinent inquiries in the instant action, such as: what happened to the electronic files diverted from plaintiff to defendants' personal email accounts; where were the files sent; did defendants store, access or share the files on any portable media; when were the files last accessed; were the files altered; was any email downloaded or copied onto a machine; and did defendants make any effort to delete electronic files and/or "scrub" the computers at issue.

*Id.* at *1-3 (citation omitted).

District courts in Tennessee have compelled the forensic examination of parties' cell phones, laptops and other devices under similar circumstances. *See, e.g., Tenpenny*, 2020 WL 12894958, at *3 (ordering forensic examination of plaintiff's phone and other electronic devices where "Defendant is not simply speculating that Plaintiff is withholding information, that fact is undisputed"); *Nacco Materials Handling Grp., Inc. v. Lilly Co.*, 278 F.R.D. 395, 405-06 (W.D. Tenn. 2011) (finding that defendant was, "at a minimum, negligent in discharging its discovery obligations," and that "[t]he only way to determine if relevant evidence currently exists or previously existed and was lost or destroyed is to conduct a forensic examination"); *EEOC v. New Breed Logistics*, No. 10–2696 STA/TMP, 2012 WL 4361449, at *8 (M.D. Tenn. Sept. 25, 2012) ("[B]ecause of [defendant's] failure to preserve emails timely and its failure to save the 2008 [computer server] backup tapes, it is only fair and equitable for the court to give the [plaintiff] an opportunity to find out if the 2009 tapes have relevant emails"); *Goad v. Lewis*, NO. 3-13-1102, 2014 WL 12782812, at *1-2 (M.D. Tenn. Nov. 7, 2014) (reversing magistrate judge's finding that forensic imaging of plaintiff's devices was not warranted where "Plaintiff knew or should have know that deleting emails breached that duty" to preserve evidence and "Defendants have carried their burden of showing that there is no other way to recover the deleted e-mails"); *Gammons*,

2022 WL 19731246, at *2-3 (ordering forensic examination where defendants failed to produce requested emails and text messages).

The circumstances here similarly warrant a forensic examination of Defendants' devices and accounts. Indeed, Defendants' claims that they do not possess responsive communications cannot be reconciled with: (a) the fact that Weather King has obtained from third parties communications that Defendants claim do not exist; and (b) Weather King's June 13, 2022, litigation hold demand—well before it filed suit. Moreover, Defendants have attempted to thwart Weather King's ability to obtain this correspondence from third parties. *See* Doc. 33.

## II. Weather King's proposed examination protocol is narrowly tailored to account for Defendants' interests.

Weather King has proposed a framework for a forensic examination that would allow it to obtain the information it needs while adequately protecting the Individuals Defendants' legitimate privacy and business interests. *See* pages 7-10 above. The protocol is designed to minimize any disruption, as well as to ensure that privileged information and private, irrelevant information is not produced to Weather King. Thus, Defendants' counsel will have the opportunity to screen data for privilege before it is released to Weather King.

In *Delta T, LLC v. Williams*, 337 F.R.D. 395 (S.D. Ohio 2021), the court found that similar safeguards adequately protected the producing party's interests. After finding that a forensic examination was warranted due to the defendants' failure to produce responsive communications, *id.* at 402, the court found:

> [T]he utility and necessity of forensic imaging here outweigh the privacy and confidentiality concerns inherent in such imaging. *John B.*, 531 F.3d at 460 ("courts must consider the significant interests implicated by forensic imaging before ordering such procedures"); *Bennett*, 928 N.E.2d at 774. [Plaintiff] has an interest, and a right under Rule 26, in obtaining relevant information that falls within the scope of discovery. But Defendants failed to produce relevant discovery, and subsequently failed to explain why, or why doing so would cause a burden that

