**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CONSOLIDATED INDUSTRIES, LLC d/b/a WEATHER KING PORTABLE BUILDINGS, | ) ) ) ) | |
|     **Plaintiff,** | ) ) | |
| **v.** | ) ) | Civil Action No. 1:22-cv-01230-STA-jay |
| **JESSE A. MAUPIN, *et al.*,** | ) ) | |
|     **Defendants.** | ) | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**</u>
<u>**MOTION TO COMPEL SUPPLEMENTATION OF DISCOVERY RESPONSES**</u>

Defendants have submitted responses to Plaintiff Consolidated Industries, LLC d/b/a Weather King Portable Buildings' ("Weather King") written discovery requests that are significantly deficient and, despite multiple requests during the meet and confer process, have not cured the deficiencies. Therefore, Weather King requests that the Court compel Defendants to provide full and complete discovery responses.

**BACKGROUND**

Based in Paris, Tennessee, Weather King manufactures portable buildings and, until 2022, had operations in Florida and the western United States. The "Individual Defendants" are all former employees who left around June 1, 2022, as part of a competing business enterprise they secretly formed. Led by Defendant Maupin, the Individual Defendants conspired to form Defendant American Barn Co., LLC ("ABCO"), and, while still employed by Weather King and in breach of their duty of loyalty, encouraged other Weather King employees, contractors, dealers, and others to cease their relationship with Weather King and join the competing business enterprise. They did so with the help of trade secrets and other information they stole from

1

Weather King.  *See* Doc. 26, Am. Compl.  As a result of Defendants' scheme, Weather King was squeezed out of the western United States market, resulting in millions of dollars in losses. Weather King alleges the following causes of action: federal and state trade secrets act violations, breach of the duty of loyalty, interference with business relations, defamation, conversion, unjust enrichment, civil conspiracy, and aiding and abetting.  *Id.*

Weather King served Defendants with written discovery on January 25, 2023. Defendants responded on March 20, 2023, and, following the meet and confer process, have served a number of supplementations.   Defendants' responses to both Weather King's interrogatories and its requests for production, however, remain inadequate.  In fact, even though Weather King has requested that Defendants produce a wide array of relevant documents:

➢ Defendants Harrod, Feagin, Gillespie, Brian Lassen, and Aleyna Lassen have not produced a single responsive document;

➢ ABCO has only produced three responsive documents;

➢ Mr. Maupin has only produced three responsive documents;

➢ Mr. Harrell has only produced two responsive documents; and

➢ Mr. Hershberger has only produced one responsive document.

Defendants' failure to produce more responsive documents is particularly troubling given that, on June 13, 2022—within two weeks after they left Weather King—Weather King served these Defendants with litigation hold letters.  *See* Doc. 1-7.  Defendants have not explained why they do not possess other responsive documents, and this has prompted Weather King to file a separate motion to compel a forensic examination of their phones and other devices.

The Court should also compel Defendants to supplement their written discovery responses.   Although the parties have narrowed the scope of items in dispute, the Court's intervention is needed with respect to the items referenced below.

## ARGUMENT

It is well established that "[t]he scope of discovery is both broad and liberal." *Westport Ins. Corp. v. Wilkes & McHugh, P.A.*, 264 F.R.D. 368, 370 (W.D. Tenn. 2009) (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Under Fed. R. Civ. P. 37, a party may move to compel supplementation of deficient discovery responses.

In response to written discovery, a party must undertake "a diligent search utilizing a 'reasonable comprehensive search strategy.'" *Kamps, Inc. v. Mustang Aviation, Inc.*, No. 5:18-CV-430-REW-MAS, 2019 WL 5866100, at *2 (E.D. Ky. May 3, 2019) (quoting *Casale v. Nationwide Children's Hosp.*, No. 2:11-CV-1124, 2014 WL 12748231, at *2 (S.D. Ohio June 3, 2014)). Thus, a "party does not simply get to throw up their hands in frustration," but instead, "must make reasonable efforts to adhere to its obligations regarding production and discovery despite the inevitable inconveniences that accompany civil litigation." *Id.*

### A.    Identification of Phone Numbers, Email Accounts, and Other Information

Weather King asked each of the Individual Defendants to "[i]dentify all email accounts, cell phone numbers (and providers), messaging services, Google drive accounts, Dropbox accounts, and any other cloud-based account that you have used at any time since January 1, 2022, through the present." *See, e.g.,* Ex. 1, Maupin Resp. to Ig. No. 13. Each of the Defendants objected to this interrogatory "as not being proportional to the needs of the case."[1]

Weather King has a compelling need for this information, as it is pivotal to identify the communications and other documents relating to Defendants' conspiracy that they exchanged with each other and with third parties. Evidence that the Individual Defendants (while employed by Weather King) were encouraging each other and other Weather King business relationships to

