# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| CONSOLIDATED INDUSTRIES, LLC d/b/a WEATHER KING PORTABLE BUILDINGS,<br><br>            Plaintiff,<br><br>v.<br><br>JESSE A. MAUPIN, BARRY D. HARRELL, ADRIAN S. HARROD, LOGAN C. FEAGIN, STEPHANIE L. GILLESPIE, RYAN E. BROWN, DANIEL J. HERSHBERGER, BRIAN L. LASSEN, ALEYNA LASSEN, and AMERICAN BARN CO., LLC,<br><br>            Defendants. | Civil Action No. 1:22-cv-01230-STA-jay<br>Chief Judge S. Thomas Anderson |

**DEFENDANTS' FIRST SET OF INTERROGATORIES TO PLAINTIFF**

Pursuant to Fed. R. Civ. P. 26, Defendants Jesse Maupin, et al. serve the following Interrogatories upon Plaintiff Consolidated Industries, LLC d/b/a Weather King Portable Buildings. Each interrogatory is to be answered separately and fully in writing, under oath, and signed by you within thirty (30) days of this request.

**DEFINITIONS**

As used herein, the following terms shall have the meaning, and shall be interpreted, as defined in Rule 26 and as set forth below:

1. The term, "DOCUMENTS," as used herein, shall have the meaning provided by F.R.C.P. 34(a), including all writings, drawings, graphs, charts, photographs, phonorecords, audio and video recordings, emails, text messages, audio recordings, and other data compilations from

69412009;1

which information can be stored or obtained, whether in tangible or electronic form, or by any other means.

2. "REFER TO," "RELATING TO," "REFLECTING" or "EVIDENCING" shall mean and refer to "comprising, embodying, containing, reflecting, memorializing, constituting, evidencing, supporting, setting forth, mentioning, concerning, discussing, describing, analyzing, reporting on, commenting on, identifying, stating, considering, dealing with, pertaining to or referring to."

3. "COMMUNICATION" or "COMMUNICATIONS" shall mean and refer to any form of communication including, but not limited to, verbal or written communications.

4. As used herein, "and" and "or" shall be construed to mean "and/or" where the effect of such construction is to broaden the request.

5. "IDENTIFY" shall have the following meaning when used in reference to products or goods: to state the name and a description of the product or good, and/or to include a photograph or other graphic reproduction of the product or good.

## INSTRUCTIONS

1. In the event that you object to any Interrogatory on the basis that it is overbroad for any reason, respond to that Interrogatory narrowed in such a way as to render it not overbroad in YOUR opinion, and state the extent to which you have narrowed the Interrogatory for purposes of YOUR response.

2. If an Interrogatory cannot be answered in full, it should be answered to the extent possible, with an explanation as to why the remainder cannot be answered, disclosing whatever information, knowledge, or belief you do have with respect to the unanswered portion, including the name(s) and address(es) of any person(s) or entity(ies) having further information.

3. If in answering these Interrogatories, you claim any ambiguity in a question, instruction, or definition, set forth the matter deemed ambiguous and the construction used in answering the Interrogatory.

4. Where knowledge or information in the possession or control of a party is requested or inquired of such request or inquiry also seeks knowledge or information in the possession or control of the party's agents, servants, employees, representatives, and attorneys, or other persons acting for or on behalf of the party.

5. THESE INTERROGATORIES ARE CONTINUING IN NATURE. YOU MUST SUPPLEMENT OR AMEND YOUR RESPONSES PURSUANT TO RULE 26(e) OF THE FEDERAL RULES OF CIVIL PROCEDURE.

## INTERROGATORIES

**Interrogatory No. 1**

Define with specificity just what constitutes Weather King's alleged trade secrets.

**Interrogatory No. 2**

If the alleged trade secrets comprise engineering drawings, who owns the copyright in those drawings? If the copyrights are not owned by Weather King, what right does Weather King have in them.

**Interrogatory No. 3**

Were any "Non Compete" agreements signed by any of the Defendants?

**Interrogatory No. 4**

Was essential safety equipment denied to any of Weather King's manufacturing facilities?

**Interrogatory No. 5**

How frequently are pay raises offered to employees of Weather King?

**Interrogatory No. 6**

Were any of the Defendants given an "Employee Handbook" or the equivalent?

**Interrogatory No. 7**

Were there any disciplinary write ups ever written on any of the Defendants?

**Interrogatory No. 8**

After termination, did any Weather King employees watch terminated employees clean out their cubicles? If so, whom?

**Interrogatory No. 9**

Were any of the Defendants' personal emails gone through or deleted by any Weather King employee or affiliate such as TS Micro at any time?

**Interrogatory No. 10**

Were termination papers provided to any of the Defendants that were terminated?

**Interrogatory No. 11**

Did ABCO purchase any sales lot offices from Weather King?

**Interrogatory No. 12**

Did Weather King notify the employees at the Bonifay, FL plant that they were being audio and videotaped while Ben Miller was the manager?

