# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| **CONSOLIDATED INDUSTRIES, LLC D/B/A WEATHER KING PORTABLE BUILDINGS,** | **PLAINTIFF** |
| VS. | Civil Action No. 1:22-cv-01230-STA-jay |
| **JESSE A. MAUPIN, BARRY D. HARRELL, ADRIAN S. HARROD, LOGAN C. FEAGIN, STEPHANIE L. GILLESPIE, RYAN E. BROWN, DANIEL J. HERSHBERGER, BRIAN L. LASSEN, ALEYNA LASSEN, AND AMERICAN BARN CO., LLC,** | **DEFENDANTS** |

**PLAINTIFF'S RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES**

Plaintiff Consolidated Industries, LLC d/b/a Weather King Portable Buildings ("Weather King" or "Plaintiff"), by and through its counsel of record, and pursuant to Federal Rules of Civil Procedure 33, hereby responds to Defendants' First Set of Interrogatories as follows:

### INTERROGATORIES

**Interrogatory No. 1**

Define with specificity just what constitutes Weather King's alleged trade secrets.

**RESPONSE:**

Weather King objects to this interrogatory as vague and ambiguous. Weather King further objects to this interrogatory as beyond the scope of discovery to the extent that it seeks disclosure of all of Weather King's trade secrets, not just the ones at issue or even potentially at issue in this action. Subject to and without waiving this objection, Weather King responds that it considers its trade secrets to be all information it owns that meets the definition of T.C.A. § 39-14-138(a)(4) or 18 U.S.C. § 1839(3). As it pertains to the specific trade secrets that Weather King presently is

aware were misappropriated in this case, Weather Kings identifies the following information: inventory counts by location; dealer contact information organized by drivers that service those locations; vendor information and pricing; cost estimates; financial information including profit & loss statements and balance sheets; sales lot lease information including contact information, locations, and rent amounts; and engineering drawings. Weather King notes that discovery is in process, including Weather King's discovery of other trade secrets that Defendants may have misappropriated. This response will be supplemented as necessary.

**Interrogatory No. 2**

If the alleged trade secrets comprise engineering drawings, who owns the copyright in those drawings? If the copyrights are not owned by Weather King, what right does Weather King have in them.

**RESPONSE:** The engineering drawings are works made for hire, and therefore, Weather King owns all rights of authorship and copyright in and to those drawings.

**Interrogatory No. 3**

Were any "Non Compete" agreements signed by any of the Defendants?

**RESPONSE:** Weather King objects to this interrogatory as vague in that the term "Non Compete" is not defined and is subject to varying interpretations and definitions. Subject to and without waiving this objection, Weather King responds that it did not enter into a "noncompete agreement" with any of the Defendants, under the traditional meaning of that term.

**Interrogatory No. 4**

Was essential safety equipment denied to any of Weather King's manufacturing facilities?

**RESPONSE:** Weather King objects to this interrogatory as beyond the scope of discovery in that it is not relevant to any asserted claim or defense and not proportional to the needs of the case.

**Interrogatory No. 5**

How frequently are pay raises offered to employees of Weather King?

**RESPONSE:** Weather King objects to this interrogatory as beyond the scope of discovery in that it is not relevant to any asserted claim or defense and not proportional to the needs of the case.

**Interrogatory No. 6**

Were any of the Defendants given an "Employee Handbook" or the equivalent?

**RESPONSE:** Weather King did not provide a formal employee handbook to Defendants.

**Interrogatory No. 7**

Were there any disciplinary write ups ever written on any of the Defendants?

**RESPONSE:** According to information available to it, no disciplinary actions were taken against Defendants prior to Weather King's discovery of their wrongful conduct which is the subject of this action.

**Interrogatory No. 8**

After termination, did any Weather King employees watch terminated employees clean out their cubicles? If so, whom?

- 3 -

**RESPONSE:** Weather King notes that only Mr. Maupin was terminated and that the other individual defendants voluntarily resigned, but responds that it is unaware of any employees watching any of the Defendants clean out their cubicles.

**Interrogatory No. 9**

Were any of the Defendants' personal emails gone through or deleted by any Weather King employee or affiliate such as TS Micro at any time?

**RESPONSE:** Weather King objects on the basis of the work product doctrine in that this interrogatory asks Weather King to divulge its fact investigation and trial preparation, which is impermissible.

