## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

| | |
|---|---|
| CONSOLIDATED INDUSTRIES, LLC<br>d/b/a WEATHER KING PORTABLE<br>BUILDINGS, | )<br>)<br>)<br>) |
| **Plaintiff,** | )<br>)   **Civil Action No. 1:22-cv-01230-STA-jay** |
| v. | )<br>) |
| JESSE A. MAUPIN, BARRY D.<br>HARRELL, ADRIAN S. HARROD,<br>LOGAN C. FEAGIN, STEPHANIE L.<br>GILLESPIE, RYAN E. BROWN,<br>DANIEL J. HERSHBERGER, BRIAN L.<br>LASSEN, ALEYNA LASSEN, and<br>AMERICAN BARN CO., LLC, | )   **Chief Judge S. Thomas Anderson**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| **Defendants.** | )<br>) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
SUMMARY JUDGMENT AND
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Defendants Jesse A. Maupin, Barry D. Harrell, Adrian S. Harrod, Logan C. Feagin,

Stephanie L Gillespie, Ryan E. Brown, Daniel J. Hershberger, Brian L. Lassen, Aleyna Lassen and

American Barn Co., LLC (collectively "American Barn") by their undersigned counsel, pursuant

to Federal Rule of Civil Procedure 56, Local Rule 56.1, Federal Rule of Civil Procedure 12(b)(1),

and Local Rule 12.1, hereby file this Memorandum of Law in Support of Their Motion for

Summary Judgment and Motion to Dismiss against Plaintiff Consolidated Industries, LLC, d/b/a

Weather King Portable Buildings ("Weather King").

For the reasons set forth herein, American Barn's Motion for Summary Judgment should

be granted dismissing Counts I and II of Weather King's First Amended Complaint, the other

counts should be dismissed for a lack of subject matter jurisdiction, thus disposing of this entire case.

## INTRODUCTION

American Barn is entitled to summary judgment of Counts I and II of Weather King's First Amended Complaint because Weather King has not asserted misappropriation of any legally-cognizable trade secrets.  It further is entitled to dismissal of the remaining counts and the entire case for lack of subject matter jurisdiction.

Weather King's Counts I and II assert federal (Defend Trade Secret Act or "DTSA") and state law misappropriation of trade secrets.  In a recent interrogatory response, Weather King identified the following as its purported trade secrets:

**Interrogatory No. 1**

Define with specificity just what constitutes Weather King's alleged trade secrets.

**RESPONSE:**

Weather King objects to this interrogatory as vague and ambiguous. Weather King further objects to this interrogatory as beyond the scope of discovery to the extent that it seeks disclosure of all of Weather King's trade secrets, not just the ones at issue or even potentially at issue in this action.  Subject to and without waiving this objection, Weather King responds that it considers its trade secrets to be all information it owns that meets the definition of T.C.A. §39-14-138(a)(4) or 18 U.S.C. §1839(3).  As it pertains to the specific trade secrets that Weather King presently is aware were misappropriated in this case, Weather King identifies the following information: inventory counts by location; dealer contact information organized by drivers that service those locations; vendor information and pricing; cost estimates; financial information including profit and loss statements and balance sheets; sales lot lease information including contact information, locations, and rent amounts; and engineering drawings.  Weather King notes that discovery is in process, including Weather King's discovery of other trade secrets that Defendants may have misappropriated.  This response will be supplemented as necessary.

Exhibit A.

70707144;4

As explained below, none of these alleged trade secrets are actually legally-recognized trade secrets, and the court should grant summary judgment dismissing Counts I and II. Moreover, if Count I, the federal Defend Trade Secrets Act count, is dismissed, none of the remaining Counts provide this Court with subject matter jurisdiction and thus the remaining claims should be dismissed as well, disposing of the entire case.

