IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| CONSOLIDATED INDUSTRIES, LLC d/b/a WEATHER KING PORTABLE BUILDINGS,<br><br>  Plaintiff,<br><br>v.<br><br>JESSE A. MAUPIN, *et al.*,<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) No. 1:22-cv-01230-STA-jay<br>)<br>)<br>)<br>)<br>) |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL
SUPPLEMENTATION OF DISCOVERY RESPONSES**

Plaintiff submits this reply in further support of its motion to compel (Doc. 75).

**PRELIMINARY STATEMENT**

Throughout their response to Plaintiff Weather King's motion to compel, Defendants claim for the first time that the cell phones they used when they worked for Weather King were supposedly owned by Weather King and that they returned the phones to Weather King. According to Defendants: "Defendants have informed Plaintiff on numerous occasions that the cell phones and laptops Defendants used when working at Weather King were owned by Weather King and therefore returned to Weather King upon each Defendants discharge." Doc. 83 at 10. This statement is false in multiple respects.

Weather King, in fact, did not own a single one of the cell phones that the Individual Defendants used in the months leading up to their departure. Ex. 1, Coker Decl., ¶ 4. To the contrary, each of the Defendants used their own cell phones and were on their own plans. *Id.*, ¶ 5. This is corroborated by the testimony of a former Weather King employee whom Defendants lured to join ABCO, then later terminated. Ex. 2, Sykes Decl., ¶ 5. Defendants' assertion also cannot

1

be reconciled with their own discovery responses. In response to Interrogatory No. 8, Mr. Maupin concedes photographing Weather King's proprietary documents (to which he did not have access) using "***my phone***." Doc. 75-2 (emphasis added).

Defendants' assertion that their cell phones were "returned to Weather King," Doc. 83 at 10, is also absurd. Ex. 1, Coker Decl., ¶ 7. It is supported by no testimony. Defendants also cannot explain how Defendant Ryan Brown has produced a number of emails in discovery (*see, e.g.,* Doc. 75-17) if he and the other Defendants "returned" all devices.

Defendants' claim that they "informed Plaintiff [of this] on numerous occasions," Doc. 83 at 10, is also untrue. Although Defendants' counsel advised that the computers Defendants used while working for Weather King are retained by Weather King, Defendants ***never*** suggested in any form or fashion until now that "the cell phones . . . Defendants used when working at Weather King were owned by Weather King and therefore returned to Weather King upon each Defendants discharge." Doc. 83 at 10. Indeed, Defendants' counsel never conveyed this outlandish assertion in any of the following:

- In defense counsel's April 14, 2023, letter after Weather King asked for explanations as to why responsive communications were not produced. *See* Doc.75-19, 4/14/23 Letter; Ex. 3, 3/24/23 letter.

- In defense counsel's May 5, 2023, letter after Weather King pressed Defendants further to "reconcile Mr. Maupin's claim that he has no documents responsive to these requests with the fact that BPS, LLC/Troy Buttrey and James Kowalzyk have produced correspondence with Mr. Maupin." Doc. 75-12, 5/5/23 Letter; Doc. 75-18, 4/19/23 Letter, p. 2. If fact, Defendants stated: "***We are not required to give you an explanation of the facts as they are***." Doc. 75-12, 5/5/23 Letter, p. 2 (emphasis added).

- In any of counsel's meet and confer phone conferences.[1]

- During the May 22, 2023, hearing when Magistrate Judge York pressed defense counsel on why Defendants have not produced responsive communications, to which defense

---

[1] Even after Weather King's counsel advised Defendants' counsel during a phone conference that this case may be headed toward a spoliation of evidence motion, Defendants' counsel never suggested that the cell phones were owned by Weather King and were returned to Weather King.

counsel responded, tellingly, that his clients were claiming that responsive documents *currently* do not exist; not that they *never* existed.

- In their June 6, 2023, response to Weather King's motion to compel forensic examination. Doc. 81.

Surely if Weather King did in fact own the cell phones, and those devices were returned upon Defendants' departures, this would have been the focal point of Defendants' arguments as to why they have not produced responsive communications.[2] Instead, Defendants suddenly chose to fabricate this assertion out of thin air with the apparent intent to justify their failure to comply with their discovery obligations. Due to the gravity of this false representation to the Court, an evidentiary hearing may be in order.[3]

## DISCOVERY ITEMS AT ISSUE

**A.  Identification of Phone Numbers, Email Accounts, and Other Information**

Weather King's request for the identification of the Individual Defendants' cell phone numbers, email accounts, and other accounts is discoverable and necessary for Weather King to investigate Defendants' nefarious conduct. Claiming that the request is overbroad, Defendants inquire: "[I]f Maupin used his friends' or family members' cell phone or home phones, would that phone information be required under this request?" Doc. 83 at 6. Neither Mr. Maupin, nor the other Defendants, however, claim that they used any third-party's phone during the pertinent time period. Even if they did, this does not justify their refusal to provide *any* responsive information.

