# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| CONSOLIDATED INDUSTRIES, LLC ) <br> d/b/a WEATHER KING PORTABLE ) <br> BUILDINGS, ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JESSE A. MAUPIN, BARRY D. ) <br> HARRELL, ADRIAN S. HARROD, ) <br> LOGAN C. FEAGIN, STEPHANIE L. ) <br> GILLESPIE, RYAN E. BROWN, DANIEL ) <br> J. HERSHBERGER, BRIAN L. LASSEN, ) <br> ALEYNA LASSEN, and AMERICAN ) <br> BARN CO., LLC, ) <br> ) <br>     Defendants. ) | Civil Action No. 1:22-cv-01230-STA-jay <br><br> Chief Judge S. Thomas Anderson |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS SUPPORTING MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1(b), Plaintiff Consolidated Industries, LLC, d/b/a Weather King Portable Buildings ("Weather King") submits the following objections and responses to Defendants' Statement of Material Facts filed in support of their motion for summary judgment (Doc. 88-9). Any statements that are undisputed are undisputed only for purposes of considering Defendants' motion.

**GENERAL OBJECTIONS**

Weather King asserts the following general objections to Defendants' statement of material facts:

1. Throughout their statement, Defendants reference "the alleged trade secret information" without defining that term. All statements that use that undefined term are vague and ambiguous.

2. Defendants' statement is supported by unsworn declarations of Defendants Jesse Maupin and Barry Harrell, filed as Doc. 88-3 and Doc. 88-5. Under 28 U.S.C. § 1746, an unsworn declaration is permitted if "in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form: (1) If executed without the United States: "'declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature).'" Neither of these Defendants' declarations is dated, and so the declarations are non-compliant.

## RESPONSES

1. The Weather King Tennessee headquarters has no restrictions on access; anyone can come and go as they please. Maupin Decl. 8; Harrell Decl., 8.

    **RESPONSE:** Disputed. Ex. 1 to Def.'s Resp., Coker Decl., ¶ 31.

2. At Weather King, the alleged trade secret information is not kept in physically secure locations. Maupin Decl. ¶9; Harrell Decl., ¶9.

    **RESPONSE:** Disputed. *Id.*, ¶¶ 31-36.

3. At Weather King, "Access to the alleged trade secret information is not restricted to only certain employees." Maupin Decl. ¶10; Harrell Decl., ¶10.

    **RESPONSE:** Disputed. *Id.*, ¶¶ 6, 9, 11, 13, 33-34.

4. At Weather King, "The alleged trade secret information is not kept under lock and key." Maupin Decl. ¶11; Harrell Decl., ¶11.

**RESPONSE:** Disputed. *Id.*, ¶¶ 31-35.

12.[1] At Weather King, Defendants had no confidentiality or non-disclosure obligations. Maupin Decl. ¶12; Harrell Decl., ¶12.

**RESPONSE:** Disputed. *Id.*, ¶ 38.

13. At Weather King, there are no security levels on clearance to the alleged trade secrets. Maupin Decl. ¶13; Harrell Decl., ¶13.

**RESPONSE:** Disputed. Coker Decl.. ¶¶ 6, 9, 11, 13, 33-34.

14. At Weather King, the alleged trade secrets are not designated as Confidential. Maupin Decl. ¶14; Harrell Decl., ¶14.

**RESPONSE:** Undisputed.

15. At Weather King, no heightened protections are present to protect the alleged trade secrets. Maupin ¶15; Harrell Decl., ¶15.

**RESPONSE:** Disputed. Coker Decl., ¶¶ 6, 9, 11, 13, 33-34.

16. At Weather King, access to the alleged trade secrets is not allowed only on a need-to-know basis. Maupin ¶16; Harrell Decl., ¶16.

---

[1] There are no Statement Nos. 5-11 in Defendants' Statement.

3

**RESPONSE:** Disputed. Coker Decl., ¶¶ 6, 9, 11, 13, 33-34.

17. At Weather King, access to the alleged trade secrets is not prohibited on personal devices. Maupin ¶17; Harrell Decl., ¶17.

**RESPONSE:** Disputed. Coker Decl., ¶ 33.

18. At Weather King, no training is given to personnel regarding data security and confidentiality obligations. Maupin ¶18; Harrell Decl., ¶18.

