IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| CONSOLIDATED INDUSTRIES, LLC d/b/a WEATHER KING PORTABLE BUILDINGS, <br><br> Plaintiff, <br><br> v. <br><br> JESSE A. MAUPIN, *et al.*, <br><br> Defendants. | ) ) ) ) ) ) ) No. 1:22-cv-01230-STA-jay ) ) ) ) ) |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS**

In response to Weather King's motion for sanctions, Defendants admit that they falsely represented to the Court that Weather King owned their cell phones and that they returned them to Weather King. Yet their response *still* does not explain why they have not produced responsive communications and other documents that they owed a duty to preserve and that have been proven to exist. Moreover, in the same brief in which Defendants apologize to the Court for misstating the facts, there are additional misrepresentations that must be brought to the Court's attention.

**I.    Sanctions are warranted due to Defendants' failure to explain why they have not produced responsive documents.**

A party that loses a motion to compel bears the burden of demonstrating that its discovery responses and objections were "substantially justified" as contemplated by Rule 37(a)(5)(A). *See O'dell v. Hope Network W. Michigan/Michigan Educ. Corp.* No. 20-CV-11192, 2022 WL 2194660, at *8 (E.D. Mich. June 17, 2022) ("The losing party has the burden of persuasion that an award of costs is not justified."); 8B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2288 (3d ed. 2020) ("Thus the burden of persuasion has since 1970 been on the

1

losing party to avoid assessment of expenses and fees rather than, as formerly, on the winning party to obtain such an award."). Defendants (whom Weather King anticipates will be the losing parties of its pending motion to compel) have not come remotely close to meeting this burden.

As set forth in detail in Weather King's prior briefing, Defendants have not produced documents that Weather King requested in discovery and that are proven to exist. *See* Doc. 73-1 at 5-6; Doc. 87 at 2-3. For instance, Defendants have not produced a single text message with each other or with Weather King's business relationship contacts, and yet Defendants have obtained such text messages from third-parties. *See, e.g.,* Doc. 73-6.

When Weather King pressed for an explanation for these discrepancies during the meet and confer process, Defendants (through counsel) responded: "We are not required to give you an explanation of the facts as they are." Doc. 73-11, 5/5/23 Letter, p. 2. When Magistrate Judge York inquired about this discrepancy during the May 22, 2023, hearing, Defendants' counsel coyly responded that "they have *no record* of any of the sought-after documentation or communication." Doc. 96, 6/30/23 Order at 6 (emphasis in original). In other words, Defendants refused to represent that the documents *never* existed.

In response to Weather King's motion to compel supplementation of their discovery responses, Defendants stated for the first time that "Defendants have informed Plaintiff on numerous occasions that the cell phones and laptops Defendants used when working at Weather King were *owned by Weather King* and therefore *returned to Weather King* upon each Defendants discharge." Doc. 83 at 10 (emphasis added). This was not an isolated representation. *See also id.* at 9 ("Plaintiff currently has access to the office phones and mobile phones Defendants used while working at Weather King during the requested time period."); *id.* at 11 ("This information may potentially be found in the phones and/or computer Maupin used while employed at Weather King,

2

but as stated above, Maupin no longer has control or possession of those devices. Rather, they are in Plaintiff's custody."); *id.* at 12 ("To the extent such correspondence exists, the correspondence would be found on the devices (phone and laptop) owned by Weather King and returned to Weather King on the date Hershberger was discharged.").

Weather King demonstrated that these representations are utterly false: Weather King did not own *any* of the Defendants' cell phones, nor did they "return" any such phones to Weather King.  *See* Doc. 90 at 1-3.

Faced with the inability to reconcile their false statements with the truth, Defendants now acknowledge that "Defendants made a mistake of fact," which they claim "was a result of a miscommunication[.]"  Doc. 99 at 2-3.  Absent from their brief is any explanation of *how* the "miscommunication" took place, which is particularly curious given that Defendants also falsely claimed that they "informed Plaintiff on numerous occasions" that the cell phones were supposedly returned to Weather King.  Doc. 83 at 10.

Even more conspicuously missing in Defendants' response is any explanation of what happened to the responsive communications that Weather King requested.  According to Defendants, "Plaintiff refuses to believe that . . . documents do not exist, despite multiple assertions to that affect by counsel."  Doc. 99 at 2.  Defendants, however, ignore that Weather King has proven that Defendants possessed responsive documents at one time.  *See, e.g.,* Doc. Doc. 73-6.  Particularly given that Weather King served Defendants with a June 13, 2022, litigation hold demand (Doc. 1-7), what happened to these documents?

