IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| CONSOLIDATED INDUSTRIES, LLC d/b/a WEATHER KING PORTABLE BUILDINGS,<br><br>        Plaintiff,<br>v.<br><br>JESSE A. MAUPIN, BARRY D. HARRELL, ADRIAN S. HARROD, LOGAN C. FEAGIN, STEPHANIE L. GILLESPIE, RYAN E. BROWN, DANIEL J. HERSHBERGER, BRIAN L. LASSEN, ALEYNA LASSEN, and AMERICAN BARN CO., LLC,<br><br>        Defendants. | Civil Action No. 1:22-cv-01230-STA-jay<br><br>Chief Judge S. Thomas Anderson |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT AND
<u>MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION</u>**

      Weather King spends much time in its opposition brief making unfounded, false and unsubstantiated claims regarding Defendants' actions. These claims are irrelevant to this motion and Defendants will not address them at this point, while reserving the right to do so at the appropriate time, if necessary. These claims should be further ignored by the Court as Weather King posits them as a mere distraction and attempt to portray Defendants in a bad light. What is at issue in this motion is whether on the undisputed facts Weather King has adequately protected its alleged trade secrets and whether its alleged trade secrets are legally-cognizable trade secrets. The answer to both questions is "no."

72164644;2

## I. Weather King Has Not Adequately Protected Its Purported Trade Secrets

An examination of the measures Weather King alleges that it has taken to protect its alleged trade secrets shows that they are lacking and do not create an issue of material fact. Weather King's supposed measures are contrived and are nothing more than standard business practices, as opposed to being actual safeguards taken to protect trade secrets. *Weather Shield Mfg., Inc. v. Drost*, No. 17-CV-294-JDP, 2018 WL 3824150, at *3 (W.D. Wis. Aug. 10, 2018).

Addressing Weather King's supposed safeguards:

- Keeps its office locked and protected by a security alarm system: As with all its supposed measures, this is nothing more than a standard business practice. Moreover, the office is not locked during the day and anyone may freely enter and exit. Exhibit A, Supplemental Declaration of Barry Harrell, ¶ 51; Exhibit B, Supplemental Declaration of Jesse Maupin, ¶ 51.[1]

- Keeps its remote shops secured, including some with video surveillance: Weather King has not taken the position that any of its alleged trade secrets are kept in "remote shops," and it would not make sense that they are.

- Requires each employee to have a unique user identification and password to log in to his or her computer. The truth of the matter is that personnel sign occurs in the morning once and then the accessed computers are left unattended such that anyone can access them and that passwords are taped to the back of their computers or under keyboards. Ex. A, ¶¶ 52, 59; Ex. B, ¶¶ 52, 59. Moreover, this is just a standard business practice. *Weather Shield,* 2018 WL 3824150 at *3.

---

[1] The supplemental declarations of Mr. Harrell and Mr. Maupin filed herein correct the absence of dates on their initial declarations and provide additional facts.

- Isolated certain documents from others: Weather King does not state what documents are isolated from others or why this so-called isolation protects anything.

- Stores electronic data on a password-protected, firewall protected server: Weather King does not state which trade secrets are kept on this server and the truth of the matter is that due to heat-related issues, the door to the server room is kept open. Again, this is nothing but a standard business practice. Ex. A, ¶ 53, Ex. B, ¶ 53.

- Uses QuickBooks for its account software and restricts access to a limited number of employees: Weather King does not say why using QuickBooks protects anything nor what purported trade secret on stored on QuickBooks, which is used as a standard business practice and software.

- Gives access to the financial statements to only four employees: Weather King does not state which financial statements it is referring to, how this access is provided, or how those financial statements are protected.

- Physically protects the server: The server room is kept open. Ex. A, ¶ 53; Ex. B ¶ 53.

- Shreds confidential information: Weather King does not state which confidential information it shreds, or that there is any policy or procedure on shredding and whether or not that includes the purported trade secrets at issue.

- Does not keep its tax returns in the office or on its computer system: Weather King's tax returns are not an alleged trade secret here.

- Restricts remote access to the server: Weather King does not state which of its purported trade secrets are even kept on the system, and this is just another standard business protocol.

As can be seen, Weather King's contrived explanations of its purported protections are either irrelevant, are just standard business practices, do not explain at all why such purported precautions protect the alleged trade secrets at issue, and do not raise a material issue of fact. Defendants submit that this contrived evidence is so weak that Defendants are entitled to judgment as a matter of law, and that this is an extreme case where it can be determined as a matter of law that Weather King did not take "reasonable" precautions to protect the alleged trade secrets at issue. *Niemi v. HNK Spring Co.*, 543 F.3d 294, 301 (6th Cir. 2008). Courts have granted summary judgment in such situations. *See*, *e.g.*, *R.R. Plastics, Inc. v. F.E. Myers, Co.*, 92 Ohio App. 3d 789, 804-5, 637 N.E. 2d 332, 341-343 (Ohio App. 6 Dist. 1993) (affirming grant of summary judgment); *Fail-Safe, LLC v. A.O. Smith Corp.*, 674 F.3d 889, 892-93 (7th Cir. 2012) (upholding summary judgment against trade secret claimant).

