IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| CONSOLIDATED INDUSTRIES, LLC d/b/a WEATHER KING PORTABLE BUILDINGS,<br><br>    Plaintiff,<br>v.<br><br>JESSE A. MAUPIN, BARRY D. HARRELL, ADRIAN S. HARROD, LOGAN C. FEAGIN, STEPHANIE L. GILLESPIE, RYAN E. BROWN, DANIEL J. HERSHBERGER, BRIAN L. LASSEN, ALEYNA LASSEN, and AMERICAN BARN CO., LLC,<br><br>    Defendants. | Civil Action No. 1:22-cv-01230-STA-jay<br><br>Chief Judge S. Thomas Anderson |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT
OF ADDITIONAL MATERIAL FACTS SUPPORTING ITS OPPOSITION TO
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

  Pursuant to Local Rule 56.1(c), Defendants submit the following response to Plaintiff's statement of additional material facts demonstrating that Defendant's motion for summary judgment should be denied.

  1. None of the Defendants had authorized access to Weather King's financial statements, including its balance sheets and profit and loss statements.  Coker Decl., ¶ 6.

  **RESPONSE**:  Undisputed.

  2. The financial statements were maintained within QuickBooks.  Only nine employees can access QuickBooks.  The Defendants could never access QuickBooks.  Within QuickBooks, only four employees have read access to the financial statements.  Exports of the financial statements were only distributed to Weather King's owners.  Coker Decl., ¶ 116.

72045080;1

**RESPONSE**: Undisputed.

3.  The balance sheets and profit/loss statements photographed by Defendant Jesse Maupin and emailed to himself were taken from a sealed envelope with owner Tim Boyd's name on it from a cubicle he used on a weekly basis (and that was not used by Mr. Maupin). Weather King Controller, on a single occasion, placed the documents in the sealed envelope for Mr. Boyd to pick up the following day only because she had to leave the office early and knew that Mr. Boyd would be in the office the next morning. Coker Decl., ¶ 7.

**RESPONSE**: Disputed. Ex. A, Maupin Dec. at ¶ 48.

4.  Weather King maintains two types of inventory counts: finished buildings and raw materials. The compilation of these inventory numbers into documents is a critical component of Weather King's operation and contains significant information about exactly how Weather King conducts its materials purchasing, manufacturing, and distribution/sales operations. Mr. Maupin emailed himself a photograph of a finished building inventory count as of 2021 year-end, and raw materials inventory counts were found on Defendant Gillespie's hard drive, and she had no legitimate business reason to have those documents on her computer. Coker Decl., ¶¶ 9-10, 16.

**RESPONSE**: Undisputed for the purpose of ruling on the motion for summary judgment.

5.  Weather King distributes its finished buildings to local dealers who then sell the buildings to local customers. The buildings are placed on sales lots which are either owned by the dealers or leased from third parties by Weather King. Weather King selects sales lots in prime locations and negotiates the terms of those sales lots through its paid employees. The leases themselves are not stored on Weather King's server or any shared device, but rather are kept by the Controller in her office. The terms of the leases are not shared. The only term known outside the landlord-tenant relationship is the rent amount because that cost is passed on monthly to the

dealer and is deducted from the dealer's monthly commission. Any given dealer only knows the rent amount for his or her lot, not all other sales lot rent amounts. Coker Decl., ¶¶ 11-13.

**RESPONSE**: Undisputed for the purpose of ruling on the motion for summary judgment.

6. Weather King has spent years creating and refining a pricing model they call a "cost estimate." This document has inputs from all phases of the manufacturing process for a total cost of each building produced, and then allows Weather King to adjust the retail price accordingly to achieve a desired profit margin given supply and demand concerns. Enormous time and expense goes into these cost estimates. While the information does change based on fluctuating raw materials prices, even older snapshots of the pricing model contains valuable detail on the cost of goods sold, retail price, and profit margin for each building. This information would allow a competitor to easily figure out how much it should cost to efficiently manufacture different types of portable buildings and then minimally undercut Weather King on pricing. Weather King does not share this information outside of the company, and protects it electronically by requiring computer users to have a login and password. Coker Decl., ¶¶ 14-15.

