**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CONSOLIDATED INDUSTRIES, LLC, d/b/a WEATHER KING PORTABLE BUILDINGS, | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| v. | ) ) | No. 1:22-cv-01230-STA-jay |
| JESSE A. MAUPIN, BARRY D. HARRELL, ADRIAN S. HARROD, LOGAN C. FEAGIN, STEPHANIE L. GILLESPIE, RYAN E. BROWN, DANIEL J. HERSHBERGER, BRIAN L. LASSEN, ALEYNA LASSEN, and AMERICAN BARN CO., LLC, | ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) ) | |

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This is an action for the misappropriation of trade secrets under federal and state law and for other tortious conduct based on Tennessee common law. "The usual trade secret case arises out of the employer-employee relationship whereby an employee acquires knowledge of the trade secret of his employer because of a confidential relationship." *B. F. Gladding & Co. v. Sci. Anglers, Inc.*, 245 F.2d 722, 728 (6th Cir. 1957). This case is no different. The individual Defendants are former employees of Plaintiff Consolidated Industries, LLC d/b/a Weather King Portable Building who left their employment with the company and formed or went to work for a competing enterprise Defendant American Barn Co., LLC.

Before the Court is Defendants Jesse A. Maupin, Barry D. Harrell, Adrian S. Harrod, Logan C. Feagin, Stephanie L. Gillespie, Ryan E. Brown, Daniel J. Hershberger, Brian L. Lassen,

1

Aleyna Lassen, and American Barn's Motion for Summary Judgment (ECF No. 88).   Weather King has responded in opposition.   Defendants have filed a reply.   Because genuine disputes of material fact remain for trial, Defendants' Motion is **DENIED**.

## BACKGROUND

### I. Procedural History

Plaintiff Consolidated Industries, LLC does business under the trade name Weather King Portable Buildings ("Weather King") and manufactures portable buildings like backyard sheds, garages, cabins, utility buildings, and storage buildings.   Am. Compl. ¶ 15 (ECF No. 26). According to the Complaint, Weather King is headquartered in Paris, Tennessee, and also owns six plants in Arizona, New Mexico, Florida, Texas, and Colorado. *Id*.   Weather King sells its products through dealerships who essentially take Weather King inventory on consignment and receive commissions on the sale of Weather King products.   *Id.* ¶ 16.

Weather King employed Defendant Jesse Maupin as its Western Region Sales Manager. *Id*. ¶ 17.   Maupin managed Weather King's manufacturing plants and sales representatives in Arizona, New Mexico, Colorado, and Texas, a territory Weather King dubbed the "the Western States." *Id*.   Weather King now alleges that Maupin misappropriated Weather King's trade secrets, recruited other key Weather King employees, and acted together with these individuals to use Weather King's protected information to form a rival company, American Barn, LLC ("American Barn").   The Amended Complaint would hold Maupin and American Barn liable for misappropriation of trade secrets in violation of 18 U.S.C. § 1836 (Count I) and Tenn. Code Ann. § 47–25–1704 (Count II).   The Amended Complaint also alleges that all Defendants are liable for the Tennessee common law torts of breach of duty of loyalty (Count III), interference with business relationships (Count IV), conversion (Count VI), unjust enrichment (Count VII), civil conspiracy

(Count VIII), and aiding and abetting (Count IX).  Weather King finally alleges that American Barn, Maupin, and Defendant Brian Lassen are liable for defamation (Count V).

Weather King filed suit against American Barn and each of the individual Defendants on October 19, 2022.  After Defendants answered (ECF No. 22) and filed a Rule 12(b)(6) motion to dismiss (ECF No. 23), Weather King filed an Amended Complaint (ECF No. 26).  On March 2, 2023, the Court held a scheduling conference with counsel for the parties and adopted their proposed case management plan in a Rule 16(b) scheduling order (ECF No. 63).  The initial scheduling order gave the parties until December 1, 2023, to complete all discovery, and January 12, 2024, to file dispositive motions.  After the United States Magistrate Judge ruled on a number of discovery disputes between the parties, the Court granted the parties' request to amend the scheduling order.  Under the new deadlines in the Amended Scheduling Order (ECF No. 114), the discovery deadline is now May 1, 2024, and the dispositive motions deadline is July 1, 2024.  A jury trial is set for November 18, 2024.

**II. Defendants' Motion for Summary Judgment**

Prior to the entry of the Amended Scheduling Order and amidst a series of discovery disputes, Defendants sought judgment as a matter of law on Weather King's misappropriation of trade secrets claim, the only claim over which the Court has original jurisdiction.[1]  In support of

---

[1] Weather King opposes summary judgment and argues in the alternative that the Court should defer ruling until the parties have completed discovery.  Pl.'s Resp. in Opp'n 24 (ECF No. 103).  According to Weather King, Defendants filed their Motion for Summary Judgment before the parties had conducted any depositions.  Weather King posits that discovery may reveal that the individual Defendants misappropriated additional trade secrets.

