IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| CONSOLIDATED INDUSTRIES, LLC d/b/a WEATHER KING PORTABLE BUILDINGS,<br><br>    Plaintiff,<br><br>v.<br><br>JESSE A. MAUPIN, *et al.*,<br><br>    Defendants. | No. 1:22-cv-01230-STA-jay |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR *IN CAMERA* REVIEW OF WITHHELD DOCUMENTS**

Plaintiff Consolidated Industries, LLC d/b/a Weather King Portable Buildings ("Weather King") submits this brief in support of its motion to compel Defendants to produce for an *in camera* review text communications requested in discovery but withheld on the purported basis of the attorney-client privilege.

**BACKGROUND**

The background of this case is set forth in this Court's summary judgment ruling. Doc. 119 at 2-3. The gravamen of Weather King's claims relates to nine former employees abusing their positions through the creation of a competing entity, Defendant American Barn Co., LLC ("ABCO") to steal Weather King's Western U.S. operations, causing tremendous lost profits.

Weather King served Defendants with letters in June 2022 demanding that they preserve documents relevant to Weather King's anticipated claims, including communications with each other and with other Weather King business relationships. Doc. 1-7. Yet after Weather King served Defendants with written discovery in January 2023, Defendants did not produce a single

text message, and only one of the 10 Defendants produced any email communications. Consequently, the Court ordered forensic examinations of Defendants' cell phones and other devices, which is ongoing. Doc. 121.

Given Defendants' failure to produce the very same records that were the subject of the June 2022 preservation letters, Weather King endeavored to subpoena correspondence and other documents from third parties that Defendants claim do not exist (and that they apparently destroyed). One such entity is JADE Rentals, LLC ("JADE"), located in Illinois. JADE, which was a Weather King business partner, purchases rent-to-own contracts for portable buildings such that it is assigned the right to collect payments from the end users. Both JADE and its principal, Douglas Hines, have helped fund Defendants' business venture and became Defendants' business partners in the ABCO enterprise. *See, e.g.,* Ex. 4, No. 358-60. Having reason to believe that JADE was privy to Defendants' covert discussions about the formation of ABCO and accompanying nefarious activities, and that it provided funding to help launch ABCO, Weather King served JADE with a subpoena directing that it produce documents relating to its communications and other dealings with Defendants. Ex. 1.

After JADE refused to comply with the subpoena, Weather King was forced to file a motion to compel with the United States District Court for the Southern District of Illinois in accordance with Fed. R. Civ. P. 45(d)(2)(B)(i). *See* S.D. Ill. No. 23-mc-113-SPM. Thereafter, with that court's guidance, the parties and JADE agreed that JADE would first produce documents responsive to the subpoena to Defendants' counsel so as to enable Defendants to assert any objections. *See* Ex. 2, 5/10/24 Jt. Status Rpt., ¶ 1.

JADE produced responsive documents to defense counsel, and on May 10, 2024, Defendants produced a privilege log asserting that certain text message communications were

2

being withheld on the basis of an attorney-client relationship between Defendants and Mr. Hines. Ex. 3. The withheld documents include:

- Two pages of screenshots of a text message dated July 27, 2022, from Defendant Ryan Brown to Mr. Hines; and

- Seven pages of screenshots of text messages dated December 31, 2021, between Defendant Jesse Maupin and Mr. Hines.

*Id.* Mr. Hines is licensed to practice law in Illinois, but it is unclear the extent to which he has been practicing law in the last few years.

According to the privilege log, the withheld text message from Brown is a "[c]ommunication to counsel requesting legal advice regarding personal situation" and the withheld text messages between Hines and Maupin are "[c]ommunications to and from counsel requesting and providing legal advice regarding employment contracts." *Id.* In response to Weather King's requests for production, neither Defendants Brown nor Maupin produced these text messages or asserted the attorney-client privilege. *See* Ex. 5 & 6, Resp. to RFP 4 & 12.

During the meet and confer process, Weather King asked Defendants if the messages pertain to Weather King or the claims involved in this litigation, but Defendants refused to provide further details. Ex. 7. As set forth below, Weather King has genuine concerns about whether the attorney-client privilege applies, and therefore, seeks an *in camera* review.

