## UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

CONSOLIDATED INDUSTRIES, LLC
d/b/a WEATHER KING PORTABLE
BUILDINGS,

                Plaintiff,

v.

JESSE A. MAUPIN, BARRY D.
HARRELL, ADRIAN S. HARROD,
LOGAN C. FEAGIN, STEPHANIE L.
GILLESPIE, RYAN E. BROWN,
DANIEL J. HERSHBERGER, BRIAN
L. LASSEN, ALEYNA LASSEN, and
AMERICAN BARN CO., LLC,

                Defendants.

Civil Action No. 1:22-cv-01230-STA-jay

District Judge Anderson

Magistrate Judge York

## RESPONSE IN OPPOSITION TO PLAINTIFF'S
## MOTION FOR SANCTIONS

Before filing the complaint, Plaintiff Weather King sent two letters to individuals who would later become involved in this case. One letter instructed recipients to preserve documents and information. The other instructed recipients to destroy documents and information. As one can imagine, this led to much confusion. Over the course of this lawsuit, Defendants Jesse Maupin, Barry Harrell, Adrian Harrod, Logan Feagin, Stephanie Gillespie, Ryan Brown, Daniel Hershberger, and American Barn Co., LLC (the "ABCO Defendants") produced over 76,000 pages of documents to Weather King after agreeing to a detailed forensic protocol that involved imaging their electronic devices and lengthy negotiations over search terms and other parameters to narrow the voluminous corpus of documents collected. They provided discovery responses and then supplemented them, some up to four or five times.

Despite having received robust productions of documents and detailed, frequently supplemented discovery responses, Weather King moves for sanctions a second time, after the Court denied its first motion. This time, Weather King requests that the Court issue a default judgment against all 10 Defendants for alleged discovery misconduct and skip over the remainder of discovery, dispositive motions, and the chance of a jury ever considering Weather King's claims on their actual merits. In its motion seeking severe, case-ending sanctions against all of the Defendants, however, Weather King repeatedly fails to show its work. It attributes Defendants' actions to malice, which can much more plausibly be explained by misunderstanding. It relies on conjecture rather than fact to support its allegations of bath faith. And it fails to properly support its six-figure fee application.

Weather King seeks collective punishment—a default judgment and hundreds of thousands of dollars—against all of the Defendants, despite having deposed only four of them. Weather King does not make many (if any) specific allegations of misconduct against several individual Defendants, and instead treats them all as the same, in spite of the fact that both the federal rules and due process demand an individualized inquiry. Indeed, Weather King fully admits that it "is in the process of scheduling the other Defendants' depositions, which may necessitate supplementation of Weather King's briefing." (D.E. 185-1, Memo. of Law in Supp. of Pl.'s Mot. for Sanctions ("Pl.'s Br."), at 12 n.5.) The Court should decline Weather King's invitation to engage in piecemeal adjudication of its casual "shoot first, ask questions later" approach to seeking extreme sanctions. For these reasons, discussed more fully below, the motion for sanctions should be denied.

## BACKGROUND

This lawsuit involves allegations of trade secret misappropriation and related claims after

former Weather King employees left the company to start their own business, American Barn Co., LLC ("ABCO"). (*See* D.E. 119 at 2–3.) The parties have engaged in several rounds of discovery, detailed below.

## I. Defendants received multiple communications regarding discovery obligations that were confusing, if not contradictory.

Prior to Weather King initiating this lawsuit, Defendants each received a letter from Weather King's counsel on or about June 13, 2022. (*See* D.E. 1-7.) This letter directed them to preserve any documents and communications relevant to the anticipated litigation. (*Id.* at 2.) Upon receiving this letter, Defendants took steps to comply, with the head of ABCO, Jesse Maupin, issuing a directive to both office staff and field personnel to maintain all materials requested in the letter. (**Ex. A**, Maupin Dep. 68:14–70:03.)

After that, Maupin had a conversation with Scott Berryman, one of Weather King's owners. Referring to the June 13, 2022 Letter, Berryman told him: "don't worry about that letter. There's not going to be any lawsuit." (*Id.* at 513:17–14:04.) Maupin then communicated Berryman's statement to the other Defendants. (*Id.* at 514:03–04, *id.* at 514:23–24 ("I told them that Scott said there wasn't going to be any lawsuit. Don't worry about that letter."), *id.* at 518:01–04.)

