# EXHIBIT C

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

CONSOLIDATED INDUSTRIES, LLC
d/b/a WEATHER KING PORTABLE
BUILDINGS,

    Plaintiff,

v.

JESSE A. MAUPIN, BARRY D.
HARRELL, ADRIAN S. HARROD,
LOGAN C. FEAGIN, STEPHANIE L.
GILLESPIE, RYAN E. BROWN,
DANIEL J. HERSHBERGER, BRIAN
L. LASSEN, ALEYNA LASSEN, and
AMERICAN BARN CO., LLC,

    Defendants.

Civil Action No. 1:22-cv-01230-STA-jay

District Judge Anderson

Magistrate Judge York

## AMENDED ANSWER TO FIRST AMENDED
## COMPLAINT AND AFFIRMATIVE DEFENSES

  Defendants Jesse A. Maupin, Barry D. Harrell, Adrian S. Harrod, Logan C. Feagin,

Stephanie L. Gillespie, Ryan E. Brown, Daniel J. Hershberger, and American Barn Co., LLC (the

"ABCO Defendants"), by and through their undersigned counsel, state the following for their

Amended Answer to the First Amended Complaint.

### PRELIMINARY STATEMENT

  With the benefit of trade secrets that Defendant Jesse Maupin misappropriated from

Weather King, Defendants Maupin, Harrod, Harrell, Feagin, Gillespie, Brown, Hershberger,

Brian Lassen, and Aleyna Lassen (hereinafter "the Individual Defendants")—while still employed

by Plaintiff—acted in concert to form a competing business enterprise. The Defendants' carefully

orchestrated endeavor was designed to squeeze Weather King out of its Western United States

market, including by shutting down production, soliciting other employees to resign and work for the new company, and converting sales opportunities, all through the use of stolen information and misrepresentations. Weather King seeks monetary damages for the serious harm that Defendants have caused through their unlawful actions.

**Answer:**    Denied.

## PARTIES

1.    Plaintiff is a limited liability company organized under the laws of the Commonwealth of Kentucky, with its principal place of business located in Paris, Henry County, Tennessee.

**Answer:**    Defendant is without sufficient information to admit or deny this allegation and therefor denies it.

2.    Upon information and belief, Defendant Jesse A. Maupin is an individual who resides at 8139 State Route 121 S., Murray, KY 42071.

**Answer:**    Admitted.

3.    Upon information and belief, Defendant Adrian S Harrod is an individual who resides at 55 Nalonna Dr., Paris, TN 38242

**Answer:**    Admitted.

4.    Upon information and belief, Defendant Logan C Feagin is an individual who resides at 1131 Beech Grove Rd, Farmington, KY 42040.

**Answer:**    Admitted.

5.    Upon information and belief, Defendant Barry D. Harrell, is an individual who resides at 3582 Old Newburg Rd., Murray, KY 42071.

2

**Answer:**      Admitted.

6.      Upon information and belief, Defendant Stephanie L. Gillespie is an individual who resides at 1308 E. Blythe St., Paris, TN 38242.

**Answer:**      Admitted.

7.      Upon information and belief, Defendant Ryan E. Brown is an individual who resides at 105 Doris Ct., Grants, NM 87020.

**Answer:**      Admitted.

8.      Upon information and belief, Defendant Daniel J. Hershberger is an individual who resides at 551 North Jackson, Wickenburg, AZ 85390.

**Answer:**      Admitted.

9.      Upon information and belief, Defendant Brian L. Lassen is an individual who resides at 1405 N. Fort Grant Road, Willcox, AZ 85643.

**Answer:**      Admitted.

10.      Upon information and belief, Defendant Aleyna Lassen is an individual who resides at 1405 N. Fort Grant Road, Willcox, AZ 85643.

**Answer:**      Admitted.

11.      Upon information and belief, Defendant American Barn Co, LLC ("American Barn") is a limited liability company organized under the laws of the Commonwealth of Kentucky, with a registered agent listed as Virgil W. Etherton, 860 Cloverdale Trail, Murray, Kentucky 42071.

**Answer:**      Admitted.

**JURISDICTION AND VENUE**

12.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331(a) and 1367(a) and 18 U.S.C. § 1836(c).

