IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| CONSOLIDATED INDUSTRIES, LLC d/b/a WEATHER KING PORTABLE BUILDINGS, </br></br>   Plaintiff, </br></br> v. </br></br> JESSE A. MAUPIN, *et al.*, </br></br>   Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) </br> No. 1:22-cv-01230-STA-jay |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO ABCO DEFENDANTS' MOTION FOR LEAVE TO FILE AMENDED ANSWER**

More than two years after the Court's deadline to amend the pleadings and on the eve of the close of discovery, Defendants Jesse Maupin, Barry D. Harrell, Adrian S. Harrod, Logan C. Feagin, Stephanie L. Gillespie, Ryan E. Brown, Daniel J. Hershberger, and American Barn Co., LLC (collectively "the ABCO Defendants") have moved to amend their Answer to assert a new affirmative defense. *See* Doc. 217. Because there is no excuse for the ABCO Defendants' delay and because the amendment would prejudice Plaintiff "Weather King" at this late stage of the proceedings, the Court should deny the ABCO Defendants' motion.

**BACKGROUND**

The background of this case is set forth in this Court's summary judgment ruling. *See* Doc. 119 at 2-3. The gravamen of Weather King's claims is that nine former Weather King employees abused their positions in the creation and operation of a competing entity in the portable buildings industry in a months'-long, well-coordinated scheme to secretly steal Weather King's Western U.S. operations, causing significant lost profits. After Defendants (while still on Weather King's

1

payroll) covertly stole virtually all of Weather King's Western business relationships—including its builders, dealers, employees, and drivers—Weather King was left with a significant amount of raw materials, inventory, and equipment in the West but with no one to continue building the portable buildings, virtually no dealers to sell them to end users, virtually no one to transport them, and virtually nowhere to store them.

Under these circumstances of duress intentionally orchestrated by Defendants, and after investigation and efforts were made to determine whether the Western operations could continue despite Defendants' disruption of the supply and distribution chain, Weather King determined that its best course of action was to limit its losses by selling its remaining Western assets to another portable buildings manufacturer. Accordingly, Weather King approached Old Hickory Sheds, LLC ("Old Hickory"), whose President, Brian Berryman, is the son of one of Weather King's owners, Scott Berryman. Ex. 1, B. Berryman 6/26/24 Dep. 13:15-14:10; Doc. 217-1, T. Boyd 5/7/25 Dep. 18:23-20:14. Old Hickory agreed to purchase the inventory and equipment at the price proposed by Weather King. *Id.* (T. Boyd Dep.) at 20:15-23.

Weather King filed its Complaint on October 19, 2022, and its Amended Complaint on January 10, 2023. Doc. 1; Doc. 26. In their Answer and First Amended Answer to the Amended Complaint, the ABCO Defendants only asserted the following three affirmative defenses: "1. Failure to state a claim; 2. Preemption; [and] 3. No damages." Doc. 28; Doc. 31. By Scheduling Order entered March 3, 2023, the Court set a deadline of **May 5, 2023**, for the parties to amend the pleadings. Doc. 63.[1]

---

[1] Although that Scheduling Order has been amended multiple times, the deadline to amend the pleadings was never extended, and Defendants never mentioned the amendment deadline at any of those junctures.

The trial (after multiple postponements largely caused by Defendants' discovery misconduct) is scheduled to begin on October 27, 2025. Doc. 151. On May 22, 2025—shortly before the June 2, 2025 deadline to complete depositions (Doc. 204)—the ABCO Defendants moved to amend their Answer to assert failure to mitigate damages as an affirmative defense. Doc. 217.

