# EXHIBIT A

1            IN THE UNITED STATES DISTRICT COURT

2              WESTERN DISTRICT OF TENNESSEE

3                    EASTERN DIVISION

4   CONSOLIDATED INDUSTRIES, LLC d/b/a
    WEATHER KING PORTABLE BUILDINGS,
5

6                     Plaintiff

7        vs                      No. 1:22-cv-01230-STA-jay

8   JESSE A. MAUPIN, et al,

9                    Defendants.

10

11           VIDEOTAPED DEPOSITION OF RYAN BROWN
                      MAY 15, 2025
12                    8:18 A.M.
         LOUISIANA BOULEVARD, NORTHEAST, SUITE 10400
13            ALBUQUERQUE, NEW MEXICO 87110

14

15

16           PURSUANT TO THE FEDERAL RULES OF CIVIL

17   PROCEDURE this deposition was:

18

19

20   TAKEN BY:    DAVID L. JOHNSON, ESQ.
                  ATTORNEY FOR PLAINTIFF
21

22

23   REPORTED BY:  KIM KAY SHOLLENBARGER
                   NEW MEXICO CCR#236
24

25

CONSOLIDATED INDUSTRIES v JESSE A. MAUPIN                                Job 40653
BROWN, RYAN 05/15/2025                                                          2

```
 1                          A P P E A R A N C E S

 2    For the Plaintiff:

 3           David L. Johnson, Esq.
             Butler Snow, LLP
 4           150 3rd Avenue South, Suite 1600
             Nashville, Tennessee 37201
 5           (615)651-6700
             david.johnson@butlersnow.com
 6

 7    For the Defendants:

 8           Thomas Pasternak, Esq.
             Taft Stettinius & Hollister, LLP
 9           111 East Wacker Drive, Suite 2600
             Chicago, Illinois 60601
10           (312)836-4134
             tpasternak@taftlaw.com
11
      Also Present: Charles Martinez - Videographer
12                   Dominic Martinez - Videographer (in training)
                     Jesse Maupin
13                   Daniel Hershberger

14                              I N D E X

15    EXAMINATION OF RYAN BROWN                         PAGE

16       By Mr. Johnson                                 4,102

17       By Mr. Pasternak                               102

18    REPORTER'S CERTIFICATE                            104

19    EXHIBITS                                  MARKED/IDENTIFIED

20    Exhibit 1. Notice to take Deposition              4

21    Exhibit 2. Responses to Interrogatories           24

22    Exhibit 3. Responses to Interrogatories           25

23    Exhibit 4. Responses to Interrogatories           25

24    Exhibit 5. ABCO 55917-55919 text                  48

25    Exhibit 6. 6/13/22 letter to R. Brown             52
```

1   Exhibit 7. ABCO 51554-51555 text                    55

2   Exhibit 8. ABCO 33372-33376 text                    56

3   Exhibit 9. Weather King 4184 wire transfer          63

4   Exhibit 10. REBROWN 347-356 Driver/Dealer list      65

5   Exhibit 11. ABCO 1893-1895 text                     70

6   Exhibit 12. ABCO 33364-33368 text                   71

7   Exhibit 13. ABCO 58908 email 3/24/22                71

8   Exhibit 14. ABCO 15879-15882 text                   72

9   Exhibit 15. ABCO 4891-4893 text                     80

10  Exhibit 16. ABCO 64-65 text                         88

11  Exhibit 17. ABCO 58036-58038 text                   89

12  Exhibit 18. ABCO 68311-68312 text                   98

13  Exhibit 19. ABCO 65230-65231 text                   101

14

15

16

17

18

19

20

21

22

23

24

25

| 1 | THE VIDEOGRAPHER: Good morning. Today is Thursday |
|---|---|
| 2 | the 15th day of May 2025. The time is 8:18 a.m. We are on |
| 3 | the record. My name is Charles Martinez with Fortz Legal. |
| 4 | The court reporter is Kim Shollenbarger with Fortz Legal. We |
| 5 | are here for the Deposition of Ryan Brown in the case of |
| 6 | Consolidated Industries, LLC versus Jesse Maupin, et al; case |
| 7 | number cv-01230. The deposition is being held at Butler |
| 8 | Snow, LLP, in Albuquerque, New Mexico. And will counsel |
| 9 | please state their appearances. |
| 10 | MR. JOHNSON: David Johnson for the Plaintiff. |
| 11 | MR. PASTERNAK: Tom Pasternak for the witness and |
| 12 | the Defendants. |
| 13 | THE VIDEOGRAPHER: Will the court reporter please |
| 14 | swear in the witness. |
| 15 | RYAN BROWN |
| 16 | (being duly sworn, testified as follows) |
| 17 | EXAMINATION |
| 18 | BY MR. JOHNSON: |
| 19 | Q. Good morning, Mr. Brown. Could you please state |
| 20 | your name and address for the record. |
| 21 | A. Ryan Brown. 105 Doris Court, Grants, New Mexico. |
| 22 | Q. I'm going to hand to you a document we've marked as |
| 23 | Exhibit 1. Do you recognize this as a Notice of Deposition |
| 24 | for which you're here -- to be here today? |
| 25 | A. I see it now. |

1    Q.    Have you ever given a deposition before, Mr. Brown?

2    A.    I have not.

3    Q.    Has anyone explained to you some of the ground rules

4    about a deposition?

