# EXHIBIT B

1           IN THE UNITED STATES DISTRICT COURT

2              WESTERN DISTRICT OF TENNESSEE

3                    EASTERN DIVISION

4    CONSOLIDATED INDUSTRIES, LLC d/b/a
     WEATHER KING PORTABLE BUILDINGS,
5

6                    Plaintiff

7           vs                    No. 1:22-cv-01230-STA-jay

8    JESSE A. MAUPIN, et al,

9                   Defendants.

10

11       VIDEOTAPED DEPOSITION OF DANIEL HERSHBERGER
                    MAY 15, 2025
12                   12:38 P.M.
         LOUISIANA BOULEVARD, NORTHEAST, SUITE 10400
13           ALBUQUERQUE, NEW MEXICO 87110

14

15

16           PURSUANT TO THE FEDERAL RULES OF CIVIL

17   PROCEDURE this deposition was:

18

19

20   TAKEN BY:    DAVID L. JOHNSON, ESQ.
                  ATTORNEY FOR PLAINTIFF
21

22

23   REPORTED BY:  KIM KAY SHOLLENBARGER
                   NEW MEXICO CCR#236
24

25

```
1                    A P P E A R A N C E S

2    For the Plaintiff:

3           David L. Johnson, Esq.
            Butler Snow, LLP
4           150 3rd Avenue South, Suite 1600
            Nashville, Tennessee 37201
5           (615)651-6700
            david.johnson@butlersnow.com
6

7    For the Defendants:

8           Thomas Pasternak, Esq.
            Taft Stettinius & Hollister, LLP
9           111 East Wacker Drive, Suite 2600
            Chicago, Illinois 60601
10          (312)836-4134
            tpasternak@taftlaw.com
11
     Also Present: Charles Martinez - Videographer
12                 Dominic Martinez - Videographer (in training)
                   Jesse Maupin
13                 Ryan Brown

14                         I N D E X

15   EXAMINATION OF DANIEL HERSHBERGER              PAGE

16      By Mr. Johnson                                5

17   REPORTER'S CERTIFICATE                          67

18   EXHIBITS                            MARKED/IDENTIFIED

19   Exhibit 1. Notice to take Deposition            5

20   Exhibit 2. Responses to Interrogatories        16

21   Exhibit 3. Responses to Interrogatories        16

22   Exhibit 4. Amended Responses to Interrogatories 17

23   Exhibit 5. Supplement Responses to             18
                Interrogatories
24

25   Exhibit 6. Second Set of Interrogatories       18
```

CONSOLIDATED INDUSTRIES v JESSE A. MAUPIN                              Job 40653
HERSHBERGER, DANIEL 05/15/2025                                              3

| 1  | Exhibit 7. 6/13/22 letter to D. Hershberger          | 36 |
| 2  | Exhibit 8. ABCO 52097-52101 email 1/18/22            | 36 |
| 3  | Exhibit 9. ABCO 52115-52118 email string             | 37 |
| 4  | Exhibit 10. ABCO 52119-52122 letter 2/3/22           | 38 |
| 5  | Exhibit 11. ABCO 52128-52132 email 2/7/22            | 39 |
| 6  | Exhibit 12. ABCO 52163-52169 email 2/10/22           | 39 |
| 7  | Exhibit 13. ABCO 51647-51648 text 2/24/22            | 41 |
| 8  | Exhibit 14. ABCO 22129-22135 email 2/15/22           | 41 |
| 9  | Exhibit 15. ABCO 16306-16309 text 3/2/22             | 42 |
| 10 | Exhibit 16. ABCO 49640-49644 text 3/29/22            | 43 |
| 11 | Exhibit 17. ABCO 58912-58913 email 3/30/22           | 44 |
| 12 | Exhibit 18. ABCO 1822 email 3/30/22                  | 46 |
| 13 | Exhibit 19. ABCO 64759-64760 text 4/18/22            | 46 |
| 14 | Exhibit 20. ABCO 64795-64796 text 5/17/22            | 47 |
| 15 | Exhibit 21. WeatherKing 4201 -                       |    |
| 16 |             Outgoing wire transfer 5/26/22           | 48 |
| 17 | Exhibit 22. ABCO 1629-1654 Lease                     | 49 |
| 18 | Exhibit 23. ABCO 64788-64789 text 5/11/22            | 51 |
| 19 | Exhibit 24. ABCO 36703-36704 text 5/12/22            | 52 |
| 20 | Exhibit 25. ABCO 64825-64826 text 5/26/22            | 56 |
| 21 | Exhibit 26. ABCO 65349-65350 text 5/27/22            | 58 |
| 22 | Exhibit 27. ABCO 64833-64834 text 6/1/22             | 60 |
| 23 | Exhibit 28. ABCO 64809-64810 text 5/23/22            | 65 |
| 24 | Exhibit 29. ABCO 51643-51644 text 1/18/22            | 29 |
| 25 | Exhibit 30. ABCO 64671-64672 text 2/15/22            | 30 |

1    **Exhibit 31. ABCO 64675-64676 text 2/25/22          41**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1       THE VIDEOGRAPHER:  Good afternoon.  Today is

2   Thursday, the 15th day of May 2025.  The time is 12:38 p.m.

3   We are on the record.  My name is Charles Martinez with Fortz

4   Legal.  The court reporter is Kim Shollenbarger with Fortz

5   Legal.  We are here for the Deposition of Daniel Hershberger

6   in the case of Consolidated Industries, LLC versus Jesse

7   Maupin, et al; case number CV-01230.  The deposition is being

8   held at Butler Snow, LLP in Albuquerque, New Mexico.  Will

9   counsel please state their appearances.

10      MR. JOHNSON:  David Johnson for the Plaintiff.

11      MR. PASTERNAK:  Tom Pasternak for the witness and

12  for Defendants.

13      THE VIDEOGRAPHER:  Will the court reporter please

14  swear in the witness.

15                     DANIEL HERSHBERGER

16           (being duly sworn, testified as follows)

17                       EXAMINATION

18  BY MR. JOHNSON:

19      Q.   Good afternoon, Mr. Hershberger.  Could you please

20  state your name and address.

21      A.   My name is Daniel Hershberger and I am at 10632 East

22  39th Street in Yuma, Arizona.

23      Q.   Handing you what is marked as Exhibit 1.  This is a

24  Notice of Deposition for you.  Are you here in connection

25  with this Notice of Deposition?

1   Do you recognize this as your amended first supplemental

2   responses to Weather King's discovery?

3       A.   Yes.

4       Q.   And looks like in Interrogatory Number 10 there, it

5   looks like you did correct that cell information; is that

6   correct?

7       A.   Yes.

8       Q.   I'm handing you what we've marked as Exhibit 5.   Do

9   you recognize this document as your second supplemental

10  responses to Weather King's first set of discovery?

