**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

---

| | |
|---|---|
| **CONSOLIDATED INDUSTRIES, LLC,** ) | |
| **d/b/a WEATHER KING PORTABLE** ) | |
| **BUILDINGS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | **No. 1:22-cv-01230-STA-jay** |
| ) | |
| **JESSE A. MAUPIN, BARRY D. HARRELL,** ) | |
| **ADRIAN S. HARROD, LOGAN C. FEAGIN,** ) | |
| **STEPHANIE L. GILLESPIE,** ) | |
| **RYAN E. BROWN,** ) | |
| **DANIEL J. HERSHBERGER,** ) | |
| **BRIAN L. LASSEN, ALEYNA LASSEN, and** ) | |
| **AMERICAN BARN CO., LLC,** ) | |
| ) | |
| **Defendants.** ) | |

---

**ORDER GRANTING IN PART, DENYING IN PART PLAINTIFF'S MOTION FOR
SANCTIONS**

---

Before the Court is Plaintiff Consolidated Industries, LLC d/b/a Weather King Portable

Buildings' Motion for Sanctions (ECF No. 185). Defendants Jesse A. Maupin, Barry D. Harrell,

Adrian S. Harrod, Logan C. Feagin, Stephanie L. Gillespie, Ryan E. Brown, Daniel J. Hershberger,

and American Barn Co., LLC have responded in opposition. Plaintiff has submitted a reply brief.

For the reasons set forth below, the Motion for Sanctions is **GRANTED in part, DENIED in

part**.

## BACKGROUND

This is an action for the misappropriation of trade secrets under federal and state law and

for other tortious conduct under Tennessee common law. Plaintiff Consolidated Industries, LLC

does business under the trade name Weather King Portable Buildings ("Weather King") and manufactures portable buildings like backyard sheds, garages, cabins, utility buildings, and storage buildings.  Am. Compl. ¶ 15 (ECF No. 26).  According to the Amended Complaint, Weather King is headquartered in Paris, Tennessee, and also owns six plants in Arizona, New Mexico, Florida, Texas, and Colorado. *Id*.  Weather King sells its products through dealerships who essentially take Weather King inventory on consignment and receive commissions on the sale of Weather King products.  *Id.* ¶ 16.

Weather King employed Defendant Jesse Maupin as its Western Region Sales Manager. *Id*. ¶ 17.  Maupin managed Weather King's manufacturing plants and sales representatives in Arizona, New Mexico, Colorado, and Texas, a territory Weather King dubbed the "the Western States." *Id*.  Weather King now alleges that Maupin misappropriated Weather King's trade secrets, recruited other key Weather King employees, and acted together with these individuals to use Weather King's protected information to form a rival company, American Barn, LLC ("American Barn").  The Amended Complaint would hold Maupin and American Barn liable for misappropriation of trade secrets in violation of 18 U.S.C. § 1836 (Count I) and Tenn. Code Ann. § 47–25–1704 (Count II).  The Amended Complaint also alleges that all Defendants are liable for the Tennessee common law torts of breach of duty of loyalty (Count III), interference with business relationships (Count IV), conversion (Count VI), unjust enrichment (Count VII), civil conspiracy (Count VIII), and aiding and abetting (Count IX).  Weather King finally alleges that American Barn, Maupin, and Defendant Brian Lassen are liable for defamation (Count V).

Weather King filed suit against American Barn and each of the individual Defendants on October 19, 2022.  After Defendants answered (ECF No. 22) and filed a Rule 12(b)(6) motion to dismiss (ECF No. 23), Weather King filed an Amended Complaint (ECF No. 26).  On March 2,

2023, the Court held a scheduling conference with counsel for the parties and adopted their proposed case management plan in a Rule 16(b) scheduling order (ECF No. 63). The initial scheduling order gave the parties until December 1, 2023, to complete all discovery, and January 12, 2024, to file dispositive motions.

Since that time, the Court has issued two rulings on requests for dispositive relief. On November 6, 2023, the Court denied Defendants' Rule 56 motion for summary judgment on the federal and state trade secrets claims. Order Denying Defs.' Mot. for Summ. J. Nov. 6, 2023 (ECF No. 119). On February 11, 2025, the Court granted a joint motion for the entry of a default judgment against Defendants Bryan L. Lassen and Aleyna Lassen. Consent Def. J. 1 Feb. 11, 2025 (ECF No. 181) ("Plaintiff Consolidated Industries, LLC d/b/a Weather King Portable Buildings and Defendants Brian L. Lassen and Aleyna Lassen have reached agreement whereby entry of a default judgment will be entered against Defendants Brian and Aleyna Lassen in lieu of them turning over their mobile phones for forensic examination as ordered by the Court."). A trial on all remaining claims is currently set for October 27, 2025.

Under the current case management order, the discovery deadline was June 2, 2025. The discovery phase of the case has been protracted, to say the least, drawn out largely over Plaintiff's attempts to discover evidence found in Defendants' text messages and emails. According to Weather King's theory of the case, while still employed by Weather King, Defendants made their plans to create their own company, American Barn, and use Weather King's business model to compete directly with their former employer. Defendants discussed these plans by text and email, sometimes among themselves and other times with third parties who were existing customers doing business with Weather King and whom Defendants hoped to lure away as customers for

3

their new venture.  Weather King included a copy or screenshot of one such message (ECF No. 1-1) with its original pleading.

