## IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

| | | |
|---|---|---|
| CONSOLIDATED INDUSTRIES, LLC d/b/a WEATHER KING PORTABLE BUILDINGS, | ) ) ) ) | |
| **Plaintiff,** | ) ) | **Civil Action No. 1:22-cv-01230-STA-jay** |
| v. | ) ) | **Chief Judge S. Thomas Anderson** |
| JESSE A. MAUPIN, BARRY D. HARRELL, ADRIAN S. HARROD, LOGAN C. FEAGIN, STEPHANIE L. GILLESPIE, RYAN E. BROWN, DANIEL J. HERSHBERGER, BRIAN L. LASSEN, ALEYNA LASSEN, and AMERICAN BARN CO., LLC, | ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR SANCTIONS AGAINST DEFENDANTS GILLESPIE, BROWN AND HERSHBERGER

Plaintiff "Weather King" renews its request that the Court enter default and impose monetary sanctions against Defendants Stephanie L. Gillespie, Ryan E. Brown, and Daniel J. Hershberger. These Defendants have engaged in discovery abuses similar to that committed by the other Defendants and should be sanctioned accordingly.

### BACKGROUND

The background of this case is set forth in the Court's June 30, 2025 Order granting in part Weather King's February 27, 2025 motion for sanctions. *See* ECF No. 231. As with the other Defendants, Gillespie, Brown, and Hershberger did not produce any text messages in response to Weather King's discovery requests even though each was served with a litigation hold letter on June 13, 2022 (ECF No. 1-7). *See* Ex. A, Johnson Decl., ¶2. Each denied deleting their

correspondence,[1] and yet the Court-ordered forensic examination revealed that each had numerous responsive text messages (and other documents) that they failed to produce—even after Magistrate Judge York warned them about their discovery obligations (ECF No. 111).  *See infra.*

In its June 30, 2025 Order, the Court held that "Weather King is entitled to the sanction of default judgment against Defendants Jesse Maupin, Barry Harrell, Adrian Harrod, Logan Feagin, and American Barn" and that "Weather King is also entitled to an award of expenses and attorney's fees pursuant to Rule 37."  ECF No. 231 at 25.  At the time that Weather King filed its motion, it had not deposed Gillespie, Brown, or Hershberger, but it supplemented its filings with excerpts of their depositions after they were taken.  ECF No. 220.  The Court found that, "[r]ather than address the issues raised in the Motion for Sanctions through this later supplement to the Motion, the Court will deny Weather King's request for sanctions *without prejudice* to seek appropriate sanctions in a future motion."  ECF No. 231 at 11 n.2 (emphasis added); *see also id.* at 12 (denying motion as to those Defendants "but without prejudice to renew the request for sanctions with a more complete showing to demonstrate why default judgment is warranted as to each Defendant").

Weather King now renews its motion to demonstrate that, as with the other Defendants, Defendants Gillespie, Brown, and Hershberger committed discovery abuses, including: (a) declining to produce responsive text messages and other documents in response to Weather King's discovery; (b) misrepresenting that they did not possess responsive documents; and (c) otherwise playing fast and loose with their discovery obligations after repeated chances to act in good faith and after being warned of the consequences of not doing so.

---

[1] Ex. B, Gillespie Dep. 51:18, 76:22-24; Ex. C, Brown Dep. 52:19-53:2; Ex. D, Hershberger Dep. 36:15-20.

- **Defendant Gillespie**

In response to Weather King's requests for production, Gillespie represented that she possessed no correspondence exchanged with the other Defendants during the time period leading up through her resignation from Weather King. Ex. B, Gillespie Dep. Ex. 4, Resp. to RFP No. 7. As with the other Defendants, she also represented to Weather King and the Court that the documents sought by Weather King "simply never existed in the first place" and that she "provided all the documents that [she] possess[es], although Plaintiff refuses to believe it." ECF No. 187-2 at 1; ECF No. 81 at 1-2.

The Court-ordered forensic examination of Gillespie's phone and other devices, however, revealed that Gillespie possessed responsive documents all along that she did not produce and claimed did not exist, including:

- Scores of emails and texts messages with Defendant Jesse Maupin about setting up Defendant American Barn Co., LLC ("ABCO") while employed by Weather King (and often while on the clock for Weather King). *See, e.g.,* Ex. B, Gillespie Dep. Exs. 9-14, 17-18, 28, 31, 34, 41.[2]

- Communications relating to the misappropriation, including ABCO's use, of Weather King's trade secrets and other confidential information in launching and operating ABCO. *See, e.g., id.* Gillespie Dep. Exs. 9, 18, 19, 21-22, 24, 27, 38, 39, 47, 58, 59.

