IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| CONSOLIDATED INDUSTRIES, LLC d/b/a WEATHER KING PORTABLE BUILDINGS, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | No. 1:22-cv-01230-STA-jay ) ) |
| JESSE A. MAUPIN, *et al.*, | ) ) |
| Defendants. | ) ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS GILLESPIE, BROWN, AND HERSHBERGER'S MOTION TO BIFURCATE LIABILITY AND DAMAGES**

Through their motion to bifurcate (ECF No. 245), Defendants Gillespie, Brown, and Hershberger ask the Court to trifurcate the trial into three different proceedings in which much of the evidence would need to be re-presented. Conducting the trial in a traditional manner will not confuse the jury or prejudice any of the parties. Because there is no valid reason to cause these proceedings to be prolonged unnecessarily, the motion should be denied.

### BACKGROUND

The background of this case is set forth in this Court's June 30, 2025 sanctions ruling. *See* ECF No. 231. The gravamen of Plaintiff "Weather King's" claims is that nine former Weather King employees abused their positions in the creation and operation of a competing entity in the portable buildings industry in a months-long, well-coordinated scheme to secretly steal Weather King's Western U.S. operations, causing significant lost profits.

The Court has granted Defendants' motion to bifurcate punitive damages, which Weather King did not oppose. ECF No. 248. Gillespie, Brown, and Hershberger—the only three

Defendants against whom default judgment has not yet been ordered[1]—now also request that the Court "bifurcate liability and damages" as to them.  ECF No. 245 at 2.  In reality, these Defendants seek a *tri*furcated trial consisting of the following three phases:

- Proceeding No. 1:  Whether Gillespie, Brown, and Hershberger are liable;
- Proceeding No. 2: (a) The extent to which compensatory damages should be awarded against Defendants; and (b) whether punitive damages should be awarded[2]; and
- Proceeding No. 3: If necessary, amount of punitive damages to be awarded.

## ARGUMENT

**I.  Defendants' motion should be denied as moot.**

The Court should summarily deny Defendants' motion as moot.  As set forth in Weather King's renewed motion for sanctions and supporting briefing (ECF No. 250), the Court should enter default judgment against Gillespie, Brown, and Hershberger.  Accordingly, there is no need to separate a liability phase from a damages phase because all Defendants should be deemed liable.

**II.  This is not an exceptional case warranting bifurcation of liability and damages.**

Even if default judgment were not entered against Gillespie, Brown, and Hershberger, they have not come forward with a proper basis to require separate trials for liability and damages. "Bifurcation is the exception to the general rule that disputes should be resolved in a single proceeding and should be ordered only in ***exceptional*** cases." *Equal Emp. Opp. Comm'n v. Supreme Staffing LLC*, No. 2:22-cv-02668-SHL-tmp, 2024 WL 1159288, at *2 (W.D. Tenn. Mar.

---

[1] *See* ECF No. 181 (ordering default judgment as to the Lassen Defendants); ECF No. 231 (ordering default judgment as to Defendants Maupin, Harrell, Harrod, Feagin, and American Barn Co., LLC).
[2] In correspondence exchanged after this motion was filed, defense counsel clarified that they propose that they seek for the jury to determine whether Gillespie, Brown, and Hershberger are liable for punitive damages to be considered as part of the second proceeding.  *See* Ex. 1, 7/24/25 email.

2

18, 2024) (emphasis added; quoting *Woods v. State Farm Fire & Cas. Co.*, 2010 WL 1032018, at *1 (S.D. Ohio Mar. 16, 2010)); *see also Miller v. Am. Bonding Co*, 257 U.S. 304, 308 (1921) ("[T]he general practice is to try all the issues in a case at one time; and it is only in exceptional instances where there are special and persuasive reasons for departing from this practice[.]"); *In re Benedectin Litigation*, 857 F.2d 290, 307 (6th Cir. 1988) ("The piecemeal trial of separate issues in a single suit is not to be the usual course" and "should be resorted to only in the exercise of informed discretion when the court believes that separation will achieve the purposes of" Rule 42(b)) (citation omitted); *In re: Southeast Milk Antitrust Litig.*, 2011 WL 13122672, at *1 (E.D. Tenn. July 20, 2011) ("Bifurcation, therefore, is the exception, not the rule.") (citing 9A Wright & Miller*, Federal Prac. & Proc.* Civil, § 2388 (3d ed. 2008)); Fed. R. Civ. P. 42 Adv. Cmt. Note (1966) ("[S]eparation of issues for trial is not to be routinely ordered"); *Lewis v. City of N.Y.*, 689 F. Supp. 2d 417, 428 (E.D.N.Y. 2010) ("Ordinarily, a jury is entitled to hear all of the evidence and deliberate over all of the issues in the case at one time.").

