UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| CONSOLIDATED INDUSTRIES, LLC d/b/a WEATHER KING PORTABLE BUILDINGS,<br><br>           Plaintiff,<br><br>v.<br><br>JESSE A. MAUPIN, BARRY D. HARRELL, ADRIAN S. HARROD, LOGAN C. FEAGIN, STEPHANIE L. GILLESPIE, RYAN E. BROWN, DANIEL J. HERSHBERGER, BRIAN L. LASSEN, ALEYNA LASSEN, and AMERICAN BARN CO., LLC,<br><br>           Defendants. | Civil Action No. 1:22-cv-01230-STA-jay<br><br>District Judge Anderson<br><br>Magistrate Judge York |

**RESPONSE IN OPPOSITION IN PART TO PLAINTIFF'S
MOTION FOR FEES AND EXPENSES**

      Plaintiff Weather King provides almost no argument to support the award of expenses and attorney's fees it seeks—totaling over a quarter million dollars—against Defendants Jesse A. Maupin, Barry D. Harrell, Adrian S. Harrod, Logan C. Feagin, and American Barn Co., LLC ("ABCO") (collectively, the "defaulted Defendants"). Its two-sentence motion and the single-page declaration attached to it fail to establish that the rates charged by its attorneys are reasonable in the Jackson, Tennessee market, fail to explain why partners with high rates did nearly all of the work billed for (including tasks that could have been performed by paralegals or associates), and fail to even state the basic "lodestar" calculation that should be the "starting point" of the Court's analysis. Weather King also pointedly fails to confirm that it has actually paid the legal invoices it seeks an award over here, and fails to account for the fact that the Court denied its motion for

sanctions as to 5 of the 10 Defendants.

The legal invoices attached to Weather King's motion, meanwhile, have significant redactions, disregarding the Court's prior observation that "heavily redacted" invoices make Weather King's "attorney's fees . . . not entirely clear." (D.E. 231 at 24.) The redactions, combined with the admission that the hours Weather King seeks compensation for here are "approximate[d]," make it impossible for the defaulted Defendants or the Court to calculate the true lodestar.

Weather King thus fails to meet its burden to show that the $115,325 in attorney's fees and $157,685.76 in expenses it requests are "reasonable." For these reasons, discussed more fully below, the Court should reduce any fee and expense award by a significant margin.

## BACKGROUND

Weather King filed a motion for sanctions seeking a default judgment against all 10 Defendants pursuant to Federal Rules of Civil Procedure 16(f), 37(b), and 37(e), and the Court's inherent power. (D.E. 185.) On June 30, 2025, the Court granted in part and denied in part Weather King's motion. (D.E. 231.) The Court found that Weather King had "not shown an entitlement to default judgment against Defendants Brian L. Lassen and Aleyna Lassen as a sanction for discovery abuse for the simple reason that the Court has already granted Plaintiff a default judgment against the Lassens," and denied Weather King's motion as to them. (*Id.* at 10–11.) Additionally, the Court found that "Plaintiff has not carried it[s] burden to show why the Court should sanction Defendants Stephanie L. Gillespie, Ryan E. Brown, or Daniel J. Hershberger," and denied the sanctions motion as to them.[1]

Weather King sought a default judgment against Harrod and Feagin under Rule 37(e),

---

[1] Weather King has since filed a renewed sanctions motion against Defendants Gillespie, Brown, and Hershberger. (D.E. 250.)

spending several pages arguing that they had spoliated evidence. (D.E. 185-1 at 19–22.) However, the Court determined that "Weather King has not shown that it can meet the requirements for default judgment under Rule 37(e)" and denied its motion on that basis. (*Id.* at 13).

