IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| CONSOLIDATED INDUSTRIES, LLC )<br>d/b/a WEATHER KING PORTABLE )<br>BUILDINGS, )<br>    )<br>    Plaintiff, )<br>    )<br>v. )<br>    )<br>JESSE A. MAUPIN, BARRY D. )<br>HARRELL, ADRIAN S. HARROD, )<br>LOGAN C. FEAGIN, STEPHANIE L. )<br>GILLESPIE, RYAN E. BROWN, DANIEL )<br>J. HERSHBERGER, BRIAN L. LASSEN, )<br>ALEYNA LASSEN, and AMERICAN )<br>BARN CO., LLC, )<br>    )<br>    Defendants. ) | Civil Action No. 1:22-cv-01230-STA-jay<br><br>Chief Judge S. Thomas Anderson<br><br>Magistrate Judge York |

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR FEES AND EXPENSES

In response to Plaintiff "Weather King's" fee application, Defendants Maupin, Harrell, Harrod, Feagin and American Barn Co. (collectively "the Defaulted Defendants") take issue with Weather King's methodology supporting its request for fees and expenses incurred as a consequence of their discovery malfeasance. Each of their challenges is addressed below.

### Redactions

Although the Defaulted Defendants take issue with Weather King's redaction of its counsel's invoices, Weather King did not redact any entries of time for which it seeks reimbursement. Weather King only redacted entries detailing tasks unrelated to the Defaulted Defendants' failure to comply with the August 2023 discovery order. *See* ECF No. 231 at 24-25; ECF No. 243-1, Johnson Decl., ¶ 3; *cf. Mueller Brass Co. v. Crompton*, No. 2:20-cvV-02496-SHL-ATC, 2025 WL 1559159, at *8 (W.D. Tenn. June 2, 2025) (expressing frustration by

redactions because the requesting party was asking for recovery of those redacted entries and the Court could not "adequately assess their reasonableness and/or duplicity").

As it relates to the entries for which Weather King seeks reimbursement, Weather King did not redact the detailed descriptions of the work performed, the timekeeper for each task, and the number of hours spent on each task. Courts have found these items to be sufficient to determine the reasonableness of the fees. *See Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 554 (6th Cir. 2008) ("Counsel's billing entries, when read in the context of the billing statement as a whole and in conjunction with the timeline of the litigation, support the district court's determination that the hours charged were actually and reasonably expended in the prosecution of the litigation."); *Corbis Corp. v. Starr*, 719 F. Supp. 2d 843, 845 (N.D. Ohio 2010) ("This information is necessary for me to determine whether the fees submitted are 'reasonable.' Plaintiff must therefore submit a more detailed version of the billing invoices that lists: 1) the attorney; 2) a description of the work performed; and 3) time spent on that work.").

Although the Defaulted Defendants take issue with certain block-billing entries, billing in such a matter is perfectly acceptable in a situation, such as here, where the entries are sufficiently detailed. *See, e.g., National Labor Relations Bd. v. Bannum, Inc*, 102 F.4th 358, 364 (6th Cir. 2024); *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, No. 2:20-cv-2766-JPM-TMP, 2023 WL 5826978, at *11 (W.D. Tenn. Sept. 8, 2023); *Seymour v. U.S. Postal Serv.*, No. 04-2261-STA-TMP, 2012 WL 13080778, at *1 (W.D. Tenn. July 24, 2012). Further, Weather King's counsel is quite competent to estimate the time that was spent on the entries for which it has sought reimbursement (and its estimates have been conservative so as to err on the side of a lower reimbursement). *See Raymond James & Assocs., Inc. v. 50 N. Front St. TN, LLC*, No. 18-CV-2104-JTF-TMP, 2022 WL 3337275, at *6 (W.D. Tenn. Feb. 8, 2022), *report &*

*recommendation adopted,* 2023 WL 3480902 (W.D. Tenn. May 16, 2023) (approving party's "self-imposed reduction" of fees attributable to time spent on tasks that were not compensable); *see also In re Pan Am. Gen. Hosp., LLC*, 385 B.R. 855, 875–76 (Bankr. W.D. Tex. 2008) ("When blocks are relatively small, however, and when the total time spent on the block as a whole is minimal, allocating time to each task loses its convenience and utility. . . . Requiring an itemized allocation within such an insignificant block would be overly technical and would be enforcing a rule merely for the sake of enforcement. The court will not require a professional to allocate a time for each keystroke or thought.").

