UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| CONSOLIDATED INDUSTRIES, LLC d/b/a WEATHER KING PORTABLE BUILDINGS,<br><br>                  Plaintiff,<br><br>v.<br><br>JESSE A. MAUPIN, BARRY D. HARRELL, ADRIAN S. HARROD, LOGAN C. FEAGIN, STEPHANIE L. GILLESPIE, RYAN E. BROWN, DANIEL J. HERSHBERGER, BRIAN L. LASSEN, ALEYNA LASSEN, and AMERICAN BARN CO., LLC,<br><br>                  Defendants. | Civil Action No. 1:22-cv-01230-STA-jay<br><br>District Judge Anderson<br><br>Magistrate Judge York |

**SURREPLY IN OPPOSITION IN PART TO
<u>PLAINTIFF'S MOTION FOR FEES AND EXPENSES</u>**

      The Court allowed Weather King's reply brief in support of its fee petition to remain on the docket despite finding that it was "procedurally improper," attached "untimely" exhibits, and was filed "in violation of the Local Rules." (D.E. 271 at 3–4.) Review of the reply brief and attached exhibits shows that Weather King squandered the opportunity. It offers no objective evidence tying its counsel's hourly rates to those prevailing in Jackson; it simply relies on its own counsel's say-so, which is insufficient as a matter of law. Weather King redacted substantial portions of its attorneys' invoices without any legitimate privilege basis, making it impossible for the Court to meaningfully review the reasonableness of the requested hours. The block-billing and vague time entries found throughout the invoices further frustrate any reasonable evaluation.

      Weather King also attempts to sidestep the governing standard under Rule 37(b): fee

awards must be limited to expenses "caused by the failure" to comply with the discovery order. By blending time spent on the non-defaulted Defendants and broader litigation tasks, Weather King seeks compensation for fees beyond what Rule 37(b) allows, contrary to clear Supreme Court precedent that requires a direct causal link between the sanctioned conduct and the fees sought. The same goes for half of Repario's fees, which Weather King would have incurred even if no sanctionable conduct occurred. Finally, Weather King also adds over $16,000 in new fees to its request fees that were never included in its initial request and are barely referenced in the reply itself. Courts routinely refuse supplemental requests for fees filed after the deadline, especially where, as here, they not supported by good cause or proper documentation. A significant reduction in any award is thus warranted.

### I.   Weather King provides no reliable evidence that its counsel's rates and hours were reasonable.

With only two self-serving declarations from Mr. Johnson and unsupported statements in its briefing, Weather King fails to meet its burden to show its counsel's rates were reasonable in Jackson. Weather King claims that Mr. Johnson's rate is "imminently [sic] reasonable" simply because he chose to reduce his Nashville rate for this case. (D.E. 266, Pl.'s Reply in Supp. of Mot. for Fees & Expenses ("Pl.'s Reply Br."), at 4.) But that does not automatically make the rate charged reasonable for Jackson. Neither does Mr. Johnson's litigation experience. (*See* D.E. 266-1, 2d Decl. of D. Johnson ("2d Johnson Decl."), ¶ 5.)) Weather King similarly has no evidence that Mr. Dollarhide's, Mr. Letten's, or Mr. Van Horn's rates are reasonable, other than Mr. Johnon's self-serving declaration saying so. (*See id*. ¶ 5.) And they billed Weather King at their full rates.

The ABCO Defendants explained in their response brief that declarations submitted by attorneys who work at the same firm as the petitioning party's attorneys do not provide sufficient

2

proof that the rates charged are reasonable. (D.E. 260 at 10 (citing *Carty v. Metro. Life Ins. Co.*, No. 3:15-CV-01186, 2017 WL 660680, at *6 (M.D. Tenn. Feb. 17, 2017)).) Weather King then chose to submit with its reply another declaration from its counsel—and nothing else. Further, the cases its cites in support of its argument are exclusively from this Court's Western Division in Memphis and thus provide no insight into reasonable rates in Jackson. (*See* Pl.'s Reply. Br. at 4–5.)