13

> exceeds its likely benefit. So, whether Defendants are unwilling or unable to cooperate, forensic imaging will help the parties to engage in an appropriate and productive discovery stage. The constrained forensic imaging protocol here will result in the exchange of relevant, proportional discovery—while screening privileged material—or reveal a dearth of material. Either way, the process will be important in resolving the case. *See* Fed. R. Civ. P. 26(b)(1).
>
> Defendants' vague allusions to privacy concerns fail to come to grips with the limited procedure [plaintiff] is proposing. Indeed, the restraints on the search should alleviate Defendants' worries. Both parties will have a say in selecting the independent forensic examiner. The search protocol is designed to generate relevant communications. And the forensic examiner will first provide the documents generated by the search to defense counsel, who may review them before producing them to [plaintiff's] counsel[.] Defense counsel may assert objections and produce copies of the objected-to documents for an in camera inspection by this Court. Unlike *John B.*'s clearly erroneous discovery order, which failed to properly account for the case's privacy and confidentiality concerns, the reasonable limitations proposed here will serve as guardrails against unnecessary incursions into Defendants' privacy or excursions into privileged material. *Compare John B.*, 531 F.3d at 460. Defendants' generic evocations of privacy, without more, fall short of showing that the proposed forensic imaging here would be unduly burdensome. *Ameriwood*, 2006 WL 3825291, at *5 (recognizing defendants' privacy concerns, but finding that a similar three-step procedure sufficiently addressed those interests).

*Id.* at 403-04.

Further, the affidavit/declaration requirement set forth in Step 1 of the protocol is reasonable and warranted and consistent with what Magistrate Judge Vescovo required in *Nacca Materials*. *See* 278 F.R.D. at 407.

### III. Defendants should be assessed the costs of the examination.

Finally, given Defendants' failure to preserve and produce correspondence and other documents highly relevant to Weather King's claims, the Court should require Defendants to bear the costs of the forensic examinations. Courts have routinely found that a party that does not comply with its discovery obligations must bear the consequences of its acts and omissions.

For instance, in *Nacco Materials, supra*, the Court found that, "[b]ecause [defendant's] deficient preservation and collection efforts necessitated these actions, the court finds that

14

[defendant] should bear these costs" of a forensic examination. 278 F.R.D. at 406; *see also id.* at 407 ("It bears repeating. [Defendant] is required to bear these costs because its preservation and collection efforts were woefully inadequate."); *id.* (finding that plaintiff was "entitled to an award of reasonable costs, including its attorney fees, associated with bringing the motion); *New Breed*, 2012 WL 4361449, at *8 ("[Defendant] must bear all of the costs associated with restoring and examining the [computer backup] tapes because its preservation and collection efforts were inadequate.").

If Defendants had fulfilled their preservation and discovery obligations, a forensic examination of their devices would have been unnecessary. Defendants, therefore, should be required to assume financial responsibility for their noncompliance, not Weather King.[9]

## CONCLUSION

For the foregoing reasons, Weather King respectfully requests that the Court grant its motion.

<div style="text-align:right">

BUTLER SNOW LLP

*/s/ David L. Johnson*
David L. Johnson, BPR #18732
John H. Dollarhide, BPR #40041
150 3rd Avenue South, Suite 1600
Nashville, TN 37201
Telephone: (615) 651-6700
Fax: (615) 651-6701
david.johnson@butlersnow.com
john.dollarhide@butlersnow.com
larry.cheng@butlersnow.com

Daniel W. Van Horn, BPR #18940
6075 Poplar Ave., Suite 500
Memphis, TN 38119
Telephone: (901) 680-7200

</div>

---

[9] Weather King is not seeking reimbursement of its attorney's fees incurred with respect to bringing this motion at this juncture. Weather King, however, reserves the right to seek reimbursement at a later date, particularly upon a finding that Defendants have not complied with their discovery obligations.

15

Fax: (901) 680-7201
Danny.VanHorn@butlersnow.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 19, 2023, I filed the foregoing with the Court using the ECF system, which will provide notice and a copy to counsel of record:

Thomas G. Pasternak
AKERMAN LLP
71 South Wacker Drive, 47th Floor
Chicago, IL 60606
thomas.pasternak@akerman.com
Attorneys for Defendants

*/s/ David L. Johnson*____________________
David L. Johnson

69329218.v2