---

[1] *Id.*; Ex. 2, Harrell Resp. to Ig. No. 11; Ex. 3, Harrod Resp. to Ig. No. 10; Ex. 4, Feagin Resp. to Ig. No. 10; Ex. 5, Gillespie Resp. to Ig. No. 10; Ex. 6, Brown Resp. to Ig. No. 10; Ex. 7, Hershberger Resp. to Ig. No. 10; Ex. 8, B. Lassen Resp. to Ig. No. 10; Ex. 9, A. Lassen Resp. to Ig. No. 10.

join a competing business enterprise is highly probative of Weather King's breach of duty of loyalty and interference claims. It may also demonstrate Defendants' misappropriation of Weather King's trade secrets and be pertinent to Weather King's other claims.[2]

Weather King's need for this information is magnified by Defendants' failure to provide information responsive to other discovery requests. For instance, when asked to identify communications relating to their competing business enterprise that each of the Defendants had with each other and other Weather King relationships, Defendants purport to recall ***virtually nothing***.[3] They also claim not to possess no responsive text messages, emails, or other correspondence—***even though Weather King served them with litigation hold letters dated June 13, 2022***.[4] Those responses cannot be reconciled with correspondence that Weather King has obtained from other parties. *See* Doc. 73-1 at 5-7. Yet, when asked to reconcile these discrepancies, all Defendants could muster is: "We are not required to give you an explanation of the facts as they are." Ex. 11, 5/5/23 Letter, p. 2. Thus, Defendants have:

> ➢ Refused to identify their pertinent communications (feigning lack of recollection);
>
> ➢ Refused to produce their pertinent text messages, emails, and other written exchanges or explain how they disappeared;
>
> ➢ Moved for a protective order to preclude Weather King from obtaining their communications from third parties through subpoena (Doc. 33);
>
> ➢ Refused to cooperate in a forensic examination of their devices by a neutral expert; and
>
> ➢ Refused to identify the email accounts and cell phone numbers so as to further hinder Weather King's ability to discover pertinent communications.

---

[2] As set forth in Paragraph 48 of the Amended Complaint, Defendant Maupin was caught red-handed stealing and emailing himself Weather King's sensitive financial information. Doc. 26.

[3] *See* Section B below.

[4] *See* Doc. 1-7; Ex. 1, Maupin Resp. to RFP Nos. 4-15; Ex. 2, Harrell Resp. to RFP Nos. 6-14; Ex. 3, Harrod Resp. to RFP Nos. 6-14; Ex. 4, Feagin Resp. to RFP Nos. 6-14; Ex. 5, Gillespie Resp. to RFP Nos. 6-14; Ex. 6, Brown Resp. to RFP Nos. 8-14; Ex. 7, Hershberger Resp. to RFP Nos. 6-14; Ex. 8, B. Lassen Resp. to RFP Nos. 6-14; Ex. 9, A. Lassen Resp. to RFP Nos. 6-14; Ex. 10, ABCO Resp. to RFP Nos. 9-17.

Any burden to provide this information is significantly outweighed by Weather King's need it.  *See State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 2017 WL 11379855, at *10 (E.D. Mich. Dec. 15, 2017) (finding similar information to be "discoverable to identify [defendant's] communications" and for "better understanding [defendant's] connections with other participants in the fraud scheme" and stating that it was "troubling" that the information had not already been provided); *Focuspoint Int'l, Inc. v. Baldeo*, 2022 WL 4236227, at *6 (N.D. Ohio Sept. 14, 2022) (compelling disclosure of similar information).

**B.      Requests for Phone Records**

Defendants were asked to produce their phone records from January 1, 2022, through July 1, 2022, and each of the Defendants "object[ed] to this request as not being proportional to the needs of the case[.]"[5]  Because Weather King alleges that Defendants unlawfully interfered with Weather King's business relationships, records demonstrating the persons/entities Defendants communicated with during the pertinent time is material and may facilitate Weather King discovering other relevant information.   Indeed, after ascertaining the business relationships with whom Defendants were in contact at the pertinent time, Weather King will have the opportunity to question those witnesses about the substance of their communications.

Additionally, this information will allow Weather King to search its own records and computer system for evidence of bad acts.   Moreover, this information will reveal whether Defendants were furthering their competing business enterprise during normal business hours. To the extent that these Defendants were doing so while "on the clock" for Weather King and being paid by Weather King, this is additional evidence of wrongdoing.

---

[5] Ex. 1, Maupin Resp. to RFP No. 33; Ex. 2, Harrell Resp. to RFP No. 32; Ex. 3, Harrod Resp. to RFP No. 30; Ex. 4, Feagin Resp. to RFP No. 30; Ex. 5, Gillespie Resp. to RFP No. 30; Ex. 6, Brown Resp. to RFP No. 30; Ex. 7, Hershberger Resp. to RFP No. 30; Ex. 8, B. Lassen Resp. to RFP No 30; Ex. 9, A. Lassen Resp. to RFP No. 30; Ex. 10, ABCO Resp. to RFP No. 35.