**Interrogatory No. 13**

What was the time and date of the talks that originated the sale of Weather King to Old Hickory?

**Interrogatory No. 14**

Was the sale planned before the Defendants were terminated?

**Interrogatory No. 15**

How much was the original price tag for Weather King for the sale to Old Hickory before

the Defendants were terminated?

**Interrogatory No. 16**

Did ABCO offer to buy out Weather King?

**Interrogatory No. 17**

Did ABCO purchase materials from any Weather King plant?

**Interrogatory No. 18**

Did ABCO offer to purchase all buildings on the ground (inventory at the sales lots and plants)?

**Interrogatory No. 19**

Did ABCO affiliates continue to do Weather Kings payroll even after leaving Weather King?

**Interrogatory No. 20**

Did Scott Berryman affirm to one or more persons related to ABCO that there would be no lawsuit?

**Interrogatory No. 21**

Did Scott Berryman admit to one or more ABCO related individuals that he knew he had a problem with some of the owners of Weather King (David Sullivan & Jill Coker) but didn't know how bad it was or how he was going to fix it?

**Interrogatory No. 22**

Did Scott Berryman agree to a deal to buy out material at the Las Vegas Plant?  If so, did this take place and was money exchanged for said product?

**Interrogatory No. 23**

Did Scott Berryman agree to sell out the Western Operations to ABCO?

**Interrogatory No. 24**

Did Scott Berryman make any negative comments to any Plant Manufacturers that are currently now with ABCO?

**Interrogatory No. 25**

Did Scott Berryman take Jesse Maupin with him on his plane out west to discuss purchase of materials from the plants?

**Interrogatory No. 26**

Did Scott Berryman tell one or more people now affiliated with ABCO that they (ABCO) would be out of business in 6 months?

**Interrogatory No. 27**

Were any employees accused of calling in to the Department of Labor? Whom?

**Interrogatory No. 28**

Were any employees accused of calling in to the Department of Labor retaliated against for what Weather King thought to be a call in on them?

**Interrogatory No. 29**

Were any employees threatened with the possibility of termination if they didn't receive the vaccine? Provide time, date, and details of this talk and which employees were involved.

**Interrogatory No. 30**

Did Weather King (Consolidated Industries) receive monies related to a PPP loan from the government?

**Interrogatory No. 31**

Did Weather King (Consolidated Industries) withhold pay from one or more employees who had to take off work for being out with Covid?

**Interrogatory No. 32**

Were all employees treated the same with regards to pay during Covid absences, or were

some employees paid while they were off and some were not?

**Interrogatory No. 33**

Did any of Weather King employees (Mike Jackson or Jay Coker) make any derogatory statements via text or email to any current Weather King dealers about Barry Harrell?

**Interrogatory No. 34**

Did any of Weather King employees (Mike Jackson or Jay Coker) make any derogatory statements via text or email to any current Weather King dealers about Jesse Maupin?

**Interrogatory No. 35**

Did Tim Boyd make any negative comments to any dealers or drivers in the Arizona market about ABCO?

**Interrogatory No. 36**

Did Tim Boyd tell any now ABCO dealers or plant facilities that ABCO would not be around very long because they didn't have the financial stability to sustain growth?

Dated: March 28, 2023                             Respectfully submitted,

**AKERMAN LLP**

/s/ *Thomas G. Pasternak*
Thomas G. Pasternak (*admitted pro hac vice*)
Illinois ARDC No. 6207512
71 South Wacker Dr., 47th Floor
Chicago, IL 60606
Telephone: 312 870 8019
Fax: 312 424 1900
thomas.pasternak@akerman.com

*Attorneys for Defendants*

*JESSE A. MAUPIN, BARRY D. HARRELL, ADRIAN S. HARROD, LOGAN C. FEAGIN, STEPHANIE L. GILLESPIE, RYAN E. BROWN, DANIEL J. HERSHBERGER, BRIAN L. LASSEN, ALEYNA LASSEN, and AMERICAN BARN CO., LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2023, **DEFENDANTS' FIRST SET OF INTERROGATORIES TO PLAINTIFF** was served via email upon:

>David L. Johnson, #18732
>John H. Dollarhide, #40041
>Y. Larry Cheng, #36707
>BUTLER SNOW LLP
>150 3rd Avenue South, Suite 1600
>Nashville, TN 37201
>Telephone: (615) 651-6700
>Fax: (615) 651-6701
>david.johnson@butlersnow.com
>john.dollarhide@butlersnow.com
>larry.cheng@butlersnow.com
>
>Daniel W. Van Horn, #18940
>BUTLER SNOW LLP
>6075 Poplar Ave., Suite 500
>Memphis, TN 38119
>Telephone: (901) 680-7200
>Fax: (901) 680-7201
>Danny.VanHorn@butlersnow.com

>>/s/ *Thomas G. Pasternak*
>>Thomas G. Pasternak

- 8 -

69412009;1