**Interrogatory No. 10**

Were termination papers provided to any of the Defendants that were terminated?

**RESPONSE:** Weather King objects to this interrogatory as vague in that the term "termination papers" is not defined and is subject to varying interpretations and definitions. Subject to and without waiving this objection, Weather King notes that only Mr. Maupin was terminated and that the other individual defendants voluntarily resigned, but responds that it did not provide formal termination notices to any Defendant.

**Interrogatory No. 11**

Did ABCO purchase any sales lot offices from Weather King?

**RESPONSE:** Yes.

**Interrogatory No. 12**

Did Weather King notify the employees at the Bonifay, FL plant that they were being audio and videotaped while Ben Miller was the manager?

**RESPONSE:** Weather King objects to this interrogatory as beyond the scope of discovery in that it is not relevant to any asserted claim or defense and not proportional to the needs of the case.

**Interrogatory No. 13**

What was the time and date of the talks that originated the sale of Weather King to Old Hickory?

**RESPONSE:** On or about June 28, 2022.

**Interrogatory No. 14**

Was the sale planned before the Defendants were terminated?

**RESPONSE:** No.

**Interrogatory No. 15**

How much was the original price tag for Weather King for the sale to Old Hickory before the Defendants were terminated?

**RESPONSE:** Weather King objects on the basis that it is unable to respond to this interrogatory because it is predicated on a false presumption.

**Interrogatory No. 16**

Did ABCO offer to buy out Weather King?

**RESPONSE:** Although there were some preliminary discussions regarding a negotiated sale of some of Weather King's operations to ABCO, no formal offer was made.

**Interrogatory No. 17**

Did ABCO purchase materials from any Weather King plant?

**RESPONSE:** Weather King objects to this interrogatory as vague and ambiguous in that the term "Weather King plant" is undefined and could be intended to mean manufacturing facilities owned by Weather King or manufacturing facilities with which Weather King contracted. Subject to and without waiving this objection, Weather King responds that it is aware of ABCO purchasing materials from a manufacturing plant with which Weather King contracted.

**Interrogatory No. 18**

Did ABCO offer to purchase all buildings on the ground (inventory at the sales lots and plants)?

**RESPONSE:** Yes.

**Interrogatory No. 19**

Did ABCO affiliates continue to do Weather Kings payroll even after leaving Weather King?

**RESPONSE:** No.

**Interrogatory No. 20**

Did Scott Berryman affirm to one or more persons related to ABCO that there would be no lawsuit?

**RESPONSE:** Weather King objects to this interrogatory as beyond the scope of discovery in that it is not relevant to any asserted claim or defense and not proportional to the needs of the case. Subject to and without waiving this objection, Weather King responds that Mr. Berryman did not.

**Interrogatory No. 21**

Did Scott Berryman admit to one or more ABCO related individuals that he knew he had a problem with some of the owners of Weather King (David Sullivan & Jill Coker) but didn't know how bad it was or how he was going to fix it?

**RESPONSE:** Weather King objects to this interrogatory as beyond the scope of discovery in that it is not relevant to any asserted claim or defense and not proportional to the needs of the case.

**Interrogatory No. 22**

Did Scott Berryman agree to a deal to buy out material at the Las Vegas Plant? If so, did this take place and was money exchanged for said product?

**RESPONSE:** Weather King responds that it mitigated its damages by selling materials at the Las Vegas, NM plant to ABCO. Scott Berryman was not a party to the agreement.

**Interrogatory No. 23**

Did Scott Berryman agree to sell out the Western Operations to ABCO?

**RESPONSE:** No.

**Interrogatory No. 24**

Did Scott Berryman make any negative comments to any Plant Manufacturers that are currently now with ABCO?

**RESPONSE:** Weather King objects to this interrogatory as beyond the scope of discovery in that it is not relevant to any asserted claim or defense and not proportional to the needs of the case, and that the term "negative comments" is vague and ambiguous.

**Interrogatory No. 25**

Did Scott Berryman take Jesse Maupin with him on his plane out west to discuss purchase of materials from the plants?

**RESPONSE:** Yes.

**Interrogatory No. 26**

Did Scott Berryman tell one or more people now affiliated with ABCO that they (ABCO) would be out of business in 6 months?