## PROCEDURAL BACKGROUND

Weather King filed a First Amended Complaint on January 10, 2023, that included the following counts:

1.      Misappropriation of Trade Secrets Under 18 U.S.C. §1836 (Against Defendants Maupin and American Barn);

2.      Misappropriation of Trade Secrets Under Tenn. Code §47-25-1704 (Against Defendants Maupin and American Barn);

3.      Breach of Duty of Loyalty (Against the Individual Defendants);

4.      Interference with Business Relationships (Against All Defendants);

5.      Defamation (Against Defendants Maupin, Brian Lassen and American Barn);

6.      Conversion (Against All Defendants);

7.      Unjust Enrichment (Against All Defendants);

8.      Civil Conspiracy (Against All Defendants); and

9.      Aiding and Abetting (Against All Defendants).

D.I. 26.

The only claim providing this Court with subject matter jurisdiction is Count I; the remaining Counts are state law claims relying on the Court's supplemental jurisdiction.

The parties have engaged in discovery. The Court set a dispositive motion deadline of January 12, 2024 (D.I. 63), but American Barn brings this motion now because it is ripe for

- 3 -

determination and will serve to conserve the parties' and the Court's resources, as if granted, it will result in dismissal of the entire case.

## FACTUAL BACKGROUND

In June 2022, Jesse Maupin and Barry Harrell left the employment of Weather King to start their own company, American Barn.  Exhibit B, Declaration of Jess Maupin, ⁋⁋2, 4; Exhibit C, Declaration of Barry Harrell ⁋⁋2,4.  Both companies' primary product is producing barns – manufacturing and assembling them.  Several other Weather King employees, including the other named Defendants, subsequently were let go by Weather King and joined American Barn.  Exhibit B, ⁋6, Exhibit C, ⁋6.  None of the departing persons misappropriated any Weather King trade secrets (of which Weather King has alleged none that are valid) or confidential information, or committed any other inappropriate actions. Exhibit B, ⁋7, Exhibit C, ⁋7.

## ARGUMENT

### I.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.Civ.P. 56(c); *Blake v. United States*, No. 212CV02913JPMDKV, 2014 WL 12530947, at *1 (W.D. Tenn. Apr. 4, 2014).  When the non-moving party has the burden of proof at trial, as is the case here, the moving party is not required to support its motion with affidavits or other similar material negating the opponent's claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Instead, it may merely point out that there is an absence of evidence to support the non-moving party's case.  *Id.* at 325; *Brown v. Wal-Mart Stores, Inc.*, 976 F. Supp. 729, 732 (W.D. Tenn. 1997); *Parks v. Fin. Fed. Sav. Bank*, 345 F. Supp. 2d 889, 893 (W.D. Tenn. 2004). Alternatively, the moving party may support its motion with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial.  *See Brown*, 976 F. Supp. at 732; *Parks*, 345 F. Supp. 2d at 893.

- 4 -

Under either method, if the nonmoving party fails to make a sufficient showing on an essential element of the case, the moving party is entitled to summary judgment. *Goodman v. J.P. Morgan Inv. Mgmt., Inc.*, 954 F.3d 852, 859 (6th Cir. 2020).

Moreover, "the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts" and "may not rely merely on allegations or denials in its own pleading." *Moore v. Philip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993); *United States v. One 1973 Chevrolet Impala*, 640 F. Supp. 2d 993, 997 (W.D. Tenn. 2009). Rather, the nonmoving party instead must come forward with specific facts showing a genuine issue for trial and affirmative evidence to support its claim. *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992). "The mere existence of a scintilla of evidence to support [the nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Livingston Care Ctr. v. U.S. Dep't of Health & Hum. Servs.*, 388 F.3d 168, 173 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986).

## II.   MISAPPROPRIATION OF TRADE SECRETS

The claim against American Barn and Maupin in Counts I and II of the First Amended Complaint is that they allegedly misappropriated Weather King's trade secrets. DI 26. If there are no trade secrets the counts fail.

A trade secret is misappropriated if it is either acquired via improper means, or if it is disclosed or used by someone without proper consent. *See* 18 U.S.C. § 1839(5). The use of someone else's idea is not automatically a violation of the law; rather, it must be something that meets the requirements of a "trade secret" and has been obtained through a breach of confidence.