In Section A and other portions of their response, Defendants suggest that, so long as they did not use Weather King's confidential information, there was nothing wrong with them

---

[2] Logic also dictates that Weather King would not have been wasting time and expenses pressing this issue over the last several months if what Defendants have represented were true.

[3] In the meantime, Weather King has served Defendants with a second request for production for records related to their purchase of cell phones. If Defendants' assertion is true, they presumably should come forward with records demonstrating that they all purchased new cell phones in June 2022. The Court may wish to order Defendants to expedite their response to that request.

"encouraging each other, and other Weather King business relationships to join a competing business enterprise." Doc. 83 at 7.[4] This is a gross misunderstanding of the law. The law is clear that, regardless of whether he or she uses confidential information and regardless of whether he or she is subject to a noncompete agreement, an employee is bound by a duty of loyalty requiring the employee to "act solely for the benefit of the employer in matters within the scope of his employment" and "not engage in conduct that is adverse to the employer's interests." *Efird v. Clinic of Plastic & Reconstructive Surgery, P.A.*, 147 S.W.3d 208, 219 (Tenn. Ct. App. 2003). Weather King's trade secrets claims are merely two of several causes of action it has asserted.

Finally, referring to Mr. Maupin emailing himself photographs of Weather King's proprietary information, Defendants argue: "Notably, Plaintiff does not (and cannot) allege that Maupin, using a personal device (phone, tablet, camera, etc.) took these photographs and emailed them to a personal account." Doc. 83 at 7. Weather King, however, absolutely alleges that Mr. Maupin took the photos from his personal device—his personal cell phone. *See* Ex. 4, Rapolevich Decl., (revealing that the at-issue photos were taken with an iPhone X). He took the photos from his cell phone and emailed the photos to an email account that was accessible from his cell phone. This is not in dispute. In response to Interrogatory No. 8, Mr. Maupin states: "I took a picture on *my phone* and e mailed it to myself." Doc. 75-2 (emphasis added).

B.     **Requests for Phone Records**

Citing *Excel Fortress Ltd. v. Wilhelm*, No. CV-17-04297-PHX-DWL, 2018 WL 6067255, at *5 (D. Ariz. Nov. 20, 2018), Defendants argue that they should not be required to produce their phone records because there is "no connection to the claims asserted in the complaint." Doc. 83

---

[4] Thus, they argue, in the alternative, that "this court limit the request as to all Defendants to only those devices and accounts to which Plaintiff has objective support were used by Defendants to conduct the alleged misappropriation and which are in Defendants control and/or possession." Doc. 83 at 8.

at 8. In its initial brief, however, Weather King demonstrated how its request for the phone records is connected to their claims. *See* Doc. 75-1 at 5-6.

Further, unlike the requesting party in *Excel*, Weather King has a substantial need for the records given Defendants' failure to produce responsive communications and their evasive interrogatory responses. As set forth above, Defendants' claim that "Plaintiff currently has access to the . . . mobile phones Defendants used while working at Weather King," Doc. 83 at 9, is false.

Defendants' assertion that "Defendants did state who they communicated with," Doc. 83 at 9, is rather amusing. *Compare, e.g.,* Doc. 75-13, Maupin Supp. Resp. to Ig. No. 5 (stating that "he had conversations with various dealers and drivers" without identifying ***any*** of them). In fact, Defendants have not been forthright about their communications in their interrogatory responses. When asked to identify any communications with dealers (whether verbal or written) before departing Weather King, Defendant Logan Feagin represented under penalty of perjury: "None." Doc. 75-5, Feagin Resp. to Ig. No. 5. Weather King, however, has uncovered evidence that, on May 10, 2022—a few weeks before his departure from Weather King and while he still owed a duty of loyalty to Weather King—Mr. Feagin was texting with a Weather King dealer about joining Defendants' competing business enterprise. *See* Doc. 87-2, Stewart Decl. Mr. Feagin even told the dealer: "***Just keep between us for now until we are ready to pull the trigger***." *Id.,* ¶ 3.ii (emphasis added).