**RESPONSE:** Undisputed.

19. At Weather King, there are no audit or inspection rights for the alleged trade secrets. Maupin ¶19; Harrell Decl., ¶19.

**RESPONSE:** Objection. This statement is vague and ambiguous such that Weather King cannot form a response.

20. At Weather King, there are no facility security measures. Maupin ¶20 Harrell Decl., ¶20.

**RESPONSE:** Disputed. Coker Decl., ¶ 31.

21. At Weather King, there are no obligations on employees regarding postemployment obligations to return the alleged trade secrets. Maupin ¶21; Harrell Decl., ¶21.

**RESPONSE:** Undisputed that Weather King did not enter into employment contracts that required this. However, its former employees owed legal obligations under the Uniform Trade

4

Secrets Act and Defend Trade Secrets Act, and Weather King demanded that the Defendants return all Weather King confidential information and other property. *See* Doc. 1-7.

22. At Weather King, employees are encouraged and allowed to store information on personal laptops and phones. Maupin ¶22; Harrell Decl., ¶22.

**RESPONSE:** Disputed that employees are encouraged to do so, Coker Decl., ¶ 37; undisputed that information to which employees have authorized access is allowed to be transmitted via company email maintained on personal devices.

23. At Weather King, there is not a limited number of individuals having access to the alleged trade secrets. Maupin ¶23; Harrell Decl., ¶23.

**RESPONSE:** Disputed. Coker Decl., ¶¶ 6, 9, 11, 13, 33-34.

24. At Weather King, the alleged trade secrets are not segregated. Maupin ¶24; Harrell Decl., ¶4.

**RESPONSE:** Disputed. Coker Decl., ¶¶ 6, 9, 11, 13, 33-34.

25. At Weather King, the defendants were not informed that the alleged trade secrets were trade secrets. Maupin ¶25; Harrell Decl., ¶25.

**RESPONSE:** Objection. This statement is vague and ambiguous regarding what "informed" means, and improperly implies that Weather King should have instructed its employees on a legal conclusion. Subject to and without waiving this objection, Weather King

5

disputes that Defendants did not know that the documents and information at issue were not to be shared with a competitor.

26. At Weather King, there is no written trade secret policy addressing the identification, classification, protection, and valuation of the trade secrets. Maupin ¶26; Harrell Decl., ¶26.

**RESPONSE:** Undisputed that no formal written policy exists.

27. At Weather King, there are no oversight policies and procedures to prevent the inadvertent disclosure of trade secrets by employees in written publications, seminars, speaking engagements, trade shows, technical conferences, and other public forums. Maupin ¶27; Harrell Decl., ¶27.

**RESPONSE:** Undisputed that no formal written policy exists. Otherwise disputed.

28. At Weather King, there are no barriers surrounding secure locations, entrance/exit limitations, alarmed or self-locking doors, security cameras, or restricted access areas. Maupin ¶28; Harrell Decl. ¶28.

**RESPONSE:** Disputed. Coker Decl., ¶ 31.

29. At Weather King, there are no employee IDs, visitor IDs, or visitor escort procedures. Maupin ¶29; Harrell Decl., ¶29.

**RESPONSE:** Undisputed.

30.     At Weather King, there is no access to the alleged trade secrets on a need-to-know basis only. Maupin ¶30; Harrell Decl., ¶30.

**RESPONSE:** Disputed.  Coker Decl., ¶¶ 6, 9, 11, 13, 33-34.

31.     At Weather King, there is no separation of components of trade secrets between or among departments and/or company personnel. Maupin ¶31; Harrell Decl., ¶31.

**RESPONSE:** Disputed.  Coker Decl., ¶¶ 6, 9, 11, 13, 33-34.

32.     At Weather King, there are no physical barriers to prevent viewing the alleged trade secrets and proprietary and confidential information. Maupin ¶32; Harrell Decl., ¶32.

**RESPONSE:** Disputed.  Coker Decl., ¶¶ 31-35.

33.     At Weather King, there are no written rules and regulations prohibiting employees, without express permission, from remaining in the Weather King headquarters after hours. Maupin ¶33; Harrell Decl., ¶33.

**RESPONSE:** Undisputed.

34.     At Weather King, there are no rules and regulations requiring employees to stay at their original work stations. Maupin ¶34; Harrell Decl., ¶34.