As recently as last week, Weather King obtained information from a third-party that raises very serious questions about Defendants' failure to comply with their discovery obligations.  In written discovery, Weather King asked Defendant Jesse Maupin to produce "[a]ll correspondence

and other documents exchanged with any Portable Buildings Industry rental companies and/or rental companies being formed (including but not limited to employees and agents of those entities) between January 1, 2022, and July 1, 2022." Doc. 75-2, Maupin Resp. to RFP No. 12. Mr. Maupin responded: "***None***." *Id.* (emphasis added). This discovery request was served after Weather King explicitly demanded on June 13, 2022, that Mr. Maupin and the other Defendants preserve "[a]ll Communications exchanged with any current or former Weather King customers, drivers, vendors, rental companies, or other business partners." Doc. 1-7.

On July 13, 2023, one such rental company—Goode Holdings, LLC ("Goode")[1]—produced several pages of text messages with Mr. Maupin during that same time period. *See* Ex. 1. In fact, on June 14, 2023, Dustin Goode ***texted Mr. Maupin a copy of Weather King's June 13, 2022, litigation hold demand*** that Weather King had also sent to Goode. *Id.* at DLF Bates No. 000204-05. Mr. Maupin responded that same day: "***Yes we all got one*** I will call you shortly on it. It's a scare letter." *Id.* at 205 (emphasis added). Goode also produced numerous responsive text messages after the exchange about the litigation hold letter. *See, e.g., id.* at 205-212.

Thus, these text messages—none of which Mr. Maupin produced—establish that Mr. Maupin: (a) at least at some point possessed text messages with Goode responsive to Request for Production No. 12; (b) was well aware on July 14, 2022, that Weather King demanded that he preserve his text messages and other communications with Goode and others; and (c) failed to produce text messages that he was legally obligated to preserve and that existed both before and after he received Weather King's litigation hold letter.

Plainly, either Mr. Maupin has withheld responsive documents or he has engaged in unabashed spoliation of evidence. Defendants have not offered any explanation for this and many

---

[1] Prior to Defendants' departure, Goode did business with Weather King.

4

other discrepancies. After falsely claiming that they possess no responsive documents on the basis that Weather King supposedly has their cell phones, they've reverted back to offering no explanation at all. By failing to provide an explanation, Defendants have made no showing that their neglect to produce responsive documents was "substantially justified," Fed. R. Civ. P. 37(a)(5)(A), and therefore, sanctions are warranted.

## II.     Defendants, yet again, mislead the Court.

Shortly after acknowledging their misrepresentation to the Court that Weather King owned and possesses their cell phones, Defendants misrepresent to the Court that "FirstBank is the only entity that has loaned [ABCO] money and provided financial support." Doc. 99 at 5. In prior briefing, Weather King noted that Defendant American Barn Co., LLC's ("ABCO's") representations that FirstBank is the only entity that has provided any loans or financial support cannot be reconciled with ABCO's own financial statements produced in discovery. *See* Doc. 75-1 at 14-15. In the "Long-Term Liabilities" section of its balance sheet, ABCO lists notes payable in favor of Goode, BPS Rental Co., Jade Rentals, and EFA-Forklift. Doc. 75-15, p. 2. ABCO, however, did not identify any of those entities as providing lending or any other financial support. Doc. 75-14, ABCO Supp. Resp. to Ig. No. 3 & 4. Nor did it produce any responsive documents relating to any such financial arrangements. *See* Doc. 75-11, ABCO Resp. to RFP Nos. 6, 32.

According to Defendants: "The companies listed under Long Term Liabilities/Notes Payable on that document did not provide any sorts of loans, investments, or otherwise provide financial support to ABCO, and therefore, information relating to them is not responsive Weather King's Interrogatories." Doc. 99 at 5. Once again, this cannot be reconciled with what Weather King has obtained from third parties. For example, as part of its document production last week, Goode produced multiple documents referencing "Short-Term Note[s]," "loan[s]," and "Loan

5

Balance[s]"—all pertaining to funds advanced by Goode to ABCO—as well as "premium[s]" and "pre-paid premium[s]." *See* Ex. 2 (redacted).

Notably, Defendants made no attempt to explain why their balance sheet lists Goode and these other entities as having notes payable if they did not provide any loans or other financial support. In response to both Weather King's motion to compel and its motion for sanction, Defendants had a full and fair opportunity to explain why ABCO listed these entities on its balance sheet as having Notes Payable notwithstanding the fact that these entities supposedly somehow did not provide any loans or other financial support. In short, Defendants have not demonstrated that their failure to disclose and produce information relating to these financial arrangements was "substantially justified," Fed. R. Civ. P. 37(a)(5)(A), and in fact, Goode's records demonstrate that they are once again misleading Weather King and the Court in their discovery responses and Court filings.