Indeed, recognizing the absence of any legally sufficient protections, Weather King proclaims that it is "a small business operating from a small town," "only had 20 employees working from its headquarters," and has "only been in existence for about 15 years." But those purported facts do not excuse the absence of sufficient measures of protection by Weather King. Similarly, Weather King hopes to deflect from its insufficiencies by speculating as to what other, unidentified companies in Henry County, Tennessee, might to do protect their information, and what American Barn might do. Putting aside the utter lack of any foundation for these points, the only issue on this motion is what Weather King does to protective its purported trade secrets – not

what other unidentified companies might or might do or what American Barn might do (which has not even asserted as a claim in this case).

Weather King cites *Hickory Specialties, Inc. v. B&L Labs., Inc.*, 592 S.W.2d 583, 587 (Tenn. Ct. App. 1979) for the proposition that its safeguards are sufficient. DI 103 at 11-12. In *Hickory Specialties*, there were admonitions to employees that plant operations were not to be revealed to outsiders, along with "No Trespassing" and "No Admittance" signs at the gate and about the plant. *Id.* at 586. Weather King's contrived precautions fell far short of such safeguards.

Finally, Weather King has presented no evidence that the confidentiality or trade secret nature of any information is self-evident. DI 103.

## II.     The "Aggregations" Argument Is Too Late

For the first time, Weather King claims that at least some of its purported trade secrets are protectable because they are somehow compilations of information. DI 103 at 13-14. But, when it was asked to identify its trade secrets in discovery, Weather King simply stated as follows.

> Weather King objects to this interrogatory as vague and ambiguous. Weather King further objects to this interrogatory as beyond the scope of discovery to the extent that it seeks disclosure of all of Weather King's trade secrets, not just the ones at issue or even potentially at issue in this action. Subject to and without waiving this objection, Weather King responds that it considers its trade secrets to be all information it owns that meets the definition of T.C.A. §39-14-138(a)(4) or 18 U.S.C. §1839(3). As it pertains to the specific trade secrets that Weather King presently is aware were misappropriated in this case, Weather King identifies the following information: inventory counts by location; dealer contact information organized by drivers that service those locations; vendor information and pricing; cost estimates; financial information including profit and loss statements and balance sheets; sales lot lease information including contact information, locations, and rent amounts; and engineering drawings. Weather King notes that discovery is in process, including Weather King's discovery of other trade secrets that Defendants may have misappropriated. This response will be supplemented as necessary.

Weather King's moving target and habit of making things up as it goes along should not be countenanced, and Weather King must live with its discovery responses, which made no mention of "compilations."

Moreover, Weather King asserts, with no evidence whatsoever, that Defendants must have "stolen" information with "economic value" from them, pointing solely to the speed of American Barn's inception. DI 103 at 14-15. This argument fails for a lack of the basic foundation that Defendants misappropriated anything. The law does not prevent the creation of a new business in a timely manner.

### III. Weather King's Purported Trade Secrets Are Not Legally Cognizable

Weather King also fails to raise material factual disputes concerning the identification of legally cognizable trade secrets.

Addressing the purported trade secrets in order:

1. Inventory Counts by Location

Mr. Maupin and Mr. Harrell indeed do have personal knowledge of what dealers know. They continually talk to dealers on an ongoing basis, and know from those conversations that the dealers share information about what inventory is on their lots and the lots of other dealers. See Supplemental Declaration of Jesse Maupin, Exhibit A, ¶ 54; Supplemental Declaration of Barry Harrell, Exhibit B, ¶ 54. It is neither surprising nor "absurd" that the dealers share this information, that dealers care about the inventory of other dealers, and that this information is not a trade secret. Moreover, inventory counts have no value, as they change on a daily basis.

And Weather King does not contest that this information is shared freely among the employees of its business. It goes without saying that something cannot be a trade secret if there are no restrictions on its use or that it is passed around. Information which the employer makes

little or no effort to keep confidential clearly does not quality as a trade secret. *CentiMark Corp. v. Jacobsen*, No. CIV.A. 11-1137, 2011 WL 5977668, at *10 (W.D. Pa. Nov. 29, 2011) (citing *NOVA Chems., Inc. v. Sekisui Plastics Co.*, 579 F.3d 319, 327 (3d Cir.2009), quoting James Pooley, TRADE SECRETS § 4.04 (2009) ("the most important characteristic of a trade secret is that it is in fact secret.")).