**RESPONSE**: Undisputed for the purpose of ruling on the motion for summary judgment.

7. Defendant Stephanie Gillespie's hard drive contained an export of many, if not all, data components of Weather King's manufacturing software, NumberCruncher. There were around 100 pages of manufacturing data such as item numbers, type of building, part type, item description, price, and cost. Like the cost estimates, this data took years and enormous effort to compile, and was used on a daily basis to operate and monitor Weather King's building construction process. Having this data exported to just a few documents, which Ms. Gillespie was not authorized to do, allowed the Defendants to quickly replicate Weather King's software infrastructure. Coker Decl., ¶ 17.

**RESPONSE**: Disputed. Ex. A, Maupin Dec. at ¶ 57.

8. Weather King also maintains a network of independent contractor drivers who service specific dealers. Weather King compiled this network information into one spreadsheet organized by dealer and driver for its western US distribution operations. This compiled information was not shared outside of Weather King. Coker Decl., ¶¶ 18-19.

**RESPONSE:** Undisputed.

9. Weather King is required to have engineering drawings for its buildings for state permitting requirements (but also to ensure correct construction parameters). It has spent tens of thousands of dollars in fees for engineers to create these drawings over the years. The building construction differs in different states because of local building codes. A building in Florida has different requirements than one in Colorado. The Western US States in which Weather King operates do not require public availability of the engineering drawings like Florida does. Weather King does not provide any dealer or customer with all of its engineering drawings. Coker Decl., ¶¶ 20-24.

**RESPONSE**: Undisputed for purposes of ruling on summary judgment motion.

10. Weather King also has confidential and proprietary negotiated raw materials pricing with its materials vendors. Weather King has spent years developing these relationships and negotiating preferred pricing. The terms of Weather King's materials purchases are not publicly available. While some materials vendors have public advertisement of prices, those are not the same prices that Weather King pays. Coker Decl., ¶¶ 25-26.

**RESPONSE**: Undisputed for purposes of ruling on the summary judgment motion.

11. Weather King is based in Paris, Tennessee, has only been in business for 15 years and only had about 20 employees at its Paris office at the time of the Defendants' departure. Coker Decl., ¶¶ 27-28.

**RESPONSE**: Undisputed.

12. Weather King keeps its buildings locked after hour and has used security systems and surveillance systems. *Id.*, ¶ 31.

**RESPONSE**: Undisputed for the purpose of ruling on the motion for summary judgment.

13. Weather King has implemented measures to restrict access to electronically stored information. *Id.*, ¶¶ 32-35.

**RESPONSE**: Admitted for the purpose of ruling on the motion for summary judgment.

14. Weather King has a practice of shredding confidential information that is printed. *Id.*,¶ 36.

**RESPONSE**: Undisputed for the purpose of ruling on the motion for summary judgment.

15. Defendant American Barn Co. was operational within the first two weeks of June 2022. See Ex. 2 to Plaintiff's Resp. to Mot. Summ. Judgment.

**RESPONSE**: Undisputed.

Date: August 9, 2023

*/s/ Thomas G. Pasternak*
Thomas G. Pasternak
AKERMAN LLP
71 South Wacker Drive, 47th Floor
Chicago, IL 60606
Tel. 312.634.5700
thomas.pasternak@akerman.com

*Attorneys for Defendants*

*JESSE A. MAUPIN, BARRY D. HARRELL, ADRIAN S. HARROD, LOGAN C. FEAGIN, STEPHANIE L. GILLESPIE, RYAN E. BROWN, DANIEL J. HERSHBERGER, BRIAN L. LASSEN, ALEYNA LASSEN, and AMERICAN BARN CO., LLC*

## CERTIFICATE OF SERVICE

I certify that on August 9, 2023 I filed a true and correct copy of the foregoing **DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS SUPPORTING ITS OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** with the Court using the ECF system, which will provide notice and a copy to counsel of record:

>David L. Johnson, #18732
>John H. Dollarhide, #40041
>Y. Larry Cheng, #36707
>BUTLER SNOW LLP
>150 3rd Avenue South, Suite 1600
>Nashville, TN 37201
>Telephone: (615) 651-6700
>Fax: (615) 651-6701
>david.johnson@butlersnow.com
>john.dollarhide@butlersnow.com
>larry.cheng@butlersnow.com
>
>Daniel W. Van Horn, #18940
>BUTLER SNOW LLP
>6075 Poplar Ave., Suite 500
>Memphis, TN 38119
>Telephone: (901) 680-7200
>Fax: (901) 680-7201
>Danny.VanHorn@butlersnow.com

>>*/s/ Thomas G. Pasternak*
>>Thomas G. Pasternak