The Court finds it unnecessary to reach Weather King's request to defer a ruling on the Rule 56 Motion.  Rule 56(d) permits a district court to "defer considering the motion [for summary judgment] or deny it" or to "allow time to obtain affidavits or declarations or to take discovery" before ruling on a motion for summary judgment when the nonmovant needs more time for

their Motion for Summary Judgment, Defendants argue that Weather King identified in its interrogatory responses the specific trade secrets which form the basis of its misappropriation claims against American Barn and Maupin.  Defendants contend that none of the purported trade secrets meets the legal definition of a "trade secret" because none of the information was adequately protected and consisted only of "publicly available and ascertainable information lacking independent economic value."  Defs.' Mem. in Support 7 (ECF No. 88-1).  Weather King took no precautions to safeguard much of the information it claims constituted a trade secret.  Even if it had, much of the information was so widely available to Weather King employees or just available to the public at large that it could not qualify as a "trade secret."  For example, all Weather King employees had access to cost estimates, sales lot lease information, and inventory count by dealer location.  And information like dealer contacts, vendor pricing, and even engineering drawings are publicly available.  Because Weather King cannot prove its federal misappropriation of trade secrets claim (or its Tennessee state law claims, for that matter), Defendants are entitled to judgment as a matter of law on the trade secrets claims.  If the Court grants Defendants summary judgment on the federal and state trade secrets claims, the Court should also dismiss Weather King's remaining state law claims for lack of subject-matter jurisdiction.

To decide Defendants' Rule 56 Motion, the Court must consider whether any genuine issue of material fact exists that might preclude judgment as a matter of law.  A fact is material if the fact "might affect the outcome of the lawsuit under the governing substantive law."  *Baynes v.*

---

discovery.  Fed. R. Civ. P. 56(d)(1) & (2).  Rule 56(d) conditions a court's exercise of this discretion on the nonmovant filing an "affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  *Id*.  Because counsel for Weather King has not presented an affidavit or declaration to show why Weather King "cannot presents facts essential to justify its opposition" and because the Court holds genuine issues of fact remain for trial, the Court will proceed to reach the merits of Defendants' Motion for Summary Judgment.

*Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  For purposes of summary judgment, a party asserting that a material fact is not genuinely in dispute must cite particular parts of the record and show that the evidence fails to establish a genuine dispute or that the adverse party has failed to produce admissible evidence to support a factual contention.  Fed. R. Civ. P. 56(c)(1).  Local Rule 56.1(a) requires a party seeking summary judgment to prepare a statement of facts "to assist the Court in ascertaining whether there are any material facts in dispute."  Local R. 56.1(a).  Defendants have filed a statement of undisputed facts in support of their Rule 56 Motion, to which Weather King has responded.  Weather King has filed its own statement of additional facts as part of its response, and Defendants have responded to Weather King's assertions in their reply brief.  Based on the parties' submissions, the Court finds that the following materials facts are undisputed for purposes of summary judgment, unless otherwise noted.

Weather King is based in Paris, Tennessee.  Pl.'s Statement of Add'l Facts ¶ 11.  Weather King has been in business for 15 years.  *Id*.  At the time of the individual Defendants' departure from Weather King, the company had about 20 employees working at its Tennessee headquarters. *Id*.  Weather King keeps its buildings locked after hours and uses a security system.  *Id.* ¶ 12. Weather King restricts access to electronically stored information by keeping computers password-protected and securing remote and physical access to its server.  *Id.* ¶ 13.  Otherwise, Weather King does not require its employees to have employee IDs and does not issue visitor IDs or follow visitor escort procedures when visitors come to the building.  Defs.' Statement of Undisputed Fact ¶ 29.  Weather King permits employees to move around its facilities (as opposed to staying in

specific workstations).  *Id.* ¶ 33.  Employees can also remain in the building after hours without requesting express permission to do so.  *Id.* ¶ 34.  Weather King's company photocopiers do not require employees to enter an authorized use code or a password before making copies.  *Id.* ¶ 38. Although the company has a practice of shredding documents containing confidential information, Pl.'s Statement of Add'l Fact ¶ 14, it does not require employees to dispose of documents in locked waste bins and does not utilize on-site document destruction services.  Defs.' Statement of Undisputed Fact ¶ 39.

Concerning possible trade secrets,[2] the parties agree that Weather King does not designate information as "confidential."  *Id.* ¶ 14.  Weather King does not train employees on data security or confidentiality obligations.  *Id.* ¶ 18.  Weather King's employee handbook does not address trade secrets.  *Id*. ¶ 41.  Weather King has no written trade secret policy for the identification, classification, protection, or valuation of trade secrets.  *Id.* ¶ 26.  The company has no rules or regulations prohibiting the unauthorized acquisition or possession of company property containing or relating to the trade secrets and no sign-out/sign-in procedures for access to and return of trade secrets.  *Id.* ¶¶ 35, 36.  Weather King has no oversight policies and procedures to prevent the inadvertent disclosure of trade secrets by employees in written publications, seminars, speaking engagements, trade shows, technical conferences, and other public forums.  *Id.* ¶ 27.

In terms of its personnel policies, Weather King does not conduct reference checks or background checks for managers, key employees, and others who have regular access to protected information.  *Id*. ¶ 40.  At the end of an employee's tenure, Weather King does not conduct off-

---

[2] In its presentation of the undisputed facts, Defendants refer to "alleged trade secrets." Weather King objects that the phrase is vague.  Viewing the proof in the light most favorable to Weather King as the non-moving party, the Court understands "alleged trade secrets" to mean any information Weather King alleges or asserts to meet the definition of a "trade secret."

boarding–trade secret exit interviews to (a) identify all the trade secrets that the departing employee had access to during his or her employment and catalogue these trade secrets; (b) remind the employee of his or her continued confidentiality obligations; (c) collect all company devices and media from the departing employee; (d) obtain from the employee all access credentials (such as account information, user names, and passcodes); or (e) require the departing employee to sign a trade secret exit interview certification. *Id.* ¶ 42.