## LEGAL ARGUMENT

Courts routinely order an *in camera* review of documents requested in discovery that are withheld on the basis of an assertion of privilege. *See, e.g., In re Antitrust Grand Jury*, 805 F.2d 155, 168-69 (6th Cir. 1986) (finding that the district court erred by not conducting an *in camera* review); *John B. v. Goetz*, 879 F. Supp. 2d 787, 892 (M.D. Tenn. 2010) ("In evaluating assertions

3

of attorney-client and work product privileges, as procedural matter, the district court should require an *in camera* review of the disputed documents.").

In *United States v. Zolin*, 491 U.S. 554, 572 (1989), the Supreme Court recognized that "a lesser evidentiary showing is needed to trigger *in camera* review than is required ultimately to overcome the [attorney-client] privilege." In the context of the "crime-fraud exception" to the privilege, the Court found that "the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *Id.* (cleaned up). Thereafter, the court has "sound discretion" to engage in *in camera* review "in light of the factual circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through *in camera* review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply." *Id.*

Courts have extended this framework beyond the crime-fraud exception to other aspects of documents withheld on the basis of the attorney-client privilege. *See, e.g., Schilling Foods, LLC v. First Data Corp.*, No. 2:18-cv-02320-MSN-atc, 2020 WL 13111152, at *1 (W.D. Tenn. Oct. 30, 2020); *Second Ave. Museum, LLC v. RDN Heritage, LLC*, 2021 WL 5154210, at *7-8 (M.D. Tenn. Feb. 16, 2021); *Adkisson v. Jacobs Eng'g Grp., Inc.*, 2020 WL 13157995, at *1 (E.D. Tenn. Dec. 7, 2020). Applying this framework here, an *in camera* review is warranted.

**I.     Weather King has a good faith reason to question whether the attorney-client privilege applies.**

There is a "low threshold" for Weather King to demonstrate that the attorney-client privilege may not apply. *Schilling Foods*, 2020 WL 13111152, at *1. Based on the entirety of

4

the circumstances presented in this case, including Defendants' failure to provide basic information so as to allow Weather King to ascertain the merit of the attorney-client privilege asserted, Weather King has a "factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence." *Zolin*, 491 U.S. at 572.

### A. Defendants have not met their burden of invoking the privilege.

In instances such as this "involving both federal and state claims, claims of attorney-client privilege are governed by federal common law." *Pravak v. Meyer Eye Grp., PLC*, No. 2:07-2433, 2009 WL 10664851, at *4 (W.D. Tenn. Oct. 22, 2009);[1] *see also United States v. Roberts*, 84 F.4th 659, 669-70 (6th Cir. 2023) ("A claim of attorney-client privilege is governed by common law, as directed by Federal Rule of Evidence 501.") (citing *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981)); *Bose v. Rhodes College*, No. 16-cv-02308-JTF-tmp, 2017 WL 4479258, at *4 (W.D. Tenn. Oct. 6, 2017), *aff'd* 2017 WL 11358732 (W.D. Tenn. Nov. 9, 2017). The party who asserts the privilege "bears the burden of establishing its application." *Roberts*, 84 F.4th at 670.

"While the purpose of the attorney-client privilege is to encourage clients to communicate freely with their attorneys, the privilege is narrowly construed because it reduces the amount of information discoverable during the course of a lawsuit." *Robinson v. Mathis*, No. 2:20-cv-02435-SHL-atc, 2021 WL 6804133, at *2 (W.D. Tenn. Sept. 14, 2021) (quoting *United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997); *see also In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 294 (6th Cir. 2002). Conclusory assertions are insufficient to satisfy this burden. As noted in *Pravak*:

---

[1] Weather King has asserted a claim under the federal Defend Trade Secrets Act, in addition to state law claims. Doc. 26, Count I.

5

> Blanket assertions of protection under either the attorney-client privilege or work product protection are ineffective to preserve these protections. *Jones v. Boeing Co.*, 163 F.R.D. 15, 17 (D. Kan. 1995). The party asserting the attorney-client privilege must do so with enough specificity to allow the court to "make a determination that the document in question was, in fact, a confidential communication involving legal advice." *In re Search Warrant Executed at Law Offices of Stephen Garea*, No. 97-4112, 1999 U.S. App. LEXIS 3861, at *7 (6th Cir. March 5, 1999). Similarly, Rule 26(b)(5)(A)(ii) of the Federal Rules of Civil Procedure requires parties withholding otherwise discoverable information under the work product doctrine to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii).