Then, on November 16, 2022, Weather King's counsel sent a second letter (the "Second Letter") to many dealers and vendors who had industry relationships with Defendants. (**Ex. B**, Nov. 16, 2022 Ltrs. from Butler Snow.) Copies of these letters found their way to several Defendants, which introduced significant confusion. Unlike its predecessor, the Second Letter demanded the following:

> (a) returning all Weather King drawings/plans/blueprints or any other Weather King property in your possession; (b) *confirming that any electronically-stored copies of such Weather King property have been destroyed*; (c) assuring that your company will not make use of any Weather King property in the future; and (d) explaining the

> circumstances in which your company has made use of any Weather King property
> in furtherance of any business other than Weather King business.

*Id.* at 2 (emphasis added). As such, the Second Letter muddied the waters as to whether Defendants were expected to retain or destroy certain materials that could be relevant to the anticipated litigation. The apparent contradiction between the two letters, in addition to Berryman's statement to Maupin, predictably left the ABCO Defendants uncertain as to their proper course of action.

The resulting confusion extended beyond the ABCO Defendants themselves. On January 27, 2023, Old Hickory Buildings and Sheds—a non-party to this lawsuit—sent a letter to "all former Weather King dealers, excluding current dealers for Old Hickory Sheds, LLC" (the "Old Hickory Letter") referencing the demands of the Second Letter. (**Ex. C**, Ltr. from Old Hickory.) This letter also requested that the recipients "destroy" certain documents in their possession prepared and stamped by Old Hickory. (*Id.*) The Old Hickory Letter added to the confusion caused by Weather King's shifting demands in their two letters and Berryman's statement thus far.

Despite the contradictory instructions, the ABCO Defendants attempted to comply with the demands of the letters, and respond to Weather King's subsequent discovery requests, based on their best understanding of the obligations imposed at the time. (*See generally* **Ex. D**, ABCO Defs.' Omnibus Disc. Resps.) As the case progressed and Defendants came to better understand their obligations, they supplemented and amended their discovery responses, several times over in some instances. (*Id.*)

## II. The ABCO Defendants' responses were the result of confusion and/or miscommunication.

As described above, Defendants were caught between seemingly contradictory directives—preserve documents on the one hand, and destroy them on the other. Weather King has consistently attributed to malice nearly all discovery issues that have arisen in this case, even in the

face of more plausible explanations. Weather King's position, however, has been undercut by testimony elicited during the depositions of certain ABCO Defendants in January and February of this year.

Jesse Maupin testified as to his confusion when attempting to respond to Weather King's requests for information. (Maupin Dep. 63:02–67:20; *see also* **Ex. E**, Harrod Dep. 27:19–31:14, *id.* at 39:18–40:15; **Ex. F**, Feagin Dep. 30:14–40:20.) For instance, when asked why he had not produced any notes in his responses, Maupin explained that he believed that he was only required to turn over paper documents or emails, stating that he does not keep notes or ledgers and that none of the other Defendants did either. (Maupin Dep. 65:22–66:03.) When asked about the materials on his phone, Maupin testified that he understood such information would eventually be retrieved during a forensic examination, and that this would not be an issue since he had already been instructed not to delete anything. (*Id.* at 66:08–11 ("I was told the cell phones will end up getting turned over and everything will be retrieved off of that. *Don't delete anything, and we didn't.*"), *id.* at 67:05–06 ("Because it was going to be retrieved off of the telephones for the forensic analysis."), *id.* at 85:16–18 ("I didn't know [forensic examination] was a consequence. I was told they were going to get turned over anyways"), *id.* at 86:14–16 ("That you're going to end up giving them up anyways.").) This understanding was consistent with instructions relayed to other Defendants, including Logan Feagin, who testified that he had been told to turn over his computer and cell phone. (Feagin Dep. 30:23, *id.* at 40:07–08 ("I thought you got them when you went through my phone.").)