**Answer:**    Admitted.

13.    The Court has personal jurisdiction over all Defendants under Fed. R. Civ. P. 4(k)(1)(A), Tenn. Code Ann. §§ 20-2-222(1) and 20-2-223(a), and Tennessee's conspiracy jurisdiction doctrine. Defendants Maupin, Harrod, Feagin, Harrell, and Gillespie (two of whom are Tennessee residents) have engaged in unlawful conduct within the State of Tennessee as alleged herein, including while working from Weather King's headquarters in Henry County, Tennessee. All Defendants engaged in the conspiracy as further alleged below.

**Answer:**    Defendants deny that they engaged in a conspiracy.

14.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), 28 U.S.C. § 123(c)(1), and Local Rule 3.3(b)(2) because two Defendants reside in this district, because Defendants' conduct occurred in part in Henry County, Tennessee, because the injury-causing effects occurred in Henry County, and because the causes of action arose in Henry County.

**Answer:**    Defendants deny that there were injury-causing effects.

**FACTUAL ALLEGATIONS**

**BACKGROUND**

15.    Based in Paris, Tennessee, Weather King manufactures and sells portable buildings, including backyard sheds, garages, cabins, utility buildings and storage buildings. Prior to the events giving rise to this action, those sales occurred across Arizona, New Mexico, Florida, West Texas, and Southern Colorado. Weather King owned six plants in those states, and it worked

4

with independent contractors who operated plants in Kingman, Arizona, and Las Vegas, New

Mexico, constructing buildings for Weather King.

     **Answer:**     Defendants are without sufficient information to admit or deny these

allegations and therefore deny them.

     16.     Weather King sold these buildings through dealer networks and physical sales lots

throughout those states. Weather Kings sells its buildings for cash or rent-to-own. Weather King

sells its rent-to-own contracts to different independent rental companies. In other words, Weather

King provided dealers with inventory on consignment and then paid the dealers commissions for

their sales. Weather King also maintained a network of independent contractor truck drivers.

     **Answer:** Defendants are without sufficient information to admit or deny these allegations

and therefor deny them.

     17.     Weather King hired Defendant Maupin on February 1, 2010. Most recently, Mr.

Maupin served as Western Region Sales Manager. In that highly-compensated position, Mr.

Maupin oversaw Weather King's manufacturing plants and sales representatives in Arizona, New

Mexico, Colorado, and Texas (hereinafter "the Western States"). Mr. Maupin was the face of the

company in the Western States. Mr. Maupin reported to David Sullivan, Weather King's

Manager.

     **Answer:**     Defendants deny that Mr. Maupin was in a highly compensated position or

was the face of the company.

     18.     Weather King hired Defendant Harrod on March 4, 2015. Most recently, Mr.

Harrod served as a Sales Representative assigned to Arizona and Colorado. Mr. Harrod reported

to Mr. Maupin.

**Answer:**    Denied.

19.    Weather King hired Defendant Feagin on January 20, 2020. Most recently, Mr.
Feagin served as a Sales Representative assigned to New Mexico and Texas. Mr. Feagin reported
to Mr. Maupin.

**Answer:**    Denied.

20.    Weather King hired Defendant Harrell (who had worked for Weather King
previously) on January 27, 2020. Most recently, Mr. Harrell served as a Sales Representative
assigned to Florida. Mr. Harrell reported to Jay Coker, Regional Sales Manager for Florida.
Previously, Mr. Harrell served as a Sales Representative assigned to New Mexico and reported to
Mr. Maupin.

**Answer:**    Denied.

21.    Weather King hired Defendant Gillespie on June 23, 2011. Ms. Gillespie worked
from Weather King's Paris headquarters and helped process orders and payroll (and other tasks)
for the Arizona and Colorado operations. Ms. Gillespie reported to Weather King's Controller, Jill
Coker.

**Answer:**    Admitted.

22.    Weather King hired Defendant Brown on August 31, 2020. Mr. Brown was the
Plant Manager for Weather King's Milan, New Mexico manufacturing plant.

**Answer:**    Admitted.

23.    Weather King hired Defendant Hershberger on November 1, 2015. Mr.
Hershberger was the Plant Manager for Weather King's Peoria, Arizona manufacturing plant.

**Answer:**    Admitted.

6

24.    Weather King hired Defendant Brian Lassen on June 13, 2016. Mr. Lassen was the Plant Manager for Weather King's Willcox, Arizona manufacturing plant.