## ARGUMENT

In their motion, the ABCO Defendants cite well-developed law standing for the proposition that leave to amend under Fed. R. Civ. P. 15 should be liberally granted. *See* Doc. 217 at 3-4. They ignore, however, that their motion must be construed under Rule 16(b)(4) and that they bear a much higher burden given that they filed their motion well after the Court's deadline to amend. As this Court explained in *Amalu v. Stevens Transp., Inc.*, No. 1:15-cv-01116-STA-egb, 2018 WL 6839036, at *1 (W.D. Tenn. Mar. 27, 2018):

> If a motion to file an amended complaint is filed after the deadline for amending pleadings set in the scheduling order, as in the present case, Federal Rule of Civil Procedure 16 provides an **additional, more stringent requirement**. "When [a] motion to amend is filed after the scheduling order's deadline ... a demonstration of good cause under Rule 16(b) is required before a court may consider if an amendment is proper under Rule 15(a)." *Birchwood Conservancy v. Webb*, 302 F.R.D. 422, 424 (E.D. Ky. 2014) (citing *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)); *see also Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 835 (6th Cir. 2005) ("[W]hen a plaintiff moves to amend a complaint after the deadline for amendments in the scheduling order has passed, Rule 15(a)'s instruction for leave to be 'freely given' must be read in conjunction with Rule 16's requirement that amendment of a scheduling order must only be made upon a showing of good cause and leave of the court.") Under Rule 16, the primary measurement of good cause "is the movant's diligence in attempting to meet the case management order's requirements." *Birchwood Conservancy*, 302 F.R.D. at 427 (quoting *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003)). Late-moving litigants must show that "despite their diligence they could not meet the original deadline." *Shane v. Bunzl Distribution USA, Inc.*, 275 F. App'x 535, 536 (6th Cir. 2008) (citation omitted). Rule 16 was designed to ensure that "at some point both

>the parties and the pleadings will be fixed." Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment. A court must also consider "possible prejudice to the party opposing the modification" when ruling on a motion to amend the complaint. *Scheel v. Harris*, 2012 WL 5497967 at *1 (E.D. Ky. Nov. 13, 2012) (quoting *Andretti*, 426 F.3d at 830).

(Emphasis added); *accord Armatas v. Haws*, 2021 WL 5356028, at *3 (6th Cir. Nov. 17, 2021) ("Notably, the moving party must meet a 'higher threshold' in showing good cause under Rule 16 than it would under Rule 15") (citations omitted).

Here, the ABCO Defendants have made no attempt to meet their "more stringent" requirement of showing good cause. Nor could they, because they did not act diligently. Moreover, Weather King would be prejudiced this late in the proceedings.

## I.    The ABCO Defendants have not demonstrated that they acted diligently.

"To amend their pleadings, parties who do not meet a scheduling deadline must demonstrate that 'despite their diligence they could not meet the original deadline.'" *Holzemer v. City of Memphis*, No. 06-2436, 2011 WL 13269199, at *2 (W.D. Tenn. May 4, 2011) (quoting *Shane v. Bunzl Distrib. U.S.A., Inc.*, 275 Fed. Appx. 535, 536 (6th Cir. 2008)). The failure to mitigate damages is a commonly and routinely-asserted affirmative defense, but the ABCO Defendants do not explain why they neglected to assert it at the outset. Regardless, this case has been pending for 2½ years, and there certainly is no excuse for their failure to raise it after Weather King deposed each of them and discovery was closing.

The Sixth Circuit has recognized that "[w]hen amendment is sought at a ***late stage in the litigation, there is an increased burden*** to show justification for failing to move earlier." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 459 (6th Cir. 2001) (emphasis added); *see also United Precision Prods. Co. v. Avco Corp.*, 540 F. App'x 489, 497 (6th Cir. 2013) (quoting same); *Thomas v. Schroer*, No. 2:13-cv-02987-JPM-cgc, 2016 WL 7364908, at *1 (W.D. Tenn. May 16, 2016)

4

(same); *Fadalla v. Life Auto. Prods., Inc.*, No. 2:06-cv-02679-BBD-tmp, 2009 WL 10665387, at *2 (W.D. Tenn. Aug. 6, 2009) (same).