5    A.    Thomas and I discussed a little bit last night about

6    how it --

7          MR. PASTERNAK:   You don't need to disclose what we

8    talked about.

9    A.    Sorry.

10   Q.    During this deposition don't divulge any

11   conversations you had with your legal counsel, okay, sir.

12   A.    Okay.

13   Q.    The court reporter is here to transcribe our

14   conversation and it's important for her to accurately

15   transcribe that; so in that respect, if you could please wait

16   for me to finish my question before you provide your answer

17   and I'll do my best not to interrupt you and let you complete

18   your answer before I ask the next question.  Is that fair?

19   A.    Fair.

20   Q.    If I ask a yes/no -- or a question that would invoke

21   a yes or no response, if you can please respond with yes or

22   no as opposed to head nods or uh-huhs and huh-uhs so that she

23   can accurately transcribe that.  Is that fair?

24   A.    That's fair.

25   Q.    If you don't understand a question I've asked, if

1    until -- or brought to fruition until after I quit Weather

2    King.  So therefore, no, I didn't do anything on their time.

3         Q.    What about in furtherance of ABCO's business?

4         A.    As far as I know, no.

5         Q.    If we look back at Exhibit 2, that may be in front

6    of you.  In response to written discovery you were asked to

7    produce correspondence that you exchanged with the other

8    Defendants, correct?  Do you recall that?

9         A.    I recall something like that.

10        Q.    If we look at Exhibit 2, we pull up request for

11   production number 7, which is on page 9.  Do you see that?

12        A.    Number 7, correct.

13        Q.    And you respond, "responsive documents will be

14   produced."  Do you see that?

15        A.    Where's that?

16        Q.    Your response to RFP Number 7.  This is on page 9.

17        A.    I'm on the wrong page.  Page 9, okay.

18        Q.    Do you see where you say, "responsive documents will

19   be produced."

20        A.    Yes.

21        Q.    And you produced emails in response to that request,

22   do you recall that?

23        A.    I recall trying to provide what was asked for.

24        Q.    I'll just have to hand it to you, because of the ten

25   Defendants, you were the only Defendant who provided

1   anything, and you provided emails, okay. But you didn't
2   produce a single text message, did you, Mr. Brown?
3       A.   I don't recall what I produced.
4       Q.   You don't have any reason to deny not producing any
5   text messages in response to that request, correct?
6       A.   Like I just stated, I believe that I produced what
7   you guys requested.
8       Q.   Did anyone encourage you not to produce text
9   messages in response to this request?
10      A.   I don't recall any conversation about that.
11      Q.   Do you recall scrolling through your cell phone to
12  look to see whether you had text messages in response to that
13  request?
14      A.   I don't recall scrolling through. I tried to print
15  off things, and just was trying to produce what you guys
16  requested.
17      Q.   What was your understanding of what the Court
18  expected you to do to look for and produce documents in
19  response to Weather King's request?
20      A.   My understanding, from what I recall was, I read the
21  questions and tried to produce what was asked for.
22      Q.   Do you recall what specifically you did to look for
23  documents in response to these requests?
24           MR. PASTERNAK: Objection, asked and answered.
25           MR. JOHNSON: You can answer again.

| | |
|---|---|
| 1 | MR. PASTERNAK: You can answer. |
| 2 | A. Like I said, what I recall three years ago is what |
| 3 | was asked for, trying to find it and produce it. |
| 4 | Q. In terms of trying to find it, what did you do to |
| 5 | try to find it? |
| 6 | A. I can't recall specifics. I would imagine that I |
| 7 | looked through the phone and printed off screenshots and |
| 8 | printed off emails and tried to produce what was asked for. |
| 9 | Q. But you can't point to a single screenshot, text |
| 10 | message that you produced in response to these requests, can |
| 11 | you, Mr. Brown? |
| 12 | A. I can't recall text messages from yesterday, let |
| 13 | alone three years ago. |
| 14 | Q. Well, I'm not asking if you can recall what the text |
| 15 | messages say, but you're perfectly capable of getting your |
| 16 | phone and looking for text messages, were you not, Mr. Brown? |
| 17 | A. You just asked me if I recalled having a specific |
| 18 | text message that I recall bringing up. |
| 19 | Q. That's not what I asked. |
| 20 | A. That's what I understand. |
| 21 | Q. Was there anything that prevented you from searching |
| 22 | through your text messages and seeing if you had text |
| 23 | messages with Jesse Maupin? |
| 24 | A. Not as far as I recall. |
| 25 | Q. What kind of phone have you possessed since 2022, |

1   has it been an iPhone?

2       A.   Correct.

3       Q.   And for your iPhone have you backed your messages up

4   on iCloud?

5       A.   Up until this I didn't even know what that was.  So

6   I don't even know.

7       Q.   You don't know whether you did or not?

8       A.   Correct.

9       Q.   So is it fair to assume then that you didn't check

10  your iCloud to see whether you had responsive text messages?

11      A.   Like I keep stating, at the time I can't recall

12  exact what I did or didn't do.  I believe that I read every

13  question and tried to produce what was asked for.

14      Q.   Did you have any discussions with anyone else in

15  response to discovery about looking through your iCloud to

16  see whether you had responsive text messages?