11      A.   Yes, it appears to be.

12      Q.   Are your responses to that set forth on that

13  document truthful and accurate?

14      A.   To the best of my knowledge, they are.

15      Q.   Handing you a document that we've marked as Exhibit

16  6.   Do you recognize this document as your responses to

17  Weather King's second set of interrogatories?

18      A.   Appears to be.

19      Q.   Have you been truthful and honest in these court

20  proceedings?

21      A.   To the best of my knowledge.

22      Q.   Has everything that you have represented to Weather

23  King and the Court in the court proceedings been truthful and

24  accurate?

25      A.   As far as I know.

| | | |
|---|---|---|
| 1 | Q. | Let's pull out Exhibit Number 2. I want to look at |
| 2 | | Interrogatory Number 3 and your response to that. Take a |
| 3 | | moment to read the question. In that interrogatory it's |
| 4 | | asking you about your communications between January 1, 2021 |
| 5 | | and the day you left Weather King relating to the creation, |
| 6 | | formation or potential creation, formation or operation of |
| 7 | | any business enterprise in the portable building industries, |
| 8 | | correct? |
| 9 | A. | Uh-huh. |
| 10 | Q. | Is that a yes? |
| 11 | A. | Yes. |
| 12 | Q. | And what's your response to that interrogatory? |
| 13 | A. | The response was, the response was, none. |
| 14 | Q. | Is that a truthful and accurate response, Mr. |
| 15 | | Hershberger? |
| 16 | A. | I believe, to the best of my knowledge, it was true. |
| 17 | Q. | So before you left you didn't have a single |
| 18 | | conversation with Jesse Maupin about the possibility of |
| 19 | | another portable buildings company? |
| 20 | A. | About the possibility or the existence? |
| 21 | Q. | Possibility. |
| 22 | A. | Okay, I had a conversation with Jesse. |
| 23 | Q. | You had one conversation with Mr. Maupin? |
| 24 | A. | I had an ongoing conversation with Jesse on multiple |
| 25 | | occasions. |

1    Q.    Why then in response to this interrogatory did you
2    state, "none," under penalty of perjury?
3         A.    Because I didn't understand the question to be that.
4    Q.    Do you understand now that your response to this
5    interrogatory is not truthful and accurate?
6         A.    That was truthful and accurate as I understood the
7    question.
8    Q.    Did you discuss the question with anybody?
9    A.    No.
10   Q.    When did you first hear about the possible creation
11   of ABCO?  And when I say -- if I say ABCO or American Barn
12   we're both talking about American Barn Company, correct?
13        A.    Correct.  I can't put a date on when I first heard
14   of a possible ABCO.
15   Q.    Was it in January of 2022?
16   A.    Approximately.
17   Q.    How did you first hear about it?
18        A.    I had communicated with Jesse that I was ready to
19   quit my job, that things were getting bad, and we needed to
20   do -- I needed to do something different for myself.  And it
21   came about very similar to what we've heard other testimony
22   was, you know, there might be something else happening.  But
23   there was no ABCO, there was nothing tied to that
24   conversation at that time.
25   Q.    What was said specifically by Mr. Maupin?

1    Q.    When was that conversation?

2    A.    In the end of May.

3    Q.    We'll talk about that later.  Before June 1, 2022,

4    what had you personally done to help get ABCO off the ground?

5    A.    Bought a forklift.

6    Q.    Anything else?

7    A.    Looked at a property.

8    Q.    Anything else?

9    A.    I can't think of anything else specifically.

10   Q.    Did you do any of that while you were -- during

11   Weather King's normal business hours?

12   A.    Subjectively that's possible.  I mean, we talked

13   earlier about what is normal business hours, because that's

14   going to vary from the corporate office to the Peoria plant,

15   you know.

16   Q.    Do you feel like you did anything improper, wrong or

17   unethical with respect to the way that ABCO got off the

18   ground?

19   A.    No.

20   Q.    Do you feel like anybody else did anything improper,

21   wrong or unethical with respect to the way ABCO got off the

22   ground?

23   A.    No.

24   Q.    Do you recall that in response to our written

25   discovery, and looking at there again Exhibit Number 2, that

1  you were asked to produce correspondence that you exchanged

2  with the other Defendants.

3      A.   What number is that?

4      Q.   Request for production number 7.  It's on page 9.

5      A.   Number 7, all correspondence.

6      Q.   In that one you objected to providing responsive

7  information, correct?

8      A.   Correct.

9      Q.   And then if we look at Exhibit Number 3, the same

10 request for production number 7, this asks for all

11 correspondence and other documents exchanged with any

12 then-current Weather King employees after January 1, 2022.

13 Do you see that?

14     A.   What number are you on?

15     Q.   Number 7 on page 3.

16     A.   Okay.

17     Q.   And what did you respond?

18     A.   It says here, "none exists."

19     Q.   And that's something that you signed on October 24,

20 2023, correct?

21     A.   Correct.

22     Q.   Was that a truthful and accurate response?

23     A.   To the best of my knowledge at the time, it was.

24     Q.   Based upon what you know now is that a truthful and

25 accurate response?

1      A.    I believe it is.

2      Q.    I'm going to hand to you what we've marked as

3    Exhibit 29.  This is marked ABCO 51643.  This is --

4            MR. PASTERNAK:  What exhibit number is this?

5            MR. JOHNSON:  29.

6            MR. PASTERNAK:  29?

7            MR. JOHNSON:  I premarked these, Tom, and I missed

8    one.

9            MR. PASTERNAK:  Oh, okay, all right.

10     Q.    This is a series of text messages that we obtained

11   through the forensic examination of the Defendants phones and

12   other devices.  Do you recognize this as containing text

13   messages between you and Jesse Maupin on January 18, 2022?

14     A.    I don't recognize this.

15     Q.    Well, if I were to represent to you that the

16   forensic examiner produced this to us as containing text

17   messages between you and Mr. Maupin, would you deny that?

18     A.    I wouldn't have any basis to accept or deny that.

19     Q.    Take a look at this and tell me if you deny these

20   are text messages between you and Mr. Maupin?

21     A.    I cannot deny that.

22     Q.    These text messages are responsive to request for

23   production number 7, correct?

24     A.    What's number 7?

25     Q.    We just looked at it.  All correspondence and other

1    documents exchanged with any then-current Weather King

2    employees after January 1, 2022.

3        A.    I suppose in that way that could be.

4        Q.    Could be or is?

5        A.    This says, "unidentified participant."

6        Q.    Yes.  So I'll go ahead and tell you for the record

7    that because of your phone being a Motorola phone, we're

8    going to go through a bunch of text messages and these were

9    found on your phone, you're the custodian.  And when it has a

10   question mark and it says, "unidentified participant," that's

11   traced to your phone.  Okay?