Although Defendants initially denied that such text messages or emails existed, Defendants eventually agreed to a forensic examination of their cell phones and laptops.  The forensic examination revealed the existence of the sort of texts and emails Weather King had expected to discover from the start.  Weather King now argues that Defendants acted in bad faith by failing to produce the information in the normal course of discovery and that the Court should enter a default judgment against Defendants as a sanction for their discovery abuse.  As grounds for its request for sanctions, Weather King has shown that it addressed a litigation hold letter to each Defendant on June 13, 2022, less than two weeks after Weather King learned of Defendants' plan to form their own company and Weather King's decision to terminate them.  Three months later, after Weather King filed suit and served Defendants with written discovery requests, Defendants took the position that no texts or emails existed or had ever existed.[1]  When Weather King sought a court order to compel a forensic examination of the devices, the Magistrate Judge denied that request without prejudice to renew it at a later time.  Instead, the Magistrate Judge stressed to Defendants the importance of their discovery obligations and ordered Defendants to supplement their discovery responses.  The Magistrate Judge's order contained the following admonition: "Any further obfuscation on Defendants' part may result in sanctions, which could include judgment entered in Plaintiff's favor and/or a finding" of contempt. Mag. J.'s Order 11, Aug. 29, 2023 (ECF No. 111).

---

[1] Weather King also cites evidence that at one time Defendants asserted their devices were company-issued and had remained in Weather King's possession after each Defendant's employment with Weather King had ended.  Defendants subsequently withdrew that claim, conceding that Weather King had never issued them work devices.

According to Weather King, Defendants failed to heed the Magistrate Judge's admonition and continued to take the position that there were no relevant texts or emails. The parties eventually agreed on a set of search terms and parameters for a forensic examination of Defendants' devices (conducted at Weather King's expense) and filed a joint motion to compel the examination (ECF No. 120). On November 28, 2023, the Court granted the joint motion and entered an agreed order appointing Repario Data to serve as the computer forensic vendor and adopting the parties' stipulations for how the examination should be conducted. Agreed Order Granting Mot. to Compel Forensic Exam. Nov. 28, 2023 (ECF No. 121).

The forensic examination of Defendants' devices revealed a substantial number of relevant texts. Faced with this proof to show that their discovery responses were incomplete or possibly false, Defendants have offered new explanations for the discrepancy as part of their testimony in their depositions. For example, Maupin admitted that he did not actually check his smartphone or laptop for any messages when he prepared his discovery responses. Maupin claimed that "other attorneys he knew" advised him the devices would inevitably be turned over in discovery. Maupin also testified that he did not understand the texts were considered "documents." Defendants Barry D. Harrell, Adrian S. Harrod, and Logan C. Feagin also sat for depositions and offered their own testimony about the discovery of the texts. Harrell admitted he did not see the messages on his device and had no idea how he had overlooked them. But Harrod and Feagin testified they were confused about the litigation hold. Both cited a November 2022 letter Weather King subsequently addressed to customers in which Plaintiff asked the customers who were using Weather King building plans to cease and desist and also to destroy any electronic copies of the plans in their possession. Both admitted that they had deleted text messages from their devices because they

believed the November 2022 letter instructed them to do so.  Not only did Defendants fail to produce the texts in discovery, but Harrod and Feagin admitted they spoliated the evidence.

Weather King also argues that sanctions are warranted for Defendants' interference with subpoenas Weather King had caused to issue as to several third parties.  Weather King used the subpoenas to obtain texts and other communications between Defendants and Weather King customers from whom Defendants were allegedly soliciting business.  Maupin admitted in his deposition that Defendants had attempted to help the third parties oppose the subpoenas.  Maupin testified that Illinois attorney Douglas Hines, who is not counsel of record or a party to this action, drafted a form letter to oppose the subpoenas.  Hines created the letter so that Defendants could share it with customers who had received Weather King's subpoenas.  In his deposition Harrod testified that he had emailed the form letter to dealers doing business with American Barn and who had received subpoenas from Weather King.  Maupin testified that Harrod had told one dealer Harrod did not want the dealer to cooperate with Weather King or comply with the subpoena.

Weather King argues that based on this record Defendants have acted in bad faith in the discovery process.  Defendants have failed to produce all responsive documents to Weather King's discovery requests.  Defendants Maupin, Harrod, and American Barn have interfered with Weather King's lawful subpoenas.  Harrod and Feagin admitted that they spoliated evidence.  And Weather King believes it still has not received all of the texts, including the text which it attached to its initial complaint.  Weather King goes on to argue that all of the other factors for imposing sanctions are met in this case.  Defendants' discovery conduct has caused Plaintiff prejudice.  Weather King was forced to spend over $154,000 on the forensic examination and incurred more than $167,000 in legal fees.  In his order (ECF No. 111) entered on August 29, 2023, the Magistrate Judge warned Defendants about the possibility of default judgment as a sanction for discovery abuse.  In light of

the seriousness of Defendants' conduct, no lesser sanction than default judgment will suffice.

Therefore, Weather King asks the Court to enter a default judgment against all Defendants, order

Defendants to reimburse Weather King for the costs of the forensic examination and its attorney's

fees, and give an adverse inference jury instruction as to Harrod and Feagins for spoliation of

evidence.