- Emails and texts showing Gillespie's involvement in secretly altering a lease agreement for an Arizona sales lot to be in Maupin's name instead of Weather King. *Id.* Gillespie Dep. Exs. 25-26.

- Texts about conversations with Weather King dealers whom Defendants were soliciting away from Weather King while still employed by Weather King. *See id.* Gillespie Dep. Ex. 26.

- Texts about manipulating payroll for Weather King's Western employees. *Id.* Gillespie Dep. Ex. 23.

---

[2] The texts identify Gillespie as "Stephanie Parker," which is her maiden name. Ex. B, Gillespie Dep. 14:2-7. The forensic examination revealed numerous other responsive communications that Weather King has not filed with its motion.

- Texts with Maupin about the plan to leave Weather King at the same time because "it would hurt them more and be harder to recover" and using the dealers to put pressure on Weather King to not be able to continue to operate afterwards. *Id.* Gillespie Dep. Exs. 36-37.

- Texts with Maupin after Weather King began discovering Defendants' misdeeds stating "I'm freaking out" and "I don't know if what I did was criminal." *Id.*, Gillespie Dep. Ex. 45.

Yet, in response to Weather King's Request for Production No. 7, requesting copies of "correspondence and other documents exchanged with any then-current Weather King employees after January 1, 2022," Gillespie represented "None." *Id.*, Gillespie Dep. Ex. 4; *see also id.*, Resp. to RFP No. 14. The numerous correspondence cited above relating to Gillespie helping ABCO launch behind the scenes cannot be reconciled with her response to Interrogatory No. 1 that she did not play any role in planning the creation of any business in the portable building industry. *Id.*, Gillespie Dep. Ex. 4. And despite claiming to possess no correspondence and other documents relating to the leasing of property in Arizona or New Mexico, *id.* Resp. to RFP No. 15, the forensic examination revealed that she and Maupin were texting about stealing a lease away from Weather King.[3] *Id.*, Gillespie Dep. Exs. 25-26.

Afforded the opportunity at her deposition to reconcile her discovery responses and representations to Weather King and the Court with the documents obtained as part of the forensic examination, Gillespie had no explanation:

Q.      . . . So at any time after January 1, did you have any correspondence . . . with someone who was a then-current Weather King employee?

A.      Yeah, I did. ***I don't really feel like that response*** [to RFP No. 7] ***is correct***. I'm sure that there were texts, just regular -- unless I just understood it to mean in regards to this, but I don't really know.

---

[3] Gillespie admitted helping Maupin take a lease agreement between Weather King and a landlord and altering the document such that Maupin's name was substituted for Weather King's name as lessee. Gillespie Dep. 128:7-11.

\*       \*       \*

Q.      What did you do to look for responsive documents?

A.      I don't recall.

Q.      Did you do anything to look for responsive documents?

A.      I really don't recall.

Q.      Did you scroll through your cell phone?

A.      I'm sure I did do that.

Q.      Is it your testimony that scrolling through your cell phone, you found no responsive documents?

A.      I believe so.

\*       \*       \*

Q.      You testified that there were some text messages, you said a few text messages between you and Jesse. Why didn't you produce those?

A.      I'm not sure. I don't know.

*Id.* at 66:21-67:10, 74:10-20, 77:20-23; *see also id.* at 75:14-15 ("I did not feel like I had anything that was relevant to what was being asked"); *id.* at 75:24-76:21 (unable to reconcile defense counsel's representation that responsive documents "never existed in the first place"); *id.* at 84:15-22 (stating "I'm not sure" and "I don't know" why responsive text messages were not produced).