Under Rule 42(b), a court may order bifurcation "[f]or convenience, to avoid prejudice, or to expedite and economize[.]"  Gillespie, Brown, and Hershberger argue that they would be prejudiced if the jury were to consider whether they are liable as part of the same proceeding to determine damages and that the jury would be confused.

> A. ***Gillespie, Brown, and Hershberger do not face unfair prejudice.***

Although it is not uncommon to delay a hearing on the amount of punitive damages to be awarded until after the jury has determined liability and awarded compensatory damages, it is very rare for separate trials with separate juries to be conducted as between liability and damages.  *See, e.g., Moss v. Associated Transp., Inc.*, 344 F.2d 23, 25 (6th Cir. 1965) ("There are not a few who question the wisdom of employing Rule 42(b) to divide personal injury damage actions into

3

separate trials of the liability and damage issues[.]"); *Infernal Tech., LLC v. Sony Interactive Ent. LLC*, 2022 WL 822111, at *4 (E.D. Tex. Mar. 17, 2022) (referring to "bifurcating the liability and damages issues" as an "unusual step"). As noted by one court:

> A civil case by its very nature almost always involves the dual issues of liability and damages. Following Defendant's argument [for bifurcation] to its logical conclusion, every civil trial should therefore be conducted in two phases to avoid confusing the jury. Clearly, this is an untenable proposition.

*Dzafic v. Geovera Specialty Ins. Co.*, 2008 WL 3874602, at *1 (M.D. Fla. Aug. 15, 2008).

There is nothing about this case that makes it unique from any other case in which a jury considers damages at the same time that it considers liability. Under these Defendants' logic, bifurcation would not be the "exception to the general rule," *Supreme Staffing*, 2024 WL 1159288, at *2, because a jury always theoretically could be influenced by the plaintiff's damages when determining liability.

Rejecting a similar argument, the court in *Herring v. SCI Tenn. Funeral Servs., LLC*, 2017 WL 10379678, at *1 (E.D. Tenn. May 3, 2017), found:

> As to the other two factors, potential prejudice to the plaintiff and "jury confusion," this case is not materially different from most other civil trials. Almost any perceived "weakness" in a plaintiff's claim for a type of damages could, under plaintiff's logic, impact the jury's ability to fairly decide liability in a plaintiff's favor. It is a matter of degree. By far the most common basis for bifurcation is in the context of punitive damages, where specific proof is deferred to a second phase of the trial to protect a defendant's confidential financial information and to prevent the jury from being prejudiced against the defendant because of great financial wealth. The present case is not in the same posture, and as stated above, is not unusual.

The court further noted that any concerns "can be remedied by requesting a cautionary instruction from the trial judge who will have seen and heard the allegedly unfairly prejudicial evidence." *Id.*; *see also Jensen v. Black Hills Trucking, Inc.*, 2008 WL 11347414, at *3 (D. Mont. July 28, 2008) (finding that, although "there is always some possibility of prejudice to defendants defending

4

liability and damages at the same trial," this did not justify bifurcation); *Bandsuch v. Werner Enters., Inc.,* 2007 WL 9706002, at *2 (M.D. Fla. Dec. 20, 2007) ("While Defendants contend that they will be prejudiced if the jury hears evidence regarding both the liability and damages issues, the Court notes that this same prejudice exists in any wrongful death action, and Defendants have not presented the Court with any information demonstrating that the instant action is of an exceptional nature."); *Brown v. Advantage Engineering, Inc.,* 732 F. Supp. 1163, 1171 (N.D. Ga. 1990) (defendant's argument about bifurcating liability from damages to avoid prejudice "would support bifurcation in any negligence action brought by a sympathetic plaintiff").