Ultimately, the Court found "that default judgment is warranted, though only against some Defendants and only pursuant to Rule 37(b)(2)(A)." (*Id.* at 10.) The Court issued a default judgment against Defendants Maupin, Harrell, Harrod, Feagin, and ABCO and found that Weather King was "entitled to its reasonable expenses, including attorney's fees, caused by [their] failure to comply with the Magistrate Judge's August 2023 discovery order." (*Id.* at 24–25.) The Court also noted that "[t]he full extent of Weather King's expense and attorney's fees is not entirely clear from the record," as "Weather King has included documentation to support their request for expenses and attorney's fees, some of which, particularly counsel's billing invoices, is heavily redacted." (*Id.*) Thus, the Court referred the matter to Judge York "for a determination of Weather King's reasonable expenses, including attorney's fees, caused by Defendants' failure to comply with the Magistrate Judge's August 2023 discovery order." (*Id.* at 25.)

Weather King subsequently filed a motion for fees and expenses comprising all of two sentences. (D.E. 243.) It seeks $157,685.76 stemming from the forensic examination of Defendants' electronic devices performed by Repario (the third-party forensic examiner) and $115,325 in attorney's fees. (*Id.*) The attached declaration written by Plaintiff's counsel states the following related to the request for attorney's fees:

> 3. Based on my review of Butler Snow invoices, Weather King incurred approximately $115,325.00 in attorneys' fees after the Court's August 29, 2023 Order (ECF No. 111) as a result of the failure of Defendants Jesse A. Maupin, Barry D. Harrell, Adrian S. Harrod, Logan C. Feagin, and American Barn Co., LLC to comply with that Order. True and correct copies of redacted invoices reflecting the charges encompassed within that amount are filed herewith as Exhibit B. In

3

> instances in which there are time entries reflecting multiple charges but Weather King only seeks reimbursement for a portion of those charges, the approximate time of those charges relating to Defendants' failure to comply with the Court's Order is set forth in the margin to the right.
>
> 4. The aforementioned fees and expenses were reasonable and necessary in connection with Weather King's pursuit of its claims against Defendants and in connection with those specific aforementioned tasks. In fact, my normal hourly rate for 2025 is $630/hr. but I have held my rate at $450/hr for this matter—a significant discount.

(Decl. of D. Johnson ("Johnson Decl."), D.E. 243-1, ¶¶ 3–4.)

The declaration includes (in the same ECF numbered filing) copies of invoices from Repario and Plaintiff's counsel's law firm, Butler Snow LLP. The Repario invoices have minimal redactions. (*Id.* at 3–26.) However, the legal invoices are, like the previous ones, "heavily redacted." (D.E. 231 at 24; *see* Johnson Decl. at 27–95.) An example shows the extent of these redactions:

**INVOICE DETAIL**

**PROFESSIONAL FEES**

| DATE | PROF | DESCRIPTION | HOURS |
|---|---|---|---|
| 12/01/23 | JHD | ███████ emails re: forensic collection. | 0.3 |
| 12/01/23 | ███ | ███████ | ███ |
| 12/04/23 | DLJ | ███████ worked on search terms for forensic examination. | 0.5 |
| 12/05/23 | JHD | Work on analysis of search terms for forensic examination. | 1.40 |
| 12/08/23 | JHD | Emails re: Defendants' failure to present devices for collection; | 0.3 |
| 12/08/23 | DLJ | Email communications re forensic examination. | 0.20 |
| 12/11/23 | JHD | Review emails re: forensic collection. | 0.20 |
| 12/11/23 | DLJ | ███████ email communications with examiner and opposing counsel; | 0.2 |
| | | ███████ emails re: forensic collection. | 0.2 |
| 12/12/23 | DLJ | Email communications regarding forensic examination. | 0.10 |
| 12/14/23 | JHD | Emails re: device collection ███ | 0.2 |
| 12/19/23 | DLJ | Email communications re status of forensic examination and subpoenas. | 0.10 |

(*Id.* at 39.)