Indeed, the "essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011). It is well within this Court's discretion to determine that Weather King's submissions are adequate to support its fee application. Alternatively, should the Court find it prudent to review the redacted entries, Weather King alternatively invites the Court to review the unredacted invoices *in camera* so that Weather King may maintain the attorney-client privilege with respect to those redacted (and unrelated) entries.

### Total Hours and Average Rate

While each invoice contains the lodestar information of a summary of the total hours worked for each timekeeper and the hourly rate, that information needed to be redacted to preserve the attorney-client privilege regarding work done on tasks unrelated to Defendants' discovery abuses. To remedy this, Weather King submits a summary exhibit created from the unredacted data already submitted in the invoices themselves (as well as additional fees discussed below). *See* "Lodestar Summary and Revised Totals," Ex. A to Ex. 1 (Johnson Decl.);

3

*see also* Fed. R. Evid. 1006. This information shows that the total hours (after culling the Lassen entries explained below) is 294.3 hours and the average rate is $480 per hour. The lodestar calculation totals $141,264.00, compared with the actual total of $128,658.50.

### Reasonableness of Rates

Although the Defaulted Defendants argue that Weather King has not met its burden of demonstrating that its counsel's billing rates are reasonable, it is noteworthy that they do not claim that the billing rates are unreasonable. For instance, the Defaulted Defendants did not present any declaration or affidavit or other evidence to refute David Johnson's (Weather King's counsel) declaration testimony that the fees are "reasonable." *See* ECF No. 243-1, Johnson Decl., ¶ 4.

Most of the work was performed by Mr. Johnson and John Dollarhide, partners of Butler Snow, LLP who have been primarily responsible for preparing this case for trial. Particularly given that Mr. Johnson's normal hourly rate is $630, his fees discounted to an hourly rate of $450 is imminently reasonable, as is Mr. Dollarhide's rate ($400/hr. in 2023 and $445/hr. thereafter). *See id.*; *G.S. v. Lee*, No. 2:21-cv-02552-SHL-ATC, 2022 WL 20512929, at *5 (W.D. Tenn. Sept. 30, 2022) (citing *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995), and explaining that the requesting attorney's well-defined billing rates is a shortcut to determining the market rate). The fact that Mr. Johnson discounted his rate significantly to $450 supports the reasonableness even more. As is evident from the invoices, Mr. Dollarhide's rate was $400 per hour in 2023 and increased to $445 per hour in 2024, maintaining that rate into 2025. *See* Johnson Decl. (Doc. 243-1) at Ex. B pp. 28-30, 41-43 & 73-76.[1]

---

[1] Minimal time is attributable to Butler Snow attorneys Daniel Van Horn (who will serve as Weather King's lead trial counsel) and Jim Letten (a former U.S. Attorney for the Eastern District of Louisiana who has experience with issues related to the subpoena interference committed by the Defaulted Defendants).

The Court maintains broad discretion to determine the reasonableness of an attorney's hourly rate. *See, e.g., Mid-America Apt. Communities, Inc. v. Philipson*, No. 2:23-cv-02186-SHL-CGC, 2024 WL 4654452, at *3 (W.D. Tenn. Nov. 1, 2024), *aff'd*, 2025 WL 1780456 (6th Cir. June 9, 2025). In doing so, the Court "may consider a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Id.* (cleaned up).

Thus, the Court may take into account the Court's own knowledge and experience, including in applying awards in analogous cases, in determining that Weather King's counsel's rates are reasonable. In *Mid-America*, for instance, the Court approved rates from $415 to $675 per hour for attorneys and $275-$300 for paralegal work. 2024 WL 4654452 at *4. In that case, as in this case, broad legal claims involving both federal and state law (statutory and common law), were at issue, and a computer forensic consultant was retained.