Weather King also fails to show that it was necessary to have four partners and no associates work on this case. "Courts frequently reduce fee requests where work that could have been handled by more junior lawyers was instead performed by a senior partner." *Union Cent. Life Ins. Co. v. Berger*, No. 10cv8408 (PGG), 2013 WL 6571079 at *6 (S.D.N.Y. Dec. 13, 2013) (collecting cases); *Commodity Futures Trading Comm'n v. Trade Exch. Network Ltd.*, 159 F. Supp. 3d 5, 9 (D.D.C. 2015). Several tasks, including drafting letters to subpoenaed third parties, research, drafting responses to motions for extension of time, and tasks associated with search terms for document review, could have and should have been completed by cheaper timekeepers. Plaintiff's counsel's own invoices thus contradict Weather King's argument that all of the work on this case was so "complex" and "critical" that it could be performed only by partners.[1] (Pl.'s Reply. Br. at 5.)

Weather King's reply provides a lodestar calculation, after its motion failed to do so. (2d Johnson Decl., Ex. A.) It shows average hourly rate of $480, even higher than Mr. Johnson's discounted rate, which Weather King has repeatedly highlighted. (*Id.*; *see* Pl.s' Reply Br. at 4.) A proper lodestar calculation is determined "by multiplying the *reasonable* number of hours billed by

---

[1] Weather King also claims it intended to avoid duplication by having only partners work on this case. (*Id.*) The invoices contradict this argument as well. For example, Weather King's request for over 37 hours' worth of fees for tasks related to this fee petition—including having three partners bill for time related to reviewing the Defaulted Defendants' response to Weather King's fee petition—show substantial duplicated efforts. (2d Johnson Decl. at 36.)

3

a *reasonable* billing rate." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (emphases added). Weather King has failed to show its counsel's rates are reasonable in this case. As discussed below, Weather King also fails to show the number of hours it seeks an award of fees for are reasonable. While Weather King faults the Defaulted Defendants for "not present[ing] any declaration or affidavit or other evidence to refute David Johnson's (Weather King's counsel) declaration testimony that the fees are reasonable," that is not the Defaulted Defendants' burden. (Pl.'s Reply. Br. at 4 (cleaned up).) The burden to show the reasonableness of rates lies squarely with Weather King as the fee petitioner. *Carty*, 2017 WL 660680, at *6. And it has not satisfied that burden.

II.     **The redactions to invoices are improper, non-privileged, and make it impossible to ascertain the reasonableness of the hours expended for the block-billing entries.**

Weather King claims that its counsel's invoices needed to be redacted to preserve attorney-client privilege. (Pl.'s Reply Br. at 3.) Caselaw disagrees. Billing statements are typically not protected by the attorney-client privilege because they do not ordinarily reveal confidential professional communications between attorney and client. *See Avery Outdoors LLC v. Outdoors Acquisition Co., LLC*, No. 16-CV-2229-SHL-TMP, 2016 WL 10519113, at *4 (W.D. Tenn. Nov. 30, 2016). Weather King provides no evidence to show its lawyers' redacted invoices do. While Weather King "alternatively invites the Court to review the unredacted invoices *in camera*" (Pl.'s Reply Br. at 3), the Court should not take the bait, as Weather King has had tries already and still fails to provide the evidence necessary to support its fee petition, *see Reed*, 179 F.3d at 472; *Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*, 707 F. Supp. 2d 737, 764 n.22 (N.D. Ohio 2010).

Weather King argues that it is not seeking fees for any of the redacted time entries and that the reasonableness of its fees can be assessed from the information provided. (Pl.'s Reply Br. at 1–2.) However, the Defaulted Defendants take issue with the accuracy of the allocation of certain

4

block-billing entries. As noted in their response to Weather King's fee petition, the allocations for certain block-billing time entries are approximations and not consistent with other entries. (D.E. 260 at 7–9.) Weather King claims that its counsel "is quite competent to estimate the time" and that "its estimates have been conservative." (D.E. 266 at 2.) But the entries tell a different story.