Weather King's need for this information is heightened by Defendants' failure to produce their text messages and other correspondence and their claim that they supposedly do not remember the persons with whom they communicated leading up to their departure from Weather King or the substance of their communications.  For example, Defendant Harrod states: "I had verbal communications with Weather King dealers and employees about my plans to leave," but states "I do not recall the dates or names of the dealers and employees."  Ex. 3, Harrod Resp. to Ig.  No. 3; *see also id.*, Resp. to Ig. No. 5 ("I had verbal communications with Weather King dealers but do not recall the exact dates or parties.").  Similarly, Defendant Maupin has responded that "he had conversations with various dealers and drivers about his departure from Weather King verbally[.]"  Ex. 12, Maupin Supp. Resp. to Ig. No. 5.  Mr. Maupin has not identified a single one of these "various dealers."  Therefore, these records are needed so that Weather King may ascertain the persons with whom Defendants were communicating.

Records revealing data concerning Defendants' text messages is also highly relevant to whether they have engaged in spoliation of evidence.[6]  None of the ten Defendants in this case acknowledges possessing a single responsive text message notwithstanding the fact that Weather King sent litigation hold demands less than two weeks after they left Weather King.  *See* Doc. 73-1 at 3-4.  Defendants' phone records will reveal the extent to which each of the Defendants has either destroyed or refused to produce responsive text messages.

## C.    Identification of Devices

Each Individual Defendant was asked to identify "each device in your possession, custody, or control, including but not limited to laptop computers, desktop computers, cell phones (including number and provider), tablets, or other portable electronic or storage devices,

---

[6] Although the phone records will not show the substance of the text messages, the records will show dates and parties to the messages.

that contains or contained any information that refers to, relates to, or was created by Weather King." *See, e.g.,* Ex. 1, Maupin Resp. to Ig. No. 14. Inexplicably, Defendants Maupin, Harrell, Feagin, Gillespie, Brown, Hershberger, and Brian Lassen responded: "None."[7]

Given that these Defendants conducted Weather King business using their cell phones, they certainly should possess these devices—particularly given Weather King's June 13, 2022, litigation hold letters. During the parties' meet and confer process, Defendants' counsel suggested that his clients likely misconstrued the request to be much more limited than it is on its face. Nevertheless, none of the Individuals Defendants has supplemented his or her response.

Defendant Harrod objected to the interrogatory "as not being proportional to the needs of the case." Ex. 3, Harrod Resp. to Ig. No. 12. But Weather King is entitled to this information to further the discovery of its claims, such as its trade secrets claims. Defendants are believed to have used these devices to communicate and, given that Defendants claim not to possess responsive communications, the identification of these devices is particularly important. Indeed, Defendants should be compelled to produce these devices for forensic examination, and an identification of each pertinent device is essential to that examination.

## D.  Identification of Pertinent Communications with Weather King's Business Relationships and Identification of Pertinent Relationships

In Interrogatory Nos. 6, 8, 10, and 12, Weather King asked ABCO to identify all Weather King employees, independent contractors, dealers, and rental businesses who were approached about leaving Weather King and joining Defendants' competing business enterprise. Ex. 10, ABCO Resp. to Ig. Nos. 6, 8, 10 & 12. ABCO objected to each of these interrogatories "as unduly broad, overly burdensome, and not proportional to the needs of the case." *Id.* These

---

[7] *Id.*; Ex. 2, Harrell Resp. to Ig. No. 12; Ex. 4, Feagin Resp. to Ig. No. 11; Ex. 5, Gillespie Resp. to Ig. No. 11; Ex. 6, Brown Resp. to Ig. No. 11; Ex. 7, Hershberger Resp. to Ig. No. 11; Ex. 8, B. Lassen Resp. to Ig. No. 11.

interrogatories go to the heart of Weather King's allegations that Defendants unlawfully interfered with its business relationships. Weather King should not be forced to seek the Court's intervention to require ABCO to provide this basic and critical information.

In Interrogatory Nos. 5, 7, and 9, Weather King asked ABCO to identify its employees who were formerly employed by Weather King, all ABCO independent contractors who have been affiliated with Weather King, and all ABCO dealers who were former Weather King dealers. Ex. 10, ABCO Resp. to Ig. Nos. 5, 7 & 9. Weather King also requested the dates of their affiliation with ABCO. *Id.* Again, ABCO objected to each of these interrogatories "as unduly broad, overly burdensome, and not proportional to the needs of the case." *Id.*

Weather King has accused Defendants of unlawfully interfering with its business relationships and luring them to be affiliated with ABCO rather than Weather King. Thus, these interrogatories are highly relevant to both liability and damages. This information is also very important so that Weather King can identify potential witnesses. For instance, a former Weather King employee who joined ABCO but who is no longer with ABCO may have valuable information to offer. *See Wyndham Vacation Resorts, Inc. v. Wesley Fin. Grp., LLC,* No. 3:12-CV-559, 2013 WL 441892, at *2 (M.D. Tenn. Feb. 5, 2013) (compelling disclosure of similar information about employees and contractors). Any conceivable burden to respond to these interrogatories is far outweighed by the probative value of this information.