**RESPONSE:** Weather King objects to this interrogatory as beyond the scope of discovery in that it is not relevant to any asserted claim or defense and not proportional to the needs of the case. Subject to and without waiving this objection, Weather King responds that Mr. Berryman did not.

**Interrogatory No. 27**

Were any employees accused of calling in to the Department of Labor? Whom?

**RESPONSE:** Weather King objects to this interrogatory as beyond the scope of discovery in that it is not relevant to any asserted claim or defense and not proportional to the needs of the case.

**Interrogatory No. 28**

Were any employees accused of calling in to the Department of Labor retaliated against for what Weather King thought to be a call in on them?

**RESPONSE:** Weather King objects to this interrogatory as beyond the scope of discovery in that it is not relevant to any asserted claim or defense and not proportional to the needs of the case. Further, this interrogatory is vague and confusing.

**Interrogatory No. 29**

Were any employees threatened with the possibility of termination if they didn't receive the vaccine? Provide time, date, and details of this talk and which employees were involved.

**RESPONSE:** Weather King objects to this interrogatory as beyond the scope of discovery in that it is not relevant to any asserted claim or defense and not proportional to the needs of the case.

**Interrogatory No. 30**

Did Weather King (Consolidated Industries) receive monies related to a PPP loan from the government?

**RESPONSE:** Weather King objects to this interrogatory as beyond the scope of discovery in that it is not relevant to any asserted claim or defense and not proportional to the needs of the case.

**Interrogatory No. 31**

Did Weather King (Consolidated Industries) withhold pay from one or more employees who had to take off work for being out with Covid?

**RESPONSE:** Weather King objects to this interrogatory as beyond the scope of discovery in that it is not relevant to any asserted claim or defense and not proportional to the needs of the case.

**Interrogatory No. 32**

Were all employees treated the same with regards to pay during Covid absences, or were some employees paid while they were off and some were not?

**RESPONSE:** Weather King objects to this interrogatory as beyond the scope of discovery in that it is not relevant to any asserted claim or defense and not proportional to the needs of the case.

**Interrogatory No. 33**

Did any of Weather King employees (Mike Jackson or Jay Coker) make any derogatory statements via text or email to any current Weather King dealers about Barry Harrell?

**RESPONSE:** Weather King objects to this interrogatory as beyond the scope of discovery in that it is not relevant to any asserted claim or defense and not proportional to the needs of the case.

**Interrogatory No. 34**

Did any of Weather King employees (Mike Jackson or Jay Coker) make any derogatory statements via text or email to any current Weather King dealers about Jesse Maupin?

**RESPONSE:** Weather King objects to this interrogatory as beyond the scope of discovery in that it is not relevant to any asserted claim or defense and not proportional to the needs of the case.

**Interrogatory No. 35**

Did Tim Boyd make any negative comments to any dealers or drivers in the Arizona market about ABCO?

**RESPONSE:** Weather King objects to this interrogatory as beyond the scope of discovery in that it is not relevant to any asserted claim or defense and not proportional to the needs of the case.

**Interrogatory No. 36**

Did Tim Boyd tell any now ABCO dealers or plant facilities that ABCO would not be around very long because they didn't have the financial stability to sustain growth?

**RESPONSE:** Weather King objects to this interrogatory as beyond the scope of discovery in that it is not relevant to any asserted claim or defense and not proportional to the needs of the case.

BUTLER SNOW LLP

*/s/ John H. Dollarhide*
David L. Johnson, BPR #18732
John H. Dollarhide, BPR #40041
Y. Larry Cheng, BPR #36707
150 3rd Avenue South, Suite 1600
Nashville, TN 37201
Telephone: (615) 651-6700
Fax: (615) 651-6701
david.johnson@butlersnow.com
john.dollarhide@butlersnow.com
larry.cheng@butlersnow.com

Daniel W. Van Horn, BPR #18940
6075 Poplar Ave., Suite 500
Memphis, TN 38119
Telephone: (901) 680-7200
Fax: (901) 680-7201
Danny.VanHorn@butlersnow.com
*Attorneys for Plaintiff*

- 11 -

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 27th, 2023, I electronically served a true and correct copy of the foregoing document to Defendants' counsel via email.

                                                    */s/ John H. Dollarhide*

68846608.v1