- 5 -

*See Id.;* 18 U.S.C. § 1836.  *See also W. R. Grace & Co. v. Hargadine*, 392 F.2d 9, 14 (6th Cir. 1968) ("Breach of confidence is the essence of the basic definition of trade secret liability").

"[T]he elements for a misappropriation of trade secrets claim are: (1) the existence of a trade secret; (2) misappropriation of a trade secret by the defendant; and (3) resulting detriment to the plaintiff." *ASC Engineered Sols., LLC v. Island Indus., Inc.*, No. 220CV02284JPMCGC, 2021 WL 2583555, at *3 (W.D. Tenn. June 23, 2021) ("conduct[ing] a single analysis" of these elements where "[party] asserts claims under both the federal Defend Trade Secrets Act ("DTSA") and the Tennessee Uniform Trade Secrets Act (TUTSA)" because "[t]he respective requirements for establishing misappropriation under these statutes are largely the same"); *Sigma Corp. v. Island Indus., Inc.*, No. 222CV02436JPMCGC, 2023 WL 2290793, at *5 (W.D. Tenn. Feb. 28, 2023) (conducting analysis of same elements when faced with both DTSA and TUTSA claims because "the elements of a TUTSA claim are 'largely the same' as the elements of a DTSA claim").

Under the DTSA, a trade secret is defined as follows:

All forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if:

(A) the owner thereof has taken reasonable measures to keep such information secret; and

(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

*See* 18 U.S.C. § 1839(2). Under Tennessee law, "for information to be considered a trade secret: (1) the information must derive independent economic value from not being generally known, (2) others could obtain economic value from its disclosure or use, and (3) efforts have been made to

maintain its secrecy." *Williams-Sonoma Direct, Inc. v. Arhaus, LLC*, 109 F. Supp. 3d 1009, 1017 (W.D. Tenn. 2015) (citing Tenn.Code Ann. § 47–25–1702(4)). Information that is generally known or readily accessible to third parties cannot qualify for trade secret protection. *Id.* In a trade secret action, the plaintiff bears the burden of demonstrating both the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy. *See Id.*; *Sigma Corp.,* 2023 WL 2290793, at \*6.

Thus, the analysis of a claim under the TUTSA and DTSA is nearly identical. *See ASC*, 2021 WL 2583555, at \*3; *Sigma Corp.*, 2023 WL 2290793, at \*5, and Weather King's alleged trade secrets fail on both counts – Weather King did not take reasonable measures to protect them, and they are generally known and readily obtainable through proper means.

### III.   SUBJECT MATTER JURISDICTION

Subject matter jurisdiction is the requirement that a given court has power to hear the specific kind of claim that is brought to that court. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). It cannot be waived, and a challenge to subject matter jurisdiction may be brought at any time. *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 310 (6th Cir. 2018); *Ambrose v. Welch*, 729 F.2d 1084, 1085 (6th Cir. 1984). Here, all of the state law counts rely on supplemental jurisdiction according to 28 U.S.C. §1367, DI 26 at ¶12, stemming from Count I, the federal DTSA count.

### IV.   WEATHER KING HAS NO LEGALLY-COGNIZABLE TRADE SECRETS

There is no legitimate factual dispute over whether Weather King's alleged trade secrets constitute protectable trade secrets. They are not adequately protected and comprise publicly available and ascertainable information lacking independent economic value. American Barn discusses each alleged trade secret in detail below.

- 7 -

## A.   WEATHER KING HAS NOT ADEQUATELY PROTECTED ITS ALLEGED TRADE SECRETS

As set forth above, a trade secret is only eligible for protection under the DTSA or TUTSA if Weather King takes adequate measures to keep the information secret.  Here there is no legitimate factual dispute that Weather King does not.  Mr. Maupin and Mr. Harrell worked at Weather King for many years and have personal knowledge of the following undisputed facts going to Weather King's entire absence of reasonable precautions taken to protect its alleged trade secrets.  *See* Exhibit B, ⁋⁋ 8- 43; Exhibit C, ⁋⁋8- 43.  It is clear that Weather King took no precautions to protect its alleged trade secrets.