Defendant Barry Harrell claims that the only Weather King employees with whom he communicated about leaving Weather King were Mr. Feagin and Defendant Adrian Harrod. Doc. 75-16, Harrell Supp. Resp. to Ig. No. 4. Yet, his interrogatory response is explicitly refuted by Mitch Sykes—a former Weather King employee whom Mr. Harrell unlawfully solicited to join

5

Defendants' competing business enterprise while they were both Weather King employees. Ex. 2, Sykes Decl., ¶¶ 2-4.

In short, Defendants' discovery responses cannot be trusted. That is yet another reason why Weather King is entitled to review their phone records.

Finally, the Court should reject Defendants' alternative request that the request for production be limited "to only those devices and accounts to which Plaintiff has objective support were used by Defendants to conduct the alleged misappropriation and which are in Defendants [sic] control and/or possession." Doc. 83 at 9-10. Again, Defendants are fixated on Weather King's trade secrets claims. Weather King's request for phone records is pertinent to other claims—and particularly its breach of duty of loyalty and tortious interference claims.

## C.   Identification of Devices

Defendants' refusal to identify the cell phones and other devices they used is predicated on their dubious assertion that Weather King owned all of the devices and that they were returned to Weather King. For the reasons stated above, the Court should compel these responses.

## D.   Identification of Pertinent Communications with Weather King's Business Relationships and Identification of Pertinent Relationships

Defendants' response completely ignores Weather King's challenges to **ABCO's responses to Interrogatory Nos. 6-10 and 12** and makes no attempt to justify its objections to those interrogatories. *See* Doc. 75-1 at 7-8. As such, ABCO has waived its objections and should be ordered to supplement its responses with full and complete responsive information. *See Scott v. Tenn.*, 878 F.2d 382, 1989 WL 72470, at *2 (6th Cir. July 3, 1989) ("[I]f a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion."); *In re Regions Morgan Keegan Sec., Derivative &*

6

*ERISA Litig.*, No. 2:08-CV-02830, 2017 WL 3537597, at *5 (W.D. Tenn. Aug. 17, 2017) (failure to respond to a motion to compel deemed a waiver).

As it relates to **Interrogatory No. 3 to Mr. Maupin**, Defendants respond that their counsel provided the remaining responsive information during the meet and confer process. Verbal statements by counsel, however, are not a substitute for formal discovery responses. To maintain a record, Weather King is entitled to written supplementation with a full response.

Mr. Maupin's vague and evasive response to **Interrogatory No. 4** does not come close to satisfying his discovery obligation. Defendants even state that "[t]his information may potentially be found in the phones and/or computer Maupin used while employed at Weather King," Doc. 83 at 11, bolstering the merits of Weather King's motion for a forensic examination of Mr. Maupin's personal devices. As established above, Mr. Maupin's cell phone has not been "in Plaintiff's custody," *id.*, as Defendants falsely claim.

As it relates to **Mr. Maupin's response to Interrogatory No. 5,** it is not "reasonable to assume," *id.*, as Defendants suggest, that a 45-year-old man cannot remember the identity of a single Weather King dealer, driver, customer, lender, landlord, rental company, or other business partner with whom he spoke about his plans to leave Weather King or a single detail about the substance of any of those communications. The pertinent events did not take place many years ago. They transpired *last year,* and the interrogatories were propounded in January 2023.

Similarly, Defendants claim that **Defendant Hershberger's responses to Interrogatory Nos. 4 and 5** are answered "to the best of his ability," Doc. 83 at 11, lacks merit on its face. Would Defendants lead the Court to believe that a 38-year-old man cannot recall a single one of the "builders and drivers" with whom he spoke or a single detail of the conversations which took place only a few months before the interrogatories were propounded? The Court should compel him to

provide full and complete responses and also compel full and complete responses to **Interrogatory No. 4 propounded to Defendant Feagin**, **Interrogator Nos. 3-5 propounded to Defendant Harrod,** and **Interrogatory Nos. 3-4 propounded to Defendant Gillespie**.

With respect to the **requests for production propounded to Mr. Hershberger**, he now claims for the first time that he does not possess any responsive documents. *See* Doc. 83 at 12. He also falsely claims that he returned his phone and laptop to Weather King "on the date Hershberger was discharged."[5] *Id.* Notably, Mr. Hershberger does not make that claim under oath or penalty of perjury.

Under Rule 37(a)(4), "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Defendants' responses to the discovery at issue in Section D are just that—evasive and incomplete responses. The Court should treat these "responses" as a failure to respond and order full and complete supplementation.

**E.  Information Relating to Funding Sources and Potential Funding Sources**

The gist of Defendants' response to the items at issue in Section E of Weather King's brief is that they are only required to respond if Weather King has proof of wrongdoing.[6] That is not the standard of discoverability. Indeed, the entire point of discovery is to allow a party to develop evidence to support its claims. Moreover, Defendants make no attempt to reconcile ABCO's lack of production of loan agreements with a document showing several notes payable.