**RESPONSE:** Undisputed.

35.     At Weather King, there are no rules and regulations prohibiting unauthorized acquisition or possession of company property containing or relating to the alleged trade secrets. Maupin ¶35; Harrell Decl., ¶35.

**RESPONSE:** Undisputed that no written rules exist.

36.     At Weather King, there are no sign-out/sign-in procedures for access to and return of the alleged trade secrets. Maupin ¶36; Harrell Decl., ¶36.

**RESPONSE:** Undisputed.

37.     At Weather King, there are no reproduction of only a limited number of sensitive documents and procedures for collecting all copies after use. Maupin ¶37; Harrell Decl., ¶37.

**RESPONSE:** Objection.  This statement is vague and ambiguous

38.     At Weather King, there are no authorized codes or passwords for access for copying machines. Maupin ¶38; Harrell Decl., ¶38.

**RESPONSE:** Undisputed.

39.     At Weather King, there are no policies and procedures for destruction of documents such as locked waste bins and on-site document destruction services. Maupin ¶39; Harrell Decl., ¶39.

**RESPONSE:** Undisputed that no written policies exist.  However, it is Weather King's policy and practice to shred confidential documents.  Coker Decl., ¶ 36.

40. At Weather King, there are no references and background checks for all managers, key employees, and persons who had regular access to the alleged trade secrets. Maupin ¶40; Harrell Decl., ¶40.

**RESPONSE:** Undisputed.

41. At Weather King, there is no Employee Handbook regarding trade secrets. Maupin Maupin ¶41; Harrell Decl., ¶41.

**RESPONSE:** Undisputed.

42. At Weather King, there is no Off-Boarding – Trade Secret Exit Interview that would:

   (a) Identify all the trade secrets that the departing employee had access to during his or her employment and catalogue these trade secrets;

   (b) Remind the employee of his or her continued confidentiality obligations;

   (c) Collect all company devices and media from the departing employee;

   (d) Obtain from the employee all access credentials (such as account information, user names, and passcodes); and

   (e) Require the departing employee to sign a trade secret exit interview certification.

   Maupin ¶42; Harrell Decl., ¶42.

   **RESPONSE:** Undisputed.

43. At Weather King, the use of smartphone cameras is not prohibited but is encouraged. Maupin ¶43; Harrell Decl., ¶43.

   **RESPONSE:** Disputed.  Coker Decl., ¶ 37.

44. At Weather King, the inventory counts were no big secret; every dealer knows their inventory on their sales lots and the lots of the other dealers. The dealers are required to compute their inventories each month and send them to the Weather King headquarters. Every person in the Weather King headquarters has and uses the inventory counts to turn in requisitions to get inventory built for their dealers. Moreover, Mr. Maupin was allowed to and was encouraged to take pictures of the lot inventories each month for the past three years and to email them to himself, as he does not have a scanner. Maupin ¶44; Harrell Decl., ¶44.

**RESPONSE:** Disputed. Coker Decl., ¶ 9.

45. At Weather King, the dealers contact information is on Weather King's website and is not a secret. See Exhibit A, Weatherking.biz at "Find a Dealer,", printed on June 14, 2023. An organized list of dealers does not in any case constitute a trade secret, as it is merely an assembly of publicly available information. Maupin ¶45; Harrell Decl., ¶45.

**RESPONSE:** The first sentence is undisputed. Weather King objects to the second sentence which is an argumentative legal assertion and not a statement of fact.

46. At Weather King, vendors advertise in "Shed Builder Monthly," which is a free publication, including their pricing. Moreover, anyone can call the vendors and ask for their pricing. Everyone in the business uses this information and is easily ascertainable. Exhibit B, ¶46; Exhibit C. ¶46. Maupin ¶46; Harrell Decl., ¶46.

**RESPONSE:** Disputed to the extent that it suggests that Weather King's pricing with the dealers is publicized in Shed Builder Monthly or otherwise publicly available. *See* Coker Decl., ¶ 26.

47. At Weather King, the Weather King cost estimates are available for every employee to see and use to work with dealers on the possibilities of discounts and sales, and for that reason are shared with the dealers and not maintained secret or confidential. Exhibit B, ¶47; Exhibit C. ¶47. Maupin ¶47; Harrell Decl., ¶47.