### III. Defendants have not otherwise demonstrated that their delinquencies are substantially justified.

The Court should find that other excuses offered by Defendants in their response do not justify their failure to comply with their discovery obligations. Defendants, for instance, argue that Weather King served a voluminous number of discovery requests. Doc. 99 at 1.[2] They fail to acknowledge, however, that Weather King has sued *10* different Defendants and that the nature of this dispute is discovery-intensive. In any event, just because a party has been served with a considerable amount of discovery requests does not mean that it may pick and choose which requests to respond to or that it need only produce a few pages of documents.

---

[2] At the outset of written discovery, the parties conferred and agreed that, through subparts, they could exceed the limitation of interrogatories propounded set forth in Rule 33(a)(1).

6

Elsewhere in their response, Defendants attempt to set forth untimely arguments that they should have made earlier and refer to efforts to cooperate in discovery only *after* Weather King filed its motion for sanctions. For instance, Weather King has been complaining for months that ABCO would not provide contact information for certain engineers that it disclosed in response to an interrogatory and that Defendant Ryan Brown would not provide a spreadsheet that was an attachment to a copy of an email he produced in discovery. *See* Doc. 75-1 §§ J & K. Even after Weather King filed its motion to compel, Defendants did not provide this information (which should have taken mere minutes to provide). It was only after Weather King moved for sanctions that Defendants suddenly felt any urgency to comply with their discovery obligation.

According to Defendants, "both Defendant Brown and ABCO have provided the requested information thus making the issues moot." Doc. 99 at 5. The issue is not moot. Weather King should not have been forced to take the time and expense of, first, filing a motion to compel and, second, a motion for sanctions, before Defendants decided to produce information that should have been produced months ago.[3] *See Lethiot v. JB Hunt Shipping*, No. 3:14-CV-488-CRS, 2017 WL 3044762, at *11 (W.D. Ky. July 18, 2017) ("The Court agrees with [plaintiff] that [defendant's] response to the motion for sanctions is too little, too late."); *Halpern v. Atlas Van Lines Inc.*, No. 1:07-cv-2730, 2009 WL 484202, at *3 (N.D. Ohio Feb. 25, 2009) (finding that plaintiffs' "argument that this controversy is 'moot' because the discovery sought has already occurred is not relevant to the question of whether sanctions under Rule 37 are warranted").

Finally, Defendants lament that Weather King "refuses to accept" that they supposedly have responded to Weather King's discovery "to the best of their abilities." Doc. 99 at 6. Given

---

[3] Defendants also claim that "Plaintiff never actually requested engineer contact information, but only to *identify* the engineers[.]" Doc. 99 at 6. As Weather King pointed out to Defendants many weeks ago, the term "identify" is a defined term in Weather King's interrogatories that included providing contact information. *See* Doc. 75-18 at 3; Ex. 3.

7

Defendants' track record of making false and misleading statements, their track record of not being forthcoming of what happened to responsive documents that they have not produced, and their delinquency in providing basic information in discovery, it is very understandable to be skeptical of Defendants' claim to be unable to recollect basic information, such as persons with whom they spoke only a few months before Weather King propounded its discovery requests.

## CONCLUSION

For the foregoing reasons and those set forth in Weather King's initial brief, Weather King's motion for sanctions should be granted.

    Respectfully submitted,

    BUTLER SNOW LLP

    */s/ David L. Johnson*
    David L. Johnson, BPR #18732
    John H. Dollarhide, BPR #40041
    150 3rd Avenue South, Suite 1600
    Nashville, TN 37201
    (615) 651-6700
    david.johnson@butlersnow.com
    john.dollarhide@butlersnow.com

    Daniel W. Van Horn, BPR #18940
    6075 Poplar Ave., Suite 500
    Memphis, TN 38119
    (901) 680-7200
    Danny.VanHorn@butlersnow.com

    *Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2023, I filed the foregoing with the Court using the ECF system, which will provide notice and a copy to counsel of record:

Thomas G. Pasternak
AKERMAN LLP
71 South Wacker Drive, 47th Floor
Chicago, IL 60606
thomas.pasternak@akerman.com
Attorneys for Defendants

/s/  *David L. Johnson*
David L. Johnson

80853592.v1

9