2.   Organized Dealer/Driver Contact Information

Weather King's argument that its drivers' listing and contact information is protectable as a trade secret makes no sense. Driver contact information is available to anyone who asks for it and readily ascertainable. Ex. A, ¶ 55, Ex. B ¶ 55.  And as noted above, Weather King's aggregation argument has been waived, and it cites no authority for this being a trade secret.

3.   Vendor Information and Pricing

Once again Weather King has presented a moving target.  What was described in discovery as "vendor information and pricing" is now "special pricing."  Weather King should not be able to change its story to try to invent an issue of material fact at summary judgment, and moreover, if this so-called "special pricing" was created and provided to Weather King by vendors, it certainly cannot be a trade secret of Weather King's, as it comes from the vendors with no restrictions.  It is known to the vendors and can be given to anyone by the vendors.

4.   Cost Estimates and Related Information

Weather King admits that this information is freely shared among employees, dealers, and customers, and thus is not a protectable trade secret. *Id*.  And there is no evidence put forth that Defendants used this information to start up their business, and the aggregation argument has been waived.

5.   Financial Information

First, Defendants did not take the position that American Barn's profit and loss statements were trade secrets. They marked them as Confidential under the protective order, which only designated them as follows:

> Any documents (as defined below) or testimony produced in the course of discovery relating to any issue in this Action, which any party designates at the time produced as confidential, shall be deemed "Confidential Information" and shall be used solely for the purpose of litigating this Action and any appeals therefrom, and shall not be disclosed or used for any business, commercial, competitive, or other purpose. It was not designed as "Attorneys Eyes Only" which would have been the proper designation for trade secrets. DI. 66.

DI 66 at 1. They were not designated as trade secrets, which the "Attorneys' Eyes Only" classification would cover. DI 66 at 2.

Second, Weather King does not dispute the fact that it leaves its profit and loss statements in an unguarded cubicle for retrieval. Anyone walking by can pick them up. It has not presented any evidence that it guards this information.

Third, Weather King's lead cases are misleading. *Kendall v. Arbor Place of Puryear, Inc.*, No. 07-1058 T/AN, 2007 WL 9706502 (W.D. Tenn. Dec. 5, 2007); *In re: Integrated Health Serv., Inc.*, 258 B.R. 96, 103 (D. Del. 2000)   Neither *Kendall* nor *Integrated Health* stand for the proposition that profit and loss statements are trade secrets. The *Kendall* court only held that financial records were *confidential*, not trade secrets. *Kendall*, 2007 WL 9706502 at *2. Similarly, the *Integrated* court only held that financial information is a trade secret, and said nothing about profit and loss statements. *Integrated*, 268 B.R. 96 at 103-104.

6.   Sales Lot Lease Information

Weather King's argument that "Defendants have misappropriated this information for their own benefit" misses the point and again lacks any foundation. Weather King does not say how

this information is protected, and its argument that dealers' settle sheets only contain the rent and not the pertinent terms of the lease is again a moving target. What exactly is the trade secret? Moreover, the landlords possess this information so it cannot be a trade secret.

7. Engineering Drawings

Weather King does not dispute that its drawings are publicly available (at least in Florida) and that customers and dealers possess them. Instead, it nonsensically argues that drawings used in its western operations (where Weather King no longer operates) are distinct from drawings used in Florida. What is the point? There is no dispute that it provides drawings to its dealers and customers and that the engineering drawings are not treated as trade secrets. And the compilation argument comes too little too late and defies logic anyway, as this is not a compilation of information issue. Weather King cannot create a trade secret where none exists by claiming that no single dealer has all the drawings, when in fact they do. Ex. A, ¶ 58, Ex. B, ¶ 58.

\* \* \*

In sum, Weather King's purported trade secrets are not actually trade secrets recognized by the law. Indeed, Weather King is relegated to stating, in rhetorical fashion, that "[i]f, as Defendants suggest, the information was of no value to them, why did they steal it?" Under that logic, any employee who takes any information with him or her from the former employer is automatically liable under federal and state trade secrets law. Stated differently, Weather King asks this Court to write out of the law that the information be a legally cognizable trade secret. Clearly, that is not the law and would be an issue for the legislature, not this Court.

### IV. No additional Discovery Is Needed

Weather King does not need additional discovery to be able to identify what its trade secrets are, as that information is solely within its own possession, custody and control. No additional discovery should be allowed.

### V. Objection to Rule 56 Evidence

Weather King objects to certain statements made in their declarations by Mr. Maupin and Mr. Harrell. DI 103 at 2-3. Defendants submit that Mr. Harrell and Mr. Maupin do have personal knowledge of those three statements, as stated in their supplemental declarations filed herein. See Ex. A, ¶¶ 7, 44, 50; Ex. B, ¶¶ 7, 44, 50.