As for Defendants and the specific information at issue in this case, several facts concerning information Weather King deems confidential are undisputed for purposes of summary judgment. Take the company's financial statements. The parties agree that none of the individual Defendants had authorized access in the course and scope of their employment with Weather King to financial statements, including the company's balance sheets and profit and loss statements. Pl.'s Statement of Add'l Facts ¶ 1. Weather King maintains its financial statements in QuickBooks software. *Id*. ¶ 2. Only nine employees have access to QuickBooks, and of those nine only four can access the financial statements. *Id*. Exports of the financial statements are only distributed to Weather King's owners. *Id*. And yet Defendants argue that the financial statements were not safeguarded, citing the fact that Maupin found profit and loss statements in a file folder lying in an unoccupied cubicle at Weather King headquarters. Defs.' Statement of Undisputed Fact ¶ 48.

Likewise, Weather King limits access to inventory counts. Pl.'s Statement of Add'l Facts ¶ 4. Weather King maintains two types of inventory counts: finished buildings and raw materials. *Id*. Weather King's inventory numbers are a critical component of its business. *Id*. The inventory counts essentially guide Weather King's materials purchasing, manufacturing, and distribution/sales operations. *Id*. Shortly before his resignation from the company, Maupin emailed himself a photograph showing finished building counts for the 2021 year-end inventory.

7

*Id.*  Weather King also discovered raw material inventory counts on Defendant Gillespie's computer hard drive after she had resigned her job with the company, even though she had no reason to access the information as part of her normal duties.  *Id.*  The parties disagree about whether inventory counts were a "big deal" because every dealer knew its own inventory as well as the inventory of every other dealer.  Defs.' Statement of Undisputed Fact ¶ 44.

Weather King also controlled access to information about its sales lots.  Pl.'s Statement of Add'l Facts ¶ 5.  Weather King distributes finished buildings to local dealers through sales lots, real property either owned by the dealers or leased from third parties by Weather King.  *Id.*  Weather King chooses sales lots in prime locations and negotiates the terms of those sales lots through its paid employees.  *Id.*  The lease agreements are not stored on Weather King's server or any shared device.  *Id.*  The company's controller keeps the papers in her office.  *Id.*  The terms of the leases are not shared.  *Id.*  Local dealers only know the amount of rent because that cost is passed on to the dealer and is deducted from the dealer's monthly commission.  *Id.*  This means a local dealer knows the rent amount for his or her lot, but not all other sales lot rent amounts.  *Id.*

The same goes for Weather King's "cost estimate" calculations.  Weather King has spent years creating and refining a pricing model they call a "cost estimate."  *Id.* ¶ 6.  The cost estimate has inputs from all phases of the manufacturing process for a total cost of each building produced, which allows Weather King to adjust the retail price to achieve a desired profit margin given supply and demand concerns.  *Id.*  The calculation of cost estimates involves enormous time and expense to Weather King.  *Id.*  While the information changes based on fluctuating raw materials prices, even older snapshots of Weather King's pricing model contain valuable detail on the cost of goods sold, retail price, and profit margin for each building.  *Id.*  A competitor in possession of Weather King's cost estimates could easily figure out how much it should cost to efficiently manufacture

different types of portable buildings and then minimally undercut Weather King on pricing.  *Id.*
Weather King does not share this information outside of the company and protects it electronically
by requiring computer users to have a login and password.  *Id.*  Defendants claim, though, that
vendors advertise pricing in trade publications and share their pricing with anyone upon request.
Defs.' Statement of Undisputed Fact ¶ 46.  The parties disagree over whether Weather King
employees discussed pricing and discounts with dealers and thereby disclosed cost estimates to
the public.  *Id.* ¶ 47; Coker Decl. ¶¶ 14, 15 (ECF No. 103-1).

Weather King also asserts that two other types of information constitute trade secrets: its
network of independent contractor and drivers and its preferred pricing for raw materials.  Weather
King maintains a network of independent contractor drivers who service specific dealers.  Pl.'s
Statement of Add'l Facts ¶ 8.  Weather King compiled this network information into one
spreadsheet organized by dealer and driver for its Western States distribution operations.  *Id.*  This
compiled information was not shared outside of Weather King.  Weather King also has confidential
and proprietary negotiated raw materials pricing with its materials vendors.  *Id.* ¶ 10.  Weather
King has spent years developing these relationships and negotiating preferred pricing.  *Id.*  The
terms of Weather King's materials purchases are not publicly available.  *Id.*  While some materials
vendors publicly advertise their prices, those are not the same prices that Weather King pays.  *Id.*

As for engineering drawings for its buildings, the parties agree that Weather King does not
provide any dealer or customer with all of its engineering drawings.  *Id.* ¶ 9.  Weather King is
required to have engineering drawings for its buildings for state permitting requirements and also
to ensure correct construction parameters.  *Id.*  The company has invested tens of thousands of
dollars in fees for engineers to create these drawings over the years.  *Id.*  The Western United
States in which Weather King operates do not require the public availability of the engineering

drawings; the state of Florida does. *Id.* Building construction differs in different states because of local building codes, meaning a building in Florida has different requirements than a building in Colorado. *Id.* Defendants cite evidence that Weather King's engineering drawings are publicly available on state of Florida website and included with the purchase of each Weather King product. Defs.' Statement of Undisputed Fact ¶ 50.