2009 WL 10664851, at *5; *see also Steede v. Gen. Motors, LLC*, No. 2:11-cv-02351-STA, 2012 WL 6846529, at *9 (W.D. Tenn. Nov. 2, 2012), *aff'd* 2013 WL 142484 (W.D. Tenn. Jan. 11, 2013) ("To meet this burden, the party seeking to invoke the privilege must provide enough information for the other parties and the reviewing court to determine whether the item withheld does in fact meet the legal requirements for application of the privilege.") (citations omitted).

Where a privilege log fails to adequately describe a withheld document's contents and "does not afford the court or the requesting party information sufficient to determine whether [the party's] assertions of privilege have merit[,] . . . claims of attorney-client privilege fail." *Pravak*, 2009 WL 10664851, at *5; *see also Nozinich v. Johnson & Johnson, Inc.*, No. 09-2105-V, 2011 WL 13124088, at *1 (W.D. Tenn. Feb. 22, 2011) (requiring a privilege log to contain "an explanation of the privilege claimed"); *First Horizon Nat'l Corp. v. Houston Cas. Co.*, No. 2:15-cv-2235-SHL-dkv, 2016 WL 5867268, at *5 (W.D. Tenn. Oct. 5, 2016) (similar and finding that "[t]he log 'must be sufficiently detailed so that the court can judge the propriety of the assertion of the privilege'") (citation omitted). Thus, as noted by Judge Breen:

> The party invoking the privilege must "produc[e] evidence sufficient to show the existence of a relationship giving rise to the privilege. The burden of production is not satisfied by mere conclusive or *ipsa dixit* assertions, for any such rule would foreclose meaningful inquiry into the existence of the privilege." *Am. Health Sys.*,

6

*Inc. v. Liberty Health Sys.*, Civ. A. No. 90-3112, 1991 WL 42310, at *5 (E.D. Pa. Mar. 26, 1991) (internal citations omitted); *see also Case v. Unified Sch. Dist. #233*, No. Civ. A. 94-2100-GTV, 1995 WL 358198, at *3 (D. Kan. June 2, 1995) (same). "[D]escribing a document as 'legal advice' or 'work product' is not the same as *establishing* that the documents are immune from discovery." *Coltec Indus., Inc. v. Am. Motorists Ins. Co.*, 197 F.R.D. 368, 373 (N.D. Ill. 2000). In short, generalized assertions that a communication is privileged or that a document is protected work-product will not suffice.

*National Labor Relations Bd. v. NPC Int'l, Inc.*, No. 13-cv-0010, 2017 WL 634713, at *8 (W.D. Tenn. Feb. 16, 2017).

Courts have found that an *in camera* review is warranted when a party fails to provide sufficient information for an assessment of whether the privilege applies. For instance, in *Adkisson*, *supra*, the court found:

> The Court finds that Plaintiffs have made a showing of a factual basis to support a good faith belief that an *in camera* review of the challenged documents contained in Defendant's privilege log would reveal communications unprotected by the attorney-client privilege. . . . [T]he Court finds that Defendant has not provided the Court "with enough information for it to make a determination that the document in question was, in fact, a confidential communication involving legal advice." *In re Search Warrant Executed at Law Offices of Stephen Garcia*, 173 F.3d 429 (Table), 1999 WL 137499, at *1–2 (6th Cir. Mar. 5, 1999); *see also United States v. Fresenius Med. Care Holdings, Inc.*, No. 3:20-CV-00158, 2020 WL 3956647, at *7 (M.D. Tenn. July 6, 2020) ("Applying this standard to the example above, the Court finds that it fails to explain the nature of the legal issue for which advice was sought. While the description does provide some detail (the email was related to the bone mineral metabolism initiative), it does not include enough information for the court to determine that the document is a confidential communication involving legal advice."). Additionally, the Court finds that with respect to the common interest exception, the Court is not satisfied based on the brief descriptions in the privilege log.

2020 WL 13157995, at *1-2; *see also Second Ave. Museum*, 2021 WL 5154210, at *5 ("While the party raising a privilege has the burden of establishing the existence of the privilege, privilege cannot be established as a blanket claim, but must be asserted, challenged, and examined on a document-by-document basis.") (cleaned up); *Flexider USA Corp. v. Richmond*, 2021 WL 6496809, at *3 (M.D. Tenn. Mar. 8, 2021) (finding that it was "reasonable for [plaintiff] to

7

challenge [defendant's] refusal to produce the document at issue" given defendant's "fail[ure] to assert either attorney-client or work product protection 'with adequate particularity and context' for the assertion to be reasonably evaluated") (citation omitted).