In addition to his confusion about relevant devices, Maupin candidly admitted that he misunderstood what constituted a "document" under the applicable discovery obligations. Maupin

testified: "I must have misunderstood what a document is. I thought a document was something that you hand somebody, a physical – that had a physical substance to it." (Maupin Dep. 80:24–81:03; *see id.* at 82:08–09 ("I thought a document was something that was physical, and it could be handled and given to someone."), *id.* at 87:03–04 ("I didn't know the communications were documents."), *id.* at 93:23–24 ("I didn't – like I said earlier, I didn't know test messages were documents."), *id.* at 171:01–03 ("No. I mean, this was – like I said, I didn't – when – I didn't know a text message was a document."), *id.* at 318:03–05 ("I mean, it's probably because I – like I had stated earlier, I didn't know a text message was a document, so that was my understanding on all of that."), *id.* at 484:19–86:18 (reiterating that he did not believe verbal or texted communications would be considered "documents").)

Feagin and Harrod similarly expressed confusion as to their discovery obligations. Both testified that they believed the Second Letter directed them to delete any Weather King-related information. (Harrod Dep. 27:22–24 ("No. I tried my best after they issued that statement about deleting things to get rid of everything I had."), *id.* at 29:06–07 ("Well, because I got a letter from, you know, from the lawyer saying to get rid of that stuff"), *id.* at 30:24–31:01 ("Well, somebody said delete all your stuff that has any relation to Weather King. It wasn't Jesse. It was something that we got."), *id.* at 31:08–14 ("I remember – and I may be wrong, but I remember, you know, something directing us to get rid of stuff . . . that wasn't our property, and so I kind of took that to heart and went through just about everything I had and made sure I, you know, got rid of stuff."), *id.* at 39:24–40:01 ("Okay. Honestly, I swear there was something that said to get rid of the Weather King stuff off your, you know, that was not for your use."); Feagin Dep. 34:10–11 ("We got a letter that said to destroy documents from you."); *id.* at 35:05–06 ("It was a letter I believe

6

from Butler Snow that said destroy evidence.").)

### III.    Defendants supplemented their discovery responses in good faith.

Despite the confusion described above, Defendants made substantial efforts to comply with their discovery obligations by responding to the letters and later supplementing or amending their responses to Weather King's requests on at least five separate occasions. (*See* Ex. D (five sets of supplemental responses from ABCO, four sets of supplemental responses from Maupin with multiple amendments, supplemental responses from Harrod, and supplemental responses from Feagin); Maupin Dep. 26:21–28:21, *see id.* at 428:21–29:24 (Maupin supplemented and later admitted possession of certain documents).)

When Weather King later issued subpoenas to Defendants and non-parties related to Defendants, Defendants responded with their own letter. (*See* **Ex. G**, Aug. 8, 2023 Exemplary Ltr. Resp. to Subpoena.) Rather than refuse to comply, Defendants' letter maintained their stance of cooperation, and simply conveyed their jurisdictional objections and understanding that the individuals and entities subpoenaed could not have had any relevant dealings with ABCO. (*Id.*) These objections were not a nefarious delay tactic, but were based off of legal advice obtained from attorney Douglas Hines—another individual Weather King has not deposed. (Maupin Dep. 479:11–14 ("[T]here was a letter that I had done up that was something to the extent of an objection. I don't remember the context of it, but it was a letter that I had did."), *id.* at 479:23–480:01 ("Yes. And I don't know if that's attorney client. I don't know how all that works, but I think that's who I got it from" in reference to Hines).) Additionally, Maupin testified that he did not understand that Defendants' opposition to the subsequent Motion to Compel was in reference to the subpoenas or the requested digital materials. (*Id.* at 83:02–06 (Maupin did not understand that the opposition to the motion to compel forensic examination was in response to a motion asking why they did not

produce text messages).)

Additionally, Weather King omits from its brief that throughout this entire discovery process, Defendant Harrod was experiencing severe health issues that required frequent hospitalization and treatment. (**Ex. H**, Emails & Commc'ns Regarding Harrod's Hospitalizations from Nov. 11, 2022 to Aug. 4, 2023.) These health interruptions and lasting side effects of treatment reasonably hamstrung Mr. Harrod's comprehension and ability to fully comprehend Weather King's multitude of directives and respond to their numerous discovery requests. (**Ex. I**, Harrod Decl.; Harrod Dep. 97:25–98:04 ("[I]t's hard to recall all that that transpired. And in the meantime, I mean, right in the middle of all that, a month – well, in – in October, you know, I went in the hospital and almost died, so I just was out of it for a long time.").) Despite these challenges, Mr. Harrod still supplemented his responses when able, and made himself available to be deposed upon request.