**Answer:**    Admitted.

25.    Weather King hired Defendant Aleyna Lassen on August 2, 2016. Mrs. Lassen was employed as an office worker in Weather King's Willcox, Arizona plant. Mrs. Lassen helped organize Arizona Barn Co., LLC ("Arizona Barn"), and serves as its manager, and she personally took part in the wrongful acts with respect to Arizona Barn discussed more fully below. Upon information and belief, Arizona Barn is affiliated with American Barn.

**Answer:**    Defendants deny that Aleyna Lassen committed any wrongful acts.

26.    Solely by virtue of their employment with Weather King, the Individual Defendants had the opportunity to develop relationships with Weather King's employees, dealers, drivers, end- use customers, suppliers, landlords, rental companies, and others with whom Weather King had a business relationship. The Individual Defendants' employment also enabled them to have access (some of which unauthorized) to certain of Weather King's trade secrets and other proprietary information related to its operations and business relationships.

**Answer:**    Denied.

## INDIVIDUAL DEFENDANTS' DEPARTURES

27.    On May 31, 2022, Defendant Gillespie abruptly resigned from Weather King effective immediately.

**Answer:**    Admitted.

28.    The following day, June 1, 2022, Weather King's senior management learned of a text message that Defendant Harrod sent to certain of Weather King's dealers whose relationships Defendant Gillespie had been servicing. The text message read: "Hey guys Stephanie walked out

7

today and quit WeatherKing the new girl Shelby don't say anything to regarding the future." A true and correct copy of a printout of Defendant Harrod's text message is filed as **Exhibit 1** to the original Complaint.

**Answer:**     Defendants are without sufficient information to admit or deny these allegations and therefore deny them.

29.     That same day, Paul Mattson, an employee at Weather King's Peoria, Arizona plant notified Weather King personnel that he had been trying to contact Ms. Coker (Weather King's Controller) at the Weather King main office in Paris to discuss concerning matters, but that Defendant Gillespie intercepted his call and diverted him to Defendant Maupin, thus not allowing him to speak with Ms. Coker. Mr. Mattson reported that Defendants Maupin, Harrell, Harrod, and Feagin had formed a competing business. He also reported that several of them—along with Defendant Hershberger—had been having secret meetings at the Peoria plant in which they encouraged those employees to join the new business.

**Answer:**     Denied.

30.     Mr. Mattson also reported that Defendants' plan was for Mr. Hershberger to announce that he was resigning on June 15, 2022. Defendants planned that the remaining Peoria employees would then resign from Weather King and join Mr. Hershberger and the new business. Mr. Mattson further reported that Defendants planned to work from a temporary location in Peoria but that they would return to Weather King's Peoria plant after they had "squeezed out" Weather King. In other words, Defendants' plan was to force Weather King to shutter operations in its Peoria plant and then their new business would gain a fully functioning manufacturing facility.

**Answer:**     Denied.

31.    Weather King later discovered that Defendants' competing business enterprise was formed as Defendant American Barn, which was registered with the Kentucky Secretary of State on February 23, 2022—*three months earlier*.

**Answer:**    Defendants are without sufficient information to admit or deny these allegations and therefore deny them.

32.    Later on June 1, 2022, members of Weather King's ownership and management, including Mr. Sullivan, confronted Mr. Maupin. Mr. Maupin admitted that he and other Weather King personnel had formed American Barn. Mr. Maupin claimed that, because he was responsible for growing Weather King's business in the West, he "deserved" to take over in the Western States and that it was "owed" to him.

**Answer:**    Denied.

33.    At the conclusion of the conversation, Weather King's manager terminated Mr. Maupin's employment. At that time, Defendants Harrod, Feagin, and Harrell (along with Mitch Sykes, who handled repairs and warranty work for Weather King) were packing their belongings and leaving the Paris facility.

**Answer:**    Denied.

### CULMINATION OF DEFENDANTS' SCHEME TO STEAL AWAY WEATHER KING'S EMPLOYEES AND DEALERS AND DESTROY ITS WESTERN OPERATIONS

34.    In an elaborate smear campaign, the Individual Defendants poisoned Weather King's relationships with its dealers, employees, drivers, contract builders, and others by making false representations about Weather King, harming its reputation, and encouraging these persons and entities to cease doing business with Weather King and instead work for and with American Barn, Arizona Barn, and potentially other entities to compete with Weather King. The Individual

9

Defendants' actions occurred in part while they were still employed by Weather King (and still owed a fiduciary duty to it).