The foundation of the ABCO Defendants' position is that it was not until May 7, 2025, that "new information emerged" during depositions of Weather King witnesses that supposedly prompted them to realize for the first time that failure to mitigate was a possible affirmative defense. Def.'s Motion, Doc. 217, ¶ 6; *see also id.*, ¶ 9 ("Because the ABCO Defendants learned of this new information though Scott Berryman's and Tim Boyd's depositions taken on May 7, 2025, the ABCO Defendants seeks leave to add an affirmative defense regarding Weather King's failure to mitigate."). The ABCO Defendants' characterization of this information as newly-discovered, however, is disingenuous.

Specifically, they claim they learned for the first time on May 7, 2025, that there were no negotiations when Weather King sold its Western assets to Old Hickory in 2022, and that, when "the owners of Weather King presented Old Hickory with an offer, [Old Hickory] accepted the offer without making a counteroffer." *Id.*, ¶¶ 7-8. The ABCO Defendants, however, explored Old Hickory's purchase of Weather King's Western assets nearly a year ago—on June 26, 2024—when they took the deposition of Old Hickory's President, Brian Berryman. *See* Ex. 1, Excerpts of B. Berryman Dep. Moreover, the ABCO Defendants cannot explain how Old Hickory accepting Weather King's price without making a counter-offer (for less money) could serve as evidence that Weather King did not mitigate its damages.[2]

---

[2] Weather King cannot be faulted for Old Hickory's actions and, if Weather King had demanded that Old Hickory negotiate the purchase price, Weather King's damages would be more, not less. In their motion, Defendants also claim that Weather King owner "Tim Boyd testified that Weather King did not investigate what an appropriate purchase price for its assets would be before it sold its assets." Doc 217, ¶ 7 (citing Doc. 217-1, Boyd Dep. at 18:13–16). The cited testimony, however, shows that Mr. Boyd merely testified that Weather King did not "investigate *other transactions*" before proposing a purchase price. *Id.* (emphasis added).

5

Regardless, the ABCO Defendants' own expert disclosure demonstrates that they were well aware of a possible failure to mitigate defense before the May 7, 2025 depositions. The same day those depositions took place—and without the benefit of learning information from those depositions—Brian W. Napper issued an expert report on behalf of the ABCO Defendants. Ex. 2, Napper Rpt. Therein, Mr. Napper has an entire section titled: "Weather King Did Not *Mitigate* Its Potential Losses." *Id.* at 18, ¶¶ 51-69 (emphasis added); *see also id.*, ¶42. None of those opinions are predicated on "new information [that] emerged" during the depositions that took place that same day. Doc. 217, ¶ 6.

Instead, his opinions are based on information that has been within the ABCO Defendants' knowledge and possession for many months. For instance, based on his "review of the *available evidence*"—and particularly Brian Berryman's June 2024 deposition—Napper questions whether Weather King's sale of its Western assets to Old Hickory reflected an "arms-length transaction[.]" Ex. 2, Napper Rpt., ¶¶ 44-49 (emphasis added). After discussing that deposition, Napper states: "In the following section I discuss certain evidence which I believe is consistent with the premise that Weather King failed to perform activities that would lead to recuperating a market value associated with these remaining Weather King Western Division assets." *Id.*, ¶ 50.

In the ensuing 19 paragraphs, Napper explains—based on the preexisting evidence—why he believes that "Weather King did not mitigate its potential losses." *Id.*, ¶¶ 51-69. These opinions are predicated in large part on discussions that he had with Defendant Jesse Maupin (and based on information known by Maupin well before to the amendment deadline) and Maupin's deposition that took place in *January* 2025. *See, e.g., id.*, ¶¶ 55, 59, 61, 68; *id.* fn. 60, 65, 69, 74, 84.

For instance, Napper faults Weather King for "simply abandon[ing] its [Western] assets by selling them off," *id.*, ¶ 61, rather than risking additional capital to remain active in the West and

6

replacing the employees and other relationships that Defendants stole away. *See id.*, ¶¶ 58-61. That opinion has nothing to do with Weather King's negotiations with Old Hickory or any information learned on May 7, 2025.