17      A.   I don't recall having any conversation with anything

18  about -- other than how this was going to go.

19      Q.   I'm going to hand you a document which we've marked

20  as Exhibit 5.  This is stamped ABCO 55917.  These are text

21  messages that were produced as part of the forensic

22  examination of cell phones in this case.  Do you recognize

23  these as March 13, 2022 text messages between you and Mr.

24  Maupin?

25      A.   March?

| | | |
|---|---|---|
| 1 | Q. | Did I say March? I meant January. |
| 2 | A. | They are dated January. |
| 3 | Q. | January 13, 2022. |
| 4 | A. | Correct. As far as me recognizing them, no, not |

5  until I read back through them.

6      Q.   And these are text messages that are responsive to

7  request for production number 7, correct?

8      A.   These are what I gave you guys?

9      Q.   You did not give it to us, no, sir.  We got it

10  through the forensic examination of cell phones in this case.

11      A.   Okay.

12      Q.   Can you explain why you did not produce these text

13  messages?

14      A.   I can't recall any of it.

15      Q.   And you don't recall whether you searched through

16  your cell phone to determine whether you had text messages?

17      A.   Like I mentioned, when I got the request, I believe,

18  as far as my recollection goes, that I did everything I could

19  to produce what you guys wanted.

20      Q.   Looking at these text messages, does this refresh

21  your recollection of the time in which you had first

22  conversations with Mr. Maupin about joining together to

23  compete with Weather King?

24      A.   I don't recall the messages.  I'm trying to read

25  through them.

1    Q.    And I'm happy to give you some time to do that.

2    A.    Okay.  What was the question?

3    Q.    Does this refresh your recollection concerning the

4    timing of when you and Mr. Maupin first spoke about competing

5    with Weather King?

6    A.    Not really.

7    Q.    Let's look at the text messages that were exchanged

8    at 8:28 p.m. and 8:30 p.m.

9    A.    Okay.

10   Q.    You say at 8:28, "man, I'm excited and it's going to

11   be a lot of work for the next couple of years, but it's worth

12   it and right on time, we aren't getting any younger, it's

13   what happens when people mess with the alpha," correct?

14   A.    That's what it says, correct.

15   Q.    And that is referring to a new business enterprise,

16   correct?

17   A.    I'm going to assume it is.  I don't recall the

18   conversation.

19   Q.    Is the alpha Mr. Maupin?

20   A.    I don't know.

21   Q.    And then, what does Mr. Maupin say at 8:30?

22   A.    8:30, "I'm beyond excited, I have Arizona a hundred

23   percent on board and locked in, I'm ordering the truss

24   presses and saws next week, two-month turnaround on them."

25   Q.    And do you construe that as indicating that he had

1   the Arizona builders a hundred percent locked down on board?

2        A.   I can't comment to what he actually meant on Arizona

3   being a hundred percent. He just says, "I have Arizona as a

4   hundred percent," but that could mean lots of different

5   things.

6        Q.   I mean, you've got some commonsense, don't you,

7   Mr. Brown? Don't you think he's referring to having a

8   hundred percent of Weather King's builders in Arizona on

9   board?

10            MR. PASTERNAK:  Objection to form, calls for

11  speculation.

12       Q.   You can answer.

13       A.   What I'm going to answer is, when you're asking

14  about a conversation of what I remember what it was referring

15  to three years ago, I can't tell you where my mind was.  I

16  can't tell you where his mind was.  I can read text messages.

17       Q.   Where is your mind now?

18       A.   My mind now is, pretty funny that I said, "messing

19  with alpha."

20       Q.   Okay.  Well, where's your mind now?  What does your

21  mind tell you when he says, "Arizona's a hundred percent on

22  board," Mr. Brown?

23            MR. PASTERNAK:  Objection, asked and answered.

24  Calls for speculation.

25       Q.   What do you think that means?

1    A.    When I'm reading it, I would actually assume that he

2    has Arizona -- that maybe the dealers -- that he's talked to

3    the dealers.  I don't know it refers to builders.  I don't

4    know it refers to dealers.  I don't know what it refers to.

5    Q.    Okay, fair enough.  Handing you a document which

6    we've marked as Exhibit 6.  Do you recognize this as a letter

7    that I sent to you and your wife on June 13, 2022?

8    A.    We've gotten a lot of paperwork, so I'm sure this

9    was probably one of them.

10    Q.    Do you recall receiving this letter soon after --

11    well, on June 13th -- it looks like it was emailed to you on

12    June 13th or soon thereafter.

13    A.    I don't recall when we got it, but that probably

14    sounds correct.

15    Q.    Did you understand your obligations referenced in

16    this letter to preserve evidence?

17    A.    As far as I recall, I believe so.  But you're

18    pointing out that I have stuff that I missed anyway.

19    Q.    And this letter here demanded that you preserve text

20    messages that you had with the other Defendants and others,

21    correct?

22    A.    As far as I recall.

23    Q.    What, if anything, did you do after you received

24    this letter to make sure that you complied with the

25    preservation demand set forth in the letter?