12       A.    Okay, I'm not --

13       Q.    I understand, I understand.

14       A.    I said I don't have -- I can't definitively deny

15   that because I didn't go back to when it was, as we're

16   sitting here talking, to prove that.

17       Q.    Well, you admit that between January 1, 2022 and

18   when you left Weather King you were texting with Mr. Maupin,

19   correct?

20       A.    Absolutely, almost every day.

21       Q.    Almost every day.  So why in response to request for

22   production number 7 did you say that none exists, no

23   correspondence exists between you and any then-current

24   Weather King employees?

25       A.    It was my understanding that that question was

1    referring to ABCO.

2        Q.   Where does it say ABCO?

3        A.   I don't know that it does, but that was my

4    understanding of the question.

5        Q.   So that's why you didn't produce any text messages

6    with Mr. Maupin, is that your understanding?

7        A.   Yes.

8        Q.   And when we raised that issue with the Court and

9    with your attorney about why we didn't get any text messages

10   in response to this, did you go back and reconsider your

11   response?

12       A.   What is the question?

13       Q.   Do you understand that we on multiple occasions had

14   to take up this issue with your attorney and with the Court

15   because we didn't get text messages from you or anybody else

16   and in response to that, after we -- do you understand that

17   we had to go through that procedure on multiple occasions,

18   Mr. Hershberger?

19            MR. PASTERNAK:  Objection, assumes facts not in

20   evidence.

21            MR. JOHNSON:  I don't know how they're not in

22   evidence.  But do you understand?

23            MR. PASTERNAK:  You didn't go on multiple occasions.

24       A.   I see a second attempt to make interrogatories.

25       Q.   Pardon me?

1    A.    There's a request for production and then there's a
2    second set of interrogatories.
3        Q.    I'm talking about the first set of interrogatories.
4        A.    So how was that multiple attempts?
5        Q.    Do you understand that we filed -- there are filings
6    in the court addressing the issue that we had not received
7    text messages from you and the other Defendants.  Do you
8    understand that?
9        A.    I'm not aware of those filings.
10       Q.    No one told you about that?
11       A.    I don't -- I'm not aware of those filings.
12       Q.    Have you reviewed filings that were filed on your
13   behalf, by your attorney on your behalf making
14   representations on your behalf to the Court about why you did
15   not produce text messages in response to Weather King's
16   request?
17       A.    I have not reviewed anything, except what I've
18   signed here.
19       Q.    Just so we're clear, before your attorney filed a
20   document in court on your behalf making representations to
21   the Court on your behalf, you never reviewed a draft of that
22   document?
23       A.    I have only reviewed these documents that I've
24   signed.
25       Q.    What was your understanding of what the Court

1   expected you to do to look for and produce documents in

2   response to Weather King's discovery requests?

3       A.   I assumed that I would go into my email and type

4   something in the search bar.

5       Q.   Did you do that?

6       A.   I did.

7       Q.   Did you look for text messages?

8       A.   I did.

9       Q.   Did you have text messages with Mr. Maupin or any of

10  the other Defendants?

11      A.   I did.

12      Q.   Why didn't you produce those text messages?

13      A.   Because they were incidental to the course of

14  Weather King's business. I explained that I understood the

15  question to be pertaining to ABCO.

16      Q.   What is it about that request that led you to

17  believe that?

18      A.   I don't know what led me to believe that, that's

19  what I believed.

20      Q.   Did you have conversations with Mr. Maupin or anyone

21  else who encouraged you not to produce text messages in

22  response to Weather King's --

23      A.   No.

24      Q.   -- discovery request?

25      A.   No.

1    Q.    Did you delete any text messages?

2    A.    No.

3    Q.    Looking back at Exhibit, we were just looking at,

4    that you're holding there, 29.  Are these text messages here

5    relating to ABCO?

6    A.    The beginning, absolutely not.  Referring to horse

7    barn gate, that's Weather King's business.

8    Q.    Let's start in the middle, starting at about 1:17

9    p.m. where Mr. Maupin sent you his personal email address.

10   A.    Yes, that was likely pertaining to ABCO.

11   Q.    And you just testified that you didn't produce text

12   messages because you thought we only needed text messages

13   that pertained to ABCO, that we were only requesting those.

14   These text messages pertain to ABCO.  Why wasn't this text

15   correspondence produced?

16         MR. PASTERNAK:  I'm going to file a general

17   objection, it's unclear these were ever sent by him.  You can

18   stipulate to whatever you want, but it doesn't have his name

19   on these.

20   Q.    You can answer the question.

21   A.    What was the question?

22   Q.    You testified earlier that the reason why you didn't

23   produce any text messages to us in response to our discovery

24   was because you thought that the request only sought text

25   messages pertaining to ABCO, correct?

1    A.    That's what I said a minute ago.

2    Q.    You did. These text messages pertaining to ABCO,

3    why weren't these text messages produced?

4         MR. PASTERNAK: Same objection.

5    A.    I can't answer that.

6    Q.    Why can't you answer that?

7    A.    Because I don't know. I may have overlooked them.

8    I may have not had my search criteria correct, but be that as

9    it may, that was a long time ago. I can't remember exactly

10   why.

11   Q.    And these text messages we're talking about here,

12   you and Mr. Maupin are talking about looking for property for

13   ABCO to lease, correct?

14   A.    It appears so.

15   Q.    When I say, "ABCO to lease," would that be ABCO

16   leasing it or would that be Sonoran Sheds leasing it?

17   A.    I don't know what property we're referring to.

18   Q.    Well, you were talking about property in January of

19   2022, hooking up with a realtor to look for property,

20   correct?

21   A.    Okay, well, I don't remember in 2022 what property

22   that was.

23   Q.    Did you have conversations with any of the other

24   Defendants about what you needed to do to search for

25   information in response to Weather King's discovery requests?

| | | |
|---|---|---|
| 1 | A. | I don't believe I did. |
| 2 | Q. | When you worked for Weather King in Peoria as shop |
| 3 | manager would you ever interact with dealers? | |
| 4 | A. | Very seldom. |
| 5 | Q. | Did you ever speak with any dealers about ABCO while |
| 6 | you were still employed by Weather King? | |
| 7 | A. | No. |
| 8 | Q. | Handing you what we marked as Exhibit 7. Do you |
| 9 | recognize this as a letter I sent to you on June 13, 2022, | |
| 10 | Mr. Hershberger? | |
| 11 | A. | Yes, I do recognize it. |
| 12 | Q. | And did you preserve documents in response to this |
| 13 | letter? | |
| 14 | A. | To the best of my knowledge, I did. |
| 15 | Q. | Did you understand that you needed to preserve |
| 16 | documents in response to this letter? | |
| 17 | A. | Yes. |
| 18 | Q. | And it's your testimony that you did not delete any |
| 19 | text messages with any of the other Defendants? | |
| 20 | A. | Correct. |
| 21 | Q. | Handing you what we've marked as Exhibit 8. This is |
| 22 | stamped ABCO 52097. Take a moment to refresh your | |
| 23 | recollection with that. | |
| 24 | A. | I don't know what I'm looking at here. |
| 25 | Q. | Does this look like email correspondence dated |

1   January 18, 2022 between you and Mr. Maupin at his personal

2   email address?