Defendants have responded in opposition to Plaintiff's Motion for Sanctions.  Defendants

argue that Weather King sent two different letters to individuals who are involved in the case, the

June 2022 letter directing them to preserve documents and information and the November 2022

letter to destroy documents and information.  Defendants assert that the contradictory nature of

Weather King's letters resulted in confusion.  Maupin testified that one of Weather King's owners

Scott Berryman told him in conversation to disregard the June 2022 letter because "there wasn't

going to be any lawsuit."  Defs.' Resp. in Opp'n 3 (quoting Maupin Dep. 513:15-514:04).  Another

vendor Old Hickory Buildings and Sheds then sent yet another letter to "former Weather King

Dealers" asking them to destroy certain documents in their possession.  Defendants claim that "[a]s

the case progressed and Defendants came to better understand their obligations, they supplemented

and amended their discovery responses, several times over in some instances."  *Id*. at 4.

The testimony of several Defendants during their depositions illustrates how Defendants

were confused or unclear about their discovery obligations.  Maupin testified that he did not

understand that a request for "notes" went beyond simple paper documents or emails or that

"documents" might include text messages.  Maupin also testified that he did not search his cell

phone for discoverable information because he was told the device would be produced for an

inevitable forensic examination.  Harrod and Feagin testified that they were confused by the

November 2022 letter instructing customers to destroy Weather King-related information and destroyed evidence to comply with the letter.

Even then, Defendants still produced over 76,000 pages of documents to Weather King and agreed to a forensic examination of their devices. Defendants have served Weather King with discovery responses and supplemented them four to five times. Defendants also justify their opposition to Weather King's attempts to subpoena non-parties. Defendants raised jurisdictional arguments against the subpoenas and their contention that the third parties had no relevant dealings with American Barn as good faith grounds to quash the subpoenas. Maupin also testified that he received legal advice from attorney Douglas Hines and that he directed Hines to draft a letter on behalf of the recipients of the subpoenas, stating their objections to Weather King's requests.

Defendants further argue that Weather King has not shown why sanctions are warranted against all Defendants. Weather King seeks to sanction Defendants collectively without an individualized assessment of each Defendant's conduct. For example, Harrod experienced serious health issues and was hospitalized at more than one point during the discovery phase of the case. Harrod's condition impacted his ability to understand his discovery obligations and comply with Weather King's requests. And Weather King filed its request for sanctions before it had even deposed all of the individual Defendants. As of the time when Plaintiff moved for sanctions, Weather King had not yet deposed Hershberger, Gillespie, or Brown. Weather King's request for significant sanctions fails to show why they are warranted based on this record.

## **STANDARD OF REVIEW**

Plaintiff seeks sanctions against Defendants pursuant to Rule 16(f), Rule 37(b), and Rule 37(e) of the Federal Rules of Civil Procedure as well as the Court's inherent authority. The Court has the inherent authority to dismiss a party's claims or enter default judgment against a party as

a sanction for discovery abuse but only "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons" or "when the conduct is tantamount to bad faith." *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980)).

The Federal Rules of Civil Procedure grant the Court similar authority to impose appropriate sanctions, including entry of default judgment, for a party's violations of its disclosure and discovery obligations under the rules. *Universal Health Grp. v. Allstate Ins. Co.*, 703 F.3d 953, 956 (6th Cir. 2013); Fed. R. Civ. P. 16(f) (permitting district courts to grant default judgment for a party's failure to obey a scheduling order or other pretrial order); Fed. R. Civ. P. 37(b)(2)(A) (authorizing default judgment as a sanction for a party's failure to "obey an order to provide or permit discovery"). Whether acting under the provisions of Rule 16(f) or Rule 37(b)(2), courts may impose any of the sanctions listed in Rule 37(b)(2)(A). *See* Fed. R. Civ. P. 16(f) (granting discretion to impose any sanction listed in Rule 37(b)(2)(A)(i)-(vi)).

Plaintiff seeks the sanction of default judgment. The Sixth Circuit has commented that "[j]udgment by default is a drastic step which should be resorted to only in the most extreme cases." *Prime Rate Premium Fin. Corp., Inc. v. Larson*, 930 F.3d 759, 769 (6th Cir. 2019) (quoting *United Coin Meter Co. v. Seaboard Coastline R.R.,* 705 F.2d 839, 845 (6th Cir. 1983)). Even so, it is not an abuse of discretion for a district court to enter default judgment where a "party has the ability to comply with a discovery order and does not." *Hampton v. Madison Cnty., Tenn.*, No. 21-5553, 2022 WL 17438317, at *2 (6th Cir. Nov. 7, 2022) (quoting *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990)). In the final analysis, "[e]ntry of a default judgment against a party for failure to cooperate in discovery is a sanction of last resort, and may not be imposed unless noncompliance was due to

9

willfulness, bad faith, or fault." *Thurmond v. Cnty. of Wayne*, 447 F. App'x 643, 647 (6th Cir.

2011) (quoting *Bank One*, 916 F.2d at 1073) (internal quotations omitted).

Rule 37(b)(2)(A) specifically lists sanctions courts may impose for a party's

noncompliance, up to and including the dismissal of the case or default judgment. *Id.*; *Mager v.