The real reason that Gillespie did not produce the emails, text messages, and other responsive documents is that she and the other Defendants did not want Weather King to discover them. Notwithstanding the fact that she did not "feel like that response [to RFP No. 7] is correct," *id.* at 67:1-2, Gillespie chose not to supplement her response after: (a) Weather King pressed Defendants during the meet and confer process as to why no communications were produced (ECF No. 187-1); (b) Weather King moved to compel a forensic examination (which she opposed) (ECF

Nos. 73 & 81); and (c) Magistrate Judge York afforded her the opportunity to supplement her responses and produce responsive documents and warned her about the consequences of failing to do so (ECF No. 111). Instead, she steadfastly lied to Weather King and the Court that she "provided all the documents that [she] possess[es]" and lamented that "Plaintiff, despite Defendants' discovery responses and multiple confirmations by counsel, refuses to accept the simple fact that most of the documents requested simply do not exist in Defendants' hands." ECF No. 81 at 1-2.

- **Defendant Brown**

Although Brown is the only Defendant who produced emails in response to Weather King's discovery requests,[4] he did not produce a single text message. Ex. A, Johnson Decl., ¶2; Ex. C, Brown Dep. 45:16-46:3. The forensic examination, however, revealed numerous responsive text messages between Brown and Maupin (and others), such as:

- Texts relating to launching ABCO's enterprise, such as January 13, 2022 texts about Maupin having "Arizona 100% on board" nearly five months before Defendants left Weather King (Ex. C, Brown Dep. Ex. 5);

- April 12, 2022 texts with Maupin about Weather King "fold[ing] like a cheap deck of cards" because it will have "[n]o lots," "[n]o dealers," and "[n]o builders" in the West after Defendants stole away the relationships (which still employed by Weather King), as well as "500 buildings across the board that will need moved [sic] with no where to put them," and with "storage rates" (*id.,* Brown Dep. Ex. 8);

- Communications about hard-ball negotiating tactics with Weather King relating to the Western operations (*id.,* Brown Dep. Ex. 17);

- Communications about leasing property and trying to steal a lease from Weather King despite claiming to possess "None" (*compare id.* Brown Dep. Ex. 2, Resp. to RFP No. 15 *with* Brown Dep. Ex. 7, 11-14); and

- Communications about the use of Weather King form documents despite claiming to possess "None" (*compare* Brown Dep. Ex. 2, Resp. to RFP No. 20 *with* Brown Dep. Ex. 18).

---

[4] Brown, however, only produced one email during the crucial time period of February-May 2022. Ex. A, Johnson Decl., ¶3.

Although Brown testified at his deposition that, in response to Weather King's discovery, "I would imagine that I looked through the phone and printed off screenshots and printed off emails and tried to produce what was asked for," ECF No. 220-1, Brown Dep. 47:6-8, he could not identify a single screenshot of any text message that he supposedly produced. *Id.* at 45:16-47:20. The essence of Brown's explanation for why he did not produce documents that Weather King was forced to obtain through the Court-ordered forensic examination is that "I can't recall exact [sic] what I did or didn't do," but that he "tried to produce what was asked for." *Id.* at 48:9-13; *see also id.* at 46:11-47:3, 49:12-19, 53:14-22. For instance, asked directly for "an explanation as to why you claim not to possess these text messages and why you didn't produce them when Weather King asked for them in discovery," the only response Brown could muster was: "Like I mentioned earlier, as far as I recall, I did my best to produce whatever you guys asked for." *Id.* at 54:6-11.

Apparently, Brown's "best" entailed either: (a) not bothering to check whether he possessed any text messages with Maupin or the other Defendants; or (b) consciously deciding not to produce responsive communications. Under either scenario, his efforts are utterly indefensible, particularly given Brown's repeated representations that he did not possess text messages in response to Weather King's efforts to obtain the documents and Magistrate Judge York's August 29, 2023 Order (ECF No. 111).

- **Defendant Hershberger**

Asked whether he texted with Maupin during the last six months of his employment with Weather King, Hershberger testified: "Absolutely, almost every day." Ex. D, Hershberger Dep. 30:17-20. Nevertheless, when asked to produce his text messages and other correspondence exchanged with Maupin and the other Defendants, Hershberger responded: "None." *Id.,*

Hershberger Dep. Ex. 3, Supp. Resp. to RFP No. 7. Yet, as with each of the other Defendants, the

forensic examination of Hershberger's devices revealed that numerous text messages and other

responsive documents were not produced. Hershberger, for instance:

- Texted with Maupin in March 2022 about Defendants' "main goal" of "mak[ing] everything seem ok [to Weather King] until we walk away" (Ex. D, Hershberger Dep. Ex. 16)[5];