### B.     *Bifurcating liability from damages is impractical due to overlapping proof.*

Gillespie, Brown, and Hershberger do not argue that bifurcation will promote "convenience" or will "expedite and economize" the resolution of this case. Fed. R. Civ. P. 42(b). Nor could they, because bifurcation would have the opposite effect given that the evidence supporting liability and damages in this case is interwoven such that the parties would be forced re-present some of the same evidence and argument that was presented during the first proceeding. *See In re Benedectin*, 857 F.2d at 307 ("The principal purpose of the rule is to enable the trial judge to dispose of a case in a way that both advances judicial efficiency and is fair to the parties.").

In *Union Ins. Co. v. Delta Casket Co., Inc.*, No. 06-2090, 2009 WL 10664842, at *2 (W.D. Tenn. Nov. 30, 2009), the Court noted that, "[i]n determining whether to bifurcate, the Court must consider the impact bifurcation would have on judicial economy and the efficient resolution of the pending issues." There, the Court found that bifurcation was imprudent where:

> The facts arise out of the same series of transactions and Defendants' reactions to those transactions. Bifurcating here would likely result in calling some of the same witnesses twice and introducing some of the same evidence twice. This alone is reason enough not to bifurcate.

*Id.*

5

Here, evidence related to whether Gillespie, Brown, and Hershberger are liable is inextricably intertwined with evidence about the extent of Weather King's damages. For example, in text message correspondence on May 16, 2022 (that Gillespie represented did not exist but that Weather King obtained from the forensic examination), Defendant Jesse Maupin and Gillespie (referred to as Stephanie Parker)[3] discussed whether Gillespie had access to Weather King's QuickBooks database so that he could access the company's confidential payroll information and "see what people make."[4] Ex. 2, 2:01-2:05 p.m. That exchange is germane to Weather King's misappropriation of trade secrets claim.

In the same text chain sent about two weeks before Gillespie resigned, Gillespie asks Maupin "what happens to all the [Weather King] buildings out west after the split," given that Defendants will have stolen away all of Weather King's dealer and employee/contractor relationships in the West, leaving it with no opportunity to sell the buildings and no one to deliver and install any buildings it managed to sell. *Id.*, 2:10 p.m. Maupin's response reveals Defendants' plans to put maximum pressure on Weather King and leave it in a lurch:

---

[3] *See* ECF No. 250-2, Gillespie Dep. 14:2-7.
[4] The bare fact that Maupin made this request (and that Gillespie responded that she did not have access) refutes statements he made in a declaration under penalty of perjury that "[a]t Weather King, access to the alleged trade secret information is not restricted to only certain employees," there were "no security levels on clearance," "no heightened protections are present," access was "not allowed only on a need-to-know basis," there was "not a limited number of individuals having access to the alleged trade secrets," and "the alleged trade secrets are not segregated"—among many other false statements he has made in these proceedings. *See* ECF No. 88-3, Maupin Decl., ¶¶ 10, 13, 15-16, 23-24, 30-31.

6

> **SP** Stephanie Parker <9312376048>                                   5/16/2022, 2:10 PM
> Hey so what happens to all the buildings out west after the split?
>
> **JM** Jesse Allen Maupin <2709709453>                                 5/16/2022, 2:12 PM
> They sit on the sales lots until they miracle them gone and we use them to sell our buildings and tell them they look kind of like them but built better. And I have all the dealers email Jill telling her she has a week to get them off their lot before they start charging WK storage rates at 100.00 a day
>
> **SP** Stephanie Parker <9312376048>                                   5/16/2022, 2:12 PM
> Hahahahha
>
> **SP** Stephanie Parker <9312376048>                                   5/16/2022, 2:12 PM
> They won't even have anyone to move them or anywhere to put them will they? Hahaha
>
> **JM** Jesse Allen Maupin <2709709453>                                 5/16/2022, 2:13 PM
> Nope
>
> **JM** Jesse Allen Maupin <2709709453>                                 5/16/2022, 2:13 PM
> I will have them send written notice and it will hold up in court

*Id.*

In addition to demonstrating that Gillespie was participating in a conspiracy to steal away Weather King's business relationships while she and the other Defendants were still employed by Weather King in violation of their duty of loyalty (*see* ECF No. 26, Am. Compl., Counts III & VIII), this text sequence is highly probative of Weather King's damages claim. Weather King claims that it lost its ability to continue to do business in the West as a consequence of Defendants' actions, and Defendants dispute this, including through a retained expert. This text sequence shows that: (a) Defendants anticipated that Weather King would not be able to survive in the West; and (b) Defendants' plan was to exert maximum pressure on Weather King (including by coordinating for dealers to demand that Weather King remove its inventory) so that it could not survive. Thus, the text chain and the issues therein are relevant to both liability and damages.