Dates, descriptions of billing entries, identities of timekeepers, numbers of hours, subtotals,

5

and totals are all redacted throughout. The principal timekeepers whose names and rates are not redacted are David L. Johnson and John H. Dollarhide, both partners at Butler Snow. (*See id.* at 33.) Mr. Johnson's hourly rate is listed as $450, while Mr. Dollarhide's was at first $400, but then increased to $445. (*Id.* at 33, 67.) The invoices also identify a "Jim Letten" whose hourly rate is $725, but do not say how many hours he billed, what work he did, or even his job title. (*Id.* at 76.) The same goes for Daniel W. Van Horn, whose name occasionally appears as well, with an hourly rate of $595, and Jeff Baum, with an hourly rate of $265 (presumably a paralegal). (*Id.* at 81.)

While the declaration states that Weather King either actually "paid or is in the process of paying" the Repario invoices, it makes no such representation regarding the legal invoices. (Johnson Decl. ¶ 2.)

## LEGAL STANDARD

"To justify any award of attorneys' fees, the party seeking compensation bears the burden of documenting its work." *Perry v. AutoZone Stores, Inc.*, 624 F. App'x 370, 372 (6th Cir. 2015) (citation omitted). This includes the obligations "(1) to provide the court with 'evidence supporting the hours worked and rates claimed' and (2) to demonstrate that the requested fee award is 'reasonable.'" *Carty v. Metro. Life Ins. Co.*, No. 3:15-CV-01186, 2017 WL 660680, at *5 (M.D. Tenn. Feb. 17, 2017) (quoting *Perry*, 624 F. App'x at 372). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

"The starting point for determining the reasonableness of a requested fee is the 'lodestar' analysis, whereby the requested fee is compared with the amount generated by multiplying the number of hours reasonably worked on the litigation by a reasonable hourly rate." *Carty*, 2017 WL 660680, at *5. "The court may then, within reason, adjust the lodestar to reflect relevant

6

considerations peculiar to the subject litigation." *Perry*, 624 F. App'x at 372. This involves considering the relevant "*Johnson*" factors, *id.* at 372 n.1, but "[t]he primary concern in an attorney fee case is that the fee awarded be reasonable," *id.* at 372 (citation omitted).

## ARGUMENT

I. **Plaintiff's heavily redacted invoices make it impossible for the defaulted Defendants or the Court to determine if the hours billed were reasonable.**

In the order granting in part and denying in part Weather King's motion for sanctions, Judge Anderson referred the issue of fees to Judge York and specifically noted that "[t]he full extent of Weather King's expense and attorney's fees is not entirely clear from the record. Weather King has included documentation to support their request for expenses and attorney's fees, some of which, particularly counsel's billing invoices, is heavily redacted." (D.E. 231 at 24.) Despite this, Weather King has submitted invoices in support of the instant motion with a similar, heavy level of redaction. (*Compare* D.E. 214-1 at 7–14, *with* D.E. 243-1 at 28–95.)

Weather King fails to articulate "[t]he starting point for determining the reasonableness of a requested fee"—the lodestar. *Carty*, 2017 WL 660680, at *5. Weather King does not state how many hours in total were "reasonably worked" or what the average hourly rate was for those hours. *See id.* Even if it were the defaulted Defendants' or the Court's job to do the math here (it is not), Weather King's extensive redactions and estimations make it impossible to calculate the true lodestar. Mr. Johnson's declaration states that "[i]n instances in which there are time entries reflecting multiple charges but [Plaintiff] only seeks reimbursement for a portion of those charges, the *approximate* time of those charges . . . is set forth in the margin to the right." (Johnson Decl. ¶ 3 (emphasis added).) This is a frequent issue, as the invoices show many instances of "block billing." By plainly admitting that it is not seeking reimbursement for actual fees incurred but rather

7

"approximat[ions]," Weather King fails to meet its burden to provide even the most basic starting point for evaluating whether its fee request is reasonable. *See Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999) ("The party seeking attorneys fees bears the burden of documenting his entitlement to the award.").

Weather King provides no detail as to when or how these approximations were made, either. Some of the fees sought are from September 2023. If Weather King, in anticipation of this fee petition, made the approximations in July 2025, over a year and a half has passed since the entries were originally written. It is doubtful that counsel can remember to the tenth of an hour how much time they spent, for example, working on "follow up letters to subpoenaed third parties" on September 11, 2023. (Johnson Decl. at 29.)