As the Court is well aware, the rates charged by Weather King's counsel are well within the expected range of rates for case of this nature. The Defaulted Defendants have presented no evidence to the contrary, and the Court should determine that the rates are reasonable.

**The Fees Were Necessarily Incurred**

The Defaulted Defendants cite no legal authority supporting their position that less-experienced attorneys with lower rates should have been assigned to perform some of the tasks reflected in the invoices. This is a complex case involving multiple defendants—and of critical importance to Weather King, which has sustained losses exceeding $11 Million. To mitigate fees (including avoiding duplication), Weather King's counsel have prudently limited the number of timekeepers who have been principally involved in this case.

Counsel's tasks in combatting the Defendants' misrepresentations and discovery abuses were complex. The vast majority of the work in the invoices submitted involve the forensic examination of multiple devices and cloud-based accounts, including extensive correspondence among counsel and conferences with the forensic examiner. Simply put, ferreting out Defendants' misconduct necessitated the involvement of more experienced attorneys.

The Defaulted Defendants also complain that Weather King has not established that the invoices were actually paid. Weather King, in fact, promptly and fully paid all of the invoices. Ex. 1, Johnson 8/6/25 Decl., ¶ 1. In any event, because the fees were incurred, Weather King is entitled to an award regardless of whether any of the invoices were not fully paid.[2]

### Separation Among Defendants

The Defaulted Defendants also argue that the fees should be apportioned and reduced to account for the fact that the Lassen Defendants were not sanctioned and that the Court has not yet had an opportunity to rule on Weather King's Renewed Motion for Sanctions Against Defendants Gillespie, Brown, and Hershberger (ECF No. 250). Certain of these arguments are well taken.

The Defaulted Defendants are correct that they should not be responsible for fees attributable to tasks solely involving the other Defendants, including those of its counsel and of Repario. Weather King has reduced its request accordingly by $17,281.67. This includes a

---

[2] Under the Defaulted Defendants' logic, a contingency fee plaintiff could never be awarded attorney's fees.

reduction of $2,729.50 in attorneys' fees solely attributable to the Lassen Defendants.[3] In addition, Repario's invoices include entries that are attributable either to the Lassens or Defendants Gillespie, Brown, and Hershberger and that Weather King agrees may be reduced for purposes of its application. Weather King has attached a highlighted copy of the Repario invoices reflecting the entries that may be reduced. *See* Ex. 2. These deductions total $14,552.17, reducing the Repario expenses sought against the Defaulted Defendants to $143,133.59, as reflected in the following table:

| Lassen Reductions | Gillespie, Hershberger, and Brown Reductions | Total Reductions from Repario Invoices: |
|---|---|---|
| $ (450.00) | $ (450.00) | $ (3,288.82) |
| $ (232.96) | $ (231.66) | $ (11,263.35) |
| $ (227.11) | $ (227.11) | $ (14,552.17) |
| $ (1,991.25) | $ (229.90) | |
| $ (175.00) | $ (231.37) | Revised Total Repario Fees: |
| $ (125.00) | $ (450.00) | |
| $ (87.50) | $ (250.00) | |
| $ (3,288.82) | $ (281.25) | |
| | $ (125.00) | $157,685.76 |
| | $ (5,973.75) | $ (14,552.17) |
| | $ (250.00) | $143,133.59 |
| | $ (2,391.43) | |
| | $ (171.88) | |
| | $ (11,263.35) | |

---

[3] There are eight entries related to the Lassens. The Court can disregard the Lassen-only entries on 09/23/2024 (0.2 hours for J. Dollarhide at $445/hr=$89), 10/08/2024 (0.1 hours for J. Dollarhide at $445/hr=$44.50), 10/21/24 (1.9 hours for D. Johnson at $450/hr=$855), 10/22/2024 (0.2 hours for J. Dollarhide at $445/hr=$89; 0.8 hours for D. Johnson at $450/hr=$360), 10/23/2024 (1.8 hours for J. Dollarhide at $445/hr=$801; 0.3 hours for D. Johnson at $450/hr=$135). One combined entry for Mr. Dollarhide on 09/16/2024 totaled 3.5 hours, of which no more than 0.8 hours would have been specific to Aleyna Lassen. The $2,729.50 for these time entries is reduced from the requested amount of attorneys' fees. The subtotal hours for these entries of 6.1 hours is reduced from the total hours caused by the Defaulted Defendants' violation of the Court's August 2023 discovery order, providing a new sum of 294.3 hours for the lodestar calculation. *See* Ex. 1, Johnson 8/6/2025 Decl. at ¶ 2.