Notably, Weather King does not address in its reply the inconsistencies identified in the Defaulted Defendants' response—for example, the inconsistent entries of Mr. Letten and Mr. Johnson for the same phone conference. (D.E. 260 at 8.) This casts doubt on the reasonableness of all of Weather King's other block billing entries that have been redacted. Since it is unusual that there is a redacted block-billing entry from one of Weather King's attorneys and a non-redacted entry from another Weather King attorney, the Defaulted Defendants are unable to identify inconsistencies like the one identified above in the other entries. The redacted block-billing entries thus do not permit the Court to assess "with a high degree of certainty that such hours were actually and reasonably expended." *Corbis Corp. v. Starr*, 719 F. Supp. 2d 843, 844 (N.D. Ohio 2010).

The vagueness and uncertainty created by the unsupported, unnecessary, and significant redactions to Plaintiff's counsel's invoices thus compel an across-the-board reduction. *See, e.g.*, *Heath v. Metro. Life Ins. Co.*, No. 3:09-CV-0138, 2011 WL 4005409 at *10 (M.D. Tenn. Sept. 8, 2011); *Oakley v. City of Memphis*, No. 06-2276 A/P, 2012 WL 2682755 at *5 (W.D. Tenn. June 14, 2012) (report and recommendation), *adopted*, 2012 WL 2681822 (W.D. Tenn. July 6, 2012); *Gratz v. Bollinger*, 353 F. Supp. 2d 929, 939 (E.D. Mich. 2005).

III.    **Weather King is not entitled to fees for time its lawyers spent on activities not related to the Court's August 2023 Order or related to non-defaulted Defendants.**

Other problems with the invoices exist, from what the Defaulted Defendants can see despite the overbroad redactions. Federal Rule of Civil Procedure 37(b) limits an award to those

5

"reasonable expenses, including attorney's fees, *caused by* the failure" to abide by a discovery order. Fed. R. Civ. P. 37(b)(2)(C) (emphasis added). It would be unjust to award Weather King fees and expenses under Rule 37(b) for fees and expenses associated with the five Defendants who have not been found to have violated Rule 37.

Weather King nominally agrees that fees and expenses "specifically" associated with the non-Defaulted Defendants should be excluded. (Pl.'s Reply Br. at 6–8.) But most of the time entries and Repario bills do not specify which Defendants were associated with a specific task or expense. For the few that do, Weather King has properly excluded them from its fee petition. However, this results in a reduction of less than 10% of the Repario expenses and about 2% of the total requested attorneys' fees. (*See id.* at 6.) Regardless of whether the invoices specifically name the non-Defaulting Defendants or not, the practical effect is that many charges associated with the non-Defaulting Defendants are still included in Weather King's request. As such, and regardless of whether the invoices specifically name one of the Defendants, Weather King's costs should be halved to avoid a windfall to Weather King for costs not associated with the sanctions order.

Weather King argues that "[t]he Defaulted Defendants' request for an indiscriminate 50% reduction on the basis that Weather King was successful in its motion as to half of the Defendants would be patently unjust and tantamount to allowing them to garner a windfall by avoiding the full consequences of their wrongdoing." (*Id.* at 8 (record citation omitted).) It asserts, with no specific evidentiary support, that "with rare exceptions, the work performed was necessarily incurred as a direct result of these specific Defaulted Defendants' misconduct." (*Id.* at 8.) There are several problems with this. First, as discussed above, the heavy redactions to Plaintiff's counsel's invoices make it impossible to tell if this is true, and the vagueness of the entries that are not redacted makes

6

this task even more difficult.