Weather King propounded similar interrogatories on the Individual Defendants, and they have provided vague and largely unresponsive answers. Weather King, in particular, takes issue of the following responses:

<u>Interrogatory No. 3 to Defendant Maupin</u>

3.     Identify each communication you have had with any person or entity (other than confidential communications solely with your legal counsel, your

spouse, or your accountant) between January 1, 2021, and through the day of the termination of your employment with Weather King (including but not limited to communications with lenders or potential lenders, investors or potential investors, business partners or potential business partners, Weather King employees, Weather King contractors, Weather King dealers, Weather King builders, Weather King drivers, other Weather King business partners, rental companies, and Weather King customers) relating to the creation/formation or potential creation/formation of, funding or potential funding of, and/or operation or potential operation of any business enterprise in the Portable Buildings Industry (other than Weather King) and, with respect to each such communication, identify: (a) the substance of the communication; (b) all parties to the communication; (c) the date of the communication; and (d) the mode of the communication (*i.e.*, telephonic conversation, email, text message, etc.).

**RESPONSE:**   Maupin objects to this interrogatory as unduly broad, overly burdensome, and not proportional to the needs of the case, nor relevant to ay issue in the case. To collect all of this information would impose an unnecessary burden on Maupin. Subject to and without waiving these objections, Maupin states as follows: Although I do not recall the dates, I spoke with Troy Buttrey at First Bank (who also owns a rental company, BPS), about borrowing money to help start ABCO. I also spoke with the other named defendants and some dealers (Patrick Baize) and drivers (Manuel Rascon, Bryan Hyer) about starting ABCO. I also spoke with Dustin Goode. I also spoke with Doug Hines.

**SUPPLEMENTAL RESPONSE:**
Subject to and without waiving his previous objections, and incorporating his previous responses, Maupin states that he had verbal conversations with Troy Buttrey of First Bank regarding a loan to assist with the formation of ABCO Rentals. He does not recall the dates of the conversations.

Ex. 1, Maupin Resp;. Ex. 12, Maupin Supp. Resp.  Stating that he spoke with "some dealers"

without specifying each dealer and without specifying the mode of the communications (*i.e.*, text

message) and at least indicating whether the communications pre-dated Mr. Maupin's departure

from Weather King does not suffice.

<u>Interrogatory No. 4 to Defendant Maupin</u>

4.      Identify each communication you had between January 1, 2021, and through the day of the termination of your employment with Weather King with any person then-employed by Weather King relating to that person's potential departure from Weather King and/or your potential departure from Weather King and, with respect to each such communication: (a) describe in detail the substance of the communication; (b) identify all parties to the communication; (c) identify

the date of the communication; and (d) identify the mode of the communication (*i.e.*, telephonic conversation, email, text message, etc.).

**SUPPLEMENTAL RESPONSE:** Subject to and without waiving his previous objections, and incorporating his previous responses, Maupin states although I don't recall the dates, I spoke with all of the listed defendants regarding the formation of ABCO.

Ex. 12, Maupin Supp. Resp. This vague response does not detail the substance of each communication, the parties to each communication, or the mode of communication as requested.

### Interrogatory No. 5 to Defendant Maupin

5.      Identify each communication you had between January 1, 2021, and the day of the termination of your employment from Weather King with any person or entity who, at the time of the communication, was a Weather King dealer, driver, customer, lender, landlord, rental company, or other business partner relating to your potential departure from Weather King and, with respect to each such communication: (a) describe in detail the substance of the communication; (b) identify all parties to the communication; (c) identify the date of the communication; and (d) identify the mode of the communication (*i.e.*, telephonic conversation, email, text message, etc.).

**SUPPLEMENTAL RESPONSE:** Subject to and without waiving his previous objections, and incorporating his previous responses, Maupin states that he had conversations with various dealers and drivers about his departure from Weather King verbally and that the does not recall the dates of such conversations.

*Id.* Mr. Maupin's vague reference to "various dealers and drivers" does not come remotely close to complying with his discovery obligations. Nor does he "describe in detail the substance" of each communication or provide the other requested information, despite Weather King's multiple requests that he cure these deficiencies. Simply stating that he "does not recall the dates of such conversations" also is woefully insufficient. Mr. Maupin, at the very least, should be able to identify whether the communications took place while he still worked for Weather King.

### Interrogatory Nos. 4 & 5 to Defendant Hershberger

4.      Identify each communication you had between January 1, 2021, and through the day of the termination of your employment with Weather King with any person then-employed by Weather King relating to that person's potential

departure from Weather King and/or your potential departure from Weather King and, with respect to each such communication: (a) describe in detail the substance of the communication; (b) identify all parties to the communication; (c) identify the date of the communication; and (d) identify the mode of the communication (*i.e.*, telephonic conversation, email, text message, etc.).