- the Weather King Tennessee headquarters has no restrictions on access; anyone can come and go as they please.  Exhibit B, ⁋8, Exhibit C, ⁋8;

- the alleged trade secret information is not kept in physically secure locations.  Exhibit B, ⁋9, Exhibit C, ⁋9;

- access to the alleged trade secret information is not restricted to only certain employees. Exhibit B, ⁋10, Exhibit C, ⁋10;

- the alleged trade secret information is not kept under lock and key.  Exhibit B, ⁋11, Exhibit C, ⁋11;

- no Weather King employees have confidentiality or non-disclosure obligations. Exhibit B, ⁋12, Exhibit C, ⁋12;

- there are no security levels on clearance to the alleged trade secrets.  Exhibit B, ⁋13, Exhibit C, ⁋13;

- the alleged trade secrets are not designated or marked as confidential.  Exhibit B, ⁋14, Exhibit C, ⁋14;

- no heightened protections are present to protect the alleged trade secrets.  Exhibit B, ⁋15, Exhibit C, ⁋15;

- access to the alleged trade secrets is not allowed only on a need-to-know basis.  Exhibit B, ⁋16, Exhibit C, ⁋16;

- access to the alleged trade secrets is not prohibited on personal devices.  Exhibit B, ⁋17, Exhibit C, ⁋17;

- no training is given to personnel regarding data security and confidentiality obligations. Exhibit B, ¶18, Exhibit C, ¶18;

- there are no audit or inspection rights for the alleged trade secrets. Exhibit B, ¶19, Exhibit C, ¶19;

- there are no facility security measures. Exhibit B, ¶20, Exhibit C, ¶8;20

- there are no obligations on employees regarding post-employment obligations to return the alleged trade secrets. Exhibit B, ¶21, Exhibit C, ¶21;

- employees are encouraged and allowed to store information on personal laptops and phones. Exhibit B, ¶22, Exhibit C, ¶22;

- there is not a limited number of individuals having access to the alleged trade secrets. Exhibit B, ¶23, Exhibit C, ¶23;

- the alleged trade secrets are not segregated from information that is allegedly not secret. Exhibit B, ¶24, Exhibit C, ¶24;

- Weather King employees are not informed that the alleged trade secrets are trade secrets or of a confidential or proprietary nature. Exhibit B, ¶25, Exhibit C, ¶25;

- there is no written trade secret policy addressing the identification, classification, protection, and valuation of the trade secrets. Exhibit B, ¶26, Exhibit C, ¶26;

- there are no oversight policies and procedures to prevent the inadvertent disclosure of trade secrets by employees in written publications, seminars, speaking engagements, trade shows, technical conferences, and other public forums. Exhibit B, ¶27, Exhibit C, ¶27;

- there are no barriers surrounding secure locations, entrance/exit limitations, alarmed or self-locking doors, security cameras, or restricted access areas. Exhibit B, ¶28, Exhibit C, ¶28;

- there are no employee IDs, visitor IDs, or visitor escort procedures. Exhibit B, ¶29, Exhibit C, ¶29;

- there is no access to the alleged trade secrets on a need-to-know basis only. Exhibit B, ¶30, Exhibit C, ¶30;

- there is no separation of components of trade secrets between or among departments and/or company personnel. Exhibit B, ¶31, Exhibit C, ¶31;

- there are no physical barriers to prevent viewing the alleged trade secrets and proprietary and confidential information. Exhibit B, ¶32, Exhibit C, ¶32;

70707144;4

– there are no written rules and regulations prohibiting employees, without express permission, from remaining in the Weather King headquarters after hours.  Exhibit B, ⁋33, Exhibit C, ⁋33;

– there are no rules and regulations requiring employees to stay at their original work stations.  Exhibit B, ⁋34, Exhibit C, ⁋34;