---

[5] Curiously, Defendants now claim that Weather King discharged them and that they did not quit in order to pursue their competing business enterprise. The proof will show that Weather King fired Mr. Maupin after learning of his deceit and that the remaining Defendants resigned shortly thereafter.

[6] According to Defendants, Weather King's Complaint "does not allege that any sensitive information was sent to Maupin's personal email address." Doc. 83 at 12. What difference does that make? He used his phone to take a picture of Weather King's confidential financial statements to which he did not have access. Weather King is entitled to discover what he did with that information.

### F. Compensation Information

Defendants' proposal to limit disclosure of compensation information to only ABCO paystubs since inception is inadequate. This does not address whether all Defendants were paid only by ABCO and not some other entity, whether they were paid by a competing enterprise prior to ABCO's inception, or whether any of them received compensation not displayed on a paystub (*e.g.*, a distribution). The Court should compel complete responses to these requests which are directly relevant to Plaintiff's damages calculations.

### G. Information Relating to Appointments, Etc.

Defendants feign to be confused by the term "activities" even though the request plainly refers to "business activities in the Portable Buildings Industry." Doc. 75-3, Harrell Resp. to RFP No. 30. Although Defendants claim that "this *could* encompass . . . personal activities," Doc. 83 at 14 (emphasis added), they do not claim that any responsive documents *actually* include references to personal activities. Even if they did, a protective order is in place.

### H. Pertinent Recordings

Curiously, after Defendant Feagin steadfastly objected to producing recordings of Weather King personnel, Defendants now state "[u]pon rechecking, it has been determined that there are no responsive documents to this Request." Doc. 83 at 14. This is yet another reason warranting a forensic examination of Defendants' devices.

### I. Defendant Harrell's Interference with Florida Dealers

Weather King is not insisting on "granular detail" as claimed by Defendants (Doc. 83 at 14), but instead an adequate response. Mr. Harrell's vague and evasive response to Interrogatory No. 7 does not comply with his discovery obligations. *See* Fed. R. Civ. P. 37(a)(4).

9

**J.      Engineer Contact Information**

ABCO states that it is willing to provide the contact information for the engineers it identified, but it has now been nearly five months since Weather King served its discovery and ABCO *still* has not done so. Weather King should not be required to ask for this information multiple times throughout the meet and confer process and be forced to file a motion to compel in order to obtain basic information that should have been produced months ago.

**K.      Spreadsheet Referenced in Email**

Again, Defendants *still* have not produced a spreadsheet they agreed to produce weeks ago. Although Defendants claim that they are "currently searching for the spreadsheet," Doc. 83 at 15, they do not specify any efforts they have made to search for the document since Weather King's follow-up requested for it on April 19, 2023—two months ago. Again, Weather King should not be forced to ask several times and seek the Court's intervention to obtain a document that should have been produced months ago. *See State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC.,* No. 14-11700, 2017 WL 11379855, at *10 (E.D. Mich. Dec. 15, 2017) (finding that it was "troubling that [defendants] still have not" produced information they did not object to producing). This is also yet another reason warranting a forensic examination of Defendants' devices.

**L.      Recipients of Text Message Sent from Defendant Harrod**

Mr. Harrod's claim that he "does not have the text messages" at issue, Doc. 83 at 15, is an additional ground for a forensic search of his cell phone.

## CONCLUSION

For the foregoing reasons and those set forth in Weather King's initial brief, the Court should compel Defendants to supplement their discovery responses with full and complete responses.

10

        Respectfully submitted,

        BUTLER SNOW LLP

        */s/ David L. Johnson*
        David L. Johnson, BPR #18732
        John H. Dollarhide, BPR #40041
        150 3rd Avenue South, Suite 1600
        Nashville, TN 37201
        (615) 651-6700
        david.johnson@butlersnow.com
        john.dollarhide@butlersnow.com

        Daniel W. Van Horn, BPR #18940
        6075 Poplar Ave., Suite 500
        Memphis, TN 38119
        (901) 680-7200
        Danny.VanHorn@butlersnow.com

        *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2023, I filed the foregoing with the Court using the ECF system, which will provide notice and a copy to counsel of record:

Thomas G. Pasternak
AKERMAN LLP
71 South Wacker Drive, 47th Floor
Chicago, IL 60606
thomas.pasternak@akerman.com
Attorneys for Defendants

        */s/  David L. Johnson*
        David L. Johnson

80171006.v1