**RESPONSE:** Disputed. Coker Decl., ¶ 9.

48. At Weather King, financial Information Including Profit & Loss Statements and Balance Sheets are not kept trade secrets. For example, Mr. Maupin found them in a folder in an unoccupied cubicle, showing that Weather King does not treat them as trade secrets. Exhibit B, ¶48. Maupin ¶48; Harrell Decl., ¶48.

**RESPONSE:** Disputed. Coker Decl., ¶¶ 6-7.

49. At Weather King, sales lot lease information and lease amounts aren't a secret at Weather King as every lot that Weather King leases is reclaimed out of the dealer's commission each month, and this was shown on the dealers settle sheet each month, and was not kept secret. Exhibit B, ¶49; Exhibit C, ¶49. Maupin ¶49; Harrell Decl., ¶49.

**RESPONSE:** Disputed. Coker Decl., ¶¶ 11, 13.

50. At Weather King, Weather King's engineering drawings are not trade secrets. They are publicly available on www.floridabuilding.org/mb/mb_default.aspx, proceed as follows – select building type of "Storage Sheds" and manufacturer of "WEATHER KING – BONIFAY," select "Plan Tracking # 40372", select "PlanID 40372 Weather King Sheds plan 1RPER210076-cf1fdb4a.pdf, " Exhibit B. They are in the hands of hundreds of individuals, including dealers and customers. The drawings are freely distributed. Maupin ¶50; Harrell Decl., ¶50.

**RESPONSE:** Weather King objects to Defendants' statement that the engineering drawings "are in the hands of hundreds of individuals," because the statement is not supported by competent testimony supported by a foundation. Subject to this objection, the statement is disputed. Coker Decl., ¶¶ 21-23.

**PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS SUPPORTING ITS OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1(b), Plaintiff Consolidated Industries, LLC d/b/a Weather King Portable Buildings ("Weather King") submits the following statement of additional facts demonstrating that Defendant's motion for summary judgment (Doc. 88) should be denied.

1. None of the Defendants had authorized access to Weather King's financial statements, including its balance sheets and profit and loss statements. Coker Decl., ¶ 6.

**RESPONSE:**

2. The financial statements were maintained within QuickBooks. Only nine employees can access QuickBooks. The Defendants could never access QuickBooks. Within QuickBooks, only four employees have read access to the financial statements. Exports of the financial statements were only distributed to Weather King's owners. Coker Decl. ¶ 6.

**RESPONSE:**

3. The balance sheets and profit/loss statements photographed by Defendant Jesse Maupin and emailed to himself were taken from a sealed envelope with owner Tim Boyd's name on it from a cubicle he used on a weekly basis (and that was not used by Mr. Maupin). Weather King Controller, on a single occasion, placed the documents in the sealed envelope for Mr. Boyd to pick up the following day only because she had to leave the office early and knew that Mr. Boyd would be in the office the next morning. Coker Decl. ¶ 7.

**RESPONSE:**

4. Weather King maintains two types of inventory counts: finished buildings and raw materials. The compilation of these inventory numbers into documents is a critical component of Weather King's operation and contains significant information about exactly how Weather King conducts its materials purchasing, manufacturing, and distribution/sales operations. Mr. Maupin emailed himself a photograph of a finished building inventory count as of 2021 year-end, and raw materials inventory counts were found on Defendant Gillespie's hard drive, and she had no legitimate business reason to have those documents on her computer. Coker Decl. ¶¶ 9-10, 16.

**RESPONSE:**

5. Weather King distributes its finished buildings to local dealers who then sell the buildings to local customers. The buildings are placed on sales lots which are either owned by the dealers or leased from third parties by Weather King. Weather King selects sales lots in prime locations and negotiates the terms of those sales lots through its paid employees. The leases themselves are not stored on Weather King's server or any shared device, but rather are kept by the Controller in her office. The terms of the leases are not shared. The only term known outside the landlord-tenant relationship is the rent amount because that cost is passed on monthly to the

13

dealer and is deducted from the dealer's monthly commission. Any given dealer only knows the rent amount for his or her lot, not all other sales lot rent amounts. Coker Decl., ¶¶ 11-13.