### VI. Supplemental Jurisdiction Should Be Declined

As to supplemental jurisdiction, the overwhelming weight of the authority and the better rule is that if the summary judgment motion is granted, the Court should dismiss the entire case as lacking subject matter jurisdiction. *See e.g.*, *Otero-Rivera v. Figeroa-Sancha*, No. CIV. 10-1406 JAG, 2011 WL 4625959, at *4 (D.P.R. Sept. 30, 2011) ("The Court should decline to exercise supplemental jurisdiction over state law claims when all federal claims are dismissed") (citing *Camelio v. American Federation*, 137 F.3d 666, 672 (1st Cir. 1998) ("The balance of factors ordinarily weigh strongly in favor of declining jurisdiction over state law claims when the fundamental federal claims have been dismissed at an early stage in the litigation."); *Spak v. MetLife*, No. 3:CV-06-152, 2008 WL 4671800, at *7 (M.D. Pa. Oct. 20, 2008) (observing that after dismissal of all federal claims, a district court may decline to exercise supplemental jurisdiction over the remaining state law claims if it finds that the parties will not be prejudiced and that the interests of judicial economy would be served); *Stehney v. Perry*, 101 F.3d 925, 939 (3d Cir. 1996); *Murphy v. Florida Keys Elec. Coop. Ass'n, Inc.*, 329 F.3d 1311, 1320 (11th Cir.

2003) (finding that the court had discretion to dismiss state law counterclaims once summary judgment had been granted on all federal claims); *Western Wholesale Supply, Inc. v. Holladay*, 25 Fed. Appx. 507, 509 (9th Cir. 2001) (finding that after the dismissal of all federal claims "the district court did not abuse its discretion in dismissing the state law counterclaims under 28 U.S.C. § 1367(c)(3)"); *Kis v. County of Schuylkill*, 866 F.Supp. 1462, 1480 (E.D. Pa. 1994) ("Courts should ordinarily decline to exercise supplemental jurisdiction over state law claims when the federal claims are dismissed."); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (same); *Weaver v. Marine Bank*, 683 F.2d 746 (3d Cir. 1982) (same).

The decision to decline to exercise supplemental jurisdiction "is committed to the sound discretion of the district court." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 444 (3d Cir. 1997); *Mitchell v. Ready Willing & Able or the Doe Fund*, No. 18-CV-3678, 2018 WL 4782232, at *3 (E.D. Pa. Oct. 3, 2018). The Court should exercise such discretion here.

## VII.  CONCLUSION

For all those reasons, Defendants' motion should be granted in full. And Weather King has cited no authority for the proposition that the motion in limine stage is the appropriate time for the Court to rule on whether certain asserted trade secrets are legally-cognizable. We ask the Court to do so now as it would greatly simplify this case going forward and preserve the parties' and the Court's resources.

72164644;2

- 12 -

| | |
|---|---|
| Date: August 9, 2023 | */s/  Thomas G. Pasternak* <br> Thomas G. Pasternak <br> AKERMAN LLP <br> 71 South Wacker Drive, 47th Floor <br> Chicago, IL 60606 <br> Tel. 312.634.5700 <br> thomas.pasternak@akerman.com <br><br> *Attorneys for Defendants* <br><br> JESSE A. MAUPIN, BARRY D. HARRELL, ADRIAN S. HARROD, LOGAN C. FEAGIN, STEPHANIE L. GILLESPIE, RYAN E. BROWN, DANIEL J. HERSHBERGER, BRIAN L. LASSEN, ALEYNA LASSEN, and AMERICAN BARN CO., LLC |

## CERTIFICATE OF SERVICE

I certify that on August 9, 2023 I filed a true and correct copy of the foregoing **DEFENDANTS' REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** with the Court using the ECF system, which will provide notice and a copy to counsel of record:

>David L. Johnson, #18732
>John H. Dollarhide, #40041
>Y. Larry Cheng, #36707
>BUTLER SNOW LLP
>150 3rd Avenue South, Suite 1600
>Nashville, TN 37201
>Telephone: (615) 651-6700
>Fax: (615) 651-6701
>david.johnson@butlersnow.com
>john.dollarhide@butlersnow.com
>larry.cheng@butlersnow.com
>
>Daniel W. Van Horn, #18940
>BUTLER SNOW LLP
>6075 Poplar Ave., Suite 500
>Memphis, TN 38119
>Telephone: (901) 680-7200
>Fax: (901) 680-7201
>Danny.VanHorn@butlersnow.com

>*/s/ Thomas G. Pasternak*
>Thomas G. Pasternak

72164644;2