The rest of the facts surrounding Weather King's trade secrets remain disputed. The parties disagree over the extent to which Weather King restricts access to information held within the offices of its Tennessee headquarters. While some of the facts about the facility are undisputed, Weather King disputes Defendants' assertion that people "come and go as they please" and that the information Weather King deems a trade secret is not kept in a secure location or restricted to only certain employees. Defs.' Statement of Undisputed Fact ¶¶ 1, 20, 28. Weather King, has introduced evidence that its headquarters has few visitors and that any visitor to the premises would not have access to company documents. Pl.'s Resp. to Defs.' Statement of Undisputed Fact ¶ 1. Defendants claim that Weather King does not keep its business information in physically secure locations or restrict access to the information to only certain employees, a claim Weather King has contested with proof about its security measures, both for its building and for its server. Defs.' Statement of Undisputed Fact ¶¶ 2-4, 15-16, 20, 23-24, 28, 32. There is also a genuine dispute over whether Weather King prohibits employees from accessing trade secrets on personal devices, though it appears to be undisputed employees can access work email on personal devices. *Id.* ¶¶ 17, 22, 43.

Finally, the parties dispute whether Defendants copied and replicated Weather King's "software infrastructure." According to Weather King, Defendant Stephanie Gillespie exported the data components of the company's manufacturing software, NumberCruncher. Pl.'s Statement

of Add'l Fact ¶ 7.  The export consisted of 100 pages of manufacturing data like item numbers, type of building, part type, item description, price, and cost.  *Id*.  Like the cost estimates, Weather King compiled the data over a period of years and used it on a daily basis to operate and monitor its building construction process.  *Id*.  Gillespie's export of the data allowed American Barn to reproduce Weather King's software infrastructure. *Id*.  Defendant Maupin claims that American Barn built its own system from scratch and denies that American Barn or any Defendant copied Weather King's system.  Maupin Decl. ¶ 57 (ECF No. 108-2).

## JURISDICTION

The Court has subject-matter jurisdiction in this case under 28 U.S.C. § 1331.  28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  The Amended Complaint alleges violations of the Defend Trade Secrets Act, an amendment to 18 U.S.C. § 1836, creating a private right of action for owners of trade secrets that have been misappropriated.  18 U.S.C. § 1836(b) ("An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce.").  Weather King's federal claim for misappropriation of trade secrets is therefore a civil action arising under the laws of the United States.

As for Weather King's claims under Tennessee law, 28 U.S.C. § 1367(a) gives district courts supplemental jurisdiction in any civil action in which a court has original jurisdiction but only "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  This means the supplemental claims must "derive from a common nucleus of operative fact."  *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1753

11

n.1 (2019) (Alito, J., dissenting) (quoting *Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).  The Court finds that Weather King's claims for the violation of the Tennessee Uniform Trade Secrets Act and various torts under Tennessee common law meet this standard.  The claims are based on Defendants' misappropriation of Weather King's trade secrets and injuries traceable to Defendants' allegedly tortious conduct once they left their employment with Weather King. Therefore, the Court can properly exercise supplemental jurisdiction over the claims.

Defendants argue that if the Court grants them judgment as a matter of law on Weather King's federal misappropriation of trade secrets claim, the Court will lack subject-matter jurisdiction over Weather King's claims under Tennessee law.  The "default assumption" is that a district court will take supplemental jurisdiction over related state law claims as long as it has original jurisdiction over at least one claim.  *Veneklase v. Bridgewater Condos, L.C.*, 670 F.3d 705, 716 (6th Cir. 2012).  But a district court's decision in this regard remains a matter of discretion.  *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("With respect to supplemental jurisdiction in particular, a federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise.").  Even if the Court dismissed Weather King's claim under federal law, the Court would have discretion as to whether to retain jurisdiction over Weather King's claims under state law.  *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012) ("[S]upplemental jurisdiction does not disappear when the federal claim that gave rise to original jurisdiction in the first place is dismissed.").  So the Court's decision to grant summary judgment on Weather King's federal cause of action would not necessarily mean the Court lacked subject-matter jurisdiction over Weather King's claims under state law.