Here, Defendants have "not afford[ed] the court or the requesting party information sufficient to determine whether [their] assertions of privilege have merit[.]" *Pravak*, 2009 WL 10664851, at *5. In fact, when simply asked "whether those communications relate in any way to the claims at issue in this lawsuit or any conduct affecting or relating to Weather King, including but not limited to Mr. Maupin's departure from Weather King or the creation of a new business," defense counsel responded: "[Y]ou are asking us to waive the privilege and disclose the contents, which we can't do." Ex. 7. Given Defendants' failure to meet their burden of sufficiently articulating that the privilege applies, an *in camera* review is warranted.

> **B.   There is reason to question whether Defendants sought advice from Mr. Hines in his capacity as an attorney and whether he was primarily acting in that capacity.**

"In ruling on issues of privilege, '[t]he mere fact that a person is an attorney does not render privileged everything he does for and with a client.'" *John B.*, 879 F. Supp. 2d at 893 (quoting *United States v. Bartone,* 400 F.2d 459, 461 (6th Cir. 1968)); *see also Leazure v. Apria Healthcare Inc.*, No. 1:09-cv-224, 2010 WL 3895727, at *1 (E.D. Tenn. Sept. 30, 2010) ("[T]he possession of a law degree and admission to the bar is not enough to establish a person as an attorney for purposes of determining whether the attorney-client privilege applies."). For the communications to be subject to the attorney-client privilege, the following criteria must be met:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii)

8

assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Schilling Foods,* 2021 WL 5154242, at *2 (citations omitted).

Here, there is reason to question whether either Defendant Brown or Defendant Maupin "sought to become a client" and whether the withheld communications were made for the purpose of securing either an "opinion on law" or "legal services." *Id.* During the parties' meet and confer, Defendants' counsel stated that they lack awareness of any engagement agreement or invoice for legal services. *See Second Ave. Museum*, 2021 WL 5154210, at *6 (citing lack of an engagement letter or invoicing as "persuasive evidence" of the lack of an attorney-client relationship).

"Importantly, 'a communication between a client and his attorney which serves primarily a business or administrative purpose as opposed to providing legal advice is a communication not protected by the attorney-client privilege.'" *Schilling Foods,* 2021 WL 5154242, at *3 (W.D. Tenn. June 24, 2021) (quoting *Leazure v. Apria Healthcare Inc.*, 2010 WL 3895727, at *2 (E.D. Tenn. Sept. 30, 2010)). As explained in *Guy v. Yusen Logistics (Americas), Inc.*, No. 18-CV-2117-MSN-tmp, 2018 WL 8547666, at *3 (W.D. Tenn. Dec. 20, 2018), *objections overruled,* 2019 WL 2465173 (W.D. Tenn. Apr. 11, 2019):

> Further, "[t]he attorney-client privilege applies '[w]here legal advice of any kind is sought.'" *Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 570 (6th Cir. 2015) . . . . "Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct." *Alomari*, 626 F. App'x at 570 (quoting *In re Cty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)). "It is now generally accepted that communications between an attorney and client of **primarily a business nature** are outside the scope of the privilege." *Glazer v. Chase Home Fin. LLC*, No. 1:09-cv-1262, 2015 WL 12733394, at *4 (N.D. Ohio Aug. 5, 2015); *see also Edwards v. Whitaker*, 868 F. Supp. 226, 228 (M.D. Tenn. 1994) (the attorney-client privilege "only applies if the lawyer is providing legal advice or services, and [it] will not protect disclosure of non-legal communications where the attorney acts as a business or economic

9

> advisor." (internal citation and quotation omitted)). "When a communication involves both legal and non-legal matters, we 'consider whether the ***predominant purpose*** of the communication is to render or solicit legal advice.' " *Alomari*, 626 F. App'x at 570 (quoting *In re Cty. of Erie*, 473 F.3d at 419); *see also Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 37-38 (E.D.N.Y. Nov. 1, 2013) ("Each attorney-client communication need not specifically ask for legal advice, but the party asserting the privilege must first establish that the information is sent to counsel in order for counsel to provide legal advice." (internal citation and quotation omitted)).