As for Defendants Hershberger, Gillespie, and Brown (as well as the Lassen Defendants, who are not represented by undersigned counsel), Weather King chose to move for sanctions against them despite never having taken their depositions. (Pl.'s Br. at 12.)

This is also not the first time Weather King has moved for sanctions against Defendants in this case. Last time, the Court denied the motion, finding that sanctions were not warranted, and reminded Defendants of their discovery obligations. (D.E. 111 at 13.) The ABCO Defendants took this seriously. Soon after, they agreed to a forensic protocol, began producing tens of thousands of documents to Weather King, and further supplemented and amended their discovery responses.

## LEGAL STANDARD

Weather King seeks sanctions pursuant to various sections of Federal Rules of Civil Procedures 16 and 37, and the Court's inherent authority. For the extreme sanctions Weather King seeks

here, a showing of bad faith or willfulness is required. *Telerico v. Nationwide Mut. Fire Ins. Co.*, No.
11-10702, 2011 WL 6986757, at *1 (E.D. Mich. Sept. 9, 2011) (report and recommendation),
*adopted*, 2012 WL 84546 (E.D. Mich. Jan. 11, 2012). "In this circuit, courts are to consider (1)
whether the adversary was prejudiced by the sanctioned party's failure to cooperate in discovery,
(2) whether the sanctioned party was warned that failure to cooperate could lead to such a sanction,
and (3) whether less drastic sanctions were imposed or considered before dismissal was ordered."
*Id.* (cleaned up). Dismissal or default judgment is therefore "the sanction of last resort." *Id.* (citing
*Beil v. Lakewood Eng'g & Mfg. Co.*, 15 F.3d 546, 552 (6th Cir. 1994)).

## ARGUMENT

I.    **Defendants have not exhibited bad faith or other misconduct in their responses to Weather King's discovery requests that merits sanctions.**

As described herein, the ABCO Defendants have not exhibited, and Weather King has not
otherwise shown, the necessary *mens rea* of bad faith throughout the discovery process in this case.
Instead, Weather King's bald assertions rely on a complicated web of implication rather than on
the much simpler explanation that any delay or mistake on the part of the ABCO Defendants in
responding to Weather King's numerous discovery requests was a product of confusion or mis-
communication—some of which was caused by Weather King's own contradictory instructions.

A.    **Defendants did not exhibit bad faith in their multiple efforts to comply with Weather King's discovery requests.**

Weather King's assertion that Defendants intentionally withheld documents or attempted
to evade their discovery obligations lacks evidentiary support. (*See* Pl.'s Br. at 17.) As made clear
through both deposition testimony and supplemental responses, the ABCO Defendants, among
other things, misunderstood what qualified as a "document" and did not act with the intent to
deceive or obstruct. (*See, e.g.*, Maupin Dep. 80:24–93:24, *id.* at 171:01–03, *id.* at 318:03–05.)

9

Weather King claims that the Defendants did not all "separately and fortuitously make an innocent mistake," suggesting that all acted in bad faith. (Pl.'s Br. at 17.) Yet, this conclusion is unsupported by any specific exhibit or testimony indicating intentional wrongdoing. To the contrary, Weather King seems to disregard this Court's own language from the August 29, 2023 Order stating that "[t]he Court accepts Defendants' assertions that they do not remember certain events, they may not understand the definition of some terms such as 'financial support,' or even that they may no longer possess some documents." (D.E. 111 at 13.) In that same Order, the Court further directed Defendants to supplement their discovery responses, which Defendants did up to *five separate times*. (*Id.* at 13; Ex. D.)

Weather King's theory of collective bad faith also ignores that not all Defendants have been deposed, and that many who were did, in fact, clarify their earlier misunderstandings and supplement their responses accordingly. (Ex. D.) There is no basis to impute the conduct of one or two individuals to all 10 Defendants, especially where Weather King did not bother to depose over half of them before filing this motion. Rather than presenting direct evidence of bad faith from each individual, Weather King extrapolates broadly from perceived inconsistencies and attempts to attribute those to all parties.