**Answer:**     Denied.

35.    After speaking with Defendant Maupin on June 1, 2022, Mr. Sullivan attempted to contact the Western States plant managers. That afternoon, Defendant Hershberger (who managed Weather King's Peoria plant and who reported to Mr. Maupin) told Mr. Sullivan that he was quitting. The other plant managers refused to take Mr. Sullivan's calls.

**Answer:**     Denied.

36.    On June 2, 2022, Ryan Brown, manager of Weather King's Milan, New Mexico plant and who reported to Mr. Maupin, notified Weather King that he and the 13 other employees at the plant had quit and joined American Barn. Mr. Brown later told Weather King that he would only ensure that existing work orders were completed if Weather King signed the plant lease over to American Barn.

**Answer:**     Denied.

37.    That same day, Weather King personnel spoke with Brian Lassen, who managed Weather King's Willcox, Arizona plant and who reported to Mr. Maupin. He stated that he and the other employees at the Willcox plant had quit and joined American Barn. During the conversation, he stated that the original plan was for him and others to quit on June 20, 2022, but that their plan had been hastened by Weather King's discovery of the intercepted phone call from the Peoria plant on June 1, 2022.

**Answer:**     Denied.

38.     On June 2, 2022, Weather King received a call from Freddie Rodriguez, an employee at the Willcox plant. He refuted Mr. Lassen's claim that all of the Willcox employees had resigned. Rather, Mr. Lassen told them that they were all fired. Mr. Rodriguez indicated that the remaining employees had joined Mr. Lassen at American Barn, but that he would remain with Weather King.

**Answer:**     Denied.

39.     On or about June 2, 2022, Kerry Ratzlaff, a contract-based plant operator in Las Vegas, New Mexico, also notified Weather King that he and all of his personnel (consisting of approximately 7-10 workers) were ending their relationship with Weather King and instead would be constructing portable buildings for American Barn.

**Answer:**     Admitted.

40.     On June 9, 2022, Mr. Lassen told Weather King personnel that its dealers and drivers would soon be notifying Weather King that they would be severing their business relationships with Weather King. Mr. Lassen also stated that American Barn would temporarily build products at its new location in Willcox until they "ran out" Weather King, at which point they would take over the Willcox plant lease.

**Answer:**     Denied.

41.     On June 9, 2022—more than a week after the termination of their employment—Defendants Maupin and Harrod trespassed at Weather King's Peoria, Arizona facility and conducted a meeting with one of Weather King's drivers.

**Answer:**     Denied.

42.    Consistent with Defendants' admission of deliberate malice, numerous independent dealers and drivers with whom Weather King had business relationships notified Weather King that they were ceasing their business relationship and instead moving their business to American Barn. Several indicated that American Barn agents told them that American Barn is taking over Plaintiff's Western operations and suggested that Weather King would not have any money to pay them if they continued to do business with Weather King (who would, without the infrastructure for revenue, not be able to generate sufficient revenue to pay them).

**Answer:**    Denied.

43.    Dealers also advised customers to cancel their existing orders for Weather King buildings and to instead order from American Barn. Upon information and belief, these dealers took these actions with Defendants' encouragement.

**Answer:**    Denied.

44.    Defendants have unlawfully harmed Weather King's business relationships, resulting in significant financial damages. Through their carefully orchestrated scheme in blatant and egregious violation of their duty of loyalty to Weather King, the Individual Defendants ambushed Weather King by falsely souring relationships with employees, dealers, and contactors, converting the distribution-channel infrastructure Weather King had in place, and then encouraging Weather King's employees, dealers, and contractors to switch to American Barn.

**Answer:**    Denied.

45.    The following chart (which does not include the independent contractor plants in Las Vegas, NM, and Kingman, AZ) demonstrates the immediate and significant effect of

Defendants' actions on Weather King's workforce and ability to operate in the Western States markets:

| Facility | # of Employees as of 5/31/22 | # of Employees as of 6/2/22 |
|---|---|---|
| Milan, NM | 14 | 0 |
| Willcox, AZ | 14 | 1 |
| Peoria, AZ | 15 | 9 |
| Paris, TN | 20 | 13 |
| **Total** | 63 | 23 |

**Answer:**      Denied.

46.      Weather King suffered further attrition thereafter. As a result of Defendants' wrongful conduct, Weather King has suffered a devastating reduction in sales in its Western States markets and was placed in the untenable position of trying to salvage its Western States operations.