Thus, the ABCO Defendants cannot credibly claim that innocuous information obtained during the May 7, 2025 depositions made them suddenly aware that they had a failure to mitigate defense given that their own expert had already formulated that opinion based on information in the ABCO Defendants' possession all along. Under these circumstances, the ABCO Defendants have "not demonstrated why [they] did not seek to amend the [answer] earlier, and the failure to meet the heightened burden to do so is one factor against granting the motion to amend." *Thomas*, 2016 WL 7364908, at *2 (footnote omitted).

## II.     Weather King would be prejudiced by the amendment.

"[T]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Amalu*, 2018 WL 6839036, at *3 (quoting *Phelps v. McClellan*, 30 F.3d 658, 662-63 (6th Cir. 1994)). Even ignoring the two-year unexplained delay, Weather King can easily establish prejudice. "The Sixth Circuit has repeatedly held that moving to amend a complaint after the close of discovery causes undue delay and undue prejudice to the defendant." *Taylor v. Cardinal Health 414, LLC*, No. 2:20-cv-02004-JPM-tmp, 2020 WL 12968838, at *2 (W.D. Tenn. Oct. 29, 2020) (citations omitted); *see also United Precision Prods. Co. v. Avco Corp.*, 540 F. App'x 489, 496 (6th Cir. 2013) ("[A]llowing amendment after the close of discovery creates significant prejudice.") (citations omitted).

The ABCO Defendants moved to amend a few days before the close of discovery and after Weather King deposed each of the ABCO Defendants (and more than a year after the close of written discovery). *See* Doc. 130, 2d Am. Scheduling Order; Ex. 3, Johnson Decl. Were the

7

ABCO Defendants allowed to amend their Answer, discovery would need to be reopened so that Weather King would have the opportunity to re-take the ABCO Defendants' depositions.[3] Further, it may be necessary for Weather King to supplement its expert disclosure.[4] This could impact the trial setting, which has already been postponed multiple times.

In countless cases, courts have found that a party is prejudiced if an amendment to a complaint or answer would require discovery to be reopened. *See, e.g., Wade*, 259 F.3d at 459 (affirming denial of amendment where "significant discovery has been completed," depositions would need to be retaken, and the defendant would be required to prepare a new defense); *United Precision*, 540 F. App'x at 496–97 (finding that allowing amendment "would have required the district court to reopen each of these deadlines, in a case that was already four years old," and, therefore, "[i]t is not difficult to see the undue prejudice").[5] For instance, in *Amalu, supra*, this Court found:

---

[3] And, before those could be scheduled, the ABCO Defendants would need to supplement their discovery responses in response to Weather King's request for production for "[a]ll documents supporting or relating to any defenses" they have asserted. *See, e.g.,* Doc. 186-1, RFP No. 36.

[4] Consistent with the Court's March 31, 2025, deadline, Weather King disclosed Doug Southard as a damages expert. *See* Doc. 150.

[5] *See also Gunnels v. Kenny*, 700 F. App'x 478, 484 (6th Cir. 2017) ("Allowing [plaintiff's] amendment would at this point prejudice the defendants by requiring them to reopen closed discovery"); *Fernanders v. Mich. Dept. of Mil. & Veterans Affs.*, 2015 WL 13926437, at *2 (6th Cir. May 28, 2015); *Newburgh/Six Mile Ltd. P'ship II v. Adlabs Films USA, Inc.*, 483 F. App'x 85, 93 (6th Cir. 2012); *Leary v. Daeschner*, 349 F.3d 888, 908-09 (6th Cir. 2003); *Maxwell v. Corr. Med. Servs., Inc.*, 538 F. App'x 682, 692–93 (6th Cir. 2013); *Thomas*, 2016 WL 7364908, at *2 ("The addition of a new claim after the close of discovery prejudices the non-moving party, which must reopen discovery and litigate a new issue."); *Taylor v. Cardinal Health 414, LLC*, No. 2:20-cv-02004-JPM-tmp, 2020 WL 12968838, at *3 (W.D. Tenn. Oct. 29, 2020) (finding prejudice where plaintiff moved to amend as discovery closed and defendant "would need to re-open at least [plaintiff's] deposition to explore the new allegations"); *Yearta v. Amusements of Am., Inc.*, No. 2:17-cv-02117-SHM-jay, 2020 WL 61054, at *5-6 (W.D. Tenn. Jan. 6, 2020); *JNJ Logistics, LLC v. Scottsdale Ins.*, No. 2:10-cv-02741-JPM-cgc, 2013 WL 12284454, at *4 (W.D. Tenn. June 4, 2013); *BP Prods. N. Am. Inc. v. Premier Oil Co., LLC*, No. 2:11-CV-2162-JPM-cgc, 2013 WL 12251707, at *5 (W.D. Tenn. Mar. 15, 2013); *Gaasch v. Stoev*, No. 2:09-cv-02270-JPM-dkv, 2010 WL 11598109, at *3 (W.D. Tenn. Dec. 21, 2010); *Jones v. Illinois Cent. R.R. Co.*, No. 2:07-cv-2073, 2008 WL 11322184, at *2 (W.D. Tenn. June 3, 2008); *Seymour v. U.S. Postal Serv.*, No. 04-2261 D/P, 2007 WL 9710252, at *2 (W.D. Tenn. Jan. 30, 2007).