1      A.    As far as I recall, just what you guys asked for,
2  didn't do anything.
3      Q.    Did you communicate with Mr. Maupin or anyone else
4  about preserving evidence?
5      A.    I don't remember having any conversations with
6  anybody.
7      Q.    Before papers are filed in the court in this case,
8  have you reviewed drafts of filings that your counsel has
9  filed on your behalf?
10     A.    Very little.
11     Q.    What about drafts of letters that your counsel has
12  sent to us before they were sent?
13     A.    Again, very little.
14     Q.    Are you aware that your counsel has represented to
15  the Court on your behalf that you didn't posses any text
16  messages responsive to Weather King's request?
17     A.    Again, I don't recall a lot of what's going on.
18     Q.    Do you have an understanding of what representations
19  were made to the Court on your behalf as to why you didn't
20  produce text messages in response to our requests?
21     A.    Again, from what I recall, I believe that I produced
22  whatever you guys asked for.
23     Q.    Ultimately you turned over your cell phone for
24  forensic examination, correct?
25     A.    Correct.

1    Q.   And do you understand that the forensic examiner
2    found text messages on your phone that Weather King demanded
3    be preserved, but you claim not to posses?

4    A.   You just pointed out some that I didn't know that
5    were even in existence.

6    Q.   As we sit here today, do you have an explanation as
7    to why you claim not to posses these text messages and why
8    you didn't produce them when Weather King asked for them in
9    discovery?

10   A.   Like I mentioned earlier, as far as I recall, I did
11   my best to produce whatever you guys asked for.

12   Q.   Did you delete any correspondence?

13   A.   Not as far as I recall.

14   Q.   Did you discuss deleting anything with any of the
15   Defendants?

16   A.   Never recall having any of those conversations.

17   Q.   Did you have any conversations with any of the
18   Defendants about searching for information responsive to
19   Weather King's discovery request?

20   A.   I don't recall any conversation.

21   Q.   As of late May 2022, did you have an understanding
22   of the extent to which Mr. Maupin and others had lined up
23   builders to join ABCO's business enterprise?

24   A.   Again, I can't really recall last week, let alone
25   three years ago.  I don't know what he had lined up.

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

| | |
|---|---|
| **CONSOLIDATED INDUSTRIES, LLC** | ) |
| **d/b/a WEATHER KING PORTABLE** | ) |
| **BUILDINGS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Civil Action No. 1:22-cv-01230** |
| **v.** | ) |
| | ) |
| **JESSE A. MAUPIN, BARRY D.** | ) |
| **HARRELL, ADRIAN S. HARROD,** | ) |
| **LOGAN C. FEAGIN, STEPHANIE L.** | ) |
| **GILLESPIE, RYAN E. BROWN, DANIEL** | ) |
| **J. HERSHBERGER, BRIAN L. LASSEN,** | ) |
| **ALEYNA LASSEN, and AMERICAN** | ) |
| **BARN CO., LLC,** | ) |
| | ) |
| **Defendants.** | ) |

## RYAN E. BROWN'S RESPONSES TO PLAINTIFF'S
## FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION OF
## DOCUMENTS, AND REQUESTS FOR ADMISSION

Pursuant to Fed. R. Civ. P. 26, 33, 34, and 36, Ryan E. Brown by and through his attorneys,

states the following responses.

### INTERROGATORIES

1.    Identify each business enterprise that has been engaged in the Portable Buildings

Industry with which you played any role in planning its creation or formation and, with respect to

each such enterprise, identify: (a) your specific role(s) relating to the creation/formation; (b) the

dates in which you were involved in the planning; and (c) all other individuals and entities who

were involved in planning the creation/formation.

### RESPONSE:

68561391;1



Brown objects to this interrogatory as unduly broad, overly burdensome, and not
proportional to the needs of the case, nor relevant to ay issue in the case. To collect all of this
information would impose an unnecessary burden on Brown. Subject to and without waiving these
objections, Brown states as follows:

R & D Hauling – 2012 – owner and creator

Pikes Peak Portable – part owner – 2014

R& D Trucking LLC – 2017 - owner and creator

Dragonfly Portables LLC – part owner – 2017

Shed Werx LLC – owner - 2017

2.      Other than Weather King, identify each business enterprise in the Portable
Buildings Industry in which you have held an ownership interest and/or performed services
(whether as an employee, an independent contractor, or in any other capacity) since January 1,
2021, and, with respect to each such enterprise, identify: (a) your specific relationship with the
entity, including but not limited to all titles and positions you have held; (b) the nature and extent
of any ownership interest in the enterprise; (c) the dates of your relationship; and (d) your role and
duties for the entity.

**RESPONSE:**

Brown objects to this interrogatory as unduly broad, overly burdensome, and not
proportional to the needs of the case, nor relevant to ay issue in the case. To collect all of this
information would impose an unnecessary burden on Brown. Subject to and without waiving these
objections, Brown states as follows:

R&D Hauling – all duties related to the business

Pike Peak Portables LLC – all duties related to the business

- 2 -

68561391;1

R&D Trucking – all duties related to the business

Dragonfuly Portables LLC – all duties related to the business

Shed Werx LLC – all duties related to the business

3.      Identify each communication you have had with any person or entity (other than confidential communications solely with your legal counsel, your spouse, or your accountant) between January 1, 2021, and through the day of the termination of your employment with Weather King (including but not limited to communications with lenders or potential lenders, investors or potential investors, business partners or potential business partners, Weather King employees, Weather King contractors, Weather King dealers, Weather King builders, Weather King drivers, other Weather King business partners, rental companies, and Weather King customers) relating to the creation/formation or potential creation/formation of, funding or potential funding of, and/or operation or potential operation of any business enterprise in the Portable Buildings Industry (other than Weather King) and, with respect to each such communication, identify: (a) the substance of the communication; (b) all parties to the communication; (c) the date of the communication; and (d) the mode of the communication (*i.e.*, telephonic conversation, email, text message, etc.).