3        A.    It does look that way.

4        Q.    And this would have been looking for property for

5   ABCO or for Sonoran Sheds?

6        A.    Possibly.

7        Q.    Who is Sam Jones?

8        A.    Sam Jones was a realtor I talked to.

9        Q.    What did you talk to him about?

10       A.    About renting property.

11       Q.    For what purpose?

12       A.    To put a manufacturing shop there.

13       Q.    A manufacturing shop for who?

14       A.    Sonoran Sheds.

15       Q.    Was it relating to purchasing property or leasing

16   property?

17       A.    Leasing.

18       Q.    I'm handing you a document we've marked as Exhibit

19   9.   This is stamped ABCO 52115.  Do you recognize this as

20   email correspondence between you and Mr. Jones in February of

21   2022?

22       A.    It looks that way.

23       Q.    And is this correspondence about the potential of

24   leasing certain property?

25       A.    I don't recall what this is about.

| 1 | Q. | It was for Sonoran Sheds though, correct? |
|---|---|---|

1     Q.    It was for Sonoran Sheds though, correct?

2     A.    I don't recall what this is about. The subject line

3     says, "ten acres," and I don't recall any ten acres.

4     Q.    Well, it's also involving Mr. Maupin, correct?   The

5     email correspondence there at the top.

6     A.    Yeah, the header includes myself and Jesse.

7     Q.    And you were communicating with Mr. Jones about

8     leasing -- looking at property as a possibility as a lease

9     for Sonoran Sheds, correct?

10    A.    Yes.

11    Q.    Let's look back at Exhibit 2.   If you flip to page

12    11.   Looking at request for production number 15, this

13    request asks for all correspondence and other documents

14    exchanged with any person or entity related to the leasing or

15    potential leasing of any property located in Arizona or New

16    Mexico.   Do you see that?

17    A.    I see that.

18    Q.    And what's your response?

19    A.    The response here is none.

20    Q.    Is that a truthful and accurate response?

21    A.    It does not appear to be so.

22    Q.    I'm going to hand you a document which we've marked

23    as Exhibit 10.   This is stamped ABCO 52119.   Do you recognize

24    this as more correspondence relating to the potential leasing

25    of property?

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

| | |
|---|---|
| **CONSOLIDATED INDUSTRIES, LLC** ) | |
| **d/b/a WEATHER KING PORTABLE** ) | |
| **BUILDINGS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No. 1:22-cv-01230** |
| **v.** ) | |
| ) | |
| **JESSE A. MAUPIN, BARRY D.** ) | |
| **HARRELL, ADRIAN S. HARROD,** ) | |
| **LOGAN C. FEAGIN, STEPHANIE L.** ) | |
| **GILLESPIE, RYAN E. BROWN, DANIEL** ) | |
| **J. HERSHBERGER, BRIAN L. LASSEN,** ) | |
| **ALEYNA LASSEN, and AMERICAN** ) | |
| **BARN CO., LLC,** ) | |
| ) | |
| **Defendants.** ) | |

### DANIEL J. HERSHBERGER'S RESPONSES TO PLAINTIFF'S
### FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION OF
### DOCUMENTS, AND REQUESTS FOR ADMISSION

Pursuant to Fed. R. Civ. P. 26, 33, 34, and 36, Daniel J. Hershberger, by and through his

attorneys, states the following responses.

### INTERROGATORIES

1.    Identify each business enterprise that has been engaged in the Portable Buildings

Industry with which you played any role in planning its creation or formation and, with respect to

each such enterprise, identify: (a) your specific role(s) relating to the creation/formation; (b) the

dates in which you were involved in the planning; and (c) all other individuals and entities who

were involved in planning the creation/formation.

### RESPONSE:

68557658;1



Hershberger objects to this interrogatory as unduly broad, overly burdensome, and not proportional to the needs of the case, nor relevant to any issue in the case. To collect all of this information would impose an unnecessary burden on Hershberger. Subject to and without waiving those objections, Hershberger states as follows: I have been the owner and operator of Diamond Buildings LLC since 2006.

2.      Other than Weather King, identify each business enterprise in the Portable Buildings Industry in which you have held an ownership interest and/or performed services (whether as an employee, an independent contractor, or in any other capacity) since January 1, 2021, and, with respect to each such enterprise, identify: (a) your specific relationship with the entity, including but not limited to all titles and positions you have held; (b) the nature and extent of any ownership interest in the enterprise; (c) the dates of your relationship; and (d) your role and duties for the entity.

**RESPONSE:**

See Response to Interrogatory No. 1.

3.      Identify each communication you have had with any person or entity (other than confidential communications solely with your legal counsel, your spouse, or your accountant) between January 1, 2021, and through the day of the termination of your employment with Weather King (including but not limited to communications with lenders or potential lenders, investors or potential investors, business partners or potential business partners, Weather King employees, Weather King contractors, Weather King dealers, Weather King builders, Weather King drivers, other Weather King business partners, rental companies, and Weather King customers) relating to the creation/formation or potential creation/formation of, funding or potential funding of, and/or operation or potential operation of any business enterprise in the Portable Buildings Industry (other

- 2 -

68557658;1

than Weather King) and, with respect to each such communication, identify: (a) the substance of the communication; (b) all parties to the communication; (c) the date of the communication; and (d) the mode of the communication (*i.e.*, telephonic conversation, email, text message, etc.).

**RESPONSE:**

None.

4.    Identify each communication you had between January 1, 2021, and through the day of the termination of your employment with Weather King with any person then-employed by Weather King relating to that person's potential departure from Weather King and/or your potential departure from Weather King and, with respect to each such communication: (a) describe in detail the substance of the communication; (b) identify all parties to the communication; (c) identify the date of the communication; and (d) identify the mode of the communication (*i.e.*, telephonic conversation, email, text message, etc.).

**RESPONSE:**

Hershberger objects to this interrogatory as unduly broad, overly burdensome, and not proportional to the needs of the case, nor relevant to any issue in the case. To collect all of this information would impose an unnecessary burden on Hershberger. Subject to and without waiving those objections, Hershberger states as follows: I met and spoke with builders and drivers from the Peoria plant on two separate occasions to notify them of my departure. In those communications I discussed my future opportunities.

5.    Identify each communication you had between January 1, 2021, and the day of the termination of your employment from Weather King with any person or entity who, at the time of the communication, was a Weather King dealer, driver, customer, lender, landlord, rental company, or other business partner relating to your potential departure from Weather King and,

- 3 -

with respect to each such communication: (a) describe in detail the substance of the communication; (b) identify all parties to the communication; (c) identify the date of the communication; and (d) identify the mode of the communication (*i.e.*, telephonic conversation, email, text message, etc.).