Wisc. Cent. Ltd.*, 924 F.3d 831, 837 (6th Cir. 2019) (citing *Bass v. Jostens, Inc.*, 71 F.3d 237, 241

(6th Cir. 1995)). Courts weigh four factors to determine whether default judgment is an appropriate

sanction for a party's failure to comply with a discovery obligation or other court order: (1) whether

the party's "failure to cooperate in discovery was willful and in bad faith as opposed to an inability

to cooperate"; (2) whether the other party suffered prejudice; (3) whether the Court warned the

party that his failure to cooperate could lead to a default judgment; and (4) whether the Court

imposed or considered less drastic sanctions before granting the default judgment. *Stooksbury v.

Ross*, 528 F. App'x 547, 552–53 (6th Cir. 2013). Default judgment is warranted for a record of

delay or "contumacious conduct," meaning "behavior that is perverse in resisting authority and

stubbornly disobedient." *Id*. (quoting *Carpenter v. City of Flint*, 723 F.3d 700, 705 (6th Cir. 2013)).

## ANALYSIS

The issue presented is whether the sanction of default judgment is justified against

Defendants for their failure to produce complete discovery responses. The Court holds that default

judgment is warranted, though only against some Defendants and only pursuant to Rule

37(b)(2)(A). As a preliminary matter, Plaintiff has not shown an entitlement to default judgment

against Defendants Brian L. Lassen and Aleyna Lassen as a sanction for discovery abuse for the

simple reason that the Court has already granted Plaintiff a default judgment against the Lassens.

The Court entered a Consent Default Judgment against the Lassens on February 11, 2025, "in lieu

of them turning over their mobile phones for forensic examination as ordered by the Court."

Consent Def. J. 1, Feb. 11, 2025 (ECF No. 181).  Plaintiff has not shown then why the Court should

enter a second default judgment against the Lassens for an abuse of the discovery process.  To the

extent then that Plaintiff seeks sanctions against Defendants Brian L. Lassen and Aleyna Lassen

for their failure to cooperate in discovery, Plaintiff's Motion is **DENIED**.

Likewise, the Court finds that Plaintiff has not carried it burden to show why the Court

should sanction Defendants Stephanie L. Gillespie, Ryan E. Brown, or Daniel J. Hershberger.[2]  Of

the 62 evidentiary exhibits Plaintiff has attached to its Motion for Sanctions, only three directly

implicate the discovery conduct of Gillespie, Brown, or Hershberger: Plaintiff has cited each

Defendant's written discovery responses (ECF Nos. 186-5, 186-6, and 186-7) to Weather King's

written discovery requests.  Although Plaintiff's reply argues that nine other exhibits implicate the

discovery failures of Gillespie, Brown, and Hershberger, the majority of the exhibits cited, mainly

text messages, do not mention or (at least on the surface) implicate these three Defendants.

In fact, only two refer to "Stephanie Parker," an exchange of text messages (ECF No. 187-

10) between Maupin and Stephanie Parker (presumably now Stephanie Gillespie) from June 4,

2022, in which Parker worried about going to jail; and a second chain of text messages between

Maupin and Parker from March 1, 2022 (ECF No. 191), in which Maupin and Parker discussed

various software and data sets they would need and the importance of using their personal email

to communicate about them.  Two more involve text messages between Maupin and Ryan Brown:

a chain of text messages (ECF No. 189-6) from April 11, 2022, when Maupin and Brown discussed

---

[2] On June 5, 2025, Weather King filed a notice with excerpts from the depositions of Ryan Brown, Daniel Hershberger, and Stephanie Gillespie (ECF No. 220).  The notice did not include any additional argument based on the contents of the deposition testimony, just a citation to the transcripts attached.  Rather than address the issues raised in the Motion for Sanctions through this later supplement to the Motion, the Court will deny Weather King's request for sanctions without prejudice to seek appropriate sanctions in a future motion.

increased rents on sales lots leased to sell Weather King products; and a chain of texts (ECF No. 191-2) from January 13, 2022, when Maupin and Brown discussed signing "gallup," having Arizona "100% on board," and purchasing trusses, saws, and a forklift. The only exhibit involving Hershberger's communications is a chain of emails (ECF No. 191-4) between Maupin, Hershberger, and a commercial real estate broker, discussing a transaction for a commercial site in Arizona.

The Court finds that based on this record, Weather King has not shown that Gillespie, Brown, or Hershberger acted in bad faith when they omitted these communications from their discovery responses. As of the filing of the Motion for Sanctions, Plaintiff had not deposed these parties. Plaintiff has shown that the evidence cited should have been produced with Defendants' discovery responses and that there is at least a possibility of concerted action on the part of some Defendants to thwart Plaintiff's attempts to recover text messages, emails, and other evidence stored on Defendants' devices. Still, the Court has no proof to explain the context of the specific communications cited by Plaintiff as the basis for sanctions or any testimony from these Defendants about why they omitted them from their production of discoverable information. Therefore, the Motion for Sanctions is **DENIED** as to Gillespie, Brown, and Hershberger but without prejudice to renew the request for sanctions with a more complete showing to demonstrate why default judgment is warranted as to each Defendant.