- Received a text from Maupin on May 17, 2022, asking him if he has "talked to any of the guys yet" in Weather King's Peoria, Arizona shop about leaving Weather King and joining ABCO (*id.,* Hershberger Dep. Ex. 20);

- Texted three Weather King drivers on May 27, 2022, that "I'm meeting with WK drivers on Monday [while he was still employed by Weather King] to discuss future changes and opportunities" (*id.*, Hershberger Dep. Ex. 26);

- Texted Maupin on June 1, 2022, about Weather King employees at the Peoria shop who were committed to joining ABCO's enterprise (*id.*, Hershberger Dep. Ex. 27);

- Texted with Maupin about manipulating Weather King's Peoria shop payroll and builder logs and concealing it by sending it only to Gillespie, and including a statement by Maupin that "[y]our [sic] gonna get us all fired" (*id.*, Hershberger Dep. Ex. 23-25); and

- Regularly texted and emailed with Maupin about ABCO's plans—often while on the clock for Weather King (*see, e.g., id.*, Hershberger Dep. Ex. 13, 15, 17, 19, 28-31).

Asked to reconcile Weather King's receipt of these communications with his "None"

response to Request for Production No. 7 asking for correspondence with "any then-current

Weather King employees after January 1, 2022" (Ex. D, Hershberger Dep. Ex. 3), Hershberger

responded: "It was my understanding that that question was referring to ABCO." Ex. D,

Hershberger Dep. 30:21-31:4. He further testified:

    Q.    Did you look for text messages?

    A.    I did.

---

[5] Repario's forensic collection of Hershberger's text messages produced an identifier for his device as "Undefined Participant" in text message reports like the ones seen in Exhibit 16 to his deposition. The document metadata for these messages confirms that Hershberger was the custodian of the device. Where these exhibits refer to "Undefined Participant" or have a "?" for the participant, it is Mr. Hershberger's device. The parties counsel are currently working on a stipulation to confirm this.

Q.      Did you have text messages with Mr. Maupin or any of the other Defendants?

A.      I did.

Q.      Why didn't you produce those text messages?

A.      Because they were incidental to the course of Weather King's business. I explained that I understood the question to be pertaining to ABCO.

Q.      What is it about that request [RFP No. 7] that led you to believe that?

A.      ***I don't know what led me to believe that***, that's what I believed.

*Id.* at 33:7-19 (emphasis added).

Hershberger's explanation is inexplicable for several reasons. First, RFP No. 7 plainly is not limited to correspondence about ABCO. Second, Weather King was clamoring in correspondence to defense counsel and filings with the Court as to why Defendants produced no text messages. *See* ECF No. 185-1 at 3-5. Third, Hershberger's claim that he interpreted RFP No. 7 to be limited to correspondence related to ABCO cannot be reconciled with the fact that the communications cited on page 8 above all relate to ABCO business. *See also* Ex. D, Hershberger Dep. 34:3-10, 36:21-47:20 (admitting that the correspondence relates to ABCO business).

Pressed further about this discrepancy in his explanation, Hershberger testified:

Q.      . . . These text messages pertaining to ABCO, why weren't these text messages produced?

A.      I can't answer that.

Q.      Why can't you answer that?

A.      Because I don't know. I may have overlooked them. I may have not had my search criteria correct, but be that as it may, that was a long time ago. I can't remember exactly why.

*Id.* at 35:2-10 (counsel objection omitted).

Notably, Hershberger served supplemental discovery responses purporting to possess no correspondence and other documents responsive to Request for Production No. 7 on October 4, 2023 (*id.,* Hershberger Dep. Ex. 3)—more than a month after Magistrate Judge York issued his August 29, 2023 Order warning Defendants about their discovery deficiencies (ECF No. 111) and well after Weather King had filed "a series of discovery motions to obtain information." ECF No. 231 at 22. He apparently chose not to heed the Court's directive.

The documents that Hershberger attempted to conceal from Weather King also included correspondence relating to the leasing of property. *See, e.g.,* Ex. D, Hershberger Dep. Ex. 8-12, 15, 29. Yet, when asked to produce "[a]ll correspondence and other documents exchanged with any person or entity related to the leasing or potential leasing of any property located in Arizona or New Mexico," Hershberger responded: "None." *Id.,* Hershberger Dep. Ex. 2, Resp. to RFP No. 15. Asked at his deposition if that was "a truthful and accurate response," Hershberger could only respond: "It does not appear to be so." Ex. D, Hershberger Dep. 38:11-21.