Similarly, in May 18, 2022 text correspondence, Gillespie and Maupin discuss the timing of their departures and that "[i]t would be better for all of us to leave at the same time it would hurt them more and be harder to recover [sic]." Ex. 3. This exchange is germane to liability because it shows that Gillespie and the other Defendants were conspiring with each other in breach of their

7

duty of loyalty. In addition, it is relevant to damages because it shows Defendants' intent to harm Weather King and place it in a position so that it could not "recover." *Id.*

Brown's correspondence while still employed by Weather King also demonstrates both a conspiracy with the other Defendants to breach their duty of loyalty as well as their intent to place Weather King in a position in which it could not survive in the West. In April 12, 2022 text messages, Brown and Maupin discuss their plans and that "the only thing that makes sense is to throw in the towel for them." Ex. 4, 2:46 p.m. They further state:

| | | |
|---|---|---|
| JM | Jesse Allen Maupin <2709709453><br>Man I don't see them staying their backlog of Customers alone is gonna bury them | 4/12/2022, 2:54 PM |
| RB | Ryan Brown <7193738198><br>Yeah but he is a little strange he may try and fight at first cuz hes got a god complex | 4/12/2022, 2:56 PM |
| JM | Jesse Allen Maupin <2709709453><br>Facts | 4/12/2022, 2:57 PM |
| JM | Jesse Allen Maupin <2709709453><br>No lots | 4/12/2022, 2:57 PM |
| JM | Jesse Allen Maupin <2709709453><br>No dealers | 4/12/2022, 2:57 PM |
| JM | Jesse Allen Maupin <2709709453><br>No builders | 4/12/2022, 2:57 PM |
| JM | Jesse Allen Maupin <2709709453><br>400 customers across the board that need built | 4/12/2022, 2:57 PM |
| JM | Jesse Allen Maupin <2709709453><br>500 buildings across the board that will need moved with no where to put them | 4/12/2022, 2:58 PM |
| JM | Jesse Allen Maupin <2709709453><br>And storage rates will apply to each building after written notice has been given | 4/12/2022, 2:58 PM |
| RB | Ryan Brown <7193738198><br>Oh i agree 100% my gut just says not to underestimate and plan for the worst. But at the end i think yes he will fold like a cheap deck of cards. | 4/12/2022, 2:59 PM |
| JM | Jesse Allen Maupin <2709709453><br>They will have 2 million dollars in material sitting with nobody to do anything with it and if they did no means of transport or sale. Other than their robbing ass corporate sales | 4/12/2022, 2:59 PM |

*Id.*

Similarly, Weather King obtained correspondence from Hershberger as part of the forensic examination that overlaps both in demonstrating his participation in a conspiracy to breach his (and others') duty of loyalty as well in demonstrating Weather King's damages by being unable to

8

salvage its Western operations. For instance, in March 29, 2022 text correspondence, Maupin and Hershberger discuss "our main goal and that's give them what they want and make everything seem ok until we walk away[.]" Ex. 5. That exchange shows Hershberger's participation in the conspiracy and is relevant to damages because it stresses Defendants' "goal" to catch Weather King by surprise so that it could not react and salvage the Western operations.[5]

As another example, on May 27, 2022, Hershberger texted Weather King drivers about a "meeting with WK drivers on Monday [while still employed by Weather King] to discuss future changes and opportunities[.]" Ex. 7. That text is relevant to both liability and damages because it shows: (a) Hershberger was recruiting Weather King relationships while still employed by Weather King in breach of his duty of loyalty; (b) Hershberger lied in his discovery responses by claiming not to have done so;[6] and (c) Hershberger was placing Weather King in a position in which it could not survive in the West by covertly lining up Weather King's business relationships before he left Weather King.

These are just a few examples of overlapping evidence. Requiring such evidence to be reintroduced and readdressed during separate phases of trial would not "expedite and economize" the resolution of this case. Fed. R. Civ. P. 42(b). It would cause the exact opposite.