The lack of certainty has apparently resulted in higher fee allocations to the detriment of the defaulted Defendants. For example, Weather King redacts part of a block-billing entry, and the visible entry is for a "phone conference with Jim Letten re witness tampering issue." (*Id.* at 74.) The apportioned time for this task is listed as 0.6 for David Johnson. (*Id.*) However, the entry for Jim Letten is for 0.3 and specifies that the call with David Johnson was 18 minutes. (*Id.* at 75.) This illustrates how the partially visible block-billing entries may not be accurate and do not permit the defaulted Defendants or this Court to determine if the hours listed as attributable to the visible part of the block-billing entry accurately reflects the time spent. *See Corbis Corp. v. Starr*, 719 F. Supp. 2d 843, 844 (N.D. Ohio 2010) ("The key requirement for an award of attorneys fees is that the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended." (quoting *Imwalle v. Reliance Med. Prods., Inc.,* 515 F.3d 531, 553 (6th

8

Cir. 2008))); *see also Mueller Brass Co. v. Crompton*, No. 2:20-CV-02496-SHL-ATC, 2025 WL 1559159, at *8 (W.D. Tenn. June 2, 2025) (finding a 40% reduction was warranted where fee petitioner submitted vague and redacted block-billing entries).

Weather King also pointedly fails to confirm that it has actually paid the amount of attorney's fees sought. Mr. Johnson's declaration states that Weather King either actually "paid or is in the process of paying" the Repario invoices, but makes no such representation regarding the legal invoices. (Johnson Decl. ¶ 2.) An award under Rule 37(b) is limited to "the reasonable expenses, including attorney's fees, *caused by the failure*." Fed. R. Civ. P. 37(b)(2)(C); *see Shammas v. Focarino*, 990 F. Supp. 2d 587, 593 (E.D. Va. 2014) ("[A]n award of attorney's fees under Rule 37(b)(2)(C) . . . is compensatory, not punitive."), *aff'd*, 784 F.3d 219 (4th Cir. 2015); *Acosta v. Sw. Fuel Mgmt., Inc.*, No. CV 16–4547 FMO (AGRx), 2018 WL 1913772, at *10 (C.D. Cal. Mar. 28, 2018). "The court's task" here is "not [to] provide a windfall." *McCutcheon v. Finkelstein Kern Steinberg & Cunningham*, No. 3-11-0696, 2013 WL 4521016, at *2 (M.D. Tenn. Aug. 27, 2013). Thus, Weather King fails to prove that it actually incurred the attorney's fees it seeks here.

"Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433; *see also Richard v. Caliber Home Loans, Inc.*, 832 F. App'x 940, 947 (6th Cir. 2020) ("Supreme Court and Sixth Circuit precedent clearly permit trial courts to reduce attorneys' fees awards where the documentation of hours is inadequate."). And the Court is not required to pore over the invoices and do Weather King's work for it. *See Mueller Brass Co. v. Crompton*, No. 2:20-CV-02496-SHL-ATC, 2025 WL 1559159, at *7 (W.D. Tenn. June 2, 2025) ("The purpose of an across-the-board reduction is to conserve judicial resources that might otherwise be spent conducting a line-by-line review of vague, redacted, and block-billed entries.").

9

Thus, "[t]he Sixth Circuit has regularly affirmed across-the-board or blanket fee reductions." *Id.* "[C]ourts have reduced fees by as much as 75 percent or more for inadequate billing entries." *Id.* at *8 (collecting cases). A significant reduction is warranted here due to Weather King's vast failures of proof.