The Defaulted Defendants' request for an indiscriminate 50% reduction on the basis that Weather King was successful in its motion as to half of the Defendants (*see* ECF No. 260 at 13) would be patently unjust and tantamount to allowing them to garner a windfall by avoiding the full consequences of their wrongdoing. The fees requested by Weather King are attributable to the actions caused collectively by the specific Defaulted Defendants—all of whom were collectively represented by the same counsel. It is apparent from the face of Weather King's time entries and court filings that, with rare exceptions, the work performed was necessarily-incurred as a direct result of these specific Defaulted Defendants' misconduct. Stated differently, Weather King would have incurred these same fees whether there were five Defendants, 10 Defendants, or 20 Defendants. In fact, of Weather King's briefing submitted in connection with its motion for sanctions (*see* ECF Nos. 185-1, 210), only **one sentence** is devoted to even addressing the discovery abuses of Defendants other than the Defaulted Defendants. *See* ECF No. 185-1 at 12.

**Weather King Alternatively Requests the Ability to Submit Additional Information**

Candidly, Weather King attempted to simplify its fee application in order to mitigate its fees in connection with the application[4] and because several of the challenges raised by Defendants were not raised when Weather King originally submitted its fee request. Weather King does not oppose the Defaulted Defendants filing a surreply in response to this brief. In the event the Court finds that Weather King's submissions are lacking, Weather King respectfully requests that the Court afford it an opportunity to submit additional information (while also affording Defendants the opportunity to respond to that additional information). *See Garcia v. Jac-Co Construction, Inc.*, No. 2:23-cv-2485-SHL-CGC, 2024 WL 2806478, at *1 (W.D. Tenn.

---

[4] Mr. Johnson's August 6, 2025 declaration includes a revised total of requested attorneys' fees that includes fees incurred in connection with Weather King's fee application (and this reply). *See* Ex. 1, ¶ 2.

May 31, 2024) (noting that applicant was directed to supplement its filings with additional supporting information).

## CONCLUSION

An award to Weather King for the full amount of fees and expenses sought will appropriately reimburse Weather King and, more importantly, effect the full measure of the Court's sanctions against the Defaulted Defendants for their violation of the Court's August 2023 Order. For the foregoing reasons, Weather King respectfully requests that the Court enter an award against Defaulted Defendants and in Weather King's favor in the total amount of $271,792.09, reflecting $143,133.59 attributable to Repario's invoices and $128,658.50 attributable to attorneys' fees.

Respectfully submitted,

BUTLER SNOW LLP

*/s/ David L. Johnson*
David L. Johnson, BPR #18732
John H. Dollarhide, BPR #40041
1320 Adams Street, Suite 1400
Nashville, TN 37208
(615) 651-6700
david.johnson@butlersnow.com
john.dollarhide@butlersnow.com

Daniel W. Van Horn, BPR #18940
6075 Poplar Ave., Suite 500
Memphis, TN 38119
(901) 680-7200
Danny.VanHorn@butlersnow.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2025, I filed the foregoing Reply with the Court using the ECF system, which will provide notice and a copy to counsel of record:

Thomas G. Pasternak
Benjamin S. Morrell
TAFT STETTINIUS &HOLLISTER LLP
111 East Wacker Drive, Suite 2600
Chicago, IL 60601
Telephone: (312) 527-4000
Facsimile: (312) 527-4011
tpasternak@taftlaw.com
bmorrell@taftlaw.com

And to the following via U.S. Mail and email.

Brian L. Lassen
Aleyna Lassen
1405 N. Fort Grant Road
Willcox, AZ 85643
willcoxbuildings@pm.me

                                              */s/  David L. Johnson*
                                              David L. Johnson

95450209.v1