Second, a 50% reduction in the fees Repario charged is warranted by the practical reality that its work would have been done anyway regardless of whether sanctionable conduct occurred. The ABCO Defendants *agreed* to a forensic protocol with Weather King (D.E. 121), turned over their devices to Repario for imaging, negotiated search terms with Weather King, and negotiated and agreed to other specific e-discovery procedures, with the parties working with Repario at nearly every step. All of these actions are typical in sophisticated business torts cases and would have occurred regardless of whether sanctionable conduct occurred. In such an event, the parties likely would have split the cost of Repario's services. The Supreme Court has made clear that "only those attorney's fees incurred because of the misconduct at issue" can be shifted:

> Compensation for a wrong, after all, tracks the loss resulting from that wrong. So as we have previously noted, a sanction counts as compensatory only if it is calibrated to the damages caused by the bad-faith acts on which it is based. A fee award is so calibrated if it covers the legal bills that the litigation abuse occasioned. But if an award extends further than that—to fees that would have been incurred without the misconduct—then it crosses the boundary from compensation to punishment. Hence the need for a court, when using its inherent sanctioning authority (and civil procedures), to establish a causal link—between the litigant's misbehavior and legal fees paid by the opposing party.
>
> That kind of causal connection . . . is appropriately framed as a but-for test: The complaining party . . . may recover "only the portion of his fees that he would not have paid but for" the misconduct.

*Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017) (cleaned up); *see id.* n.5 (explaining that Rule 37 "similarly require courts to find such a causal connection before shifting fees"). This logic extends to expenses as well as fees.

As such, roughly 50% of Repario's fees were not "caused by" any sanctionable conduct by the Defaulted Defendants. The Court should not award over $70,000 to Weather King that it would have had to pay Repario even if all its sanctions motions were denied. Weather King claims that a

7

50% reduction would allow the Defaulted Defendants to avoid the full consequences of their alleged wrongdoing, but the Court has not found that half of the Defendants engaged in any wrongdoing. The Defaulted Defendants would not be avoiding the consequences of their alleged wrongdoing; rather, an award of 50% of the fees requested would accurately reflect the Court's order as to the Defaulted Defendants and them alone, and would square with explicit Supreme Court guidance.

Relatedly, the Court awarded fees only for the Defaulted Defendants' failure to comply with the Court's August 2023 Order. (D.E. 231.) In its August 2023 Order, the Court denied Weather King's motion to compel a forensic examination but granted Weather King's motion to compel discovery supplementation relating to the identification of contact information, requests for phone records, identification of devices, compensation information, among other things. (D.E. 111.) Most the of requests involved interrogatories or specific requests for production of documents. Weather King is seeking fees here for time spent on various tasks not associated with the Defaulted Defendants' failure to comply with the August 2023 Order, including fees associated with a forensic examination to which the Defaulted Defendants voluntarily agreed. (D.E. 121; D.E. 243-1 at 36–74.) The forensic examination and the search terms were not part of the Court's Order and Weather King would have had to agree to search terms and parameters regardless, as discussed above. Thus a 50% reduction in the expenses sought is necessary to keep any fee award purely compensatory.

**IV.    Weather King impermissibly seeks an additional $16,063 in fees in its reply.**

Weather King's reply makes only a vague reference to the $16,063 it has added to its fee request since filing its initial motion—in a footnote that does not state the total amount of additional fees sought. (D.E. 266 at 8.) Exhibit C to the Second Johnson Declaration includes a breakdown of the time entries that make up this new request. (2d Johnson Decl., Ex. C at 36.) Weather King's fee petition was filed on July 16, yet for the first time in its reply, Weather King

8

seeks fees from July 10 to July 16. (*Id.*; D.E. 243.) The Court specifically instructed Weather King to produce all documents supporting its fee petition by July 16, yet Weather King failed to include these fees in its original fee petition. Only after the Defaulted Defendants substantively challenged Weather King's petition, did Weather King request these additional fees.