**RESPONSE:** Hershberger objects to this interrogatory as unduly broad, overly burdensome, and not proportional to the needs of the case, nor relevant to any issue in the case. To collect all of this information would impose an unnecessary burden on Hershberger. Subject to and without waiving those objections, Hershberger states as follows: I met and spoke with builders and drivers from the Peoria plant on two separate occasions to notify them of my departure. In those communications I discussed my future opportunities.

5.      Identify each communication you had between January 1, 2021, and the day of the termination of your employment from Weather King with any person or entity who, at the time of the communication, was a Weather King dealer, driver, customer, lender, landlord, rental company, or other business partner relating to your potential departure from Weather King and, with respect to each such communication: (a) describe in detail the substance of the communication; (b) identify all parties to the communication; (c) identify the date of the communication; and (d) identify the mode of the communication (*i.e.*, telephonic conversation, email, text message, etc.).

**RESPONSE:** Hershberger objects to this interrogatory as unduly broad, overly burdensome, and not proportional to the needs of the case, nor relevant to any issue in the case. To collect all of this information would impose an unnecessary burden on Hershberger. Subject to and without waiving these objections, Hershberger states as follows: I met and spoke with builders and drivers from the Peoria plant on two separate occasions to notify them of my departure. In those communications I discussed my future opportunities.

Ex. 7, Hershberger Resp.  The Court should compel Mr. Hershberger to identify the "builders and drivers" with whom he spoke and the substance and timing of his communications—particularly in terms of whether they were before or after his resignation from Weather King. This information is highly relevant, and Mr. Hershberger's vague response does not suffice.

<u>Requests for Production to Hershberger</u>

6.      All correspondence and other documents exchanged with any former Weather King employees between January 1, 2022, and July 1, 2022.

**RESPONSE:** Hershberger objects to this request as being not proportional to the needs of the case.

7.      All correspondence and other documents exchanged with any then-current Weather King employees after January 1, 2022.

**RESPONSE:** Hershberger objects to this request as being not proportional to the needs of the case.

***

14.     All non-privileged correspondence and other documents related to:
(a) any of the Defendants' departure from Weather King;
(b) any of the Defendants' communications with any Weather King employees about the possibility of leaving Weather King or joining ABCO;
(c) any of the Defendants' communications with any Weather King builders, dealers, drivers, rental companies, or contractors, about the possibility of doing business with ABCO or ceasing doing business with Weather King;
(d) any claims or potential claims made by Weather King against any of the Defendants;
(e) any of the Defendants' possession of or use of any Weather King property; or
(f) derogatory remarks made by any of the Defendants relating to Weather King;

**RESPONSE:** Hershberger objects to this request as being overly broad and unduly burdensome and not proportional to the needs of the case. To collect all these documents would impose an unnecessary burden on Hershberger.

Ex. 7, Hershberger Resp.  During the meet and confer process, Defendants appeared to concede that the information requested in Request Nos. 6 and 7 is discoverable and stated: "We are checking." Ex. 11, 5/5/23 Letter, p. 5.[8]  Mr. Hershberger, however, has not supplemented his response or provided any responsive documents.

<u>Interrogatory No. 4 to Defendant Feagin</u>

4.      Identify each communication you had between January 1, 2021, and through the day of the termination of your employment with Weather King with any person then-employed by Weather King relating to that person's potential departure from Weather King and/or your potential departure from Weather King and, with respect to each such communication: (a) describe in detail the substance of the communication; (b) identify all parties to the communication; (c) identify the date of the communication; and (d) identify the mode of the communication (*i.e.*, telephonic conversation, email, text message, etc.).

---

[8] Mr. Hershberger, however, has stood by his objections to Request No. 14. *Id.*

> **RESPONSE:** Feagin objects to this interrogatory as unduly broad, overly burdensome, and not proportional to the needs of the case, nor relevant to any issue in the case. To collect all of this information would impose an unnecessary burden on Feagin. Subject to and without waiving those objections, Feagin states as follows: I recall speaking to someone at Weather King about a job offer. No other communications.

Ex. 4, Feagin Resp. This response is woefully deficient in that it does not even identify the parties, timing, and substance of the communication, and other requested information.

Defendant Harrod likewise gave minimally responsive answers to the same crucial questions, stating that he "had verbal communications with Weather King dealers and employees about [his] plans to leave," and that he "do[es] not recall the dates or names of the dealers and employees." Ex. 3, Harrod Resp. to Ig. No. 3. And when asked to identify and describe communications he had with other then-Weather King employees about his departure from Weather King, Mr. Harrod responded only that he "had verbal communications on this issue with Logan Feagin and Jesse Maupin but do[es] not recall the dates." *Id.* at Resp. to Ig. No. 4; *see also id.* at Resp. to Ig. No. 5 ("I had verbal communications with Weather King dealers [about my departure from Weather King] but do not recall the exact dates or parties.").[9]

In similar fashion, Defendant Stephanie Gillespie admitted that she spoke with Defendant Maupin about leaving Weather King and forming a competing business, but she claims that she does not recall the dates or the "exact substance of the conversation." Ex. 5, Gillespie Resp. Ig. Nos. 3-4.[10] These discovery requests are central to Weather King's claims, and the Court should compel Defendants to provide full and complete responses.