– there are no rules and regulations prohibiting unauthorized acquisition or possession of company property containing or relating to the alleged trade secrets.  Exhibit B, ⁋35, Exhibit C, ⁋35;

– there are no sign-out/sign-in procedures for access to and return of the alleged trade secrets.  Exhibit B, ⁋36, Exhibit C, ⁋36;

– there are no rules regarding reproduction of only a limited number of sensitive documents and procedures for collecting all copies after use.  Exhibit B, ⁋37, Exhibit C, ⁋37;

– there are no authorized codes or passwords for access for copying machines.  Exhibit B, ⁋38, Exhibit C, ⁋38;

– there are no policies and procedures for destruction of documents such as locked waste bins and on-site document destruction services.  Exhibit B, ⁋39, Exhibit C, ⁋39;

– there are no references and background checks for all managers, key employees, and persons who have regular access to the alleged trade secrets.  Exhibit B, ⁋40, Exhibit C, ⁋40;

– there is no Employee Handbook regarding trade secrets.  Exhibit B, ⁋41, Exhibit C, ⁋41;

– There is no Off-Boarding – Trade Secret Exit Interview that would:

  (a)  Identify all the trade secrets that the departing employee had access to during his or her employment and catalogue these trade secrets;

  (b)  Remind the employee of his or her continued confidentiality obligations;

  (c)  Collect all company devices and media from the departing employee;

  (d)  Obtain from the employee all access credentials (such as account  information, user names, and passcodes); and

  (e)  Require the departing employee to sign a trade secret exit interview certification; and

– the use of smartphone cameras is not prohibited but is encouraged at the work place.

Thus, because Weather King took no steps to protect its purported trade secrets, its claims under the TUTSA and the DTSA fail outright.

**B.   THE ALLEGED TRADE SECRETS ARE NOT PROTECTABLE TRADE SECRETS UNDER THE LAW**

Even if Weather King had taken any precautions to protect its purported trade secrets, which it did not, none of the alleged trade secrets qualify as actual trade secrets.

1. Inventory Counts by Location – At Weather King the inventory counts are no secret; every dealer knows their inventory on their sales lots and the lots of the other dealers. The dealers are required to compute their inventories each month and send them to the Weather King headquarters. Moreover, every person, and not a limited number of persons, in the Weather King headquarters has and uses the inventory counts to turn in requisitions to get inventory built for their dealers. Moreover, Mr. Maupin was allowed to and was encouraged to take pictures of the lot inventories each month for the past three years and to email them to himself, as he does not have a scanner. Exhibit B, ℙ 44; Exhibit C. ℙ44. Moreover, since those inventory counts change every month they have no independent economic value to Weather King.

2. Dealer Contact Information Organized By Drivers That Service The Location – The dealers contact information is on Weather King's website and is not a secret. *See* Weatherking.biz at "Find a Dealer" Exhibit D, printed on June 14, 2023. An organized list of dealers does not in any case constitute a trade secret, as it is merely an assembly of publicly available information that has been organized. Exhibit B, ℙ 45; Exhibit C. ℙ45.

3. Vendor Information and Pricing – Weather King's vendors advertise in "Shed Builder Monthly," which is a free publication, including their pricing. Moreover, anyone can call the vendors and ask for their pricing. Everyone in the business uses this information and is easily ascertainable. Exhibit B, ℙ 46; Exhibit C. ℙ46.

4. Cost estimates – The Weather King cost estimates are available for every Weather King employee to see and use to work with dealers on the possibilities of discounts and sales, and for that reason are shared with the dealers and not maintained secret or confidential. They are also shared with customers. Nor do they have any independent economic value to Weather King because they are consistently varying. Exhibit B, ℙ 47; Exhibit C. ℙ47.