**RESPONSE:**

6. Weather King has spent years creating and refining a pricing model they call a "cost estimate." This document has inputs from all phases of the manufacturing process for a total cost of each building produced, and then allows Weather King to adjust the retail price accordingly to achieve a desired profit margin given supply and demand concerns. Enormous time and expense goes into these cost estimates. While the information does change based on fluctuating raw materials prices, even older snapshots of the pricing model contains valuable detail on the cost of goods sold, retail price, and profit margin for each building. This information would allow a competitor to easily figure out how much it should cost to efficiently manufacture different types of portable buildings and then minimally undercut Weather King on pricing. Weather King does not share this information outside of the company, and protects it electronically by requiring computer users to have a login and password. Coker Decl. ¶¶ 14-15.

**RESPONSE:**

7. Defendant Stephanie Gillespie's hard drive contained an export of many, if not all, data components of Weather King's manufacturing software, NumberCruncher. There were around 100 pages of manufacturing data such as item numbers, type of building, part type, item description, price, and cost. Like the cost estimates, this data took years and enormous effort to compile, and was used on a daily basis to operate and monitor Weather King's building construction process. Having this data exported to just a few documents, which Ms. Gillespie was not authorized to do, allowed the Defendants to quickly replicate Weather King's software infrastructure. Coker Decl., ¶ 17.

**RESPONSE:**

8. Weather King also maintains a network of independent contractor drivers who service specific dealers. Weather King compiled this network information into one spreadsheet organized by dealer and driver for its western US distribution operations. This compiled information was not shared outside of Weather King. Coker Decl., ¶¶ 18-19.

**RESPONSE:**

9. Weather King is required to have engineering drawings for its buildings for state permitting requirements (but also to ensure correct construction parameters). It has spent tens of thousands of dollars in fees for engineers to create these drawings over the years. The building construction differs in different states because of local building codes. A building in Florida has different requirements than one in Colorado. The Western US States in which Weather King operates do not require public availability of the engineering drawings like Florida does. Weather King does not provide any dealer or customer with all of its engineering drawings. Coker Decl., ¶¶ 20-24.

**RESPONSE:**

10. Weather King also has confidential and proprietary negotiated raw materials pricing with its materials vendors. Weather King has spent years developing these relationships and negotiating preferred pricing. The terms of Weather King's materials purchases are not publicly available. While some materials vendors have public advertisement of prices, those are not the same prices that Weather King pays. Coker Decl., ¶¶ 25-26.

**RESPONSE:**

15

11. Weather King is based in Paris, Tennessee, has only been in business for 15 years and only had about 20 employees at its Paris office at the time of the Defendants' departure. Coker Decl., ¶¶ 27-28.

**RESPONSE:**

12. Weather King keeps its buildings locked after hour and has used security systems and surveillance systems. *Id.*, ¶ 31.

**RESPONSE:**

13. Weather King has implemented measures to restrict access to electronically stored information. *Id.*, ¶¶ 32-35.

**RESPONSE:**

14. Weather King has a practice of shredding confidential information that is printed. *Id.*, ¶ 36.

**RESPONSE:**

15. Defendant American Barn Co. was operational within the first two weeks of June 2022. *See* Ex. 2 to Plaintiff's Resp. to Mot. Summ. Judgment.

        Respectfully submitted,

        BUTLER SNOW LLP

        */s/ John Dollarhide*
        David L. Johnson, BPR #18732
        John H. Dollarhide, BPR #40041
        150 3rd Avenue South, Suite 1600
        Nashville, TN 37201
        (615) 651-6700
        david.johnson@butlersnow.com
        john.dollarhide@butlersnow.com

        Daniel W. Van Horn, BPR #18940
        6075 Poplar Ave., Suite 500

                                                Memphis, TN 38119
                                                (901) 680-7200
                                                Danny.VanHorn@butlersnow.com

                                                Attorneys for Plaintiff

### CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2023, I filed the foregoing Response with the Court using the ECF system, which will provide notice and a copy to counsel of record:

Thomas G. Pasternak
AKERMAN LLP
71 South Wacker Drive, 47th Floor
Chicago, IL 60606
thomas.pasternak@akerman.com
Attorneys for Defendants

                                                */s/  John Dollarhide*
                                                John Dollarhide

80932601.v1