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment if the party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has stated that "[t]hough determining whether there is a genuine issue of material fact at summary judgment is a question of law, it is a legal question that sits near the law-fact divide." *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009). In reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A court does not engage in "jury functions" like "credibility determinations and weighing the evidence." *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 515 (6th Cir. 2019) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)). Rather, the question for the Court is whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson*, 477 U.S. at 252. In other words, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**ANALYSIS**

The threshold issue presented is whether American Barn and Maupin are entitled to judgment as a matter of law on Weather King's claims for misappropriation of trade secrets against them. As a preliminary matter, Weather King has challenged the admissibility of declarations

submitted by Maupin and his co-Defendant Barry Harrell, citing the fact that neither declaration (ECF No. 88-3, 88-5) bears the date on which the declarant made his statement. Weather King also argues that some of the statements are inadmissible, for example, because the declarant lacks firsthand knowledge of the matter asserted. A witness may furnish a declaration attested under penalty of perjury pursuant to 28 U.S.C. § 1746. *See Worthy v. Mich. Bell Tel. Co*., 472 F. App'x 342, 343 (6th Cir. 2012) (explaining that 28 U.S.C. § 1746 permits unsworn declarations in lieu of affidavits where the declarations "are made under penalty of perjury, certified as true and correct, dated, and signed"). Strictly speaking, the lack of a date on the declarations signed by Maupin and Harrell meant neither declaration had fully complied with § 1746 and arguably rendered them inadmissible. Even so, as part of their reply, Defendants have submitted supplemental declarations (ECF No. 108-1, 108-2) from Maupin and Harrell, both of which are now properly dated. The Court will consider the contents of each declaration as part of its assessment of the facts for purposes of Defendants' Rule 56 Motion. The Court addresses Weather King's other admissibility arguments below.

In order to prevail on its misappropriation of trade secrets claims, Weather King will need to prove the following elements: (1) the existence of a trade secret; (2) communication of the trade secret to the defendant while in a position of trust and confidence; (3) defendant's use of the communicated information; and (4) the resulting detriment to the plaintiff. *Stratienko v. Cordis Corp.*, 429 F.3d 592, 600 (6th Cir. 2005) (citing *Hickory Specialties, Inc. v. B & L Labs., Inc.*, 592 S.W.2d 583, 586 (Tenn. Ct. App. 1979)). Weather King alleges violations of both federal and state trade secret law. "In the past, state law governed civil trade-secret inquiries by default because there was no federal civil trade-secret law. But that changed in 2016 with the enactment of the Defend Trade Secrets Act, 18 U.S.C. § 1836." *Kondash v. Kia Motors Am., Inc.*, 767 F.

14

App'x 635, 646 (6th Cir. 2019) (Griffin, J., dissenting).  Even after the enactment of the Defend Trade Secrets Act and its private right of action for the misappropriation of trade secrets, federal courts generally analyze federal misappropriation of trade secrets claims according to the same standards for the misappropriation of trade secrets under state law.  *RGIS, LLC v. Gerdes*, 817 F. App'x 158, 163 (6th Cir. 2020) (treating state law on the misappropriation of trade secrets "as coextensive with federal law for this case"); *ASC Engineered Sols., LLC v. Island Indus., Inc.*, No. 22-cv-02284, 2021 WL 2583555, at *3 (W.D. Tenn. June 23, 2021) ("The respective requirements for establishing misappropriation under these statutes are largely the same, and so the Court will conduct a single analysis."); *Great Am. Opportunities, Inc. v. Cherry Bros., LLC*, No. 3:17-CV-01022, 2019 WL 632670, at *3 (M.D. Tenn. Feb. 14, 2019) (collecting similar cases).

Maupin and American Barn seek judgment as a matter of law on the first element of Weather King's misappropriation of trade secrets claims against them, whether any trade secret actually exists.  Defendants argue that the information identified by Weather King as a protected trade secret does not meet the statutory definition of a "trade secret."  The Defend Trade Secrets Act defines "trade secret" to mean

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. §1839(3).  The Tennessee Uniform Trade Secrets Act sets forth a test with substantially similar elements to determine whether information is a "trade secret": "(1) the information must

derive independent economic value from not being generally known or ascertainable by proper means, (2) others must be able to obtain economic value from the information's disclosure or use, and (3) reasonable efforts must have been made to maintain the secrecy of the information."  Tenn. Code Ann. § 47–25–1702(4).

Defendants argue that Weather King cannot meet its burden to prove that the following types of information are trade secrets: (1) inventory counts by location; (2) dealer contact information organized by drivers that service those locations; (3) vendor information and pricing; (4) cost estimates; (5) financial information including profit and loss statements and balance sheets; (6) sales lot lease information including contact information, locations, and rent amounts; and (7) engineering drawings.  Defendants raise two somewhat related points to argue that Weather King's information does not constitute a trade secret.  Defendants contend that Weather King's measures to safeguard the secrecy of the information were unreasonable and that all of the information was publicly available or easily ascertainable.  Therefore, in Defendants' view, none of the information qualifies as a trade secret.

A trade secret may "consist of any formula, process, pattern, device, or compilation of information that is used in one's business to gain an advantage over competitors who do not use it." *HCTec Partners, LLC v. Crawford*, --- S.W.3d ---, 2022 WL 554288, at *10 (Tenn. Ct. App. 2022) (citing *Hickory Specs.*, 592 S.W.2d at 586) (other citation omitted)).  "What constitutes a trade secret is a question of fact." *ECIMOS, LLC v. Carrier Corp.*, 971 F.3d 616, 643 (6th Cir. 2020); *Handel's Enters., Inc. v. Schulenburg*, 765 F. App'x 117, 122 (6th Cir. 2019) ("The question of whether something is a trade secret is a question of fact to be determined by the trier of fact upon the great weight of the evidence.").  Courts applying Tennessee law "have looked to several factors in making this determination, the most important of which is whether the

16

information has been publicly disclosed or is easily acquired or duplicated by others." *Id.* (citing *Eagle Vision, Inc. v. Odyssey Med., Inc.*, 2002 WL 1925615, at \*4 (Tenn. Ct. App. Aug. 14, 2002)).