(Emphasis added); *see also United States v. Roberts*, 84 F.4th 659, 670 (6th Cir. 2023) (quoting *Alomari*); *Guy*, 2019 WL 2465173, at *2 (similar); *John B.*, 879 F. Supp. 2d at 894 (finding that "[w]here the facts suggest combined business and legal advice in a document, courts can inquire about which purpose predominates" and that "if the lawyer acted as a business advisor or agent, then the information is not privileged.").

The predominant purpose "should be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting legal authorities and advice that can be given by a non-lawyer." *Alomari*, 626 Fed. Appx. at 570 (quoting *In re Cnty. of Erie*, 473 F.3d 413, 420-21 (2d Cir. 2007)). To determine a subject communication's "predominant purpose," courts analyze the specific context in which the communication took place. *See United States v. Int'l Bus. Machs. Corp.*, 66 F.R.D. 206, 213 (S.D.N.Y. 1974) ("The question of whether a document was prepared primarily to seek legal advice must be resolved by examining the circumstances under which the document was prepared."); *In re Cnty. of Erie*, 473 F.3d at 421 ("The predominant purpose of a particular document—legal advice, or not—may also be informed by the overall needs and objectives that animate the client's request for advice.").

Communications involving primarily business or economic advice fall outside the scope of the privilege because that advice can be rendered by a non-lawyer. *See Edwards v. Whitaker*,

10

868 F. Supp. 226, 228 (M.D. Tenn. 1994) (holding subject communications nonprivileged because attorneys "acted in a supervisory capacity during the period in question"). Thus, communications involving advice that could have been rendered by non-lawyers are generally not considered privileged. *See, e.g.*, *Amway Corp. v. Procter & Gamble Co.*, No. 1:98-CV-726, 2001 WL 1818698, at *6 (W.D. Mich. Apr. 3, 2001) (holding subject communications nonprivileged despite some discussion of pending or contemplated litigation because authors and recipients were "generally business people" and comments were "related to public relations, not legal matters"); *Glazer v. Chase Home Fin. LLC*, 2015 WL 12733394, at *4 (N.D. Ohio Aug. 5, 2015) (communications from legal counsel deemed not privileged because they "appear[ed] to be of a commercial rather than legal character, and could just as easily be performed by non-attorneys."); *Koumoulis*, 295 F.R.D. at 44 (holding unprivileged communications concerning "advice on human resources issues, summaries of fact-related communications and instructions from outside counsel on conducting the internal investigations.").

As an example, after conducting an *in camera* review of email correspondence in *Flexider USA Corp. v. Richmond*, 2021 WL 6496809, at *6 (M.D. Tenn. Mar. 8, 2021), the court found:

> [T]he communication does not involve *legal* advice, which is of course vital to any finding that attorney-client privilege applies. The purpose of the inquiry is instead to procure guidance regarding Total Quality's response to a correspondence from an actuary concerning questions of storage and insurance, which is more appropriately described as *business* advice that does not enjoy protection under the privilege. *Burton v. Zwicker & Assocs., PSC*, No. CV 10-227-WOB-JGW, 2012 WL 12925675, at *2 (E.D. Ky. Jan. 9, 2012). Even though in-house corporate counsel is copied on the email, "[t]here is nothing inherent in the email[ ] demonstrating that legal advice was being sought." *Id.* Therefore, because Total Quality has failed to "clearly demonstrate that the communication in question was made for the express purpose of securing legal not business advice," *id.* (quoting *Kramer v. The Raymond Corp.*, 1992 WL 122856, at *1 (E.D. Pa. May 29, 1992)), the Court finds that the email is discoverable and must be produced.

(Emphasis in original); *see also Adkisson*, 2020 WL 13157995, at *2 (finding that *in camera* review was warranted to assess whether counsel was "acting as a business advisor); *Guy*, 2018 WL 8547666, at *4 ("Planning for and conducting [matters contained in communications] are often conducted internally by a company's human resources department. Therefore, the court concludes that the predominant purpose of the communications was not to solicit legal advice.").

Here, the Court should assess whether Defendants truly approached Mr. Hines in his capacity as a lawyer seeking *legal* advice, or instead, whether they approached him in his capacity as principal of JADE seeking business advice or discussing their joint business venture. If the "predominant purpose" of the communications was the latter, then Defendants may not invoke the attorney-client privilege. *Alomari*, 626 F. App'x at 570.