"The general rule is that one party to litigation will not be subjected to sanctions for failure to cooperate in discovery because of the failure of another to comply with discovery, absent a showing that the other party controlled the actions of the non-complying party." *Peltz v. Moretti*, 292 F. App'x 475, 479 (6th Cir. 2008) (cleaned up) (citing *Patton v. Aerojet Ordnance Co.*, 765 F.2d 604, 606 (6th Cir. 1985). Furthermore, courts "must consider the propriety of the dismissal order with respect to each of the individual plaintiffs." *Patton*, 765 F.2d at 606. Accordingly, not only has

10

Weather King failed to demonstrate bad faith, but is attempting to improperly impose collective sanctions, in direct contradiction of the legal standards and this Court's prior findings.

**B.      Defendants did not intentionally interfere with Weather King's subpoenas.**

Weather King's subpoena-related sanctions request similarly falls short of the required showing of bad faith. The standard remains whether Defendants acted with intent to obstruct discovery, and that standard has not been met.

In support of its request for sanctions for allegedly interfering with their subpoenas, Weather King relies in part on *Covert Manufacturing, Inc. v. Covert Innovations, LLC*, No. 1:21-cv-1682-DAR, 2024 WL 904404, at *1 (N.D. Ohio Mar. 1, 2024). In *Covert Manufacturing*, the district court discussed a party's direction to non-parties to not comply with a subpoena. *Id.* In that case, the court did find that the party had improperly directed the non-parties to disobey the subpoena, but explicitly declined to impose sanctions. *Id.* at *8–9. Instead, the court ordered the parties to simply respond to the subpoena. *Id.* at *9 ("Though the Court finds [the party]'s actions are improper and has the authority to issue sanctions, it declines to do so at this time" and ordering the parties to produce the subpoenaed documents as that "resolution is sound and in the best interest of judicial economy").

As courts routinely recognize, sanctions are a last resort. *Telerico*, 2011 WL 6986757, at *1. Here, the preferred remedy has already been instituted, with the court denying Defendants' motion for a protective order and directing them to comply with Weather King's subpoena. *See* D.E. 96. Accordingly, sanctions are inappropriate.

**C.      Defendants did not intentionally or negligently spoliate evidence.**

Weather King's spoliation argument similarly fails under controlling legal standards. As federal courts in Tennessee have recognized:

11

> "[T]o establish that severe sanctions, such as default judgment or adverse infer-
> ences, are warranted, a party must show that: '(1) the party having control over the
> evidence had an obligation to preserve it at the time it was destroyed; (2) the evi-
> dence was destroyed with a culpable state of mind; and (3) the destroyed evidence
> was relevant to the party's claim or defense such that a reasonable trier of fact could
> find that it would support that claim or defense.'"

*Black v. Costco Wholesale Corp.*, 542 F. Supp. 3d 750, 753 (M.D. Tenn. 2021) (cleaned up).

Weather King has not met this standard—particularly the requirement of a culpable state of mind. As detailed above, Defendants received conflicting instructions from Weather King's counsel, as well as Scott Berryman, within a relatively short span of time. While those requests may appear straightforward in hindsight, at the time, they created significant uncertainty. This confusion was compounded by the number of Defendants and non-parties involved, and the general lack of familiarity with legal processes. Moreover, Defendant Adrian Harrod was experiencing serious health issues throughout the relevant period, which impacted his memory, understanding, and consistency in responding to discovery. (Harrod Decl.)

Where other plausible explanations exist, courts are reluctant to infer bad faith. That principle applies here. Weather King has not demonstrated that any Defendant acted with the intent to destroy evidence *for the purpose of disobeying* their discovery obligations, and accordingly, its request for spoliation-related sanctions should be denied.

## II.    Default judgment is not warranted.

As a general matter, default judgment is looked upon as an absolute last resort in favor of trial on the merits. *See Wilson v. Winstead*, 84 F.R.D. 218, 219 (E.D. Tenn. 1979) ("Defaults are looked upon by this Court with disfavor."); *Nemir v. Mitsubishi Motors Corp.*, 228 F.R.D. 573, 602 (E.D. Mich. 2005) ("Trial on the merits, however, is favored. . . . [D]efault judgments are granted as a last resort." (citation omitted)). Moreover, default judgment as a sanction for discovery abuse

is warranted only when "no alternative sanction would protect the integrity of the pre-trial pro-ceedings." *Buck v. U.S. Dep't of Agriculture, Farmers Home Admin.*, 960 F.2d 603, 608 (6th Cir. 1992).