**Answer:**      Denied.

## WEATHER KING'S DISCOVERY OF OTHER OVERT ACTS

47.      During an inspection of Weather King's work computers that the Individual Defendants used during their employment, Weather King discovered that much of the data on the Individual Defendants' work computers had been deleted and, upon information and belief, that Defendant Harrell intentionally crashed his hard drive. Weather King, however, was able to retrieve certain pertinent information.

**Answer:**      Denied.

48.      On January 31, 2022, Defendant Maupin emailed to himself a photograph of Weather King's inventory count for each of its states. On March 4, 2022, Mr. Maupin emailed to

himself photographs of Weather King's profit & loss statement and balance sheet. This information is confidential, proprietary, and trade secret. Mr. Maupin did not have authorized access to that information, nor did he need that information in performing his duties for Weather King. The photos reveal that Mr. Maupin covertly entered a Weather King officer's workstation, opened a sealed envelope with a Weather King officer's name on it, took the photos surreptitiously, put the financial statements back in the envelope, and then later emailed himself the information. Defendant Maupin misappropriated these trade secrets for the purpose of securing funding to launch American Barn and Arizona Barn, as well as a rental company that, and to otherwise carry out Defendants' scheme.

**Answer:** Denied.

49.    A search of Mr. Maupin's Weather King computer revealed additional egregious acts. Weather King rented a sales lot at 1755 N. Broad Street in Globe, Arizona, from James and Sharon Kowalzyk on a year-by-year basis. Weather King learned that on April 7, 2022—after American Barn was formed but while Maupin was still a Weather King employee—the Kowalzyks signed a new lease on the same property with the tenant listed as "Jesse Maupin" and with his personal home address listed. A true and correct copy of the instrument is filed as **Exhibit 2** to the original Complaint. In doing so, Mr. Maupin deceptively and unlawfully took advantage of his employment with Weather King (including through the use of Weather King's property) by diverting this lease arrangement to himself and American Barn.

**Answer:** Denied.

50.    Weather King also discovered from Mr. Maupin's work computer that on March 29, 2022— after American Barn was formed but while Maupin was still a Weather King

14

employee—Maupin executed a lease with Horizon Properties, Ltd. for rental property in Grants, New Mexico, purportedly on Weather King's behalf, but at a monthly rental rate of $100 more per month than Weather King was previously paying. A true and correct copy of the instrument is filed as **Exhibit 3** to the original Complaint. Mr. Maupin never had the authority to sign leases for Weather King, and he signed this lease without knowledge or permission and without notifying Weather King of any rent increase. Mr. Maupin surreptitiously committed Weather King to this artificially inflated lease so that Weather King would unknowingly default by underpaying, which would enable American Barn to take over the leasehold interest.

**Answer:**    Denied.

51.    Weather King also discovered from Mr. Maupin's work computer a draft lease with a date of May 15, 2022, listing a lessee as "Arizona Barn Co., LLC" with respect to real property in Willcox, Arizona, less than a mile from Weather King's Wihj9illcox plant. A copy of the document is filed as **Exhibit 4** to the original Complaint. Defendants have used that property for their competing business enterprise.

**Answer:**    Denied.

52.    Information from the Arizona Corporate Commission website filed as **Exhibit 5** to the original Complaint demonstrates that, on February 16, 2022, an entity known as "Sonoran Sheds LLC" was organized in Arizona with Mr. Hershberger named as organizer and member.

**Answer:**    Admitted.

53.    Information from the Arizona Corporate Commission website filed as **Exhibit 6** to the original Complaint demonstrates that, on June 6, 2022, an entity known as "Arizona Barn Co., LLC" was organized in Arizona with listed members that include Mr. Maupin, Mr. Lassen, and

Mrs. Lassen, who also was employed by Weather King until quitting at the beginning of June 2022. Mrs. Lassen is listed as Arizona Barn's manager with a "Date of Taking Office" of "4/27/2022"—more than a month before her resignation.

**Answer:**    Admitted.

54.    Weather King also discovered instances in which the Individual Defendants, while still employed by Weather King, surreptitiously took Weather King template contracts for use by American Barn and Arizona Barn.

**Answer:**    Denied.

55.    Attempting to mitigate the harm, Weather King, through counsel, issued many of the Individual Defendants cease-and-desist/preservation letters filed as **Exhibit 7** to the original Complaint.