> As noted by Defendants, if Plaintiffs are allowed to amend their complaint at this late date, discovery would have to be re-opened, witnesses re-deposed, motions for summary judgment re-briefed, and the trial date continued. *See Jules v. Police Dep't Vill. of Obetz*, 2013 WL 526441 at *3 (S.D. Ohio Feb. 11, 2013) (finding that the defendants would suffer prejudice if the amendment was granted because "it is likely that Defendants would need to conduct additional discovery, which would delay resolution of this action."); *c.f. Greene v. Ab Coaster Holdings, Inc.*, 2012 WL 2342927 at *5 (S.D. Ohio June 20, 2012) (citing *Duggins*, 195 F.3d at 834, and *Weese v. Wyndham Vacation Resorts*, 2009 WL 1884045 (E.D. Tenn. 2009)) ("For example, prejudice [under Rule 15] typically may be found [when] amendments to add claims after the close of discovery would require the reopening of discovery or the preparation of a new defense, or where a dispositive motion already has been submitted."). As stated by the Sixth Circuit in *Duggins*, "[a]llowing amendment in this late stage in the litigation" would undermine the purpose of Rule 16 and "would create significant prejudice to the defendants." 195 F.3d at 834.
>
> Because the Court finds that Plaintiffs were not diligent in seeking to amend their complaint and that Defendants would be prejudiced if the amendment is allowed at this late date, no good cause exists to amend the scheduling order under Rule 16.

2018 WL 6839036, at *3; *see also Allied Waste N. Am., Inc. v. Lewis, King, Krieg & Waldrop, P.C.*, 2015 WL 13657148, at *3-4 (M.D. Tenn. June 22, 2015) (finding that motion to amend answer to assert mitigation of damages as a defense was "clearly prejudicial" where the plaintiff may need to reopen discovery and file another dispositive motion).

Because Weather King would be prejudiced by the proposed amendment adding a new affirmative defense and because there is no reason that the ABCO Defendants could not have asserted the defense much earlier (prior to the significant discovery that has taken place), the ABCO Defendants have failed to meet their stringent burden of demonstrating good cause under Rule 16(b)(4).

## CONCLUSION

For the foregoing reasons, the Court should deny the ABCO Defendants' motion to amend their Answer.

# **CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2025, I filed the foregoing Notice with the Court using the ECF system, which will provide notice and a copy to counsel of record:

Thomas G. Pasternak
Benjamin S. Morrell
TAFT STETTINIUS &HOLLISTER LLP
111 East Wacker Drive, Suite 2600
Chicago, IL 60601
Telephone: (312) 527-4000
Facsimile: (312) 527-4011
tpasternak@taftlaw.com
bmorrell@taftlaw.com
*Attorneys for Defendants*

And to the following via U.S. Mail and email.

Brian L. Lassen
Aleyna Lassen
1405 N. Fort Grant Road
Willcox, AZ 85643
willcoxbuildings@pm.me

*/s/  David L. Johnson*
David L. Johnson