**RESPONSE:**

Brown objects to this interrogatory as unduly broad, overly burdensome, and not proportional to the needs of the case, nor relevant to ay issue in the case. To collect all of this information would impose an unnecessary burden on Brown. Subject to and without waiving these objections, Brown states as follows: The only conversation I recall is with Jesse Maupin telling him that I was going to quit and he asked me if I had ever considered running my own plant. I do not recall the date.

- 3 -

68561391;1

4.    Identify each communication you had between January 1, 2021, and through the day of the termination of your employment with Weather King with any person then-employed by Weather King relating to that person's potential departure from Weather King and/or your potential departure from Weather King and, with respect to each such communication: (a) describe in detail the substance of the communication; (b) identify all parties to the communication; (c) identify the date of the communication; and (d) identify the mode of the communication (*i.e.*, telephonic conversation, email, text message, etc.).

**RESPONSE:**

See Response to Interrogatory No. 3.

5.    Identify each communication you had between January 1, 2021, and the day of the termination of your employment from Weather King with any person or entity who, at the time of the communication, was a Weather King dealer, driver, customer, lender, landlord, rental company, or other business partner relating to your potential departure from Weather King and, with respect to each such communication: (a) describe in detail the substance of the communication; (b) identify all parties to the communication; (c) identify the date of the communication; and (d) identify the mode of the communication (*i.e.*, telephonic conversation, email, text message, etc.).

**RESPONSE:**

None.

6.    Identify each person and/or entity with whom you have discussed funding, potential funding, or providing other financial support to or for any business enterprise in the Portable Business Industry since January 1, 2021, whether as an investor, a lender, or in any other capacity.

**RESPONSE:**

- 4 -

68561391;1

Jesse Maupin.

7.      Identify all property of Weather King (including but not limited to electronically stored information) that has been in your possession at any time after the date of the termination of your employment with Weather King and, with respect to the property, (a) identify where or how it has been stored; and (b) set forth in detail the circumstances in which you have made use of, copied, or shared the property with anyone else (including but not limited to the identity of the person or entity and the date(s) in which the property was shared).

**RESPONSE:**

None.

8.      Identify all Weather King property, whether tangible or intelligible (including but not limited to financial information and inventory count information) of which you were not an authorized recipient but that you accessed or obtained without a Weather King officer's permission and, with respect to each such item, identify: (a) the specific property you accessed or obtained; (b) the circumstances in which you accessed or obtained it, including but not limited to the date(s) of access or obtainment; (c) the circumstances in which you shared the property with anyone else, including but not limited to the identity of all such person and the date(s); and (d) the circumstances in which you otherwise made use of the property.

**RESPONSE:**

None.

9.      Identify all Weather King property, whether tangible or intelligible (including but not limited to financial information and inventory count information) to which you had authorized access but that you shared with a third-party or otherwise made use of the property for any purpose other than the furtherance of Weather King's business and, with respect to each such item, identify:

- 5 -

(a) the specific property; (b) the circumstances in which you shared the property with anyone else, including but not limited to the identity of all such person and the date(s); and (c) the circumstances in which you made use of the property for any purpose other than the furtherance of Weather King's business.

**RESPONSE:**

None.

10.     Identify all email accounts, cell phone numbers (and providers), messaging services, Google drive accounts, Dropbox accounts, and any other cloud-based account that you have used at any time since January 1, 2022, through the present.

**RESPONSE:**

Brown objects to this interrogatory as not being proportional to the needs of the case.

11.     Identify each device in your possession, custody, or control, including but not limited to laptop computers, desktop computers, cell phones (including number and provider), tablets, or other portable electronic or storage devices, that contains or contained any information that refers to, relates to, or was created by Weather King.

**RESPONSE:**

None.

12.     For each lawsuit, bankruptcy proceeding, criminal proceeding, or administrative proceeding, including divorce proceedings, to which you have been a party, state: (a) the court or agency in which said proceeding was instituted, the names of the parties to the proceeding, the docket number of said proceeding, the date the proceeding was filed and the date the proceeding was finally terminated; (b) the nature of the proceeding, including a description of the claims and

- 6 -

defenses, if applicable, and (c) the manner in which the proceeding was resolved (for example, by settlement, by court order).

**RESPONSE:**

Brown objects to this interrogatory as not being proportional to the needs of the case.

## VERIFICATION

I, Ryan E. Brown, declare under penalty of perjury that the foregoing responses to Plaintiff's First Set of Interrogatories are true and correct to the best of my knowledge, information, and belief.

Ryan E. Brown

DATE: 3/20/23

68561391;1

## REQUESTS FOR PRODUCTION

Please produce the following:

1.     All correspondence and other documents relating to the creation or formation of any business enterprise in the Portable Buildings Industry.

### RESPONSE:

Responsive documents will be produced.