## RESPONSE:

Hershberger objects to this interrogatory as unduly broad, overly burdensome, and not proportional to the needs of the case, nor relevant to any issue in the case. To collect all of this information would impose an unnecessary burden on Hershberger. Subject to and without waiving these objections, Hershberger states as follows: I met and spoke with builders and drivers from the Peoria plant on two separate occasions to notify them of my departure. In those communications I discussed my future opportunities.

6.    Identify each person and/or entity with whom you have discussed funding, potential funding, or providing other financial support to or for any business enterprise in the Portable Business Industry since January 1, 2021, whether as an investor, a lender, or in any other capacity.

## RESPONSE:

None.

7.    Identify all property of Weather King (including but not limited to electronically stored information) that has been in your possession at any time after the date of the termination of your employment with Weather King and, with respect to the property, (a) identify where or how it has been stored; and (b) set forth in detail the circumstances in which you have made use of, copied, or shared the property with anyone else (including but not limited to the identity of the person or entity and the date(s) in which the property was shared).

## RESPONSE:

- 4 -

68557658;1

None.

8.     Identify all Weather King property, whether tangible or intelligible (including but
not limited to financial information and inventory count information) of which you were not an
authorized recipient but that you accessed or obtained without a Weather King officer's permission
and, with respect to each such item, identify: (a) the specific property you accessed or obtained;
(b) the circumstances in which you accessed or obtained it, including but not limited to the date(s)
of access or obtainment; (c) the circumstances in which you shared the property with anyone else,
including but not limited to the identity of all such person and the date(s); and (d) the circumstances
in which you otherwise made use of the property.

**RESPONSE:**

None.

9.     Identify all Weather King property, whether tangible or intelligible (including but
not limited to financial information and inventory count information) to which you had authorized
access but that you shared with a third-party or otherwise made use of the property for any purpose
other than the furtherance of Weather King's business and, with respect to each such item, identify:
(a) the specific property; (b) the circumstances in which you shared the property with anyone else,
including but not limited to the identity of all such person and the date(s); and (c) the circumstances
in which you made use of the property for any purpose other than the furtherance of Weather
King's business.

**RESPONSE:**

None.

- 5 -

68557658;1

10.    Identify all email accounts, cell phone numbers (and providers), messaging services, Google drive accounts, Dropbox accounts, and any other cloud-based account that you have used at any time since January 1, 2022, through the present.

**RESPONSE:**

Hershberger objects to this interrogatory as not being proportional to the needs of the case.

11.    Identify each device in your possession, custody, or control, including but not limited to laptop computers, desktop computers, cell phones (including number and provider), tablets, or other portable electronic or storage devices, that contains or contained any information that refers to, relates to, or was created by Weather King.

**RESPONSE:**

None.

12.    For each lawsuit, bankruptcy proceeding, criminal proceeding, or administrative proceeding, including divorce proceedings, to which you have been a party, state: (a) the court or agency in which said proceeding was instituted, the names of the parties to the proceeding, the docket number of said proceeding, the date the proceeding was filed and the date the proceeding was finally terminated; (b) the nature of the proceeding, including a description of the claims and defenses, if applicable, and (c) the manner in which the proceeding was resolved (for example, by settlement, by court order).

**RESPONSE:**

None.

- 6 -

**VERIFICATION**

I, Daniel J. Hershberger, declare under penalty of perjury that the foregoing responses to

Plaintiff's First Set of Interrogatories are true and correct to the best of my knowledge, information,

and belief.

Daniel J. Hershberger

DATE: 3/20/23

-7-

68557658.1

## **VERIFICATION**

I, Daniel J. Hershberger, declare under penalty of perjury that the foregoing responses to

Plaintiff's First Set of Interrogatories are true and correct to the best of my knowledge, information,

and belief.

Daniel J. Hershberger

DATE:_____

- 7 -

## **REQUESTS FOR PRODUCTION**

Please produce the following:

1.    All correspondence and other documents relating to the creation or formation of any business enterprise in the Portable Buildings Industry.

### **RESPONSE:**

Responsive documents will be produced.

2.    All documents which set forth the relationship you have had with any business enterprise in the Portable Buildings Industry since January 1, 2021, other than Weather King.

### **RESPONSE:**

None.

3.    All correspondence and other documents exchanged with any lenders or potential lenders (including but not limited to FirstBank and Centennial Bank and any individuals) since January 1, 2021, relating to funding or potential funding or other financial support of any business enterprise in the Portable Buildings Industry.

### **RESPONSE:**

None.

4.    All correspondence and other documents exchanged with any investors or potential investors since January 1, 2021, relating to any business enterprise in the Portable Buildings Industry.

### **RESPONSE:**

None.

5.    All correspondence and other documents exchanged with Virgil W. Etherton between January 1, 2021, and July 1, 2022.

- 8 -

68557658;1

**RESPONSE:**

None.

6.     All correspondence and other documents exchanged with any former Weather King employees between January 1, 2022, and July 1, 2022.

**RESPONSE:**

Hershberger objects to this request as being not proportional to the needs of the case.

7.     All correspondence and other documents exchanged with any then-current Weather King employees after January 1, 2022.

**RESPONSE:**

Hershberger objects to this request as being not proportional to the needs of the case.

8.     All correspondence and other documents exchanged with any then-current Weather King dealers (including but not limited to employees and agents of those dealers) between January 1, 2022, and July 1, 2022.

**RESPONSE:**

None.

9.     All correspondence and other documents exchanged with any then-current Weather King builders (including but not limited to employees and agents of those builders) between January 1, 2022, and July 1, 2022.

**RESPONSE:**

None.

10.    All correspondence and other documents exchanged with any then-current Weather King customers (including but not limited to employees and agents of those customers) between January 1, 2022, and July 1, 2022.

- 9 -

**RESPONSE:**

None.

11.     All correspondence and other documents exchanged with any then-current Weather King drivers (including but not limited to employees and agents of those drivers) between January 1, 2022, and July 1, 2022.

**RESPONSE:**

None.

12.     All correspondence and other documents exchanged with any Portable Buildings Industry rental companies and/or rental companies being formed (including but not limited to employees and agents of those entities) between January 1, 2022, and July 1, 2022.

**RESPONSE:**

None.

13.     All correspondence and other documents exchanged with BPS, LLC, BPS Rentals, LLC, Keith Priestley, Jerry Sawyer or Troy Buttrey between July 1, 2021, and July 1, 2022.

**RESPONSE:**

None.