One other preliminary matter merits discussion before the Court turns to the issues presented as to the remaining Defendants. Weather King cites as grounds for default judgment Rule 37(e). Rule 37(e) permits sanctions, including default judgment, for a party's failure to preserve electronically stored information but only if the following conditions are met (1) "electronically stored information that should have been preserved in the anticipation or conduct

of litigation is lost"; (2) the loss of the information is due to a party's failure "to take reasonable steps to preserve it"; and (3) the lost information "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). In order to grant default judgment against the party who caused the loss of the information, a court must specifically find "that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2)(C). This means "negligence or even gross negligence will not do the trick." *Courser v. Mich. House of Representatives*, 831 F. App'x 161, 188 (6th Cir. 2020) (quoting *Applebaum v. Target Corp.*, 831 F.3d 740, 745 (6th Cir. 2016)).

Weather King has not shown that it can meet the requirements for default judgment under Rule 37(e). Other than one or two pieces of evidence, Weather King has not proven that any electronically stored information was lost or that the lost information cannot be restored or replaced. At best, the record shows that certain Defendants did not produce all of the discoverable evidence they had in their possession. Weather King has now obtained a trove of electronically stored information, mainly texts and emails, through the forensic examination of Defendants' devices. In other words, it is not clear any information was lost or that Weather King would not have received it as part of the information recovered from Defendants' devices. Strictly speaking, this is not enough to justify default judgment under Rule 37(e). To the extent that Plaintiff seeks the sanction of default judgment as an exercise of the Court's authority under Rule 37(e), the Motion for Sanctions is **DENIED**.

## I.    Defendants' Bad Faith

Having narrowed the issues for determination, the Court now focuses on whether sanctions are proper against the remaining Defendants: Jesse Maupin, Barry Harrell, Adrian Harrod, Logan

Feagin, and American Barn.  The Court holds that a default judgment against the remaining Defendants is the appropriate sanction for their bad faith conduct in the discovery process.  First, the Court considers whether Defendants' "failure to cooperate in discovery was willful and in bad faith as opposed to an inability to cooperate."  *Stooksbury*, 528 F. App'x at 552–53.  "Willfulness, bad faith, or fault is demonstrated when a [party]'s conduct evidences either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings." *Shavers v. Bergh*, 516 F. App'x 568, 570 (6th Cir. 2013) (quoting *Schafer v. City of Defiance Police Dept.*, 529 F.3d 731, 737 (6th Cir. 2008)).  "Bad faith is generally the most important factor" courts assess in deciding whether sanctions are warranted. *KCI USA, Inc. v. Healthcare Essentials, Inc.*, 801 F. App'x 928, 934 (6th Cir. 2020) (citing *Ndabishuriye v. Albert Schweitzer Soc'y, USA, Inc.*, 136 F. App'x 795, 800 (6th Cir. 2005)).

Here, the Court finds that Defendants failed to cooperate in discovery and that their failure was willful and in bad faith, largely because Defendants' after-the-fact explanations are not credible.  Defendants were clearly on notice of their duty to preserve evidence at all times since June 12, 2022.[3]  The essential facts regarding Defendants' discovery failures are undisputed.  Start with Plaintiff's litigation hold and preservation letter from June 2022.  The record shows that Plaintiff issued the letter to each Defendant directing them individually to "preserve and retain all documents that are potentially relevant" to litigation.  Cease and Desist Ltr., June 12, 2022 (ECF

---

[3] Maupin testified that he did not clearly understand this obligation because of a conversation he had with Weather King principal Scott Berryman.  According to Maupin, Berryman assured Maupin there would be no litigation.  But Maupin has not shown when that conversation occurred, what direct actions he took in reliance on the statement, or why Berryman's oral statement would have bound Weather King, particularly after Weather King did in fact file suit.  Maupin has not shown then why Berryman's comment, if accepted as true, relieved him of his discovery obligations.

No. 1-7).   Weather King filed its initial Complaint on October 19, 2022, and later served

Defendants with written interrogatories, requests for production, and requests for admission on

January 25, 2023.  Defendants initially responded to Weather King's written discovery requests

and stated that they had no discoverable texts, emails, or other information.  Even after Weather

King moved to compel supplemental responses and a forensic examination of Defendants'

electronic devices, Defendants were steadfast and maintained that they did not have any

responsive, discoverable evidence in their possession.  At that still early phase of the case, the

Magistrate Judge denied Weather King's request for a forensic examination and for sanctions but

did emphasize to Defendants the importance of their discovery obligations.   And yet despite

months of litigating these discovery disputes and the Magistrate Judge's warning, Defendants still

failed to produce all of the information which they had a clear duty to produce.  The subsequent

forensic examination of Defendants' devices uncovered multiple examples of texts, emails, and

other information stored there which Defendants had not disclosed in discovery and which Plaintiff

obtained only at great expense.  Defendants have offered no evidence to contest any of this or

dispute the fact that they did not comply with the Magistrate Judge's order to supplement their

responses and produce what should have been produced in the normal course.