Hershberger's discovery responses contained other inaccuracies. In Interrogatory No. 3, Hershberger was asked to identify communications relating to Defendants' competing business enterprise before he left Weather King. *Id.*, Hershberger Dep. Ex. 2. In response, Hershberger responded: "None." *Id.* Hershberger did not supplement that response after Judge York's admonition (ECF No. 111). Yet, his response cannot be reconciled with the numerous text messages and emails cited above, and he admitted at his deposition that he "had an ongoing conversation with Jesse [Maupin] on multiple occasions." Ex. D, Hershberger Dep. 19:24-25. Asked to reconcile his testimony with his interrogatory response, Hershberger merely responded: "I didn't understand the question to be that." *Id.* at 20:1-3.

It was not Weather King's job to sit down with Hershberger and make sure he understood what information Weather King was seeking in its written discovery or to make sure he understood his discovery obligations. Even after Judge York's admonitions, Hershberger concealed responsive communications from Weather King.

## ARGUMENT

As noted in this Court's June 30, 2025 Order:

> Rule 37(b)(2)(A) specifically lists sanctions courts may impose for a party's noncompliance, up to and including the dismissal of the case or default judgment. *Id.*; *Mager v. Wisc. Cent. Ltd.*, 924 F.3d 831, 837 (6th Cir. 2019) (citing *Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir. 1995)). Courts weigh four factors to determine whether default judgment is an appropriate sanction for a party's failure to comply with a discovery obligation or other court order: (1) whether the party's "failure to cooperate in discovery was willful and in bad faith as opposed to an inability to cooperate"; (2) whether the other party suffered prejudice; (3) whether the Court warned the party that his failure to cooperate could lead to a default judgment; and (4) whether the Court imposed or considered less drastic sanctions before granting the default judgment. *Stooksbury v. Ross*, 528 F. App'x 547, 552–53 (6th Cir. 2013). Default judgment is warranted for a record of delay or "contumacious conduct," meaning "behavior that is perverse in resisting authority and stubbornly disobedient." *Id.* (quoting *Carpenter v. City of Flint*, 723 F.3d 700, 705 (6th Cir. 2013)).

ECF No. 231 at 10.

## I.    Defendants acted in bad faith.

"Willfulness, bad faith, or fault is demonstrated when a [party]'s conduct evidences either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings." *Id.* at 14 (quoting *Shavers v. Bergh*, 516 F. App'x 568, 570 (6th Cir. 2013)). Beginning with Weather King's June 2022 litigation hold letter and continuing through its motion practice, the Court has recognized the diligent efforts that Weather King undertook to obtain correspondence and other responsive documents from Defendants that are important to this

lawsuit.  *See id.* at 3-4, 14-15.  Defendants, however, thwarted Weather King's efforts at every

turn.  As noted by the Court:

> Even after Weather King moved to compel supplemental responses and a forensic
> examination of Defendants' electronic devices, Defendants were steadfast and
> maintained that they did not have any responsive, discoverable evidence in their
> possession. At that still early phase of the case, the Magistrate Judge denied
> Weather King's request for a forensic examination and for sanctions but did
> emphasize to Defendants the importance of their discovery obligations. And yet
> despite months of litigating these discovery disputes and the Magistrate Judge's
> warning, Defendants still failed to produce all of the information which they had a
> clear duty to produce. The subsequent forensic examination of Defendants' devices
> uncovered multiple examples of texts, emails, and other information stored there
> which Defendants had not disclosed in discovery and which Plaintiff obtained only
> at great expense. Defendants have offered no evidence to contest any of this or
> dispute the fact that they did not comply with the Magistrate Judge's order to
> supplement their responses and produce what should have been produced in the
> normal course.

*Id.* at 15.