Moreover, under Defendants' proposal, such evidence would also need to be reintroduced during the second phase of the trial when the jury would consider whether punitive damage should be assessed against Gillespie, Brown, Hershberger, and the other Defendants. *See* Ex. 1, 7/24/25

---

[5] The exchange is also relevant to liability because it demonstrates that Hershberger lied in his interrogatory responses by claiming that he never communicated with any of the other Defendants about a competing business before he left Weather King. *See* Ex. 6, Resp. to Ig. No. 3. In fact, all of the text correspondence referenced in this response is relevant to liability because it refutes Gillespie, Brown, and Hershberger's representations that they possessed no correspondence with any of the other Defendants. *See* ECF No. 250-5 at 3-10.

[6] *See* Ex. 6, Resp. to Req. for Admissions No. 6.

9

email. Punitive damages may be awarded if a defendant acted intentionally or maliciously. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). Weather King intends to present evidence, such as that referenced above, to demonstrate that Defendants acted intentionally and maliciously such that punitive damages should be awarded. Evidence of Gillespie, Brown, and Hershberger's bad acts is relevant to whether they are liable (and the extent to which Weather King has been damaged), as well as whether these Defendants are liable for punitive damages. It would be grossly inefficient and prolong these proceedings if Weather King were forced to present the same evidence in two different trial phases.

Courts have routinely denied separating liability from damages where, as here, "the evidence on the two subjects is overlapping or the liability and damages issues are so intertwined that efficiency will not be achieved or confusion may result from any attempt at separation." 9A Wright & Miller, *Federal Prac. & Proc.* Civ. § 2390 (3d ed.). In fact, in *Martin v. Heideman*, 106 F.3d 1308, 1312 (6th Cir. 1997), the Court found that the district court abused its discretion by bifurcating "because the extent of the plaintiff's damages was relevant to the question of liability."

In *Herring*, *supra*, the court found that overlapping proof between liability and damages would cause the proceedings to be prolonged if bifurcated:

> With respect to "convenience and economy," a bifurcated trial in this case would almost certainly have the opposite effect. Indeed "[m]any of the same issues, evidence and witnesses would be involved in both proceedings ... Under such circumstances, bifurcation of claims is not warranted, as it would hamper judicial economy, rather than promoting it...." *Tuttle v. Sears, Roebuck and Co.*, 2009 WL 2916894, at *3 (N.D. Ohio 2009).

2017 WL 10379678, at *1; *see also Trentham v. Hidden Mtn. Resorts, Inc.*, 2010 WL 148166, at *3 (E.D. Tenn. Jan. 11, 2010) (denying bifurcation due to "the relationship of the issues, the repetition of the evidence, the fact that this case does not present uniquely complex or unusual

10

issues, and the potential for increased expenses and delay," and citing *Tharpe v. Ill. Nat. Ins. Co.*, 199 F.R.D. 213, 215 (W.D. Ky. 2001), for the proposition that issues that are "inextricably intertwined" should not be bifurcated).

In many other cases, courts have declined to hold separate trials for damages because of interconnected proof. *See, e.g., Vichare v. AMBAC Inc.*, 106 F.3d 457, 466 (2d Cir. 1996) (The issues of liability and damages are intertwined."); *Doe 1 v. United States Twirling Ass'n, Inc.,* 2024 WL 1858230, at *3 (E.D.N.Y. Apr. 28, 2024) ("The Court concludes that liability and damages are so intertwined that bifurcation would be impractical."); *Gillispie v. City of Miami Twp.*, 2022 WL 16541259, at *3 (S.D. Ohio Oct. 28, 2022) (declining to bifurcate liability from damages where evidence "will likely overlap); *Koshani v. Barton,* 2018 WL 3326817, at *2 (E.D. Tenn. Mar. 5, 2018) (refusing to bifurcate liability from damages and rejecting "defendants' argument that there is no overlap between the proof needed for liability and damages"); *Andring v. Allstate Prop. & Cas. Ins. Co.*, 2015 WL 736353, at *3 (E.D. Mich. Feb. 20, 2015) ("[T]he issues of liability and damages are intertwined such that separation of the two could result in prejudice to [plaintiff]."); *O'Barr v. United Parcel Serv., Inc.*, 2013 WL 2635539, at *1 (E.D. Tenn. 2013) ("[T]he court does not believe that there is a sufficient showing to completely separate all damages from the liability phase of the trial and will not do so."); *Weimer v. Honda of Am. Mfg., Inc.*, 2008 WL 4346790, at *2 (S.D. Ohio Sept. 18, 2008) ("The issues of liability and damages are sufficiently intertwined such that bifurcation would likely lead to duplication of testimony and an inability to segregate into clear trial "phases" the issues and evidence relevant to each phase."); *Ennix v. Clay*, 703 S.W.2d 137, 140 (Tenn. 1986) ("[T]he issues of liability and damages were so interwoven that bifurcation was improper").