### II.     Weather King fails to show that Plaintiff's counsel charged reasonable rates.

To extent the defaulted Defendants are able to evaluate Weather King's request for fees in light of the sparse details and heavy redactions, the invoices show a lack of reasonableness. Weather King, as the fee petitioner, bears the burden of proving the reasonableness of its rates. *Carty*, 2017 WL 660680, at *6. "Reasonable attorneys' fees are to be calculated based on the prevailing rate in the relevant community." *Renouf v. Aegis Relocation Co. Corp.*, 641 F. Supp. 3d 439, 450 (N.D. Ohio 2022). Evidence of the prevailing market rate includes affidavits, fee award studies, citations to prior precedent, and the Court's own experience. *Id.* Affidavits submitted by attorneys who work at the same firm as the petitioning party's attorneys does not provide sufficient proof that the rates of the attorneys who performed work on the case are reasonable. *Carty*, 2017 WL 660680, at *6 (finding a self-serving declaration was not sufficient to show that rates were reasonable).

The declaration of Mr. Johnson is the only evidence submitted by Weather King in support of its fee request, other than the invoices themselves. Mr. Johnson is lead counsel for Weather King in this lawsuit. The declaration's only contentions regarding the rates charged are the bare assertion that the fees charged "were reasonable and necessary" and the fact that Mr. Johnson chose to discount his "normal hourly rate" to $450. (Johnson Decl. ¶ 4); *see also Carty*, 2017 WL 660680, at *7 (noting that "$450/hour is well on the high end of rates the court has approved."). The declaration says nothing about any other primary timekeeper on the matter, John H. Dollarhide. Additionally, it appears that at least two other partners billed for this matter, Daniel W. Van Horn

10

and Jim Letten, who billed at hourly rates of $595 and $725, respectively. (*See* Johnson Decl. at 76, 81.) Besides these four (presumably) partners, the only other person who billed any substantive time for this matter appears to be Jeff Baum, whose hourly rate was $265. However, he has billed for less than five tasks and only tasks relating to the recent sanctions filings—at least for what is relevant for this fee petition and visible in the heavily redacted invoices. Mr. Johnson's "inherently self-serving declaration of the attorney[ ] in question" fails to establish by itself that the rates charged are reasonable. *See Carty*, 2017 WL 660680, at *6 (citation omitted).

Weather King also fails to acknowledge that when an attorney "agrees to represent a plaintiff in an out-of-town lawsuit, the reasonable hourly rates that may be charged are those that competent counsel would command *in the market where the court sits*. *Carty*, 2017 WL 660680, at *6 (cleaned up and emphasis added). None of Weather King's attorneys on this case sit in Jackson. Mr. Johnson and Mr. Dollarhide's office is in Nashville (while it appears that Mr. Van Horn is based in Memphis and Mr. Letten is based in New Orleans). Weather King makes no attempt to assert that the rates charged are reasonable for Jackson, Tennessee, and shows no awareness as to what the prevailing rates there even are. Thus, Weather King fails to carry its burden to establish that the rates its Nashville attorneys charged in this case are reasonable in the market where this Court sits.

Finally, the invoices show that nearly all of the work on this case as it relates to discovery was completed by partners—chiefly Mr. Johnson and Mr. Dollarhide (and others with even higher rates). The invoices show very little work done by paralegals and zero work done by associates, even though several tasks involved in discovery—such as reviewing documents, research, and drafting letters to opposing counsel—could have been completed by such timekeepers who charge

11

lower rates. Butler Snow's website lists over 50 attorneys in Nashville alone.[2] Weather King does not explain why the attorney time it seeks compensation for could not have been worked by associates or paralegals. As a result, the average rate of the attorney's fees sought here is unreasonably high.

"Where the attorney's documentation is inadequate, or the claimed hours are duplicative or excessive, the court may reduce the award accordingly." *Olson v. Olson*, No. 3:13-CV-00138, 2014 WL 1278654, at *1 (M.D. Tenn. Mar. 31, 2014). Weather King's complete failure to explain or justify the rates of the attorney's fees sought in this motion demand a significant reduction.

### III. Plaintiff's time entries specifically list time spent on tasks related to Defendants the Court refused to sanction.