Also, the total number of hours Weather King asserts its counsel spent on drafting the fee petition and the reply is unreasonable. Weather King asserts that its counsel spent 37.7 hours on producing a one-page motion and a nine-page reply. (2d Johnson Decl. at 36.) This is unreasonable, especially given the fact that 34.8 of these hours were spent by partners—and that Weather King filed an oversized reply brief "in violation of the Local Rules." (D.E. 271 at 3–4.)

This additional fee calculation raises further concerns over the accuracy of Plaintiff's counsel's entries in general. First, Mr. Van Horn billed 0.5 hours on July 28, 2025, for "evaluation of the opposition/response to our motion for attorneys' fees"—but the Defaulted Defendants' response was not filed until July 30, two days later. (2d Johnson Decl. at 36; D.E. 260.) One time entry states in full: "Review response to motion for attorneys' fees and related work on." (2d Johnson Decl. at 36.) It appears that the remaining description has been cut off. The total hours billed is 37.7; however, when the individual entries are added together, the total is only 36.9 (assuming that the modified hours listed should be used in place of the base hours listed, where applicable). In this one-page addition to the fee petition, the Defaulted Defendants have identified at least three errors. There are likely many others in Weather King's original 67-page submission that are redacted. "Where the attorney's documentation is inadequate, or the claimed hours are duplicative or excessive, the court may reduce the award accordingly." *Olson v. Olson*, No. 3:13-CV-00138, 014 WL 1278654 at *1 (M.D. Tenn. Mar. 31, 2014). It should do so here.

9

Weather King should not be awarded the additional $16,063.00 it now seeks because Plaintiff's counsel: (1) included several inaccuracies in the fee petition, (2) inexplicably failed to include fees associated with its original fee petition in the original petition, (3) unnecessarily increased the Defaulted Defendant's costs by necessitating the Defaulted Defendants to file a surreply instead of Weather King including all the necessary information and fee calculations in its original petition as instructed by this Court, and (4) filed an oversized reply in violation of this Court's Local Rules, again unnecessarily requiring the Defaulted Defendants to expend more fees in replying.

## V.     Conclusion

For the reasons discussed above and in the Defaulted Defendants' response brief, the Court should reduce the $128,658.50 fee amount Weather King seeks by $16,063.00 to exclude the new fees. The Court should further reduce any fee award by 75% due to the limited success of Weather King's motion for sanctions, the unreasonable rates charged, and the lack of proper documentation supporting the claim for fees. Similarly, the fees sought for expense reimbursement ($143,133.50) should be reduced by 50% to account for the limited success of the sanctions motion and the Supreme Court's but-for causation requirement.

Date: September 15, 2025               Respectfully submitted,

                                       /s/ *Benjamin S. Morrell*
                                       Thomas G. Pasternak (admitted pro hac vice)
                                       Benjamin S. Morrell (TBPR No. 35480)
                                       TAFT STETTINIUS & HOLLISTER LLP
                                       111 East Wacker Drive, Suite 2600
                                       Chicago, IL 60601
                                       Telephone: (312) 527-4000
                                       Facsimile: (312) 527-4011
                                       tpasternak@taftlaw.com

bmorrell@taftlaw.com

*Counsel for Defendants Maupin, Harrell, Harrod, Feagin, and American Barn Co., LLC*

Case 1:22-cv-01230-STA-jay Document 287 Filed 09/15/25 Page 11 of 12
PageID 5688

11

## CERTIFICATE OF SERVICE

I hereby certify that on the date listed below, I filed the foregoing document with the Clerk of the Court using the Court's CM/ECF filing system, which will send notice of such filing to all counsel of record. I further certify that on the date listed below, I sent the foregoing document to the following individuals at the address listed below via email at the email address listed below:

Aleyna Lassen<br>
Brian L. Lassen<br>
1405 N. Fort Grant Road<br>
Willcox, AZ 85643<br>
willcoxbuildings@pm.me

Date: September 15, 2025

/s/ *Benjamin S. Morrell*