**E.    Information Relating to Funding Sources and Potential Funding Sources**

---

[9] Mr. Harrod also objected to each of these interrogatories as overly broad, unduly burdensome, and irrelevant. *See id.*, Resp. to Ig. Nos. 3-5.

[10] She also objected on the grounds that the interrogatories are overly broad, unduly burdensome, and irrelevant. *Id.*

Weather King asked Mr. Maupin to identify "each person and/or entity with whom you have discussed funding, potential funding, or providing other financial support to or for any business enterprise in the Portable Business Industry since January 1, 2021, whether as an investor, a lender, or in any other capacity." *See* Ex. 1, Maupin Resp. to Ig. No. 6.  Mr. Maupin objected "to this interrogatory as not being proportional to the needs of the case." *Id.*

This information is important for several reasons.  Mr. Maupin accessed Weather King's sensitive financial information without authorization and emailed it to his personal email address.  *See* Doc. 26, ¶ 48.  Weather King believes that Mr. Maupin used this confidential information as part of his attempts to obtain funding for Defendants' competing business enterprise.  Thus, this information is relevant to Weather King's trade secrets claims.

In addition, it is quite possible that Mr. Maupin (and other Defendants) told potential funding sources that Defendants were already in the process of lining up Weather King employees, dealers, builders, drivers, and other business relationships ***before their departure from Weather King***—in blatant breach of their duty of loyalty—in connection with their funding requests.  Some of this evidence already exists.  *See, e.g.*, Doc. 73-9 (6/13/22 text from B. Lassen stating that "ALL DEALERS are going to ABC and 95% of the drivers as well").  It is likely that Defendants made similar statements to their lenders/investors and potential lenders/investors.  Thus, this interrogatory is relevant to Weather King's breach of duty of loyalty and interference claims.  Any minimal burden on Mr. Maupin in responding to this interrogatory is far outweighed by the importance of the evidence to Weather King's claims.

Moreover, ABCO has provided incomplete information about loans and other financial support.  ABCO stated that FirstBank is the only entity that has loaned money or provided other financial support.  Ex. 13, ABCO Supp. Resp. to Ig. Nos. 3 & 4.  ABCO, however, produced a

document showing notes payable to three rental companies and an "EFA-Forklift."  *See* Ex. 14. And although Weather King requested that ABCO produce "[a]ll agreements between you and any dealers, builders, lenders, investors, or rental companies in the Portable Buildings Industry," ABCO responded: "None."   Ex. 10, ABCO Resp. to RFP No. 32.

Indeed, ABCO has not provided documents relating to any of these loans.  Nor has it provided documents related to loans it apparently made to certain builders who used to be affiliated with Weather King.  *See* Ex. 14 (referencing notes receivable to Arizona Barn Co LLC, Benjamin Miller, and others).[11]   Indeed, it apparently wants Weather King and the Court to believe that no responsive documents exist.  *See* Ex. 10, ABCO Resp. to RFP No. 32.

Likewise, the following interrogatory response by Defendant Harrell is also deficient:

3.      Identify each communication you have had with any person or entity (other than confidential communications solely with your legal counsel, your spouse, or your accountant) between January 1, 2021, and through the day of the termination of your employment with Weather King (including but not limited to communications with lenders or potential lenders, investors or potential investors, business partners or potential business partners, Weather King employees, Weather King contractors, Weather King dealers, Weather King builders, Weather King drivers, other Weather King business partners, rental companies, and Weather King customers) relating to the creation/formation or potential creation/formation of, funding or potential funding of, and/or operation or potential operation of any business enterprise in the Portable Buildings Industry (other than Weather King) and, with respect to each such communication, identify: (a) the substance of the communication; (b) all parties to the communication; (c) the date of the communication; and (d) the mode of the communication (*i.e.*, telephonic conversation, email, text message, etc.).

**RESPONSE:**  Harrell objects to this interrogatory as unduly broad, overly burdensome, and not proportional to the needs of the case, nor relevant to ay issue in the case. To collect all of this information would impose an unnecessary burden on Harrell.

**SUPPLEMENTAL RESPONSE:**  Subject to and without waiving his previous objections, Harrell states that he had no conversations regarding loans.

---

[11] Weather King believes that ABCO loaned Weather King's builders money to induce them to leave Weather King and join ABCO.  Therefore, the terms of these loans and the timing are probative to Weather King's claims.

Ex. 2, Harrell Resp.; Ex. 15, Harrell Supp. Resp.  Weather King's interrogatory is much broader than simply asking about "loans."  Weather King is entitled to the requested information, and Mr. Harrell should be compelled to provide a full and complete responses.