5. Financial Information Including Profit & Loss Statements and Balance Sheets – Weather King's profit and loss statements are not askept trade secrets. For example, Mr. Maupin easily found them in a folder in an unoccupied cubicle at Weather King, showing that Weather King does not treat them as trade secrets. This also goes to the point of Weather King's lack of protecting this purported trade

- 11 -

secret.   On top of that P+L statements are backwards-looking and derive no independent economic value, as all they show is past performance of the company. Exhibit B, ⁋ 48; Exhibit C. ⁋ 48.

6.      Sales lot lease information including contact information, locations, and rent amounts –Sales lot lease information and lease amounts are not a trade secret at Weather King, as every lot that Weather King leases is reclaimed out of the dealer's commission each month, and this is shown on the dealers settle sheet each month, which all employees of Weather King have access to, and are not kept secret.  This information further derives no independent economic value to Weather King. Exhibit B, ⁋ 49; Exhibit C. ⁋49.

7.      Engineering drawings – Weather King's engineering drawings are not trade secrets. They are publicly available on such sites as www.floridabuilding.org/mb/mb_default.aspx, proceed as follows – select building type of "Storage Sheds" and manufacturer of "WEATHER KING – BONIFAY," select "Plan Tracking # 40372", select "PlanID 40372 Weather King Sheds plan 1RPER210076-cf1fdb4a.pdf." and are in the hands of hundreds of individuals, including dealers and customers.  Exhibit E, printed on June 14, 2023; Exhibit B, ⁋ 50; Exhibit C. ⁋50.  American Barn provides this as an illustrative example of a drawing being publicly available.  The drawings are freely distributed.

## V.     THIS CASE SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

If the Court finds that Weather King has no trade secrets and dismisses Counts I and II of the First Amended Complaint (or even just Count I), it should also dismiss the other remaining Counts, and thus the entire case, for lack of subject matter jurisdiction.

For the state law counts, jurisdiction was pled pursuant to 28 USC §1367(a), (DI 26 ⁋ 12), Supplemental Jurisdiction. Without a federal subject matter count to be tied to, this Court does not have subject matter jurisdiction over the state law claims, and they should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1).

## VI.    CONCLUSION

For all these reasons, Counts I and II should be dismissed, as there is no material dispute that no cognizable trade secrets exist.  At the very least, the Court should rule that certain of Weather King's alleged trade secrets are not actually trade secrets, to simplify this case going

- 12 -

70707144;4

forward and avoid unnecessary fees and costs.  Finally, if the Court dismisses Count I, it should dismiss the remainder of the case for a lack of subject matter jurisdiction, and thus dismiss the entire case.

Date: June 14, 2023

/s/  Thomas G. Pasternak
Thomas G. Pasternak
AKERMAN LLP
71 South Wacker Drive, 47th Floor
Chicago, IL 60606
Tel. 312.634.5700
thomas.pasternak@akerman.com

Attorneys for Defendants

JESSE A. MAUPIN, BARRY D. HARRELL, ADRIAN S. HARROD, LOGAN C. FEAGIN, STEPHANIE L. GILLESPIE, RYAN E. BROWN, DANIEL J. HERSHBERGER, BRIAN L. LASSEN, ALEYNA LASSEN, and AMERICAN BARN CO., LLC

- 13 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 14, 2023 I filed **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** with the Court using the ECF system, which will provide notice and a copy to counsel of record:

> David L. Johnson, #18732
> John H. Dollarhide, #40041
> Y. Larry Cheng, #36707
> BUTLER SNOW LLP
> 150 3rd Avenue South, Suite 1600
> Nashville, TN 37201
> Telephone: (615) 651-6700
> Fax: (615) 651-6701
> david.johnson@butlersnow.com
> john.dollarhide@butlersnow.com
> larry.cheng@butlersnow.com
>
> Daniel W. Van Horn, #18940
> BUTLER SNOW LLP
> 6075 Poplar Ave., Suite 500
> Memphis, TN 38119
> Telephone: (901) 680-7200
> Fax: (901) 680-7201
> Danny.VanHorn@butlersnow.com

> /s/ *Thomas G. Pasternak*
> Thomas G. Pasternak

70707144;4