Other factors include

> (1) the extent to which the information is known outside of the business;
> (2) the extent to which it is known by employees and others involved in the business;
> (3) the extent of measures taken by the business to guard the secrecy of the information;
> (4) the value of the information to the business and to its competitors;
> (5) the amount of money or effort expended by the business in developing the information;
> (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Crawford*, --- S.W.3d ---, 2022 WL 554288, at \*10 (citing *Wright Med. Tech., Inc. v. Grisoni*, 135 S.W.3d 561, 589 (Tenn. Ct. App. 2001)).  Viewing the evidence in a light most favorable to Weather King, the Court holds that genuine issues of fact remain for trial over whether Weather King can prove the existence of its trade secrets.  The Court considers the parties' arguments and the proof on each type of trade secret separately in the discussion that follows.

## I. Reasonableness of Weather King's Efforts to Protect the Confidentiality of Information

First and as a general proposition, a jury could find that Weather King took reasonable measures to keep its information secret.  "The reasonableness of [a company]'s actions or inactions with respect to protecting the confidentiality of its trade secrets is a question for a jury." *Niemi v. NHK Spring Co., Ltd.*, 543 F.3d 294, 301 (6th Cir. 2008); *ASC Engineered Sols.*, 2021 WL 2583555, at \*3.  The Sixth Circuit has held that only in an "extreme case" in which "the evidence of reasonable efforts is so utterly lacking" is summary judgment proper on the reasonableness of

the party's effort to maintain the secrecy of its information.  *Niemi*, 543 F.3d at 301 (citing *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 725 (7th Cir. 2003)).

Maupin and American Barn have not shown that this is such an "extreme case."  Weather King has shown, and Defendants do not dispute the showing, that the company offices where Weather King stores its information are located in Paris, Tennessee.  At the time of the alleged misappropriation, Weather King had only 20 employees working at its headquarters.  Weather King secured the building and its offices with locked doors and a security system and limited access to its computer system, all in an effort to maintain the secrecy of its business information. Weather King has shown that most of the information was stored on a secure server and accessed only by employees with company-issued usernames and passwords.  Even then, only designated personnel could access some of the most sensitive information stored on the server.  And physical access to Weather King's server was even more restricted.

While not disputing that Weather King employed these measures, Defendants make much of the measures Weather King did not adopt to protect its secrets.  For example, the company did not designate information as "confidential" and had no policies specifically addressed to the safe handling of "trade secrets."  And there is no real dispute that Weather King never required employees to sign confidentiality agreements or that Weather King did not do background checks to vet employees before granting them access to sensitive information.  *See Gerdes*, 817 F. App'x at 162 (holding that requiring employees to sign confidentiality agreements was a "reasonable measure[] to keep [the company's] business information secret").  In some sense, Maupin and American Barn argue that by failing to take these and other security measures, Weather King simply relied on the loyalty of their employees, a policy that is incompatible with a finding of reasonableness.  "If a company has a trade secret it wishes to protect to preserve its value, mere

18

reliance on a duty of loyalty from its employees is far from 'reasonable.'" *Sigma Corp.*, 2023 WL 2290793, at *6 (citing *Farmers Edge Inc. v. Farmobile, LLC*, 970 F.3d 1027, 1033 (8th Cir. 2020)). Defendants have shown that Weather King could have taken additional precautions.

At the end of the day, "whether efforts taken to maintain the secrecy of a trade secret are reasonable under the circumstances depends on the circumstances" and "what is reasonable for a small company may be different from what is reasonable for a large company." *Niemi*, 543 F.3d at 301 (citing *Learning Curve Toys*, 342 F.3d at 724–25). According to a statement in the Coker declaration, no employer in Henry County, Tennessee has ever adopted the level of security suggested by Defendants' arguments in their Motion for Summary Judgment. Coker Decl. ¶ 209 (ECF No. 103-1). Taking the proof in a light most favorable to Weather King as the non-moving party, Defendants' arguments do not show that this is the "extreme case" where they are entitled to judgment as a matter of law on the reasonableness of Weather King's attempts to secure information it deemed confidential. Whether Weather King's efforts at secrecy and the measures it chose to adopt and those it chose not to adopt were reasonable under all of the facts and circumstances presents a jury question.

## II. Whether Weather King's Business Information Was Publicly Available or Readily Ascertainable

Even though genuine issues of material fact remain on the reasonableness of Weather King's efforts to maintain the secrecy of its information, Defendants argue that most of the information was nevertheless publicly available. "Matters of public knowledge or general knowledge in the industry or ideas which are well known or easily ascertainable, cannot be trade secrets." *ECIMOS*, 971 F.3d at 643 (quoting *Hickory Specs.*, 592 S.W.2d at 587). Defendants

argue that each category of Weather King's business information was publicly available or so widely known in some form or fashion that it cannot be a protected trade secret.