Indeed, the withheld text communications between Messrs. Maupin and Hines took place merely three days after Mr. Maupin texted Mr. Hines: "I'm about to land in Phoenix and will have ears on me so if I am short and don't answer certain things you know what's up." Ex. 4 at No. 273-74.  And they took place the same day that Mr. Maupin texted Mr. Hines: "big and good things are coming!!" *Id.* at 276.[2]  There is ample reason to believe that Mr. Maupin was not seeking legal advice, but instead, was primarily interested in soliciting Mr. Hines's financial help and other business assistance to launch ABCO.

### C.     The credibility of the actors is in question.

Finally, Weather King has a good faith basis to request an *in camera* review of the correspondence given credibility questions about Defendants as well as Mr. Hines.  First, the subpoena was necessary given that each of the Defendants destroyed the text messages and other

---

[2] ABCO was incorporated on February 23, 2022, and Weather King has reason to believe that Mr. Maupin began making plans in late 2021.

12

communications that Weather King demanded be preserved. Mr. Hines represented to Defendants that on June 1, 2022, "I advised David Sullivan [Weather King President] that I was not involved and had *no idea* what had transpired." Ex. 8, Hines 8/8/23 letter (emphasis added). Yet, ABCO represented in its interrogatory responses that discussions with Mr. Hines began in "about the first part of May, 2022." Ex. 9, ABCO 4th Supp. Resp. to Pl.'s Ig. No. 12.

In fact, neither Mr. Hines nor ABCO told Weather King the truth. It is clear from the text messages produced by JADE that Mr. Hines and Mr. Maupin were conniving at least as early as December 2021. *See* Ex. 4, No. 273-74, 276, 287, 300. The lack of candor exhibited by the parties to the communications at issue bolsters Weather King's justification in requesting that the Court review the withheld documents.

## II.     Other pertinent factors weigh in favor of an *in camera* review.

Again, Weather King faces a "low threshold" to demonstrate the potential relevance of the withheld communications. *Schilling Foods*, 2020 WL 13111152, at *1. Given the timing of Mr. Maupin's communications with Mr. Hines, it is quite possible that they relate to issues relevant to this lawsuit, such as whether Mr. Maupin and other Defendants were planning to line up Weather King's employees and other business relationships and otherwise interfere with Weather King's business relationships in breach of their duty of loyalty. The communications may also impeach Defendants' and Mr. Hines's claims that they had no discussions about forming a relationship until May or June 2022. The timing of Mr. Brown's communication to Mr. Hines (July 2022) in comparison to Weather King's litigation hold letter (June 2022) may also be relevant to Defendants' spoliation of evidence in this case.

Because the Court would be reviewing fewer than 10 pages of screenshots, the *in camera* review would impose a minimal burden on the Court. *See Adkisson*, 2020 WL 13157995, at *2

13

("The number of documents to be reviewed is not voluminous and the Court believes that an *in camera* review of these documents will establish whether the claimed exceptions to attorney-client privilege and work product protections are applicable."). Weather King respectfully submits that the potential importance of the withheld communications justifies the burden imposed by a review.

## CONCLUSION

For the foregoing reasons, Weather King respectfully requests that the Court grant its motion and review the withheld documents.

Respectfully submitted,

BUTLER SNOW LLP

*/s/ David L. Johnson*
David L. Johnson, BPR #18732
John H. Dollarhide, BPR #40041
150 3rd Avenue South, Suite 1600
Nashville, TN 37201
(615) 651-6700
david.johnson@butlersnow.com
john.dollarhide@butlersnow.com

Daniel W. Van Horn, BPR #18940
6075 Poplar Ave., Suite 500
Memphis, TN 38119
(901) 680-7200
Danny.VanHorn@butlersnow.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2024, I filed the foregoing with the Court using the ECF system, which will provide notice and a copy to counsel of record:

Thomas G. Pasternak (admitted pro hac vice)
Benjamin S. Morrell (TBPR No. 35480)
TAFT STETTINIUS &HOLLISTER LLP
111 East Wacker Drive, Suite 2600
Chicago, IL 60601
Telephone: (312) 527-4000
Facsimile: (312) 527-4011
tpasternak@taftlaw.com
bmorrell@taftlaw.com
*Attorneys for Defendants*

And a copy has been provided via fax to the following:

JADE Rentals LLC
c/o Douglas E. Hines
The Law Offices of Douglas E. Hines. P.C
P.O. Box 369
Harrisburg, IL 62946
FAX:  618-252-1103
*Counsel for JADE Rentals LLC*

                                                     */s/  David L. Johnson*
                                                     David L. Johnson

87983070.v1