When evaluating whether alleged misconduct in discovery proceedings rose to a level that warrants entry of default judgment under Federal Rule of Civil Procedure 37, district courts in the Sixth Circuit must consider the following four factors:

(1)     Whether the disobedient party acted in willful bad faith;

(2)     Whether the opposing party suffered prejudice;

(3)     Whether the court warned the disobedient party that failure to cooperate could result in a default judgment; and

(4)     Whether less drastic sanctions were imposed or considered.

*KCI USA, Inc. v. Healthcare Essentials, Inc.*, 801 F. App'x 928, 933–34 (6th Cir. 2020) (quoting *Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372, 376 (6th Cir. 2008)). Where at least two of the four factors weigh against default judgment, courts have found the sanction to be extreme and un-warranted. *See, e.g.*, *Hogan v. Discover Bank*, No. 1:19-CV-298, 2020 WL 4208235, at *2 (E.D. Tenn. July 22, 2020) ("Because the second and fourth factors weigh against a dismissal with prej-udice, the Court concludes the extreme sanction of dismissal with prejudice is not warranted at this time.").

## A.     Defendants did not act willfully, in bad faith, or with fault.

The paramount consideration for sanctions under Rule 37—or pursuant to the Court's in-herent authority to sanction—is whether the defendants "acted in willful bad faith." *KCI*, 801 F. App'x at 934; *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 519 (6th Cir. 2002). To constitute a willful violation in this context, the offending party must have consciously

and intentionally failed to comply with a court order. *See Bass v. Jostens*, 71 F.3d 237, 241 (6th Cir. 1995) ("A willful violation occurs whenever there is a conscious and intentional failure to comply with [a] court order.").

"A discovery dispute is not indicative of bad faith or fault," especially when other sanctions are available. *2815 Grand Realty Corp. v. Goose Creek Energy, Inc.*, No. 08-186-KKC, 2011 WL 13156876, at *5 (E.D. Ky. May 17, 2011). Moreover, courts generally do not find that a party acted willfully or in bad faith throughout discovery proceedings where the party actively participated in multiple rounds of discovery requests and supplemented their productions at each turn. *See, e.g.*, *Nemir*, 228 F.R.D. at 602 (finding that defendants did not fail to cooperate with discovery willfully or in bad faith when they provided plaintiff with supplemental responses over the course of two years); *see also*, *Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 526 (6th Cir. 2005) (finding that party did not act in bad faith by intentionally withholding information where they "took significant steps to try to comply" with "extensive discovery requests"). Even where a party fails to respond to or otherwise participate in discovery, courts hesitate to find bad faith absent a clear showing of intent. *See Munoz v. Rare Hospitality Int'l, Inc.*, No. 3:22-cv-00999, 2024 WL 4714324, at *4 (M.D. Tenn. Sept. 16, 2024) (finding that party only engaged in "willfulness and fault" after refusing to supplement their discovery responses or state objections to the discovery requests, and after failing to inform the court of their changing representation status).

Here, Defendants not only participated in discovery, but actively engaged with Weather King throughout every step of the process to ensure their compliance with this Court's orders to the best of their ability. Despite that, Weather King argues that Defendants attempted to somehow resist or disobey this Court's authority by providing "cryptic" or false accounts as to why certain

documents or communications were not immediately available to Weather King upon request. (Pl.'s Br. at 25.) In support of its theory of bad faith, Weather King relies in part on *Tisdale v. Federal Express Corp.*, where the Sixth Circuit determined that Tisdale's efforts to comply with FedEx's discovery requests by providing a list of his current and potential employers, his tax information, and signed work releases exhibited his willingness to participate in the discovery process. 415 F.3d at 526. In fact, the Sixth Circuit in *Tisdale* explicitly affirmed the denial of FedEx's request for dismissal based on Tisdale's expressed willingness to participate in the discovery process, and because lesser sanctions imposed by the district court were "an appropriate response to Tisdale's failure to fully respond to FedEx's discovery requests." *Id.*