**Answer:**    Admitted.

56.    After receiving his letter, Defendant Harrell contacted one of Weather King's dealers in Florida and suggested to the dealer that the dealer should demand a higher commission from Weather King. Other dealers in Florida have also contacted Weather King and requested to be paid higher percentages, leading to a reasonable inference that Defendant Harrell contacted them as well. Defendant Harrell's efforts to intentionally disrupt Weather King's business in Florida is also evidenced by Harrell sending emails to Weather King's Florida dealers with images of Florida sales lots with American Barn banners and suggesting "this could be you" if the dealer switched to American Barn.

**Answer:**    Admitted.

57.    Weather King also learned that Defendant Maupin convinced Ben Miller (who managed one of Weather King's manufacturing plants in Florida but who was temporarily assigned to the Willcox, Arizona plant to keep it running) to move from Florida to Arizona and work for American Barn/Arizona Barn. Mr. Miller reported to Weather King that, as part of his solicitation, Mr. Maupin falsely told Mr. Miller that Weather King intended to replace him.

**Answer:**    Denied.

58.    In August 2022, Defendants effected a change in the Caller ID name for outbound calls from Weather King's toll-free telephone number so that all outbound calls from Weather King would appear as "Jesse Maupin" on the recipient's Caller ID. This was not authorized and is false and misleading. This is additional evidence of unfair competition, in addition to being a criminal violation of the Truth in Caller ID Act, 47 U.S.C. § 227(e), for which a complaint has been filed with the Federal Communications Commission.

**Answer:**    Denied.

59.    Many jurisdictions require owners of certain portable buildings to obtain a building permit. Those jurisdictions typically require a permit applicant to submit building plans/drawings prepared by an appropriately licensed engineer in connection with the application. Certain jurisdictions also require builders and sellers of portable buildings to have pre-approved engineering plans before units are built. Therefore, it is not feasible for a company to manufacture and sell portable buildings in jurisdictions such as New Mexico and Arizona without plans from a licensed engineer.

**Answer:**    Denied.

60.     Weather King retained and paid Kevin Nolan, P.E., a duly-licensed engineer, to prepare plans related to Weather King's portable buildings.

**Answer:**     Defendants are without sufficient information to admit or deny this allegation and therefore deny it.

61.     At least as of late November 2022, Defendants have not had engineering plans of their own.

**Answer:**     Denied.

62.     Upon information and belief, after his termination from Weather King, Mr. Maupin retained copies of certain of Weather King's engineering plans prepared by Mr. Nolan.

**Answer:**     Denied.

63.     Because American Barn has not had its own plans, American Barn and its network of dealers have coordinated with their customers to submit Weather King's engineering plans in connection with building permit applications even though the customers purchased American Barn units and not Weather King units. Weather King did not authorize American Barn or its customers to use Weather King's plans. Through their actions, American Barn and Maupin have unfairly traded off and profited from Weather King's proprietary building plans.

**Answer:**     Denied.

## COUNT I: MISAPPROPRIATION OF TRADE SECRETS UNDER 18 U.S.C. § 1836 (AGAINST DEFENDANTS MAUPIN AND AMERICAN BARN)

64.     Weather King incorporates by reference its preceding allegations.

**Answer:**     Defendants incorporate by reference their previous responses.

65.     As alleged above, Weather King's business constitutes interstate commerce.

18

**Answer:**    Defendants are without sufficient information to admit or deny this allegation and therefore deny it.

66.    During their employment with Weather King, each of the Individual Defendants had certain access to Weather King's "trade secrets" as that term is defined by 18 U.S.C. § 1839(3).

**Answer:**    Denied.

67.    Defendant Maupin misappropriated Weather King's trade secrets, including but not necessarily limited to disclosing and using Weather King's confidential financial information as detailed in Paragraph 48 above, as well as Weather King's engineering plans.

**Answer:**    Denied

68.    Maupin did so while acting as agent of American Barn and for American Barn's benefit and with its encouragement.

**Answer:**    Denied.

69.    Defendants Maupin and American Barn acted willfully and maliciously and with improper means.

**Answer:**    Denied.

70.    Weather King has been damaged as a direct and proximate result of these Defendants' unlawful conduct, and the harm from these acts continues despite mitigation efforts.