2.     All documents which set forth the relationship you have had with any business enterprise in the Portable Buildings Industry since January 1, 2021, other than Weather King.

### RESPONSE:

Responsive documents will be produced.

3.     All correspondence and other documents exchanged with any lenders or potential lenders (including but not limited to FirstBank and Centennial Bank and any individuals) since January 1, 2021, relating to funding or potential funding or other financial support of any business enterprise in the Portable Buildings Industry.

### RESPONSE:

None.

4.     All correspondence and other documents exchanged with any investors or potential investors since January 1, 2021, relating to any business enterprise in the Portable Buildings Industry.

### RESPONSE:

None.

5.     All correspondence and other documents exchanged with Virgil W. Etherton between January 1, 2021, and July 1, 2022.

- 8 -

68561391;1

**RESPONSE:**

None.

6.    All correspondence and other documents exchanged with any former Weather King employees between January 1, 2022, and July 1, 2022.

**RESPONSE:**

Responsive documents will be produced.

7.    All correspondence and other documents exchanged with any then-current Weather King employees after January 1, 2022.

**RESPONSE:**

Responsive documents will be produced.

8.    All correspondence and other documents exchanged with any then-current Weather King dealers (including but not limited to employees and agents of those dealers) between January 1, 2022, and July 1, 2022.

**RESPONSE:**

None.

9.    All correspondence and other documents exchanged with any then-current Weather King builders (including but not limited to employees and agents of those builders) between January 1, 2022, and July 1, 2022.

**RESPONSE:**

None.

10.   All correspondence and other documents exchanged with any then-current Weather King customers (including but not limited to employees and agents of those customers) between January 1, 2022, and July 1, 2022.

- 9 -

68561391;1

**RESPONSE:**

None.

11. All correspondence and other documents exchanged with any then-current Weather King drivers (including but not limited to employees and agents of those drivers) between January 1, 2022, and July 1, 2022.

**RESPONSE:**

None.

12. All correspondence and other documents exchanged with any Portable Buildings Industry rental companies and/or rental companies being formed (including but not limited to employees and agents of those entities) between January 1, 2022, and July 1, 2022.

**RESPONSE:**

None.

13. All correspondence and other documents exchanged with BPS, LLC, BPS Rentals, LLC, Keith Priestley, Jerry Sawyer or Troy Buttrey between July 1, 2021, and July 1, 2022.

**RESPONSE:**

None.

14. All non-privileged correspondence and other documents related to:

(a) any of the Defendants' departure from Weather King;

(b) any of the Defendants' communications with any Weather King employees about the possibility of leaving Weather King or joining ABCO;

(c) any of the Defendants' communications with any Weather King builders, dealers, drivers, rental companies, or contractors, about the possibility of doing business with ABCO or ceasing doing business with Weather King;

- 10 -

68561391;1

(d) any claims or potential claims made by Weather King against any of the Defendants;

(e) any of the Defendants' possession of or use of any Weather King property; or

(f) derogatory remarks made by any of the Defendants relating to Weather King;

**RESPONSE:**

None.

15.     All correspondence and other documents exchanged with any person or entity related to the leasing or potential leasing of any property located in Arizona or New Mexico.

**RESPONSE:**

Brown objects to this request as not being proportional to the needs of the case.

16.     All emails and attachments sent from your Weather King company email address to any personal email address since January 1, 2021.

**RESPONSE:**

None.

17.     All correspondence and other documents referencing or relating to any Weather King drawings, blueprints, or other engineering plans, including but not limited to plans prepared by Kevin Nolan, P.E.

**RESPONSE:**

None.

18.     All documents relating to any sales of units using any Weather King drawings, blueprints, or other plans, including but not limited to plans prepared by Kevin Nolan, P.E.

**RESPONSE:**

None.

- 11 -

19. All documents reflecting contacts, notes, calendars, diaries, pictures, audio or video recordings, business records, computer disks, files, printouts, or any other written or recorded material that you received, obtained, copied, downloaded, transferred, or removed from Weather King and/or that were obtained, copied, downloaded, transferred, or removed from Weather King or contain Weather King information.

**RESPONSE:**

None.

20. All correspondence and other documents relating to your use of any Weather King property for any purpose other than the furtherance of Weather King's business.

**RESPONSE:**

None.

21. All correspondence and other documents relating to any and all instances in which you advised any other person or entity not to make use of any Weather King engineering plans or other property.

**RESPONSE:**

None.

22. All communications and other documents related to your use of any Weather King templates or form documents for any purpose other than the furtherance of Weather King's business.

**RESPONSE:**

None.

23. All correspondence and other documents referencing or relating to Weather King's business operations.

- 12 -

68561391;1

**RESPONSE:**

None.

24.    All documents evidencing distributions, salary, wages, bonuses, commissions, or other compensation paid or accrued to you by any entity in the Portable Buildings Industry, other than Weather King, from January 1, 2021, through the date of response.

**RESPONSE:**

None.

25.    All agreements between you and any of the other Defendants.

**RESPONSE:**

None.

26.    All agreements between you and any dealers, builders, lenders, investors, or rental companies in the Portable Buildings Industry.

**RESPONSE:**

None.

27.    All photographs, video, and/or audio recordings of Weather King property and/or current or former Weather King employees or officers.

**RESPONSE:**

None.