14.     All non-privileged correspondence and other documents related to:

(a) any of the Defendants' departure from Weather King;

(b) any of the Defendants' communications with any Weather King employees about the possibility of leaving Weather King or joining ABCO;

(c) any of the Defendants' communications with any Weather King builders, dealers, drivers, rental companies, or contractors, about the possibility of doing business with ABCO or ceasing doing business with Weather King;

- 10 -

68557658;1

(d) any claims or potential claims made by Weather King against any of the Defendants;

(e) any of the Defendants' possession of or use of any Weather King property; or

(f) derogatory remarks made by any of the Defendants relating to Weather King;

## RESPONSE:

Hershberger objects to this request as being overly broad and unduly burdensome and not proportional to the needs of the case. To collect all these documents would impose an unnecessary burden on Hershberger.

15. All correspondence and other documents exchanged with any person or entity related to the leasing or potential leasing of any property located in Arizona or New Mexico.

## RESPONSE:

None.

16. All emails and attachments sent from your Weather King company email address to any personal email address since January 1, 2021.

## RESPONSE:

None.

17. All correspondence and other documents referencing or relating to any Weather King drawings, blueprints, or other engineering plans, including but not limited to plans prepared by Kevin Nolan, P.E.

## RESPONSE:

None.

18. All documents relating to any sales of units using any Weather King drawings, blueprints, or other plans, including but not limited to plans prepared by Kevin Nolan, P.E.

## RESPONSE:

- 11 -

None.

19.    All documents reflecting contacts, notes, calendars, diaries, pictures, audio or video recordings, business records, computer disks, files, printouts, or any other written or recorded material that you received, obtained, copied, downloaded, transferred, or removed from Weather King and/or that were obtained, copied, downloaded, transferred, or removed from Weather King or contain Weather King information.

### RESPONSE:

None.

20.    All correspondence and other documents relating to your use of any Weather King property for any purpose other than the furtherance of Weather King's business.

### RESPONSE:

None.

21.    All correspondence and other documents relating to any and all instances in which you advised any other person or entity not to make use of any Weather King engineering plans or other property.

### RESPONSE:

None.

22.    All communications and other documents related to your use of any Weather King templates or form documents for any purpose other than the furtherance of Weather King's business.

### RESPONSE:

None.

- 12 -

68557658;1

23.     All correspondence and other documents referencing or relating to Weather King's

business operations.

**RESPONSE:**

None.

24.     All documents evidencing distributions, salary, wages, bonuses, commissions, or

other compensation paid or accrued to you by any entity in the Portable Buildings Industry, other

than Weather King, from January 1, 2021, through the date of response.

**RESPONSE:**

Hershberger objects to this request as not being proportional to the needs of the case.

25.     All agreements between you and any of the other Defendants.

**RESPONSE:**

None.

26.     All agreements between you and any dealers, builders, lenders, investors, or rental

companies in the Portable Buildings Industry.

**RESPONSE:**

None.

27.     All photographs, video, and/or audio recordings of Weather King property and/or

current or former Weather King employees or officers.

**RESPONSE:**

None.

28.     All documents reflecting notes, diaries, journals, expense records, day planners,

calendars, and/or other record(s) maintained by you that record, refer, or otherwise relate to your

- 13 -

activities, including, but not limited to any appointment, meeting, interview, placement, or other business activities in the Portable Buildings Industry from January 1, 2022, through July 1, 2022.

**RESPONSE:**

None.

29.    All correspondence and/or other documents which relate to or refer in any way to your decision to become affiliated with a business enterprise in the Portable Buildings Industry other than Weather King or to depart from Weather King.

**RESPONSE:**

None.

30.    All phone records from January 1, 2022, through July 1, 2022, related to any device that you have used during that time period.

**RESPONSE:**

Hershberger objects to this request as not being proportional to the needs of the case.

31.    All correspondence and other documents exchanged between you and anyone else related to Weather King's toll-free telephone number or Caller ID.

**RESPONSE:**

None.

32.    All documents supporting your "[m]istake of fact" affirmative defense.

**RESPONSE**:

None.

33.    All documents supporting or relating to any other defenses you intend to assert against Plaintiff's claims.

**RESPONSE**:

- 14 -

68557658;1

None.

34.     All documents referenced in your responses to Plaintiff's interrogatories and/or upon which you relied in responding to Plaintiff's interrogatories.

**RESPONSE:**

None.

35.     All non-privileged communications between you and any of the other Defendants pertaining to this lawsuit.

**RESPONSE:**

None.

## REQUESTS FOR ADMISSION

Pursuant to Fed. R. Civ. P. 36, Plaintiff requests that Defendant Daniel J. Hershberger admit to the truth of the following:

1.     While still employed by Weather King, you encouraged one or more other Weather King employees to join you (in the future) at ABCO.

**RESPONSE:**

Denied.

2.     While still employed by Weather King, you suggested to one or more other Weather King employees that ABCO would be taking over Weather King's operations in the western United States.

**RESPONSE:**

Denied.

- 15 -

68557658;1

3.      While still employed by Weather King, you encouraged one or more Weather King

dealers to plan to do business with ABCO.

**RESPONSE:**

Denied.

4.      While still employed by Weather King, you encouraged one or more Weather King

dealers to cease doing business (in the future) with Weather King.

**RESPONSE:**

Denied.

5.      While still employed by Weather King, you said negative or derogatory things

about Weather King to one or more Weather King dealers.

**RESPONSE:**

Denied.

6.      While still employed by Weather King, you suggested to one or more Weather King

dealers that ABCO would be taking over Weather King's operations in the western United States.

**RESPONSE:**

Denied.

7.      While still employed by Weather King, you encouraged one or more Weather King

drivers to plan to do business with ABCO..

**RESPONSE:**

Denied.

8.      While still employed by Weather King, you encouraged one or more Weather King

drivers to cease doing business (in the future) with Weather King.

**RESPONSE:**

- 16 -

68557658;1

Denied.

9.      While still employed by Weather King, you said negative or derogatory things about Weather King to one or more Weather King drivers.

**RESPONSE:**

Denied.

10.     While still employed by Weather King, you suggested to one or more Weather King drivers that ABCO would be taking over Weather King's operations in the western United States.

**RESPONSE:**

Denied.

11.     While still employed by Weather King, you encouraged one or more Weather King builders to plan to do business with ABCO.

**RESPONSE:**

Denied.

12.     While still employed by Weather King, you encouraged one or more Weather King builders to cease doing business (in the future) with Weather King.

**RESPONSE:**

Denied.

13.     While still employed by Weather King, you said negative or derogatory things about Weather King to one or more Weather King builders.

**RESPONSE:**

Denied.

14.     While still employed by Weather King, you suggested to one or more Weather King builders that ABCO would be taking over Weather King's operations in the western United States.

- 17 -

68557658;1

**RESPONSE:**

Denied.

15. After your termination from Weather King, you have suggested to one or more third-parties that ABCO was taking over Weather King's operations in the western United States.

**RESPONSE:**

Denied.