Defendants have offered a variety of explanations for their omissions, none of which the

Court finds credible.  On the contrary, Defendants' roving rationalizations and claimed confusion

about their responsibilities ring hollow and only reinforce the conclusion that they did not have a

good faith basis for their conduct.  For example, Maupin testified that his duties to preserve and

disclose were unclear because he did not understand Weather King's requests for "documents"

and "communications" to mean texts, emails, or electronically stored information.  Weather King's

discovery requests specifically defined the terms for Maupin, precisely to avoid any confusion or

dispute over the meaning of the words.  Weather King's discovery requests spelled out that "communications" meant "any oral or written utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, but not limited to, correspondence, conversations, dialogues, discussions, *messaging*, interviews, consultations, agreements, and other understanding between or among two (2) or more persons."  Likewise, Weather King defined "documents" to include "email, voice mail, electronic bulletin board postings, social media communications, and any information stored on and reproducible in documentary form from a computer or other electronic, magnetic, optical, laser-based information, or remote storage device, including but not limited to . . . external hard drives, flash or 'zip' drives, or remote or 'cloud' storage locations."

The Court finds that the manner in which Weather King used the terms "documents" and "communications" could not have been much clearer.  Weather King specifically wanted text messages, emails, and anything else stored electronically.  Furthermore, when Weather King moved for an order compelling Defendants to supplement their discovery responses (ECF No. 75), Defendants filed a lengthy brief opposing the motion.  At no point, however, did Defendants argue that Weather King's requests were overbroad, vague, or otherwise unclear to them.  In fact, the briefing on the motion to compel makes multiple references to text messages and emails sought by Weather King.  Even if Maupin was unsure about what was required, the Magistrate Judge cleared things up in his order on Weather King's motion to compel the supplemental responses and the forensic examination.  There, the Magistrate Judge described Defendants' discovery responses up to that time as "lacking" and cautioned them about the seriousness of meeting their discovery obligations.  Mag. J.'s Order 4, 11, Aug. 29, 2023 (ECF No. 111).  Maupin's *post hoc* rationale does not hold up to scrutiny.

Maupin also testified that he "was told the cell phones will end up getting turned over and everything [would] be retrieved off of that." Maupin Dep. 66:08-11. But Maupin provided no other context to support this belief or any explanation of how he arrived at it. In any event, Maupin's approach is not the standard for producing discovery under the Federal Rules of Civil Procedure. "A party cannot unlock its doors and tell its adversary to search for the needle in the haystack. The party *must produce* such documents in response to proper requests." *ECIMOS, LLC v. Nortek Global HVAC, LLC*, 736 F. App'x 577, 582 (6th Cir. 2018) (emphasis in original). The fact is Maupin and the rest of the Defendants opposed Weather King's first request for a forensic examination of their devices in June 2023, arguing "[f]irst and foremost, . . . [Defendants] have provided all the documents that they possess, although Plaintiff refuses to believe it" and claimed that Weather King had just its own "mere suspicion of documents not having been produced." Defs.' Resp. in Opp'n to Pl.'s Mot. to Compel Forensic Exam. 1, June 6, 2023 (ECF No. 81). Defendants cannot now claim that they did not search their devices for discoverable information because they knew the devices would be searched eventually. All in all, Defendants have not shown that they went about completing their discovery responses on the assumption that the requests did not somehow apply to information stored on their devices or that the devices themselves would ultimately be searched by someone else.

The Court finds the other explanations offered by Defendants' even less plausible. Feagin and Harrod testified that they were confused about their discovery obligations due to a letter counsel for Weather King addressed to different vendors after Weather King filed suit.[4] The letter

---

[4] The Court notes that Harrod has offered an independent justification for his misunderstanding of his own discovery obligations, the fact that he was hospitalized with a serious health condition for a period of time during the pendency of the litigation. Even accepting that claim as true, the fact remains Harrod never raised this issue with the Court, requested more time

Feagin and Harrod referred to was correspondence dated November 16, 2022, and addressed to certain vendors who are not parties to this case. Weather King has attached the letter addressed to American Outdoors of Alamogordo, New Mexico, as an exhibit (ECF No. 205-2) to its Motion for Sanctions. The letter began by explaining that Weather King had learned third parties were submitting building permit applications with Weather King's plans or drawings and "listing Weather King as the contractor." Am. Outdoors Ltr. 1, Nov. 16, 2022 (ECF No. 205-2). Weather King also stated in the letter that based on information received from Maupin in the litigation, "American Barn's dealers all possess drawings previously belonging to Weather King," and "at times those dealers affix Mr. Maupin's signature to permit applications." *Id*. Under the circumstances, Weather King demanded that American Outdoors cease and desist using Weather King's drawings, plans, or blueprints and return "all Weather King drawings/plans/blueprints or any other Weather King property in your possession" and confirm "that any electronically-stored copies of such Weather King property have been destroyed." *Id.* at 2.

Other than the testimony of Feagins and Harrod and their interpretation of the letter, Defendants have not shown how Weather King's November 2022 letters somehow left them unclear about their discovery obligations. First, the cease-and-desist letters were not addressed to any Defendant in this case. Defendants assert that the recipients of the letters shared copies with certain Defendants. Be that as it may, the letter does not direct any Defendant to take any action in response. The letter had nothing to say about what steps Defendants were asked to take, because the letter was not addressed to Defendants at all. Second, the letter's directive to destroy

---

to complete his discovery responses, or sought the reprieve of a stay while he recovered. The Court finds that Harrod's health problems do not fully explain his conduct during the discovery process.

information was not a blanket directive to destroy anything and everything related to Weather King. The letter clearly applied to Weather King drawings, plans, blueprints, and any other property owned by Weather King. The Court is hard pressed to understand how Defendants, who had already received Weather King's litigation hold in June 2022 and been served with process in November 2022,[5] could have interpreted the letters as an instruction to destroy texts and emails. The fact that they may have destroyed evidence based on their seriously flawed understanding of the cease-and-desist letters strains belief.