As with its June 30, 2025 Order, the Court should find that Gillespie, Brown, and

Hershberger's failure to cooperate in discovery was "willful and in bad faith, largely because

Defendants' after-the-fact explanations are not credible." *Id.*  Indeed, their "roving rationalizations

and claimed confusion about their responsibilities ring hollow and only reinforce the conclusion

that they did not have a good faith basis for their conduct." *Id.*

The essence of Gillespie and Brown's rationalizations was not to provide an explanation

at all, but instead, merely claim that they could not recall why they did not produce responsive

correspondence and other documents.  *See* Ex. B, Gillespie Dep. 74:10-20, 77:20-23, 84:15-22;

Ex. C, Brown Dep. 46:11-47:3, 48:9-13, 49:12-19, 53:14-22, 54:6-11.  Given their failure to offer

any explanation at all, the Court may infer that they willfully failed to cooperate with their

discovery obligations given the circumstances in which Weather King was repeatedly clamoring

for the responsive information and they were misrepresenting to Weather King and the Court that

they "provided all the documents that they possess, although Plaintiff refuses to believe it." ECF No. 81 at 1-2.

Confronted at her deposition with her response to Request for Production No. 7, representing that she possessed no correspondence with the other Defendants (Ex. B, Gillespie Dep. Ex. 4), Gillespie conceded that "I don't really feel like that response is correct." Gillespie Dep. 66:10-67:4. If the response was not correct, why did she respond "None" in the first place, repeatedly represent to Weather King and the Court that she produced all responsive documents, and choose not to supplement her response when Judge York afforded her the opportunity to do so?

As for Hershberger, his rationalization that he did not construe Weather King's discovery requests as encompassing the correspondence that he withheld (*see* Ex. D, Hershberger Dep. 33:7-19) cannot be reconciled with the plain reading of Weather King's written discovery and the reasons set forth on pages 8-10 above. As noted by this Court:

> At no point, however, did Defendants argue that Weather King's requests were overbroad, vague, or otherwise unclear to them. In fact, the briefing on the motion to compel makes multiple references to text messages and emails sought by Weather King. Even if [a Defendant] was unsure about what was required, the Magistrate Judge cleared things up in his order on Weather King's motion to compel the supplemental responses and the forensic examination.

ECF No. 231 at 16. Hershberger's "*post hoc* rationale does not hold up to scrutiny." *Id.*

Indeed, these Defendants' flagrant misrepresentations to the Court that the reason why they did not produce the correspondence was because Weather King supposedly owned their cell phones and that they supposedly returned them after their resignation (ECF No. 83 at 9-12)—in and of itself—demonstrates bad faith, particularly given that they declined to produce the correspondence after Weather King proved the representation was false and after Judge York issued the August 29, 2023 Order (ECF No. 111).

Finally, it is noteworthy that this is not an isolated incident in a vacuum in which a defendant neglected to produce responsive documents. Instead, ***all 10 Defendants*** failed to produce basic correspondence that they all repeatedly claimed not to possess. Under all of these circumstances, the Court should conclude that Defendants acted willfully and in bad faith. *See Mid-America Apt. Communities, Inc. v. Philipson*, No. 2:23-cv-02186-SHL-cgc, 2024 WL 2000064, at *7-8 (W.D. Tenn. May 6, 2024) (finding that the defendant's "refusal to engage in discovery, to honor his discovery obligations, and his repeated flouting of this Court's orders, is willful, in bad faith, and the sort of contumacious conduct warranting default judgment as a sanction" in instance in which the defendant "made inconsistent representations to [the plaintiff] regarding the existence of documents that he may have that are responsive to the discovery requests" and "treated discovery as a game of cat-and-mouse"); *Munoz v. Rare Hospitality Int'l, Inc.*, No. 3:22-cv-00999, 2024 WL 4714324, at *4 (M.D. Tenn. Sept. 16, 2024) (plaintiffs "failed to comply with their discovery obligations and the directives of this Court ... despite ample opportunities to do so after being notified of their deficient responses").