11

In *Federal Express Corp. v. Accu-Sort Sys., Inc.*, No. 01-2503 MA/P, 2005 WL 8156705, at *2 (W.D. Tenn. Mar. 31, 2005), cited by Defendants, the Court ordered bifurcation because "the question of liability is significantly different from the issues relevant to damages, and there is likely to be little overlapping evidence." Here, however, the questions of liability and damages are greatly intertwined, and there would be significant overlapping evidence if the two issues were tried separately.

### C. Any theoretical confusion may be mitigated by jury instructions.

Finally, Gillespie, Brown, and Hershberger claim that the jury will be "confused into thinking that because damages testimony is being presented against the ABCO Defendants, liability is assumed for all of them." ECF No. 245 at 4-5. These Defendants, however, do not explain why the jury would make such an assumption. That assumption would be counterintuitive given that Gillespie, Brown, and Hershberger would be treated more favorably than those Defendants. In any event, the Court may easily instruct the jury not to make any such assumption.

Even if there were a risk of jury confusion, the Court may simply provide an instruction to avoid confusion. *See Brown v. Wilson*, 2023 WL 7410735, at *3 (6th Cir. Sept. 7, 2023) ("We presume that juries follow instructions"). Rejecting a similar argument for bifurcation, a Florida federal district court found:

> Finally, the Court is not persuaded by Defendants' argument that the jury may be unduly sympathetic to Plaintiffs if they consider damages at the same time as liability. "This reasoning ... would support bifurcation in any negligence action brought by a sympathetic plaintiff." *Brown v. Advantage Eng'g, Inc.*, 732 F. Supp. 1163, 1171 (N.D. Ga. 1990). If Defendants remain concerned that the jurors may be sympathetic to Plaintiffs, the Court can issue an appropriate instruction addressing their concern. *See United States v. Lopez*, 649 F.3d 1222, 1237 (11th Cir. 2011) ("We presume that juries follow the instructions given to them.") (citations omitted).

*Campbell v. Pirelli Tire, LLC*, 2013 WL 12092519, at *2 (S.D. Fla. Feb. 12, 2013).

12

## CONCLUSION

For the foregoing reasons, the Court should deny the ABCO Defendants' motion to bifurcate.

Respectfully submitted,

/s/ David L. Johnson
David L. Johnson, BPR #18732
John H. Dollarhide, BPR #40041
BUTLER SNOW LLP
The Neuhoff Building
1320 Adams Street, Suite 1400
Nashville, TN 37208
Telephone: (615) 651-6700
Fax: (615) 651-6701
david.johnson@butlersnow.com
john.dollarhide@butlersnow.com

Daniel W. Van Horn, BPR #18940
6075 Poplar Ave., Suite 500
Memphis, TN 38119
Telephone: (901) 680-7200
Fax: (901) 680-7201
Danny.VanHorn@butlersnow.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2025, I filed the foregoing using the ECF system, which will provide notice and a copy to counsel of record:

Thomas G. Pasternak
Benjamin S. Morrell
TAFT STETTINIUS &HOLLISTER LLP
111 East Wacker Drive, Suite 2600
Chicago, IL 60601
Telephone: (312) 527-4000
Facsimile: (312) 527-4011
tpasternak@taftlaw.com
bmorrell@taftlaw.com

13

And to the following via U.S. Mail and email.

    Brian L. Lassen
    Aleyna Lassen
    1405 N. Fort Grant Road
    Willcox, AZ 85643
    willcoxbuildings@pm.me

                                          */s/  David L. Johnson*
                                            David L. Johnson

94197760.v1