The Sixth Circuit has held that when a prevailing party achieves only "limited success, the district court need[s] to decide by what amount to discount [the prevailing party's] counsel's total fee." *Richard v. Caliber Home Loans, Inc.*, 832 F. App'x 940, 946 (6th Cir. 2020). Here, Plaintiff's motion for sanctions was denied against half of the Defendants, specifically, Brian L. Lassen, Aleyna Lassen, Stephanie L. Gillespie, Daniel J. Hershberger, and Ryan E. Brown. Nevertheless, some of Weather King's unredacted time entries relate specifically to these Defendants. For example, one entry is for reviewing and analyzing "issue re: Aleyna Lassen mobile device not being collected and related email to Repario." (Johnson Decl. at 66.) Another reads: "preparation of motion for contempt as it relates to Lassen defendants." (*Id.* at 71; *see also id.* at 67, 70, 71 (additional billing entries regarding the Lassens).) However, the motion for sanctions against the Lassens was denied. (*See* D.E. 231 at 11–12.) As discussed above, the heavy redactions to the invoices make it impossible to fully evaluate what work was done regarding which Defendants. While some overlap

---

[2] *See* https://www.butlersnow.com/locations/nashville/professionals.

may be expected, Weather King does not explain why it would be entitled to work done specifically regarding Defendants the Court did not sanction. It would be unjust to make the defaulted Defendants pay for time spent on activities that are clearly related to specific individuals the Court refused to sanction.

Similarly, the expenses from Repario that relate to Defendants Brian L. Lassen, Aleyna Lassen, Stephanie L. Gillespie, Daniel J. Hershberger, and Ryan E. Brown should also not be part of any award of expenses because the motion for sanctions against these Defendants was denied. Because Weather King was successful in its motion as to half of the Defendants, Defendants request that any award of expenses be reduced by 50%.

## CONCLUSION

By choosing to submit a two-sentence motion and one-page declaration in support of its request for an award of $273,010.76, Weather King has failed to show its work and failed to satisfy its burden. The time to do so has passed. If Weather King attempts to remedy this failure by submitting new evidence or argument in reply, the Court should disregard them. *Carty*, No. 3:15-CV-01186, 2017 WL 660680, at *6 ("Although the affidavits introduced with the Reply provide somewhat more support, their untimely introduction has left them unrebutted and therefore, at most, entitled to only limited weight."); *see Cooper v. Shelby Cty., Tenn.*, No. 07–2283–STA–CGC, 2010 WL 3211677, at *3 (W.D. Tenn. Aug. 10, 2010) ("[A]rguments raised for the first time in a reply brief are generally not considered because such a practice deprives the non-moving party of its opportunity to address the new arguments.")).

For the reasons discussed above, the Court should reduce the amount of expenses sought by Weather King by 50% ($78,842.88) because Weather King was successful in its motion for sanctions against only half of the Defendants, and decline to award any attorney's fees because Weather

13

King has failed to prove that it has actually paid for the legal services at issue. Alternatively, the Court should reduce the amount of attorney's fees by 75% ($86,493.75) in light of Weather King's limited success in its motion for sanctions (and because Weather King seeks an award of fees for work done related to only those Defendants), and for charging unreasonable rates and producing inadequate documentation and justification in support of its motion.

Date: July 30, 2025

Respectfully submitted,

/s/ *Benjamin S. Morrell*
Thomas G. Pasternak (admitted pro hac vice)
Benjamin S. Morrell (TBPR No. 35480)
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2600
Chicago, IL 60601
Telephone: (312) 527-4000
Facsimile: (312) 527-4011
tpasternak@taftlaw.com
bmorrell@taftlaw.com

*Counsel for Defendants Maupin, Harrell, Harrod, Feagin, and American Barn Co., LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the date listed below, I filed the foregoing document with the Clerk of the Court using the Court's CM/ECF filing system, which will send notice of such filing to all counsel of record. I further certify that on the date listed below, I sent the foregoing document to the following individuals at the address listed below via U.S. Mail first-class, postage prepaid, and via email at the email address listed below:

Aleyna Lassen<br>
Brian L. Lassen<br>
1405 N. Fort Grant Road<br>
Willcox, AZ 85643<br>
willcoxbuildings@pm.me

Date: July 30, 2025

/s/ *Benjamin S. Morrell*