## F.    Compensation Information

Weather King requested that each Defendant produce "[a]ll documents evidencing distributions, salary, wages, bonuses, commissions, or other compensation paid or accrued to you by any entity in the Portable Buildings Industry, other than Weather King, from January 1, 2021, through the date of response."  *See, e.g.,* Ex. 1, Maupin Resp. to RFP No. 27.  Defendant Maupin "object[ed] to this request as not being proportional to the needs of the case but is willing to discuss this response with opposing counsel," *id.*, and Defendants Harrell, Feagin, Gillespie, and Hershberger raised similar objections.[12]

This information is relevant for multiple reasons.  First, to the extent the Individual Defendants were being compensated by ABCO or another competing business enterprise while they were still employed by Weather King, the information is probative to Weather King's breach of duty of loyalty claims.  Further, to the extent that ABCO (with knowledge of Weather King's employees' salaries/wages) offered Weather King personnel more money to lure them away from Weather King, this is probative to Weather King's interference and other claims.

This information is also relevant to Weather King's damages.  An element of damages for Defendants' misappropriation of trade secrets claims is unjust enrichment.  *See, e.g., Hamilton-Ryker Group, LLC v. Keymon*, 2010 WL 323057, at *14 (Tenn. Ct. App. Jan. 28, 2010).  Similarly, disgorgement of profits is an element of damages for a breach of duty of loyalty claim.  *See, e.g., Appalachian Contracting Co. v. Cox*, 403 F. Supp. 176, 180 (E.D. Tenn.

---

[12] Ex. 2, Harrell Resp. to RFP No. 26; Ex. 4, Feagin Resp. to RFP No. 24; Ex. 5, Gillespie Resp. to RFP No. 24; Ex. 7, Hershberger Resp. to RFP No. 24.

1975). This information is also pertinent to Weather King's punitive damages claims. *See Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901–02 (Tenn. 1992) (a "defendant's financial affairs" and "[w]hether defendant profited from the activity" are germane to punitive damages).

During the meet and confer process, Weather King advised Defendants that, for the time-being, this information may be provided in summary form. The Individual Defendants, however, have refused to provide *any* responsive information.

Defendants Harrod, Brown, Brian Lassen, and Aleyna Lassen claim to possess no documents responsive to this request.[13] That representation makes no sense insofar as these Defendants have admitted being involved in the industry. For instance, Mr. Harrod has stated "I am a salesman for American Barn and have been one since its inception."[14] The Court should compel each of the Individual Defendants to provide documents responsive to this request.

## G.    Information Relating to Appointments, Etc.

Weather King requested production of "[a]ll documents reflecting notes, diaries, journals, expense records, day planners, calendars, and/or other record(s) maintained by you that record, refer, or otherwise relate to your activities, including, but not limited to any appointment, meeting, interview, placement, or other business activities in the Portable Buildings Industry from January 1, 2022, through July 1, 2022." *See, e.g.,* Ex. 2, Harrell Resp. to RFP No. 30. Defendants Harrell and ABCO objected as "unduly broad, overly burdensome, and not proportional to the needs of the case." *Id.*; Ex. 10, ABCO Resp. to RFP No. 34.

The requested information is highly relevant to Weather King's claims, particularly insofar as it may show Weather King business relationships with whom Defendants were

---

[13] *See* Ex. 3, Harrod Resp. to RFP No. 24; Ex. 6, Brown Resp. to RFP No. 24; Ex. 8, B. Lassen Resp. to RFP No. 24; Ex. 9, A. Lassen Resp. to RFP No. 24.

[14] Ex. 3, Harrod Resp. to Ig. No. 2; *see also* Ex. 6, Brown Response to Ig. No. 2; Ex. 8, B. Lassen Resp. to Ig. No. 2; Ex. 9, A. Lassen Resp. to Ig. No. 2.

meeting and the timing of those meetings.  Notes related to those activities may also reveal information highly probative to Weather King's claims.  The Court should compel ABCO and Mr. Harrell to produce documents responsive to these requests.

## H.     Pertinent Recordings

Defendant Feagin objected to a request for "[a]ll photographs, video, and/or audio recordings of Weather King property and/or current or former Weather King employees or officers," on the basis that is "not being proportional to the needs of the case."  Ex. 4, Feagin Resp. to RFP No. 27.  Such recordings are potentially relevant as, for instance, they may show interactions that are pertinent to Weather King's claims or show Defendants' possession of Weather King's trade secrets.  Tthe Court should compel compliance with this request.

## I.     Defendant Harrell's Interference with Florida Dealers

Weather King asked Defendant Harrell to "[i]dentify all then-current Weather King dealers to whom you suggested should demand a higher commission from Weather King, and with respect to each such dealer: (a) specify the date of the communication; (b) specify all parties to the communication; (c) specify the mode of the communication (*i.e.,* telephonic or text); (d) set forth the substance of the communication; and (e) identify all documents relating to the communication."  Ex. 15, Harrell Supp. Resp. to Ig. No. 7.[15]  Consistent with Defendants' tack of only providing minimal and evasive responsive information (and only after repeated demands for supplementation), Mr. Harrell responded: "Subject to and without waiving his previous objections, Harrell states that he had conversations verbally with the following dealers about the subject matter of this interrogatory: Triangle Barns and Okeechobee Storage Solutions."  *Id.*[16]

---

[15] Although Defendants are not doing business in Florida, Mr. Harrell, out of spite, chose to attempt to disrupt Weather King's operations in Florida as well.