## A. Inventory Counts by Location

For example, Weather King cannot prove its inventory counts at each of its separate dealers and production facilities were trade secrets.  According to Defendants, Weather King inventory counts were common knowledge among Weather King dealers.  The parties take slightly different approaches to what constitutes "inventory counts."  Defendants describe  "inventory" in a more limited way to include only finished products offered for sale on the sales lots of Weather King dealers.  Defendants argue that every dealer knows what it holds in inventory, meaning "inventory counts" are "readily ascertainable."  Defs.' Statement of Undisputed Fact ¶ 44.[3]  Weather King defines "inventory counts" to include inventory counts of both finished buildings and raw materials and has introduced evidence to show that both are critical to more than one phase of its operations. Pl.'s Statement of Add'l Facts ¶ 4.

For purposes of the Motion for Summary Judgment, Weather King has the better of this argument.  Weather King has come forward with proof that "inventory counts" means not just finished products on dealer's sales lots but also raw materials being manufactured into the finished products.  Such information has "independent economic value," bearing as it does on Weather King's production, manufacturing, sales, and pricing, and not being generally known to

---

[3] Weather King contends that Maupin's declaration on this point lacks personal knowledge where Maupin posits Weather King dealers knew what every other dealer also held in inventory. In Weather King's view, Maupin does not have personal knowledge about what facts were known to third parties like the dealers.  The Court tends to agree that Maupin has not shown a basis for his personal knowledge of what information was reasonably known to third-party dealers.  Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge . . . .").

competitors.  The fact that each dealer knew about the inventory of products available for purchase on its sale lot does not actually show that any dealer could know Weather King inventory counts on every other dealer's sale lot, not to mention the inventory counts of raw materials procured and held for production at Weather King's manufacturing facilities.  And nothing in the record suggests that Weather King publicly disclosed the inventory counts or that the information was otherwise easily ascertained by competitors.   A genuine dispute remains then over whether "inventory counts" were public information and suffices to preclude summary judgment on Weather King's claim that its "inventory counts" were trade secrets.

**B. Dealer Contact Information Organized by Drivers that Service Those Locations**

The Motion for Summary Judgment also seeks judgment as a matter of law on Weather King's trade secrets claims based on its dealer contact information.  There is no real dispute that Weather King's website provides the locations and contact information for Weather King dealers across several states, meaning the information cannot be a trade secret.  Defendants' framing of the question, however, does not fully capture the scope of Weather King's trade secrets claim, at least not when accepting as true the evidence marshaled by Weather King.  Weather King has shown that Defendants obtained more detailed information about the organization of Weather King's distribution system and which of its drivers made deliveries to which dealerships.  Weather King alleges that Defendants leveraged the information so that they could falsely tell drivers American Barn was taking over Weather King's business and Weather King would not have the income to pay its drivers.  Am. Compl. ¶ 89.

Much like "a new combination of known steps or processes can be entitled to trade-secret protection," publicly available information combined with other information that is not publicly known may qualify as a trade secret.  *Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas,*

*Inc.*, 53 F.4th 368, 380 (6th Cir. 2022) (citations omitted).  "The fact that some or all of the components of a trade secret are well-known does not preclude protection for a secret combination, compilation, or integration of the individual elements."  *Id.* (quoting Restatement (Third) of Unlawful Competition § 39 cmt. f (Am. L. Inst. 1995)).  Defendants have not shown that Weather King's roster of drivers and the dealerships to which they made deliveries of Weather King products or the manner in which Weather King routed or distributed its products to its dealers was a matter of public record or even reasonably discoverable.  The fact that this information was not generally known or readily ascertainable and would provide economic value to a Weather King competitor shows Weather King could "derive independent economic value" from the information. Defendants' argument about Weather King dealers is therefore unconvincing.

### C. Vendor Information and Pricing

Defendants next argue that Weather King's vendor information and materials pricing cannot constitute a trade secret.  Defendants have introduced evidence that Weather King's vendors advertise in a trade publication known as "Shed Builder Monthly," publicize their pricing for materials, and field phone inquiries from customers about pricing.  Defendants argue then that Weather's vendor information and pricing is readily ascertainable and therefore cannot qualify as a trade secret.  What Defendants' proof does not show, however, is that the prices published by the vendors or quoted to other competitors are the same prices vendors charge Weather King. Weather King has introduced evidence that the company has negotiated its own preferred pricing from vendors.  Taking the proof in a light most favorable to Weather King, the evidence reasonably implies that Weather King enjoys independent economic value from its vendor pricing, information which gives Weather King a competitive advantage in the market for storage buildings and would not be readily available to third parties through a trade publication or a simple inquiry

with the vendor.  A triable issue remains then over whether Weather King's vendor information and pricing is a protected trade secret.

## D. Cost Estimates

With respect to Weather King's cost estimates, Defendants argue that Weather King employees commonly used the company's estimated cost for a product to determine whether the company could discount the product and what the amount of the discount should be.  As part of the pricing process, Weather King employees communicated this information to dealers and sometimes to customers and members of the general public.  Weather King counters that the company generated cost estimates by identifying and compiling multiple data points over a period of years.  Taken in the aggregate, the information represented in the estimates had independent economic value to Weather King's business.[4]  Weather King has also introduced evidence that cost estimates were not shared with dealers or customers.  "Disclosure to potential or actual customers, absent a confidential agreement or understanding, will destroy any protection of that information as a trade secret." *Allied Erecting & Dismantling Co., Inc. v. Genesis Equip. & Mfg., Inc.*, 511 F. App'x 398, 411 (6th Cir. 2013) (citing Ohio trade secrets law).  Because a genuine dispute remains over whether Weather King shared its cost estimates with dealers and customers, the Court cannot grant Defendants judgment as a matter of law on this point.