Weather King also relies in part on *Munoz v. Rare Hospitality International, Inc.*, where the district court only found "willfulness and fault" after the plaintiffs refused to respond in a timely manner, supplement their responses, or state objections to the discovery requests, thereby failing to effectively prosecute their claim and wasting the court's time. 2024 WL 4714324, at *4. However, the *Munoz* decision involved plaintiffs who were almost entirely absent from the case and failed to either supplement their discovery responses or even inform the court of the most basic facts, including their representation status. *Id. Munoz* also dealt with a request for dismissal under Rule 41(b), where a court can dismiss an action for the plaintiff's failure to prosecute their claim or otherwise comply with court orders. *Id.* And, perhaps most importantly, the dismissal in *Munoz* was without prejudice. *Id.*

As already described above, Defendants responded to each and every one of Weather King's discovery requests within the period set out by this Court, and thereafter supplemented those responses up to five separate times, pursuant to this Court's orders. (Ex. D.) Compared to

the examples cited by Weather King, Defendants did more than enough to establish their good faith efforts throughout this process with the information and knowledge available to them at the relevant times. Whether Defendants' multiple responses were satisfactory to Weather King at each turn is not one of the factors considered for an entry of default judgment by this Court—the standard is whether Defendants engaged in bad faith, not "cryptology." Neither the record nor the law supports Weather King's assertions of bad faith, which alone should cause this Court to deny its request for an entry of default judgment.

### B.    Weather King has not been prejudiced.

Courts generally do not find that financial expenditures in discovery disputes amount to prejudice sufficient for sanctions under the analysis for an entry of default judgment. *Carpenter v. City of Flint*, 723 F.3d 700, 707 (6th Cir. 2013) (court did not find persuasive defendant's argument that its "financial crisis" amounted to prejudice); *see also*, *Rogers v. Kroger Co.*, 669 F.2d 317, 322 (5th Cir. 1982) (requiring a party to "expend funds necessary to present a defense" does not amount to prejudice warranting dismissal). Furthermore, courts do not consider a party to be prejudiced in discovery where other remedies were available for any potential misconduct, and where the party "could [still] thoroughly cross-examine" on the issues in question. *Tisdale*, 415 F.3d at 526 (party not prejudiced by the absence of information sought in discovery requests where there was "an appropriate remedy for the absence of information" sought, and the opposing party "could [still] thoroughly cross-examine" on the issues).

Weather King asserts that Defendants' discovery responses have caused it to spend "more than $150,000 to Repario" for the forensic examination, and "more than $165,000 in attorneys' fees", while resulting in trial delays for this action. (Pl.'s Br. at 26.) While Defendants cannot verify these expenditures, given Weather King's inadequate disclosure of its fees and costs included in

the Motion for Sanctions, they are nonetheless insufficient grounds for an entry of default judgment. By definition, fees and costs are calculable and should be satisfied through monetary remedies—if any remedy is indeed appropriate at all. Weather King also had plenty of opportunity to cross-examine Defendants through the multitude of supplemental responses and depositions. And they did not bother to depose most of the Defendants before filing this motion. As such, Weather King has failed to assert any measurable prejudice and this factor should weigh against an entry of default judgment.

### C.    Defendants did not play "hide-the-ball."

It's true that the Court's August 29, 2023 order reminded Defendants "of their discovery obligations, and that they are expected to fully comply with the Court's present Order to supplement their responses to Plaintiff's requests." (D.E. 111 at 13.) However, Defendants object to Weather King's characterization of its responses as having played "hide-the-ball" with the requested information. (Pl.'s Br. at 26.) As discussed above, the ABCO Defendants responded to every one of Weather King's discovery requests in a timely manner and to the best of their ability with the knowledge and information available to them at the time. They also produced tens of thousands of pages of documents after the Court issued this order. Any delay in presenting relevant information was a product of confusion or miscommunication as to what was required, or even possible, for Defendants to fully comply with the discovery requests.