**Answer:**    Denied.

## COUNT II: MISAPPROPRIATION OF TRADE SECRETS UNDER TENN. CODE § 47-25-1704 (AGAINST DEFENDANTS MAUPIN AND AMERICAN BARN)

71.    Weather King incorporates by reference its preceding allegations.

**Answer:**    Defendants incorporate their previous responses.

19

72.     During their employment with Weather King, each of the Individual Defendants had certain access to Weather King's "trade secrets" as that term is defined by T.C.A. § 47-25-1702(4).

**Answer:**     Denied.

73.     Defendant Maupin misappropriated Weather King's trade secrets, including but not necessarily limited to disclosing and using Weather King's confidential financial information as detailed in Paragraph 48 above, as well as Weather King's engineering plans.

**Answer:**     Denied.

74.     Maupin did so while acting as agent of American Barn and for American Barn's benefit and with its encouragement.

**Answer:**     Denied.

75.     Defendants Maupin and American Barn acted willfully and maliciously and with improper means.

**Answer:**     Denied.

76.     Weather King has been damaged as a direct and proximate result of these Defendants' unlawful conduct, and the harm from these acts continues despite mitigation efforts.

**Answer:**     Denied.

## COUNT III: BREACH OF DUTY OF LOYALTY (AGAINST THE INDIVIDUAL DEFENDANTS)

77.     Weather King incorporates by reference its preceding allegations.

**Answer:**     Defendants incorporate their allegations.

78.     During their employment with Weather King, each of the Individual Defendants owed Weather King a duty of loyalty to "act solely for the benefit of the employer in matters within

the scope of his [or her] employment" and not to "engage in conduct that is adverse to the employer's interests." *Efird v. Clinic of Plastic & Reconstructive Surgery, P.A.*, 147 S.W.3d 208, 219 (Tenn. Ct. App. 2003).

**Answer:**    This allegation calls for a legal conclusion and is therefore denied.

79.    The Individual Defendants with management positions (Maupin, Brown, Brian Lassen, and Herschberger) owed a heightened duty of loyalty to Weather King.

**Answer:**    This allegation calls for a legal conclusion and is therefore denied.

80.    Each of the Individual Defendants breached their duty of loyalty by acting, both individually and in concert, to further their own personal interests and that of American Barn / Arizona Barn during their employment (and during work hours and using Plaintiff's resources) to Weather King's detriment.

**Answer:**    Denied.

81.    Weather King has been damaged as a direct and proximate result of these Defendants' breach of their duty of loyalty, it will continue to be harmed, and it continues to face irreparable harm.

**Answer:**    Denied.

## COUNT IV: INTERFERENCE WITH BUSINESS RELATIONSHIPS
## (AGAINST ALL DEFENDANTS)

82.    Weather King incorporates by reference its preceding allegations.

**Answer:**    Defendants incorporate their allegations.

83.    Weather King has had numerous business relationships, including but not limited to with dealers, employees, contractors, drivers, customers, vendors, landlords, rental companies, and others within the industry.

**Answer:**      Admitted.

84.      Defendants were aware of those relationships.

**Answer:**      Admitted.

85.      Defendants interfered with Weather King's business relationships with the intent to terminate or otherwise disrupt and harm Weather King's relationships with those persons and entities.

**Answer:**      Denied.

86.      Defendants have acted both with an improper motive and an improper means.

**Answer:**      Denied.

87.      Weather King has been damaged as a direct and proximate result of these Defendants' unlawful conduct, and the harm from these acts continues despite mitigation efforts.

**Answer:**      Denied.

## COUNT V: DEFAMATION (AGAINST DEFENDANTS MAUPIN, BRIAN LASSEN, AND AMERICAN BARN)

88.      Weather King incorporates by reference its preceding allegations.

**Answer:**      Defendants repeat their allegations.

89.      Defendants Maupin, Brian Lassen, and American Barn through its agents have made false and defamatory statements about Weather King to third parties, including but not limited to dealers, drivers, and independent contractors with whom it has had business relationships. The statements include, but are not limited to, suggesting that Weather King will be unable to pay its bills and that it will be going out of business in the Western States.

**Answer:**      Denied.

90.    These Defendants acted intentionally and/or recklessly and with the malicious intent of convincing these parties to do business with American Barn rather than Weather King.

**Answer:**    Denied.

91.    Weather King has been damaged as a direct and proximate result of these Defendants' unlawful conduct, and the harm from these acts continues despite mitigation efforts.