28.    All documents reflecting notes, diaries, journals, expense records, day planners, calendars, and/or other record(s) maintained by you that record, refer, or otherwise relate to your activities, including, but not limited to any appointment, meeting, interview, placement, or other business activities in the Portable Buildings Industry from January 1, 2022, through July 1, 2022.

**RESPONSE:**

- 13 -

None.

29.     All correspondence and/or other documents which relate to or refer in any way to your decision to become affiliated with a business enterprise in the Portable Buildings Industry other than Weather King or to depart from Weather King.

**RESPONSE:**

None.

30.     All phone records from January 1, 2022, through July 1, 2022, related to any device that you have used during that time period.

**RESPONSE:**

Brown objects to this request as not being proportional to the needs of the case.

31.     All correspondence and other documents exchanged between you and anyone else related to Weather King's toll-free telephone number or Caller ID.

**RESPONSE:**

None.

32.     All documents supporting your "[m]istake of fact" affirmative defense.

**RESPONSE**:

None.

33.     All documents supporting or relating to any other defenses you intend to assert against Plaintiff's claims.

**RESPONSE**:

None.

34.     All documents referenced in your responses to Plaintiff's interrogatories and/or upon which you relied in responding to Plaintiff's interrogatories.

- 14 -

**RESPONSE**:

None.

35.     All non-privileged communications between you and any of the other Defendants
pertaining to this lawsuit.

**RESPONSE**:

None.

## REQUESTS FOR ADMISSION

Pursuant to Fed. R. Civ. P. 36, Plaintiff requests that Defendant Ryan E. Brown admit to
the truth of the following:

1.     While still employed by Weather King, you encouraged one or more other Weather
King employees to join you (in the future) at ABCO.

**RESPONSE:**

Denied.

2.     While still employed by Weather King, you suggested to one or more other Weather
King employees that ABCO would be taking over Weather King's operations in the western
United States.

**RESPONSE:**

Denied.

3.     While still employed by Weather King, you encouraged one or more Weather King
dealers to plan to do business with ABCO.

**RESPONSE:**

Denied.

- 15 -

68561391;1

4.      While still employed by Weather King, you encouraged one or more Weather King

dealers to cease doing business (in the future) with Weather King.

**RESPONSE:**

Denied.

5.      While still employed by Weather King, you said negative or derogatory things

about Weather King to one or more Weather King dealers.

**RESPONSE:**

Denied.

6.      While still employed by Weather King, you suggested to one or more Weather King

dealers that ABCO would be taking over Weather King's operations in the western United States.

**RESPONSE:**

Denied.

7.      While still employed by Weather King, you encouraged one or more Weather King

drivers to plan to do business with ABCO.

**RESPONSE:**

Denied.

8.      While still employed by Weather King, you encouraged one or more Weather King

drivers to cease doing business (in the future) with Weather King.

**RESPONSE:**

Denied.

9.      While still employed by Weather King, you said negative or derogatory things

about Weather King to one or more Weather King drivers.

**RESPONSE:**

- 16 -

68561391;1

Denied.

10.     While still employed by Weather King, you suggested to one or more Weather King

drivers that ABCO would be taking over Weather King's operations in the western United States.

**RESPONSE:**

Denied.

11.     While still employed by Weather King, you encouraged one or more Weather King

builders to plan to do business with ABCO.

**RESPONSE:**

Denied.

12.     While still employed by Weather King, you encouraged one or more Weather King

builders to cease doing business (in the future) with Weather King.

**RESPONSE:**

Denied.

13.     While still employed by Weather King, you said negative or derogatory things

about Weather King to one or more Weather King builders.

**RESPONSE:**

Denied.

14.     While still employed by Weather King, you suggested to one or more Weather King

builders that ABCO would be taking over Weather King's operations in the western United States.

**RESPONSE:**

Denied.

15.     After your termination from Weather King, you have suggested to one or more

third-parties that ABCO was taking over Weather King's operations in the western United States.

- 17 -

**RESPONSE:**

Denied.

16. You encouraged Weather King dealers to coordinate such that their customers canceled their orders with Weather King and placed new orders with ABCO.

**RESPONSE:**

Denied.

17. You suggested to Weather King dealers that Weather King was or would be in financial distress.

**RESPONSE:**

Denied.

18. You suggested to Weather King dealers that Weather King was having or would have difficulty paying its bills.

**RESPONSE:**

Denied.

19. While still employed by Weather King, Jesse Maupin encouraged you to (in the future) leave Weather King and join ABCO.

**RESPONSE:**

Denied.

20. While still employed by Weather King, one or more of the other Defendants encouraged Weather King employees to (in the future) leave Weather King and join ABCO.

**RESPONSE:**

Brown lacks sufficient information to admit or deny this request and therefore denies it.

- 18 -

21.    While still employed by Weather King, one or more of the other Defendants encouraged Weather King dealers, builders, drivers, or others with whom Weather King had a business relationship to plan to do business with ABCO.

**RESPONSE:**

Brown lacks sufficient information to admit or deny this request and therefore denies it.

22.    One or more of the other Defendants has made use of Weather King property in furtherance of an interest other than Weather King's business interest.

**RESPONSE:**

Brown lacks sufficient information to admit or deny this request and therefore denies it.