16. You encouraged Weather King dealers to coordinate such that their customers canceled their orders with Weather King and placed new orders with ABCO.

**RESPONSE:**

Denied.

17. You suggested to Weather King dealers that Weather King was or would be in financial distress.

**RESPONSE:**

Denied.

18. You suggested to Weather King dealers that Weather King was having or would have difficulty paying its bills.

**RESPONSE:**

Denied.

19. While still employed by Weather King, Jesse Maupin encouraged you to (in the future) leave Weather King and join ABCO.

**RESPONSE:**

Denied.

- 18 -

68557658;1

20.    While still employed by Weather King, one or more of the other Defendants encouraged Weather King employees to (in the future) leave Weather King and join ABCO.

**RESPONSE:**

Hershberger lacks sufficient information to admit or deny this request and therefore denies

it.

21.    While still employed by Weather King, one or more of the other Defendants encouraged Weather King dealers, builders, drivers, or others with whom Weather King had a business relationship to plan to do business with ABCO.

**RESPONSE:**

Hershberger lacks sufficient information to admit or deny this request and therefore denies

it.

22.    One or more of the other Defendants has made use of Weather King property in furtherance of an interest other than Weather King's business interest.

**RESPONSE:**

Hershberger lacks sufficient information to admit or deny this request and therefore denies

it.

Date: March 20 , 2023

*/s/ Thomas G. Pasternak*
Thomas G. Pasternak
AKERMAN LLP
71 South Wacker Drive, 47th Floor
Chicago, IL 60606
Tel. 312.634.5700
thomas.pasternak@akerman.com

*Attorneys for Defendant,*
*Daniel J. Hershberger*

- 19 -

68557658;1

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing **Daniel J. Hershberger's Responses**

**to Plaintiff's First Interrogatories and Requests for Production and Requests for Admission**

was served upon the following counsel via email on March 20, 2023:

David L. Johnson, #18732
John H. Dollarhide, #40041
Y. Larry Cheng, #36707
BUTLER SNOW LLP
150 3rd Avenue South, Suite 1600
Nashville, TN 37201
Telephone: (615) 651-6700
Fax: (615) 651-6701
david.johnson@butlersnow.com
john.dollarhide@butlersnow.com
larry.cheng@butlersnow.com

Daniel W. Van Horn, #18940
BUTLER SNOW LLP
6075 Poplar Ave., Suite 500
Memphis, TN 38119
Telephone: (901) 680-7200
Fax: (901) 680-7201
Danny.VanHorn@butlersnow.com

*/s/ Thomas G. Pasternak*
Thomas G. Pasternak

- 20 -

68557658;1

Message

| | |
|---|---|
| **From:** | Daniel Hershberger [danhersh@hotmail.com] |
| **on behalf of** | Daniel Hershberger <danhersh@hotmail.com> [danhersh@hotmail.com] |
| **Sent:** | 1/18/2022 3:50:12 PM |
| **To:** | westkentuckyqdma@gmail.com |
| **Subject:** | Fwd: E-Brochure For 15836 West Eddie Albert Way |

Get Outlook for Android

**From:** PropertyShark <no-reply@commercialcafe.com>
**Sent:** Friday, January 14, 2022 6:58:11 PM
**To:** danhersh@hotmail.com <danhersh@hotmail.com>
**Subject:** E-Brochure For 15836 West Eddie Albert Way



Comms_000000996
ABCO_0052097

This brochure was sent to you by daniel hershberger from PropertyShark.

Comms_000000997
ABCO_0052098

# **15836 West Eddie Albert Way**

15836 West Eddie Albert Way, Goodyear, AZ 85338

Industrial Manufacturing 160,000 Sqft

For Lease
## **Contact for pricing**

City
## **Goodyear**

Neighborhood
**Sarival**

Zip Code
**85338**

Market
**Phoenix**

Property Type
**Industrial - Manufacturing**

Building Size
**149,159 Sqft**

Lot Size
**28.88 Acre**

Parking Spaces Avail.
**170**

Parking Ratio
**1.14/ 1,000 SF**

Property Tenancy
**Vacant**

Building Class
**B**

Year Built
**1984**

Date Updated
**Oct 07, 2021**

# **Spaces Available**

## **Full Building**

Suite
**Full Building**
Total Space Available

Space Type
**Industrial**

Comms_000000998
ABCO_0052099

# 160,000 Sqft

Divisible Space
## 8,000 - 160,000 Sqft

Lease Rate
## Contact for pricing

Available Date
## Immediate

Call For Term
## Yes

Renewal Option
## Yes

Sub Lease
## No


**Rob Martensen**
Colliers
(602) 222-5082

# Location

- **City** Goodyear, AZ
- **Neighborhood** Sarival
- **Zip Code** 85338
- **Market** Phoenix

# Contacts

Comms_000000999
ABCO_0052100

**Rob Martensen**

Colliers
(602) 222-5082

Comms_000001000
ABCO_0052101

Message

| From: | Daniel Hershberger [danhersh@hotmail.com] |
| on behalf of | Daniel Hershberger <danhersh@hotmail.com> [danhersh@hotmail.com] |
| Sent: | 2/4/2022 3:34:45 PM |
| To: | Jones, Sam [Sam.Jones@colliers.com]; westkentuckyqdma@gmail.com |
| Subject: | Fwd: 10 acre land sites available for lease. |
| Attachments: | LOI-5220 N 51st Ave.docx |

Jesse

Look over this draft and let us know when you would be available to conference call.

Included Sam Jones on this email so we can all communicate together

Thanks
Daniel

Get Outlook for Android

**From:** Jones, Sam <Sam.Jones@colliers.com>
**Sent:** Thursday, February 3, 2022 2:01:48 PM
**To:** Daniel Hershberger <danhersh@hotmail.com>
**Cc:** Martensen, Rob <Rob.Martensen@colliers.com>
**Subject:** RE: 10 acre land sites available for lease.

Dan,

Please see the attached LOI for your review per our discussion this morning. Let me know when you and Jesse have a time to discuss.

Thanks

**Sam Jones**
Senior Associate | Arizona
**Direct +1 602 222 5146** | Mobile +1 480 789 3999
Main +1 602 222 5000 | Fax +1 602 222 5001
sam.jones@colliers.com

**Colliers International**
2390 East Camelback Road | Suite 100
Phoenix, AZ 85016 | United States
**www.colliers.com**



**From:** Daniel Hershberger <danhersh@hotmail.com>
**Sent:** Thursday, February 3, 2022 10:37 AM
**To:** Jones, Sam <Sam.Jones@colliers.com>
**Subject:** Re: 10 acre land sites available for lease.

Good morning sir



Comms_000001014
ABCO_0052115

I think we have discussed enough that we are interested in the property you showed me.

So I guess we need to discuss next steps.

I will be working with Jesse Maupin and he will be providing the personal guarantee so whenever we get some documents going he will want to review what we are doing.