Defendants fall back then to argue that the responses they did provide and their supplements to those responses show they have participated in discovery in good faith. But this argument misses the point. The question is not whether Defendants may have produced relevant evidence in the course of discovery. For the record, they have, both in responding to written discovery, in producing documents and information, and in sitting for depositions. Rather the issue is whether Defendants complied with the Magistrate Judge's order by producing all of the information to which Weather King was entitled. Fed. R. Civ. P. 26(e)(1)(B) ("A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—*must supplement or correct* its disclosure or response as ordered by the court."). Perhaps more important, Rule 37 treats "an evasive or incomplete" response "as a failure" to respond at all. Fed. R. Civ. P. 37(a)(4) ("For purposes of this subdivision

---

[5] Weather King's proof of service showed that American Barn's registered agent for service of process was served on October 21, 2022 (ECF No. 7), Maupin and Harrell on November 1, 2022 (ECF Nos. 8, 10), and Feagin on November 7, 2022 (ECF No. 9). Weather King did not file proof of service for Harrod, though Harrod's counsel filed a motion for admission *pro hac vice* (ECF No. 13) on November 11, 2022. All of this shows Defendants had actual notice of the litigation prior to Weather King's letters to third party vendors.

(a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.").

For the reasons the Court has already discussed, Defendants did not comply with the Magistrate Judge's order and have not shown that they were somehow prevented from acting in accordance with the order. The Magistrate Judge entered his order on August 29, 2023. Over 18 months later and after receiving the results of the forensic examination of Defendants' devices, it was clear Defendants had not supplemented their discovery as ordered, and Plaintiff was forced to seek relief once again from the Court. At this late stage of the case, all of Defendants' explanations for their failure to comply do not hold up upon closer examination. The Court can only conclude that Defendants' refusal to produce all of the relevant information in their possession was due to willfulness and fault.

What is more, Defendants' failure to produce all of the relevant discovery it owed Weather King did not occur in a vacuum. Weather King has also shown that the discovery responses Defendants did provide were incomplete, at best, and in many respects inaccurate or misleading. According to a chart compiled by Weather King (ECF No. 191-7), there were 24 instances in which Defendants Maupin, American Barn, Harrell, Feagin, and Harrod's written discovery responses were inaccurate or incomplete. For example, Maupin answered Weather King's third interrogatory and stated that all communications related to the creation, funding, or operation of American Barn were "in person." In fact, Weather King identified eight different text messages and emails to which Maupin was a party and where Maupin discussed these topics with others. Even more troubling, Weather King has demonstrated that when questioned about the inconsistencies between their discovery responses and other evidence revealed in discovery, Defendants admitted in their depositions that their discovery responses were inaccurate.

While Defendants were not providing truthful and complete answers in their written discovery, Maupin and Harrod took steps to interfere with valid subpoenas for discovery Weather King had issued to non-parties. Federal Rule of Civil Procedure 45(a) permits a party to serve a subpoena on a non-party and command the responding person to "produce documents, electronically stored information, and tangible things." Fed. R. Civ. P. 45(a). Weather King has made extensive use of subpoenas in its pursuit of discovery in this matter. Maupin testified, both in his individual capacity and in his capacity as American Barn's Rule 30(b)(6) representative, that he suggested to the recipients of the subpoenas that they respond their communications with Defendants were oral and that no documents existed to prove the contents of the communications, a position that was without factual support. Maupin also testified that he directed an attorney (just not his counsel of record in this matter) to prepare a letter responding to the subpoenas and asserting blanket objections to the subpoenas. Maupin wanted the form letters distributed to the recipients of the subpoenas as a means to help them resist the discovery sought by Weather King. Plaintiff has further shown that Harrod bluntly told one dealer and recipient of a Weather King subpoena, Colby Friar, not to cooperate with Weather King.

Under all of the circumstances, the Court finds that Defendants have acted in bad faith and with reckless disregard for the consequences of their actions, by refusing to comply with the Magistrate Judge's order, by failing to respond fully and completely to Weather King's discovery requests, and otherwise by ignoring their discovery obligations. Therefore, this first and most important factor weighs strongly in favor of the sanction of default judgment.

## II.        Prejudice to Weather King

Next, the Court finds that Defendants' bad faith conduct caused Weather King to suffer prejudice. The "waste of time, money, and effort" on the part of the requesting party can constitute prejudice. *Cowley v. Prudential Security, Inc.*, No. 22-1760, 2023 WL 2592873, at *3 (6th Cir. Mar. 22, 2023) (quoting *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997)) (cleaned up). This factor is easily met here. Weather King has filed a series of discovery motions to obtain information, particularly Defendants' texts and emails. Defendants had a duty to produce the information in the first place. Instead, Defendants have denied the messages existed at all, denied they owned the devices holding the messages, denied they understood the scope of what Weather King sought, denied they understood Weather King's litigation hold and unrelated and irrelevant correspondence with non-parties, and ultimately denied they withheld the messages intentionally. Weather King only obtained the texts and emails they were able to obtain through a forensic examination at an expense of over $150,000 and incurring more than that in legal fees. This is enough to show prejudice from Defendants' discovery abuse.