## II.     Weather King was prejudiced.

"The 'waste of time, money, and effort' on the part of the requesting party can constitute prejudice." ECF No. 231 at 22 (quoting *Cowley v. Prudential Security, Inc.*, No. 22-1760, 2023 WL 2592873, at *3 (6th Cir. Mar. 22, 2023)). As with the other Defendants, "[t]his factor is easily met here," because Gillespie, Brown, and Hershberger's contumacious conduct forced Weather to file "a series of discovery motions to obtain information, particularly Defendants' texts and emails" that these "Defendants had a duty to produce . . . in the first place," and Weather King only obtained the information "through a forensic examination at an expense of over $150,000 and incurring more than that in legal fees." *Id.*

**III.    Defendants were warned about the consequences of their conduct.**

Although "a court need not give any warning where, as here, the sanctioned party acted in bad faith," ECF No. 231 at 22 (quoting *Prime Rate Premium Finance Corp. v. Larson*¸ 930 F.3d 759, 769 (6th Cir. 2019).  Aside from the fact that these Defendants acted in bad faith, Judge York's August 29, 2023 Order "clearly put Defendants on notice that continuing violations of their discovery obligations could result in a default judgment."  *Id.* (citing ECF No. 111 at 13).

**IV.    Lesser sanctions will not suffice.**

Although the Court has not previously sanctioned these Defendants, Judge York noted that their responses were "lacking," warned them about the possibility of default, and afforded them a "second chance to supplement their written discovery."  ECF No. 111 at 4, 13; ECF No. 231 at 23.  "Having received the benefit of the doubt, Defendants still did not fully comply with the Magistrate Judge's order to supplement their discovery responses."  ECF No. 231 at 23.  Instead, they continued to fail to produce responsive documents, offered illogical excuses for failing to do so, and provided incomplete and inaccurate supplementations.

Further, these Defendants "have not just casually neglected to produce all relevant discovery."  ECF No. 231 at 24 n.6.  This was a coordinated, ongoing scheme over several months to: (1) hide incriminating documents from Weather King; (2) provide Weather King and the Court with false and inconsistent explanations for why the documents were not produced; and (3) provide untruthful discovery responses.  As noted by the Court, "Defendants have denied the messages existed at all, denied they owned the devices holding the messages, denied they understood the scope of what Weather King sought . . . and ultimately denied they withheld the messages intentionally."  ECF No. 231 at 22.  Default judgment (in addition to monetary sanctions) is the

only appropriate remedy to "capture the seriousness and extent of Defendants' abuse of the discovery process," including to server as a deterrent.  ECF No. 231 at 23.

## V.    The Court should also award monetary sanctions.

In addition to default, the Court should order Gillespie, Brown, and Hershberger to assume responsibility for the fees charged by the forensic examiner, Repario,[6] that Weather King has been forced to incur, as well as its attorney's fees incurred in connection with this motion.  In its June 30, 2025 Order, the Court referred to the Magistrate Judge the issue of the determination of Weather King's fees and expenses to be awarded, and it should do so again in this instance, particularly given that these fees and expenses continue to accrue.

**CONCLUSION**

For the foregoing reasons, Weather King respectfully requests that the Court enter a default judgment and impose monetary sanctions against Defendants Gillespie, Brown, and Hershberger.

Respectfully submitted,

/s/  David L. Johnson
David L. Johnson,  BPR #18732
John H. Dollarhide, BPR #40041
BUTLER SNOW LLP
The Neuhoff Building
1320 Adams Street, Suite 1400
Nashville, TN   37208
Telephone: (615) 651-6700
Fax:  (615) 651-6701
david.johnson@butlersnow.com
john.dollarhide@butlersnow.com

Daniel W. Van Horn, BPR #18940
6075 Poplar Ave., Suite 500

---

[6] To the extent that an order will be entered in the future (as contemplated in the Court's June 30, 2025 Order) requiring other Defendants to reimburse Weather King for Repario's charges, the Court should require Gillespie, Brown, and Hershberger to be jointly and severally responsible.

Memphis, TN 38119
Telephone: (901) 680-7200
Fax: (901) 680-7201
Danny.VanHorn@butlersnow.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2025, I filed the foregoing Notice with the Court using the

ECF system, which will provide notice and a copy to counsel of record:

Thomas G. Pasternak
Benjamin S. Morrell
TAFT STETTINIUS &HOLLISTER LLP
111 East Wacker Drive, Suite 2600
Chicago, IL 60601
Telephone: (312) 527-4000
Facsimile: (312) 527-4011
tpasternak@taftlaw.com
bmorrell@taftlaw.com
*Attorneys for Defendants*

And to the following via U.S. Mail and email.

Brian L. Lassen
Aleyna Lassen
1405 N. Fort Grant Road
Willcox, AZ 85643
willcoxbuildings@pm.me

/s/  David L. Johnson
David L. Johnson

94284136.v1