[16] Mr. Harrell initially "object[ed]" to this interrogatory as unduly broad, overly burdensome, and not proportional to the needs of the case."  Ex. 2, Harrell Resp. to Ig. No. 7.

The Court should compel Mr. Harrell to fully respond to this interrogatory, stating the dates and modes of the conversations, the specific individuals involved, and, most importantly, the specific substance of each conversation. Merely stating "the subject matter" and not even identifying any persons falls far short of complying with his discovery obligations.

**J.     Engineer Contact Information**

Weather King asked ABCO to "[i]dentify each person or entity with whom ABCO has communicated after January 1, 2022, about the possibility of preparing blueprints, drawings, or other engineering plans pertaining to the Portable Buildings Industry." Ex. 10, ABCO's Resp. to Ig. No. 15. ABCO responded: "Kevin Nolan, Phoenix Engineering, Robertson Engineering, Frost Engineering, Richard Steward, EZE Group." *Id.* No contact information was provided, and therefore, Weather King asked for this information by follow-up letter. Defendants' counsel responded by stating, "[n]o contact information was requested," prompting Weather King's counsel to note that the term "Identify" is defined in the interrogatories. Ex. 18, 4/14/23 Letter, p. 7; Ex. 17, 4/19/23 Letter, p. 3; Ex. 19, Pl.'s discovery to ABCO, p. 3. ABCO, nevertheless, has refused to supplement its response.

Weather King should not be forced to guess who, of the thousands of people in the United States named "Richard Steward," ABCO interacted with. Nor should it be forced to resort to seeking the Court's intervention to obtain basic, discoverable information such as this.

**K.     Spreadsheet Referenced in Email**

Defendant Brown is the only Defendant to produce any correspondence in response to Weather King's discovery requests. Mr. Brown produced one email that references an attached spreadsheet. *See* Ex. 16. However, the spreadsheet has not been produced. Beginning April 19, 2023, Weather King has repeatedly requested that the spreadsheet be produced. *See* Ex. 17, p. 6.

More than two months later, the spreadsheet, however, still has not been produced, and therefore, Weather King is unnecessarily forced to seek this Court's intervention.

**L.      Recipients of Text Message Sent from Defendant Harrod**

On June 1, 2022—one day after Defendant Stephanie Gillespie abruptly resigned— Defendant Harrod sent a text message to a number of Weather King's business relationships, stating: "Hey guys Stephanie walked out today and quit WeatherKing the new girl Shelby don't say anything to regarding the future."  Doc. 1-1, Doc. 26, ¶ 28.  Asked to identify all persons "who were recipients of the text message," Mr. Harrod simply responded: "I do not recall."  Ex. 3, Harrod Resp. to Ig. No. 11.

Particularly given that Weather King issued a litigation hold demand to Mr. Harrod on June 1, 2022, presumably all Mr. Harrod would need to do is look in his phone and identify the recipients to the text message.  *See Kamps, Inc.*, 2019 WL 5866100 at *2 (holding that party a party must undertake "a diligent search")   It appears that Mr. Harrod either is not complying with his discovery obligations or has destroyed material evidence.  The Court should compel Mr. Harrod to provide information responsive this interrogatory or explain the circumstances in which the text message has been deleted.

## CONCLUSION

For the foregoing reasons, Weather King respectfully requests that the Court compel Defendants to provide full and complete responses to the interrogatories and requests for production referenced above.  Due to the number and complexity of the items at issue, Weather King further requests an in-person hearing in accordance with Local Rule 7(d).  Weather King reserves its right to seek attorney's fees and costs in accordance with Fed. R. Civ. P. 37(a)(5).

Respectfully submitted,

BUTLER SNOW LLP

*/s/ David L. Johnson*
David L. Johnson, BPR #18732
John H. Dollarhide, BPR #40041
150 3rd Avenue South, Suite 1600
Nashville, TN 37201
(615) 651-6700
david.johnson@butlersnow.com
john.dollarhide@butlersnow.com

Daniel W. Van Horn, BPR #18940
6075 Poplar Ave., Suite 500
Memphis, TN 38119
(901) 680-7200
Danny.VanHorn@butlersnow.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2023, I filed the foregoing with the Court using the ECF

system, which will provide notice and a copy to counsel of record:

Thomas G. Pasternak
AKERMAN LLP
71 South Wacker Drive, 47th Floor
Chicago, IL 60606
thomas.pasternak@akerman.com
Attorneys for Defendants

*/s/  David L. Johnson*
David L. Johnson

69004273.v1

21