---

[4] Weather King's briefing suggests that the company tracked costs estimates in a software platform called NumberCruncher.  Weather King alleges that Defendant Gillespie exported the "data components" from NumberCruncher, which Defendants used to replicate Weather King's "software infrastructure" for American Barn.  The Court notes that the Amended Complaint does not contain any stand-along trade secret allegations about the platform or Weather King's "software infrastructure."  For purposes of the Motion for Summary Judgment, the Court will consider the evidence as part of the issue of whether cost estimates were protected trade secrets.

**E. Financial Information**

As for the misappropriation of the company's financial information like profit and loss statements and balance sheets, there is no real dispute about the independent economic value of Weather King's financials.  There is a genuine dispute about whether the financials were "readily ascertainable through *proper* means."  18 U.S.C. §1839(3) (emphasis added).  Defendants cite proof that Maupin discovered Weather King financials in a folder lying in an empty cubicle at Weather King headquarters.  According to Maupin's declaration, the financials were left in an unsealed manila folder for almost a week before he opened the folder and examined them.  Maupin Supp. Decl. ¶ 56 (ECF No. 108-2).  Defendants contend the information cannot be a trade secret if Weather King left it in the open, so to speak.  Weather King answers that the information was electronically stored on the secure server, and only four company employees had authorization to access the financials.  Weather King's controller, Jill Coker, submitted her own declaration and affirmed that she left the financials in a sealed envelope for Tim Boyd, the owner of the company, in a cubicle he used when he was in the office.  Coker Decl. ¶ 7 (ECF No. 103-1).  According to Coker, she left the financials for Boyd in a sealed manila envelope with his name written on it.  *Id.*  Coker was leaving the office early that day and intended for Boyd to receive the financials the next day.  *Id*.  Coker has also declared that photos of the financials were later discovered on Maupin's laptop.  Based on the very different versions of how the financials were left in Weather King's offices and how Maupin came to possess photos of the financials, the dispute, including the credibility of the witnesses, cannot be resolved as a matter of law on summary judgment.

**F. Sales Lot Lease Information**

Along the same lines as their argument about inventory held by Weather King dealers, Defendants argue that information about Weather King's sales lot leases is not a trade secret.

Weather King made monthly commission payments to its dealers and deducted the amount of rent owed for the lease of the sales lots used by the dealers.  So Defendants assert that every dealer knew the amount of the rent and that the financial obligation represented by the rent and its relationship to revenues was common knowledge among Weather King employees and dealers. The rent itself, however, does not tell the full story of the independent economic value of the leases to Weather King's business and its dealer-based sales model.  Weather King did not store the leases themselves on the company's secure server but held them as physical copies in the office of the controller.  Weather King has introduced proof that the amount of rent was only one material element of each lease.  Weather King also cites evidence that Maupin contacted one lot owner, falsely told the owner Weather King did not intend to renew its lease on the property, and asked for the opportunity to rent the lot himself once Weather King's lease expired.  Coker Decl. ¶ 12. All of this raises a triable question for a jury to decide whether the sales lot leases constituted a trade secret, meaning the Court cannot decide as a matter of law whether the sales lot leases are a trade secret.

### G. Engineering Drawings

Defendants have finally argued engineering drawings of Weather King products are accessible on the internet and provided to customers who purchase Weather King products and therefore cannot be protected trade secrets.  There is no real dispute about the fact that Weather King includes a copy of the engineering drawing for a building whenever it sells a unit to the public.  There is also no dispute that certain Weather King engineering drawings for buildings sold in Florida are publicly disclosed under Florida permitting rules.  In other words, some of Weather King's engineering drawings were publicly known or at least easily ascertained through a quick internet search. Weather King's trade secret claim, though, is not based simply on what an

inquiring competitor might be able to discover online.  Posting engineering drawings of some Weather King products online does not necessarily mean all Weather King engineering drawings are publicly known or available.  Weather King has introduced proof to show that the drawings available online show engineering drawings for products sold by Weather King in the Florida market to meet Florida building codes.  Weather King alleges that Defendants misappropriated trade secrets, including engineering drawings, to compete with Weather King in states other than Florida.  Defendants have not introduced any evidence to challenge Weather King's contention that the drawings are not the same.  There is also a question about what engineering drawings Defendants may have obtained without authorization.  There is a difference between providing one engineering drawing in connection with the sale of a product and a competitor obtaining an entire catalog of engineering drawings.

All in all, the Court finds Defendants' arguments about the public availability or disclosure of Weather King's business information to be relevant, just not so one-sided as to entitle Defendants to judgment as a matter of law on Weather King's misappropriation of trade secrets claims.

## CONCLUSION

The Court holds that genuine disputes of material fact remain for trial on Weather King's misappropriation of trade secret claims, both under the federal Defend Trade Secrets Act and the Tennessee Uniform Trade Secrets Act.  Therefore, Defendants' Motion for Summary Judgment is **DENIED**.  Because the Court is not dismissing the federal trade secrets claim, the Court will continue to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over Weather King's state law claims.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: November 6, 2023.