### D.    Less drastic sanctions would be more than sufficient.

As the final factor, this Court must consider "whether less drastic sanctions were first imposed or considered before the harsh sanction of dismissal or default is imposed." *Peltz*, 292 F. App'x at 480 (citation omitted). Even if no sanctions have already been imposed when appropriate, dismissal or default can only be substituted as a remedy if "no alternative sanction would protect

the integrity of the pretrial process." *Id.* (citation omitted). "Possible lesser sanctions include monetary sanctions such as a fine, costs, or damages; barring a party from introducing certain evidence or participating in oral argument on a motion; additional warnings; or dismissal *without prejudice*." *Hogan*, 2020 WL 4208235, at *2 (emphasis added).

Despite its assertion that entry of a default judgment is the only appropriate remedy available, Weather King itself offers a plethora of other, less severe remedies to this Court. Although Defendants object to the imposition of any sanctions, as Defendants did not engage in discovery with bad faith—if this Court deemed it appropriate, then monetary sanctions or an adverse inference pursuant to Rule 37(e)(2)(B) would be more than sufficient to reimburse Weather King for the alleged inconveniences in discovery. *See Automated Solutions Corp. v. Paragon Data Sys.*, 756 F.3d 504, (6th Cir. 2014) (circuit court reiterated that adverse inference instructions are typically permissive and considered before dismissal or default judgment, which are extreme sanctions generally reserved for cases involving bad faith or egregious conduct). Weather King's argument that monetary sanctions or a similarly reasonable remedy "would be a win for Defendants" is preposterous and not in accordance with legal principles favoring a trial on the merits. Accordingly, based on the consideration of all four factors, this Court should deny Weather King's request for an entry of default judgment.

## III.  The Court should deny Weather King's request for an award of attorneys' fees.

Weather King also requests an award of attorney's fees as an additional sanction. "The fee applicant bears the initial burden of showing the appropriate hours expended and must submit evidence in support of those hours worked. In the discovery sanctions context, this includes the burden of demonstrating the requisite causal relationship between the Rule 37 violation and the activity for which the fees are sought." *Crozin v. Crown Appraisal Grp., Inc.*, No. 2:10-CV-581, 2012 WL

18

1186520, at *4 (S.D. Ohio Apr. 6, 2012) (cleaned up).

The Court should deny this request for the reasons discussed above. Additionally, Weather King did not initially enclose the necessary documentation to support an award of fees and costs with its Motion for Sanctions. Throughout the Motion for Sanctions, Weather King refers to an "Exhibit 16", which purportedly sets forth the associated attorneys' fees and expenses in a declaration. That exhibit was not included in the initial filing. Rather, where Exhibit 16 should be there were only cover pages of Exhibits 1 through 53. (D.E. 187-5.). Weather King has since supplemented its exhibits with invoices of its legal counsel in support of its Motion for Sanctions. (*See* D.E. 198.) The invoices, however, are heavily redacted, making it difficult or impossible to decipher the legitimacy or appropriateness of the calculations—it is also unclear to Defendants whether an unredacted copy of the invoices was submitted to this Court for consideration. And there is no supporting declaration. Accordingly, Weather King has not met its burden of establishing entitlement to any fees or costs associated with its request for sanctions, and no such fees or costs should be awarded.

## CONCLUSION

For the reasons discussed above, the motion for sanctions should be denied.

Date: April 17, 2025                    Respectfully submitted,

                                        /s/ *Benjamin S. Morrell*
                                        Thomas G. Pasternak (admitted pro hac vice)
                                        Benjamin S. Morrell (TBPR No. 35480)
                                        Taft Stettinius & Hollister LLP
                                        111 East Wacker Drive, Suite 2600
                                        Chicago, IL 60601
                                        Telephone: (312) 527-4000
                                        Facsimile: (312) 527-4011

tpasternak@taftlaw.com
bmorrell@taftlaw.com

*Counsel for Defendants Maupin, Harrell, Harrod, Feagin, Gillespie, Brown, Hershberger, and American Barn Co., LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the date listed below, I filed the foregoing document with the Clerk of the Court using the Court's CM/ECF filing system, which will send notice of such filing to all counsel of record. I further certify that on the date listed below, I sent the foregoing document to the following individuals at the address listed below via U.S. Mail first-class, postage prepaid, and via email at the email address listed below:

Aleyna Lassen
Brian L. Lassen
1405 N. Fort Grant Road
Willcox, AZ 85643
willcoxbuildings@pm.me

Date: April 17, 2025

/s/ *Benjamin S. Morrell*