**Answer:**    Denied.

## COUNT VI: CONVERSION (AGAINST ALL DEFENDANTS)

92.    Weather King incorporates by reference its preceding allegations.

**Answer:**    Defendants incorporate their allegations.

93.    Each of the Defendants wrongfully appropriated Weather King's property, including proprietary business information and revenue from building sales as well as Weather King's engineering plans, for their own use and benefit, exercising dominion and control over such property in defiance of Weather King's rights.

**Answer:**    Denied.

94.    Weather King has been damaged as a direct and proximate result of the Defendants' unlawful conduct, and the harm from these acts continues despite mitigation efforts.

**Answer:**    Denied.

## COUNT VII: UNJUST ENRICHMENT (AGAINST ALL DEFENDANTS)

95.    Weather King incorporates by reference its preceding allegations.

**Answer:**    Defendants repeat their allegations.

96.    Defendants availed themselves of the benefit of Weather King's engineering plans by making use of them, including allowing American Barn customers to use Weather King's engineering plans in connection with permit applications for American Barn portable buildings.

**Answer:**    Denied.

97.    Through the misuse of Weather King's plans, American Barn has unfairly obtained revenue from the sale of portable buildings. This revenue has been used to enrich American Barn in the form of sales receipts and to enrich the Individual Defendants in the forms of distributions, bonuses, salaries, or other remuneration.

**Answer:**    Denied.

98.    American Barn did not compensate Weather King for the use of Weather King's plans, nor did it obtain Weather King's approval.

**Answer:**    Denied

99.    It would be unjust and inequitable for Defendants to retain the respective benefits they have received from the misuse of Weather King's plans without payment of the value and profits they have derived from the plans.

**Answer:**    Denied.

## COUNT VIII: CIVIL CONSPIRACY (AGAINST ALL DEFENDANTS)

100.    Weather King incorporates by reference its preceding allegations.

**Answer:**    Defendants repeat their allegations.

101.    Each of the Defendants have acted collectively with a common design.

**Answer:**    Denied.

102.    Each of the Defendants took concerted action to achieve multiple unlawful purposes.

**Answer:**    Denied.

103.    As set forth above, overt acts were taken in furtherance of Defendants' conspiracy, with many of those actions being taken in Henry County, Tennessee.

**Answer:**        Denied.

104.        Weather King has been damaged as a direct and proximate result of the Defendants'
unlawful conduct, and the harm from these acts continues despite mitigation efforts.

**Answer:**        Denied.

**COUNT IX: AIDING AND ABETTING (AGAINST ALL DEFENDANTS)**

105.        Weather King incorporates by reference its preceding allegations.

**Answer:**        Defendant incorpates its allegations.

106.        Each of the Defendants knew that one or more of the other Defendants were
breaching their duties owed to Plaintiff.

**Answer:**        Denied.

107.        Each of the Defendants gave substantial assistance and/or encouragement to one
or more of the other Defendants in harming Weather King.

**Answer:**        Denied.

108.        Each of the Defendants engaged in affirmative conduct in furtherance of
Defendants' unlawful activities against Weather King.

**Answer:**        Denied.

109.        Weather King has been damaged as a direct and proximate result of the Defendants'
unlawful conduct, and the harm from these acts continues despite mitigation efforts.

**Answer:**        Denied.

**PRAYER FOR RELIEF**: The prayer for relief recites no allegation and there does not
need to be answered. In any case Plaintiff is entitled to no relief whatsoever, whether it be monetary
damages, attorneys fees, or costs.

## AFFIRMATIVE DEFENSES

1.    Failure to state a claim.

2.    Preemption.

3.    No damages.

4.    Failure to mitigate damages.


Date: May _____, 2025                     Respectfully submitted,

                                            By: */s/ Benjamin S. Morrell*
                                            Thomas G. Pasternak (admitted pro hac vice)
                                            Benjamin S. Morrell (TBPR No. 35480)
                                            TAFT STETTINIUS & HOLLISTER LLP
                                            111 East Wacker Drive, Suite 2600
                                            Chicago, IL 60601
                                            Telephone: (312) 527-4000
                                            Facsimile: (312) 527-4011
                                            tpasternak@taftlaw.com
                                            bmorrell@taftlaw.com


                                            *Counsel for Defendants Maupin, Harrell, Harrod,
                                            Feagin, Gillespie, Brown, Hershberger, and American
                                            Barn Co., LLC*