Date: March 20, 2023                  */s/ Thomas G. Pasternak*
                                      Thomas G. Pasternak
                                      AKERMAN LLP
                                      71 South Wacker Drive, 47th Floor
                                      Chicago, IL 60606
                                      Tel. 312.634.5700
                                      thomas.pasternak@akerman.com

                                      *Attorneys for Defendant,*
                                      *Ryan E. Brown*

- 19 -

68561391;1

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Ryan E. Brown's Responses to

Plaintiff's First Interrogatories and Requests for Production and Requests for Admission was

served upon the following counsel via email on March 20, 2023:

> David L. Johnson, #18732
> John H. Dollarhide, #40041
> Y. Larry Cheng, #36707
> BUTLER SNOW LLP
> 150 3rd Avenue South, Suite 1600
> Nashville, TN 37201
> Telephone: (615) 651-6700
> Fax: (615) 651-6701
> david.johnson@butlersnow.com
> john.dollarhide@butlersnow.com
> larry.cheng@butlersnow.com

> Daniel W. Van Horn, #18940
> BUTLER SNOW LLP
> 6075 Poplar Ave., Suite 500
> Memphis, TN 38119
> Telephone: (901) 680-7200
> Fax: (901) 680-7201
> Danny.VanHorn@butlersnow.com

> */s/ Thomas G. Pasternak*
> Thomas G. Pasternak

- 20 -

68561391;1

**Short Message Report**

Conversations: 1
Total Messages: 18

Participants: 2
Date Range: 1/13/2022

**Outline of Conversations**

💬    **+17193738198** · 18 messages on 1/13/2022 · Jesse Allen Maupin <2709709453> · Ryan Brown
<7193738198>



Comms_000008508
ABCO_0055917

**Messages in chronological order** (times are shown in GMT -06:00)

💬    **+17193738198**

RB    **Ryan Brown <7193738198>**                                    1/13/2022, 2:23 PM



*Image: ~_Library_SMS_Attachments_a9_09_AF5F3921-8CF4-4C5C-80B7-7262AF0D8C31_Screenshot_20220113-121659.png (251 KB)*

JM    **Jesse Allen Maupin <2709709453>**                              1/13/2022, 8:20 PM
This is 100% on point on we are fixing to be the ones with cool shit but not some homo shit Lamborghini

RB    **Ryan Brown <7193738198>**                                    1/13/2022, 8:23 PM
Lmao! Thats right! Will have gallup signed no later then monday.

JM    **Jesse Allen Maupin <2709709453>**                              1/13/2022, 8:24 PM
That's good stuff

RB    **Ryan Brown <7193738198>**                                    1/13/2022, 8:28 PM
Man im excited and its gonna be alot of work for next couple years but its worth it and right on time we arent getting any younger. Its what happens when people mess with the alpha 😁

JM    **Jesse Allen Maupin <2709709453>**                              1/13/2022, 8:30 PM
I'm beyond excited and I have Arizona 100% on board and locked in im ordering the truss presses and saws next week 2 month turnaround on them

RB    **Ryan Brown <7193738198>**                                    1/13/2022, 8:31 PM
Awesome!!

JM    **Jesse Allen Maupin <2709709453>**                              1/13/2022, 8:36 PM
This is probably your first forklift

*File "7d1bb1ce-0f31-44fd-9a6b-4ec27eec9131.HEIC" is missing.*
*Attachment: ~_Library_SMS_Attachments_ed_13_92453F0C-9906-43FE-88D9-16EBB8E37A4B_IMG_1740.HEIC*

| RB | **Ryan Brown <7193738198>** | 1/13/2022, 8:47 PM |
|----|----|----|

Thats fantastic! To get the other one hauled and crushed they usually need title to dispose..... when u going to be able to make it back out?

| JM | **Jesse Allen Maupin <2709709453>** | 1/13/2022, 8:48 PM |
|----|----|----|

They don't have titles

| JM | **Jesse Allen Maupin <2709709453>** | 1/13/2022, 8:48 PM |
|----|----|----|

Be 2 weeks

| JM | **Jesse Allen Maupin <2709709453>** | 1/13/2022, 8:48 PM |
|----|----|----|

Or at least the ones I've bought don't have them

| RB | **Ryan Brown <7193738198>** | 1/13/2022, 8:48 PM |
|----|----|----|

Ok

| JM | **Jesse Allen Maupin <2709709453>** | 1/13/2022, 8:49 PM |
|----|----|----|

It may be sooner we have got to start getting your place ready

| RB | **Ryan Brown <7193738198>** | 1/13/2022, 8:50 PM |
|----|----|----|

Im gonna get working on it. I was thinking title or a Billis sale just so we can have our ducks in a row so when he loses his mind

| JM | **Jesse Allen Maupin <2709709453>** | 1/13/2022, 8:51 PM |
|----|----|----|

That's a good running forklift cost me 40k but I've gotta pick it up

| RB | **Ryan Brown <7193738198>** | 1/13/2022, 8:51 PM |
|----|----|----|

I really hope he wants three grand in his pocket for the rotting tractor

| RB | **Ryan Brown <7193738198>** | 1/13/2022, 8:52 PM |
|----|----|----|

Well if we had a trailer i could get it. I just dont know of anyone wit a flat bed....

Comms_000008510
ABCO_0055919