Thanks
Daniel

Get Outlook for Android

**From:** Jones, Sam <Sam.Jones@colliers.com>
**Sent:** Tuesday, February 1, 2022 9:25:23 AM
**To:** Daniel Hershberger <danhersh@hotmail.com>
**Subject:** RE: 10 acre land sites available for lease.

Dan,

Any update for me?

Thanks,

**Sam Jones**
Senior Associate | Arizona
**Direct +1 602 222 5146** | Mobile +1 480 789 3999
Main +1 602 222 5000 | Fax +1 602 222 5001
sam.jones@colliers.com

**Colliers International**
2390 East Camelback Road | Suite 100
Phoenix, AZ 85016 | United States
**www.colliers.com**



**From:** Daniel Hershberger <danhersh@hotmail.com>
**Sent:** Thursday, January 20, 2022 1:41 PM
**To:** Jones, Sam <Sam.Jones@colliers.com>
**Subject:** Re: 10 acre land sites available for lease.

Yes tomorrow at 10 will work great for me

Get Outlook for Android

**From:** Jones, Sam <Sam.Jones@colliers.com>
**Sent:** Thursday, January 20, 2022 11:19:20 AM
**To:** Daniel Hershberger <danhersh@hotmail.com>
**Cc:** Martensen, Rob <Rob.Martensen@colliers.com>
**Subject:** RE: 10 acre land sites available for lease.

Does tomorrow at 10am work?

Comms_000001015
ABCO_0052116

**Sam Jones**
Senior Associate | Arizona
**Direct +1 602 222 5146** | Mobile +1 480 789 3999
Main +1 602 222 5000 | Fax +1 602 222 5001
sam.jones@colliers.com

**Colliers International**
2390 East Camelback Road | Suite 100
Phoenix, AZ 85016 | United States
**www.colliers.com**



**From:** Daniel Hershberger <danhersh@hotmail.com>
**Sent:** Thursday, January 20, 2022 10:54 AM
**To:** Jones, Sam <Sam.Jones@colliers.com>
**Subject:** Re: 10 acre land sites available for lease.

I can meet most mornings between 10-12
Just let me know what works for you

Get Outlook for Android

**From:** Jones, Sam <Sam.Jones@colliers.com>
**Sent:** Thursday, January 20, 2022 9:53:20 AM
**To:** Daniel Hershberger <danhersh@hotmail.com>
**Subject:** RE: 10 acre land sites available for lease.

What day and time works for you. I believe its on Lockbox and we can tour whenever.

Thanks,

**Sam Jones**
Senior Associate | Arizona
**Direct +1 602 222 5146** | Mobile +1 480 789 3999
Main +1 602 222 5000 | Fax +1 602 222 5001
sam.jones@colliers.com

**Colliers International**
2390 East Camelback Road | Suite 100
Phoenix, AZ 85016 | United States
**www.colliers.com**



**From:** Daniel Hershberger <danhersh@hotmail.com>
**Sent:** Thursday, January 20, 2022 9:36 AM
**To:** Jones, Sam <Sam.Jones@colliers.com>
**Subject:** Re: 10 acre land sites available for lease.

Thanks for the info

I am definitely interested in checking out the 51st Ave property

Please let me know when we can schedule that.

Daniel

Get Outlook for Android

---

**From:** Jones, Sam <Sam.Jones@colliers.com>
**Sent:** Thursday, January 20, 2022 9:04:47 AM
**To:** danhersh@hotmail.com <danhersh@hotmail.com>
**Cc:** Martensen, Rob <Rob.Martensen@colliers.com>
**Subject:** 10 acre land sites available for lease.

Dan,

Pleasure speaking with you this morning and please see the attached for your review. If you would like to tour, please let me know when and Ill schedule.

Thanks,

**Sam Jones**
Senior Associate | Arizona
**Direct +1 602 222 5146** | Mobile +1 480 789 3999
Main +1 602 222 5000 | Fax +1 602 222 5001
sam.jones@colliers.com

**Colliers International**
2390 East Camelback Road | Suite 100
Phoenix, AZ 85016 | United States
**www.colliers.com**



Comms_000001017
ABCO_0052118

**Short Message Report**

Conversations: 1
Total Messages: 15

Participants: 2
Date Range: 1/18/2022

**Outline of Conversations**

💬    **Maupin Jesse <2709709453> Maupin Jesse <12709709453>** · 15 messages on 1/18/2022 · Maupin
Jesse <12709709453> · Maupin Jesse <2709709453>



5.21.24 Compromise Orange Batch Mobile_000009775
ABCO_0051643

**Messages in chronological order** (times are shown in GMT -06:00)

| 💬 | **Maupin Jesse <2709709453> Maupin Jesse <12709709453>** | |
|---|---|---|
| 🖼 | **Maupin Jesse <2709709453>**<br>You gotta horse barn gate ?? | 1/18/2022, 12:49 PM |
| 🖼 | **Maupin Jesse <2709709453>**<br>Got a rush 1220 coming through | 1/18/2022, 12:49 PM |
| ? | **Undefined Participant**<br>No | 1/18/2022, 12:50 PM |
| 🖼 | **Maupin Jesse <2709709453>**<br>Ok we will have to have one delivered then or get one for it man sorry I thought I seen one there | 1/18/2022, 12:51 PM |
| ? | **Undefined Participant**<br>Don't know where it would be.    I'll figure it out | 1/18/2022, 12:52 PM |
| ? | **Undefined Participant**<br>What's your secure email | 1/18/2022, 1:17 PM |
| 🖼 | **Maupin Jesse <2709709453>**<br>westkentuckyqdma@gmail.com | 1/18/2022, 1:26 PM |
| 🖼 | **Maupin Jesse <2709709453>**<br>That email never came through | 1/18/2022, 3:48 PM |
| 🖼 | **Maupin Jesse <2709709453>**<br>That thing is huge will they lease a certain area or square footage?? | 1/18/2022, 3:58 PM |
| ? | **Undefined Participant**<br>I'm working on that see what we can figure out but that's kind of the only thing I can find | 1/18/2022, 3:59 PM |
| ? | **Undefined Participant**<br>I asked the realtor if this one doesn't work out if what else we can look at he's like there's nothing | 1/18/2022, 4:00 PM |
| 🖼 | **Maupin Jesse <2709709453>**<br>Would you go to Pinal county casa grande | 1/18/2022, 4:03 PM |
| 🖼 | **Maupin Jesse <2709709453>**<br>I don't want too but I'm sure I can find something down there | 1/18/2022, 4:04 PM |
| ? | **Undefined Participant**<br>We might have to but I really want to stay close so we can offer our guys a job if they want it | 1/18/2022, 4:26 PM |
| 🖼 | **Maupin Jesse <2709709453>**<br>I would like too also | 1/18/2022, 4:53 PM |