### III.    Prior Warning About Possible Default Judgment

The third factor, whether the Court warned Defendants that their failure to cooperate could lead to a default judgment, is also satisfied here. "For starters, a court need not give any warning where, as here, the sanctioned party acted in bad faith." *Larson*, 930 F.3d at 769 (citing *Mager*, 924 F.3d at 840). The Court has determined that Defendants acted in bad faith in failing to comply with the Magistrate Judge's August 2023 order and for the overall abuse of the discovery process. Even so, in the same order, the Magistrate Judge specifically gave Defendants the following admonition: "Any further obfuscation on Defendants' part may result in sanctions, which could include judgment entered in Plaintiff's favor and/or a [contempt] finding . . . ." Mag. J.'s Order

13, Aug. 29, 2023.  The Court finds that the order clearly put Defendants on notice that continuing violations of their discovery obligations could result in a default judgment.  This factor is met.

## IV.    Lesser Sanctions Will Not Suffice

The final factor, the advisability of a lesser sanction, also weighs in favor of default judgment.  *Stooksbury*, 528 F. App'x at 553.  The Court has not previously sanctioned Defendants for their discovery-related conduct.  The Magistrate Judge specifically denied Weather King's request for an award of expenses and attorney's fees in his August 2023 discovery order.  The Magistrate Judge reached his decision, in part, because he accepted Defendants' explanations that they did not understand certain terms in Weather King's discovery requests or that "they may no longer possess some documents."  Mag. J.'s Order 13, Aug. 29, 2013.  The Magistrate Judge nevertheless put Defendants on notice of the possibility of a default judgment.  Having received the benefit of the doubt, Defendants still did not fully comply with the Magistrate Judge's order to supplement their discovery responses. Defendants not only failed to avail themselves of their second chance to supplement their written discovery responses, Defendants continued to play fast and loose with their discovery obligations by destroying evidence and attempting to interfere with Weather King's third party subpoenas.  So even though the Magistrate Judge did not grant Weather King's request for sanctions in 2023, Defendants borrowed extra time, put Weather King to the expense of a forensic examination, meddled with third party discovery, and only finally admitted their conduct in their depositions.  On this record, the Court finds that a lesser sanction would not capture the seriousness and extent of Defendants' abuse of the discovery process.  *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 763–64 (1980) ("Rule 37 sanctions must be applied diligently both to

penalize those whose conduct may be deemed to warrant such a sanction, and to deter those who might be tempted to such conduct in the absence of such a deterrent.") (cleaned up).[6]

In addition to the discretion to "issue further just orders" by imposing any of the sanctions listed in Rule 37(b)(2)(A), Rule 37(b) entitles Weather King to its reasonable expenses, including its attorney's fees. Fed. R. Civ. P. 37(b)(2)(C) ("Instead of or in addition to [other available sanctions], the court *must order* the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.") (emphasis added). The award of these expenses is mandatory unless a substantial justification exists for Defendants' failure to comply with the discovery order. *Id*. As the Court has already concluded, Defendants violated the Magistrate Judge's order from August 2023, and Defendants have failed to offer a substantial justification for their failure to comply. Therefore, the Court holds that Weather King is entitled to its reasonable expenses, including attorney's fees, caused by Defendants' failure to comply with the Magistrate Judge's August 2023 discovery order.

The full extent of Weather King's expense and attorney's fees is not entirely clear from the record. Weather King has included documentation to support their request for expenses and attorney's fees, some of which, particularly counsel's billing invoices, is heavily redacted. *See*

---

[6] As part of their response and while denying that sanctions are warranted at all, Defendants argue that if anything the Court should only consider a monetary fine or giving an adverse instruction. The Court does not believe these lesser sanctions suffice, not when Weather King's earlier motion for sanctions was denied and Defendants then went on to engage in other sanctionable conduct. Defendants have not just casually neglected to produce all relevant discovery. Weather King has shown that Defendants disobeyed the Magistrate Judge's discovery order. Rule 37(b)(2)(A) allows for any number of serious sanctions. A standalone monetary fine is not one of them, and an adverse inference would allow Defendants to continue to defend the claims against them by arguing some good faith basis for their discovery misconduct.

First Decl. of David Johnson (ECF No. 210-1); Second Decl. of David Johnson (ECF No. 214-1).

The Court hereby refers the matter to the Magistrate Judge for a determination of Weather King's

reasonable expenses, including attorney's fees, caused by Defendants' failure to comply with the

Magistrate Judge's August 2023 discovery order.

## <u>CONCLUSION</u>

The Court holds that Weather King is entitled to the sanction of default judgment against

Defendants Jesse Maupin, Barry Harrell, Adrian Harrod, Logan Feagin, and American Barn.

Weather King is also entitled to an award of expenses and attorney's fees pursuant to Rule 37.

Therefore, Weather King's Motion for Sanctions is **GRANTED in part, DENIED in part**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: June 30, 2025.