IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| CONSOLIDATED INDUSTRIES, LLC, ) <br> d/b/a WEATHER KING PORTABLE ) <br> BUILDINGS, ) <br>   ) <br>   Plaintiff, ) <br> v. ) <br>   ) <br> JESSE A. MAUPIN, BARRY D. HARRELL, ) <br> ADRIAN S. HARROD, LOGAN C. FEAGIN, ) <br> STEPHANIE L. GILLESPIE, ) <br> RYAN E. BROWN, ) <br> DANIEL J. HERSHBERGER, ) <br> BRIAN L. LASSEN, ALEYNA LASSEN, and ) <br> AMERICAN BARN CO., LLC, ) <br>   ) <br>   Defendants. ) | No. 1:22-cv-01230-STA-jay |

**ORDER GRANTING PLAINTIFF'S RENEWED MOTION FOR SANCTIONS
AGAINST DEFENDANTS GILLESPIE, BROWN AND HERSHBERGER (ECF NO. 250)
ORDER DENYING DEFENDANTS' MOTION TO BIFURCATE LIABILITY AND
DAMAGES (ECF NO. 245)**

Before the Court is Plaintiff Consolidated Industries, LLC d/b/a Weather King Portable Buildings' Renewed Motion for Sanctions (ECF No. 250). Defendants Stephanie L. Gillespie, Ryan E. Brown, and Daniel J. Hershberger have responded in opposition. Plaintiff has submitted a reply brief. For the reasons set forth below, the Renewed Motion for Sanctions is **GRANTED**.

**BACKGROUND**

This is an action for the misappropriation of trade secrets under federal and state law and for other tortious conduct under Tennessee common law. Plaintiff Consolidated Industries, LLC does business under the trade name Weather King Portable Buildings ("Weather King") and

1

manufactures portable buildings like backyard sheds, garages, cabins, utility buildings, and storage buildings.  Am. Compl. ¶ 15 (ECF No. 26).  According to the Amended Complaint, Weather King is headquartered in Paris, Tennessee, and also owns six plants in Arizona, New Mexico, Florida, Texas, and Colorado. *Id*.  Weather King sells its products through dealerships who essentially take Weather King inventory on consignment and receive commissions on the sale of Weather King products.  *Id.* ¶ 16.

Weather King employed Defendant Jesse Maupin as its Western Region Sales Manager. *Id*. ¶ 17. Maupin managed Weather King's manufacturing plants and sales representatives in Arizona, New Mexico, Colorado, and Texas, a territory Weather King dubbed the "the Western States." *Id*.  Weather King now alleges that Maupin misappropriated Weather King's trade secrets, recruited other key Weather King employees, and acted together with these individuals to use Weather King's protected information to form a rival company, American Barn Co., LLC ("American Barn" or "ABCO"). The Amended Complaint would hold Maupin and American Barn liable for misappropriation of trade secrets in violation of 18 U.S.C. § 1836 (Count I) and Tenn. Code Ann. § 47–25–1704 (Count II).  The Amended Complaint also alleges that all Defendants are liable for the Tennessee common law torts of breach of duty of loyalty (Count III), interference with business relationships (Count IV), conversion (Count VI), unjust enrichment (Count VII), civil conspiracy (Count VIII), and aiding and abetting (Count IX).  Weather King finally alleges that American Barn, Maupin, and Defendant Brian Lassen are liable for defamation (Count V).

Weather King filed suit against American Barn and each of the individual Defendants on October 19, 2022.  After Defendants answered (ECF No. 22) and filed a Rule 12(b)(6) motion to dismiss (ECF No. 23), Weather King filed an Amended Complaint (ECF No. 26).  On March 2, 2023, the Court held a scheduling conference with counsel for the parties and adopted their

2

proposed case management plan in a Rule 16(b) scheduling order (ECF No. 63). The initial scheduling order gave the parties until December 1, 2023, to complete all discovery, and January 12, 2024, to file dispositive motions.

Since that time, the Court has issued three rulings on requests for dispositive relief. The Court denied Defendants' Rule 56 motion for summary judgment on the federal and state trade secrets claims. Order Denying Defs.' Mot. for Summ. J. Nov. 6, 2023 (ECF No. 119). The Court then granted a joint motion for the entry of a default judgment against Defendants Bryan L. Lassen and Aleyna Lassen. Consent Def. J. 1 Feb. 11, 2025 (ECF No. 181) ("Plaintiff Consolidated Industries, LLC d/b/a Weather King Portable Buildings and Defendants Brian L. Lassen and Aleyna Lassen have reached agreement whereby entry of a default judgment will be entered against Defendants Brian and Aleyna Lassen in lieu of them turning over their mobile phones for forensic examination as ordered by the Court."). The Court most recently granted Weather King default judgment against Defendants Jesse Maupin, Barry Harrell, Adrian Harrod, Logan Feagin, and American Barn as a sanction for discovery misconduct. Order Granting in Part, Denying in Part Pl.'s Mot. for Sanctions, June 30, 2025 (ECF No. 231). A trial on all remaining claims is currently set for October 30, 2025.

Under the current case management order, the discovery deadline was June 2, 2025. The discovery phase of the case has been protracted, to say the least, drawn out largely over Plaintiff's attempts to discover evidence found in Defendants' text messages and emails. According to Weather King's theory of the case, while still employed by Weather King, Defendants made their plans to create their own company, American Barn, and use Weather King's business model to compete directly with their former employer. Defendants discussed these plans by text and email, sometimes among themselves and other times with third parties who were existing customers

3

doing business with Weather King and whom Defendants hoped to lure away as customers for their new venture. Weather King included a copy or screenshot of one such message (ECF No. 1-1) with its original pleading.

Although Defendants initially denied that such text messages or emails existed, Defendants eventually agreed to a forensic examination of their cell phones and laptops. The forensic examination revealed the existence of the sort of texts and emails Weather King had expected to discover from the start. In its initial motion for sanctions (ECF No. 185), Weather King argued that Defendants acted in bad faith by failing to produce the information in the normal course of discovery and that the Court should enter a default judgment against Defendants as a sanction for their discovery abuse. The Court agreed and concluded from the record that Defendants failed to cooperate in discovery and that their failure was willful and in bad faith. The Court held that default judgment was warranted as a sanction for Defendants' discovery misconduct and their failure to comply with an earlier discovery order issued by the United States Magistrate Judge.

The Court, however, only granted Plaintiff's motion for sanctions against Defendants Jesse Maupin, Barry Harrell, Adrian Harrod, Logan Feagin, and American Barn. Plaintiff had not carried it burden to show why the Court should sanction Defendants Stephanie L. Gillespie, Ryan E. Brown, or Daniel J. Hershberger. Of the 62 evidentiary exhibits Plaintiff attached to its motion for sanctions, only three directly implicated the discovery conduct of Gillespie, Brown, or Hershberger, each Defendant's written discovery responses (ECF Nos. 186-5, 186-6, and 186-7) to Weather King's written discovery requests. And as of the filing of the motion for sanctions, Plaintiff had yet to depose Gillespie, Brown, or Hershberger.[1] So the Court lacked any proof to

---

[1] On June 5, 2025, Weather King filed a notice with excerpts from the depositions of Brown, Hershberger, and Gillespie (ECF No. 220). The notice did not include any additional

explain the context of the specific communications cited by Plaintiff as the basis for sanctions or any testimony from these Defendants about why they omitted them from their discovery responses. The Court ultimately denied Weather King's motion for sanctions as to Gillespie, Brown, and Hershberger but without prejudice to renew the request with a more complete showing to demonstrate why default judgment was warranted as to each Defendant.

Weather King has now renewed its request for sanctions against Gillespie, Brown, and Hershberger. By and large, Weather King's renewed motion tracks the arguments from its previous motion and many of the conclusions the Court reached in its order granting the earlier request for sanctions against all Defendants. First, Weather King argues that each Defendant acted willfully or in bad faith. Weather King addressed a litigation hold letter to each Defendant on June 13, 2022, less than two weeks after Weather King learned of Defendants' plan to form their own company and Weather King's decision to terminate them.

Three months later, after Weather King filed suit, it served Defendants with written discovery requests, among them Weather King's Request for Production No. 7 seeking "correspondence and other documents exchanged with any then-current Weather King employees after January 1, 2022." Defendants took the position that no texts or emails existed or had ever existed.[2] Gillespie responded to the Request with one word, "None." Brown and Hershberger

---

argument based on the contents of the deposition testimony, just a citation to the transcripts attached.

[2] Weather King also cites evidence that at one time Defendants asserted their devices were company-issued and had remained in Weather King's possession after each Defendant's employment with Weather King had ended. Defendants subsequently withdrew that claim, conceding that Weather King had never issued them work devices.

5

likewise denied that they had discoverable information, though Brown did eventually produce some emails.

When Weather King sought a court order to compel a forensic examination of the devices, Defendants filed a collective response that they had "provided all the documents that they possess, although Plaintiff refuses to believe it." Defs.' Resp. in Opp'n 1, June 6, 2023 (ECF No. 81). The Magistrate Judge denied Weather King's request for the forensic exam without prejudice to renew it at a later time. Instead, the Magistrate Judge stressed to Defendants the importance of their discovery obligations and ordered Defendants to supplement their discovery responses. The Magistrate Judge's order contained the following admonition: "Any further obfuscation on Defendants' part may result in sanctions, which could include judgment entered in Plaintiff's favor and/or a finding" of contempt. Mag. J.'s Order 11, Aug. 29, 2023 (ECF No. 111).

According to Weather King, Defendants failed to heed the Magistrate Judge's admonition and continued to take the position that there were no relevant texts or emails. The parties eventually agreed on a set of search terms and parameters for a forensic examination of Defendants' devices (conducted at Weather King's expense) and filed a joint motion to compel the examination (ECF No. 120). On November 28, 2023, the Court granted the joint motion and entered an agreed order appointing Repario Data to serve as the computer forensic vendor and adopting the parties' stipulations for how the examination should be conducted. Agreed Order Granting Mot. to Compel Forensic Exam. Nov. 28, 2023 (ECF No. 121).

The forensic examination of Defendants' devices revealed a substantial number of relevant texts. Faced with this proof to show that their discovery responses were incomplete or possibly false, Gillespie, Brown, and Hershberger had no real explanation in their depositions for their failure to produce the texts and emails in response to Weather King's Request for Production No.

6

7. At her deposition, Gillespie testified that her response to the request was "incorrect" and that she did not recall what she looked for on her devices when preparing her response to the request. Brown also admitted that he did not remember specifically what he did or did not do to respond to the Request for Production. Brown testified that he "tried to produce what was asked for." Hershberger admitted that he looked for text messages and found texts with Maupin discussing their plans for their new business. Hershberger explained though that he understood the Request for Production to seek only communications about ABCO, not messages "incidental to the conduct of Weather King's business." Weather King argues that based on this record Defendants have acted willfully and in bad faith.

Having established that each Defendant's conduct was culpable, Weather King returns to its arguments and the Court's findings in its last order on the remaining factors justifying sanctions. Weather King has suffered prejudice as a result of Defendants' discovery misconduct. The Magistrate Judge warned Defendants about the possibility of sanctions including a default judgment. And in Weather King's view, no lesser sanction than default judgment will suffice. Therefore, Weather King asks the Court to enter a default judgment against Gillespie, Brown, and Hershberger and make these Defendants jointly and severally liable for the costs of the forensic examination and Weather King's attorney's fees.

Gillespie, Brown, and Hershberger have responded in opposition. Defendants argue that their involvement in the alleged conduct was minimal and that Weather King's Renewed Motion unfairly lumps them together with their Co-Defendants. Gillespie and Hershberger take the position that their responses to written discovery requests were incomplete due to their misunderstanding of what the requests sought from them. Specifically, both Gillespie and Hershberger expressed confusion over what Weather King meant by correspondence with "then-

7

current Weather King employees." Brown emphasizes that he actually produced emails in response to the discovery requests and did his best to comply with them. According to Brown, the forensic examination revealed less than 300 communications, and all of them were produced to Weather King. All three Defendants actually searched their accounts to identify information responsive to Weather King's requests and later supplemented their discovery responses. Defendants contend then that they did not willfully defy their discovery obligations.

Defendants go on to argue that two other factors weigh against sanctions. Weather King has not shown how each Defendant's discovery conduct caused it prejudice. According to Defendants, Defendants have collectively produced 76,000 pages of discovery documents to Weather King. The documents pertaining to Gillespie, Brown, or Hershberger make up a small fraction of that total. Gillespie, Brown, and Hershberger also argue that sanctioning them would duplicate the sanctions the Court has already imposed on other parties. For example, some of the documents Maupin failed to produce were communications with Gillespie. Furthermore, default judgment is an extreme sanction. If the Court finds that sanctions are warranted, Defendants argue that a monetary sanction and an adverse inference instruction would be more appropriate.

Weather King has filed a reply. Weather King argues the Court should reject Defendants' claims about misunderstanding the discovery requests. Defendants have collectively raised this explanation before, and it has never been borne out. Even if they could credibly claim confusion about the wording of the initial request for production, Gillespie, Brown, and Hershberger cannot credibly claim that they continued to be confused after Weather King met and conferred with Defendants about the discovery dispute and filed a motion to compel. Weather King also questions the efforts made by Defendants to search their devices for email and text messages. Weather King

8

argues that Gillespie, Brown, and Hershberger have failed to show how their conduct is distinguishable from the conduct of their Co-Defendants whom the Court has already sanctioned.

## STANDARD OF REVIEW

Plaintiff seeks the sanction of default judgment against the remaining Defendants pursuant to Rule 37(b). Fed. R. Civ. P. 37(b)(2)(A) (authorizing default judgment as a sanction for a party's failure to "obey an order to provide or permit discovery"). The Sixth Circuit has commented that "[j]udgment by default is a drastic step which should be resorted to only in the most extreme cases." *Prime Rate Premium Fin. Corp., Inc. v. Larson*, 930 F.3d 759, 769 (6th Cir. 2019) (quoting *United Coin Meter Co. v. Seaboard Coastline R.R.,* 705 F.2d 839, 845 (6th Cir. 1983)). Even so, it is not an abuse of discretion for a district court to enter default judgment where a "party has the ability to comply with a discovery order and does not." *Hampton v. Madison Cnty., Tenn.*, No. 21-5553, 2022 WL 17438317, at *2 (6th Cir. Nov. 7, 2022) (quoting *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990)). In the final analysis, "[e]ntry of a default judgment against a party for failure to cooperate in discovery is a sanction of last resort, and may not be imposed unless noncompliance was due to willfulness, bad faith, or fault." *Thurmond v. Cnty. of Wayne*, 447 F. App'x 643, 647 (6th Cir. 2011) (quoting *Bank One*, 916 F.2d at 1073) (internal quotations omitted).

Rule 37(b)(2)(A) specifically lists sanctions courts may impose for a party's noncompliance, up to and including the dismissal of the case or default judgment. *Id.*; *Mager v. Wisc. Cent. Ltd.*, 924 F.3d 831, 837 (6th Cir. 2019) (citing *Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir. 1995)). Courts weigh four factors to determine whether default judgment is an appropriate sanction for a party's failure to comply with a discovery obligation or other court order: (1) whether the party's "failure to cooperate in discovery was willful and in bad faith as opposed to an inability

9

to cooperate"; (2) whether the other party suffered prejudice; (3) whether the Court warned the party that his failure to cooperate could lead to a default judgment; and (4) whether the Court imposed or considered less drastic sanctions before granting the default judgment. *Stooksbury v. Ross*, 528 F. App'x 547, 552–53 (6th Cir. 2013). Default judgment is warranted for a record of delay or "contumacious conduct," meaning "behavior that is perverse in resisting authority and stubbornly disobedient." *Id*. (quoting *Carpenter v. City of Flint*, 723 F.3d 700, 705 (6th Cir. 2013)).

## **ANALYSIS**

The issue presented is whether the sanction of default judgment is justified against Gillespie, Brown, or Hershberger for their failures to produce complete discovery responses. The Court begins by addressing Defendants' argument about their limited role in the creation of ABCO and their somewhat related point that the Court should not approach all Defendants collectively. Gillespie, Brown, and Hershberger ask the Court not to sanction them just because the Court has sanctioned their Co-Defendants.

The Sixth Circuit has observed that "the sanctions inquiry does not ask whether another party was more culpable" or deserving of sanctions than another. *KCI USA, Inc. v. Healthcare Essentials, Inc.*, 801 F. App'x 928, 936 (6th Cir. 2020). The task is "instead is to evaluate whether [a party's] misconduct, standing alone, merits the severity of the sanction imposed." *Id*. The Court emphasizes that its own determination of the sanctions issue here is individualized and specific to the conduct of each non-moving party. The inquiry is somewhat complicated by the fact that Gillespie, Brown, and Hershberger have cast their lot with their Co-Defendants. All Defendants share the same counsel. All Defendants have taken the same positions on the larger discovery dispute over the production of texts and emails. They have jointly filed the same briefs and articulated the same arguments. They have responded together to oppose the sanction of default

judgment. Even so, Defendants' common litigation strategy does not change the fact that each Defendant had a separate and independent duty to search his or her own electronic devices for discoverable communications. Each Defendant had to sit for his or her own deposition and explain why the forensic examination of his or her device revealed the existence of communications, after the Defendants collectively had assured the Court and Weather King the messages never existed. At the end of the day, the Court must decide whether sanctions are merited against each Defendant based on how each discharged his or her duty to cooperate in discovery and what reasons they can give for their failure to comply with their discovery obligation and the Magistrate Judge's discovery order.

Based on its consideration of the four-factor test for the sanction of default judgment, the Court holds that default judgment against Gillespie, Brown, and Hershberger is the appropriate sanction for each Defendant's bad faith conduct in the discovery process. First, the Court considers whether Defendants' "failure to cooperate in discovery was willful and in bad faith as opposed to an inability to cooperate." *Stooksbury*, 528 F. App'x at 552–53. "Willfulness, bad faith, or fault is demonstrated when a [party]'s conduct evidences either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings." *Shavers v. Bergh*, 516 F. App'x 568, 570 (6th Cir. 2013) (quoting *Schafer v. City of Defiance Police Dept.*, 529 F.3d 731, 737 (6th Cir. 2008)). "Bad faith is generally the most important factor" courts assess in deciding whether sanctions are warranted. *KCI*, 801 F. App'x at 934 (citing *Ndabishuriye v. Albert Schweitzer Soc'y, USA, Inc.*, 136 F. App'x 795, 800 (6th Cir. 2005)).

Here, the Court finds that each Defendant failed to cooperate in discovery and that their failure was willful and in bad faith. Just as the Court noted in its last sanctions order, the essential facts regarding Defendants' discovery failures are undisputed. The essential facts show that

11

Defendants had a number of off-ramps to avoid the predicament in which they now find themselves. Plaintiff issued a litigation hold letter in June 2022 to each Defendant directing them individually to "preserve and retain all documents that are potentially relevant" to litigation. Cease and Desist Ltr., June 12, 2022 (ECF No. 1-7). Weather King filed its initial Complaint on October 19, 2022, and later served Defendants with written interrogatories, requests for production, and requests for admission on January 25, 2023.

Instead of producing the texts and emails in their possession, each Defendant initially responded to Weather King's written discovery requests and stated that they had no discoverable texts, emails, or other information. The one exception was Ryan Brown, who asserts he produced an email. Brown testified that he attempted to search his phone and did his best to find any relevant information. Be that as it may, Brown failed to produce any text messages, which the record suggests was the primary means of communication among the Defendants. Even after Weather King moved to compel supplemental responses and a forensic examination of Defendants' electronic devices, Defendants were steadfast and maintained that they did not have any responsive, discoverable evidence in their possession.

At that still early phase of the case, the Magistrate Judge denied Weather King's request for a forensic examination and for sanctions but did emphasize to Defendants the importance of their discovery obligations. And yet despite months of litigating these discovery disputes and the Magistrate Judge's warning, Defendants still failed to produce all of the information which they had a clear duty to produce. The subsequent forensic examination of Defendants' devices uncovered multiple texts, emails, and other information stored there which Defendants had not disclosed in discovery and which Plaintiff obtained only at great expense. Defendants have offered no evidence to contest any of this or dispute the fact that they did not comply with the Magistrate

12

Judge's order to supplement their responses and produce what should have been produced in the normal course.

Now, at a late stage of the case when a forensic examination has shown Defendants' denials to be not credible, Defendants have essentially no explanation for their failure to produce what they undoubtedly had a duty to produce. Gillespie testified that her responses to Weather King's requests for production were "incorrect" but otherwise offered no meaningful justification. Hershberger fared no better. Hershberger (and to a lesser extent Gillespie) implied that he may have misunderstood what Weather King's requests for production asked for.

But as the Court has noted before, Defendants filed a lengthy brief opposing Weather King's original motion to compel them to supplement their discovery responses (ECF No. 75). Not only did Defendants collectively assert that the texts did not exist, they also never argued that Weather King's requests were overbroad, vague, or otherwise unclear to them. *See* Defs.' Resp. in Opp'n to Pl.'s Mot. to Compel Forensic Exam. 1, June 6, 2023 (ECF No. 81) ("First and foremost, . . . [Defendants] have provided all the documents that they possess, although Plaintiff refuses to believe it."). If the requests for production were unclear, the Magistrate Judge's order was not. The Magistrate Judge described Defendants' discovery responses up to that time as "lacking" and cautioned them about the seriousness of meeting their discovery obligations. Mag. J.'s Order 4, 11, Aug. 29, 2023 (ECF No. 111).

Just as their Co-Defendants did, Gillespie, Brown, and Hershberger fall back to argue that the responses they did provide and their supplements to those responses show they have participated in discovery in good faith. But this argument misses the point. The question is not whether Defendants may have produced relevant evidence in the course of discovery. For the record, they have, both in responding to written discovery, in producing documents and

13

information, and in sitting for depositions. Rather the issue is whether each Defendant complied with the Magistrate Judge's order by producing all of the information to which Weather King was entitled. Fed. R. Civ. P. 26(e)(1)(B) ("A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—*must supplement or correct* its disclosure or response as ordered by the court."). An "evasive or incomplete" response is the same "as a failure" to respond at all. Fed. R. Civ. P. 37(a)(4) ("For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.").

This is a classic case of a party having the ability to comply with a discovery order and then failing to do so. Entry of default is not an abuse of discretion in such a circumstance. *Abbe*, 916 F.2d at 1073. This first and most important factor weighs strongly in favor of the sanction of default judgment.

The remaining factors, which are not seriously in dispute, also weigh in favor of a default judgment against Gillespie, Brown, and Hershberger. Defendants' discovery abuse has caused Weather King to experience "waste of time, money, and effort." *Cowley v. Prudential Security, Inc.*, No. 22-1760, 2023 WL 2592873, at *3 (6th Cir. Mar. 22, 2023) (quoting *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997)) (cleaned up). Weather King has filed a series of discovery motions to obtain Defendants' texts and emails. Defendants had a duty to produce the information in the first place. Defendants denied the messages existed at all, denied they owned the devices holding the messages, denied they understood the scope of what Weather King sought, and now deny they withheld the messages intentionally. Weather King only obtained the texts and emails they were able to obtain through a forensic examination at an expense of over $150,000

and incurring more than that in legal fees.  This is enough to show prejudice from Defendants' discovery abuse.

The third factor, whether the Court warned Defendants that their failure to cooperate could lead to a default judgment, is also satisfied here.  Regardless of whether any Defendant acted in bad faith," *Larson*, 930 F.3d at 769, the Magistrate Judge specifically gave Defendants the following admonition: "Any further obfuscation on Defendants' part may result in sanctions, which could include judgment entered in Plaintiff's favor and/or a [contempt] finding . . . ." Mag. J.'s Order 13, Aug. 29, 2023.  The Court finds that the order clearly put Defendants on notice that continuing violations of their discovery obligations could result in a default judgment.  This factor is met.

The final factor, the advisability of a lesser sanction, also weighs in favor of default judgment.  *Stooksbury*, 528 F. App'x at 553.  The Court has not previously sanctioned Defendants for their discovery-related conduct.  The Magistrate Judge specifically denied Weather King's request for an award of expenses and attorney's fees in his August 2023 discovery order.  The Magistrate Judge reached his decision, in part, because he accepted Defendants' explanations that they did not understand certain terms in Weather King's discovery requests or that "they may no longer possess some documents."  Mag. J.'s Order 13, Aug. 29, 2013.  The Magistrate Judge nevertheless put Defendants on notice of the possibility of a default judgment.

Having received the benefit of the doubt, Defendants still did not fully comply with the Magistrate Judge's order to supplement their discovery responses. So even though the Magistrate Judge did not grant Weather King's request for sanctions in 2023, Defendants borrowed extra time, put Weather King to the expense of a forensic examination, and only finally admitted their conduct in their depositions.  On this record, the Court finds that a lesser sanction would not capture the

15

seriousness and extent of Defendants' abuse of the discovery process. *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 763–64 (1980) ("Rule 37 sanctions must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, and to deter those who might be tempted to such conduct in the absence of such a deterrent.") (cleaned up).[3]

In addition to the discretion granted to the Court to "issue further just orders" by imposing any of the sanctions listed in Rule 37(b)(2)(A), Rule 37(b) entitles Weather King to its reasonable expenses, including its attorney's fees. Fed. R. Civ. P. 37(b)(2)(C) ("Instead of or in addition to [other available sanctions], the court *must order* the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.") (emphasis added). The award of these expenses is mandatory unless a substantial justification exists for Defendants' failure to comply with the discovery order. *Id*. As the Court has already concluded, Defendants violated the Magistrate Judge's order from August 2023, and Defendants have failed to offer a substantial justification for their failure to comply. Therefore, the Court holds that Weather King is entitled to its reasonable expenses, including attorney's fees, caused by Defendants' failure to comply with the Magistrate Judge's August 2023 discovery order.

The Court reached the same conclusion when it granted Weather King's motion for sanctions against the other Defendants and referred the question of the reasonable amount of fees

---

[3] As part of their response and while denying that sanctions are warranted at all, Defendants argue that if anything the Court should only consider a monetary fine or giving an adverse instruction. The Court does not believe these lesser sanctions suffice, not when Weather King's earlier motion for sanctions was denied and Defendants still failed to search their devices for the information sought by Weather King. Defendants are clearly in violation of the Magistrate Judge's discovery order. Rule 37(b)(2)(A) allows for any number of serious sanctions. A standalone monetary fine is not one of them, and an adverse inference would allow Defendants to continue to defend the claims against them by arguing some good faith basis for their discovery misconduct.

and expenses to the Magistrate Judge. As part of its ruling on Weather King's initial motion for sanctions, the Court referred the issue of Weather King's reasonable expenses, including attorney's fees, caused by Defendants' failure to comply with the Magistrate Judge's August 2023 discovery order to the Magistrate Judge for determination. Weather King submitted the issue as a motion for fees and expenses (ECF No. 243) on July 16, 2025.

Weather King argues that in the event the Court grants its Renewed Motion for Sanctions, the Court should make Gillespie, Brown, and Hershberger jointly and severally liable with their Co-Defendants for Weather King's fees and expenses. Because the fee petition is already before the Magistrate Judge, the Court will likewise refer to the Magistrate Judge the question of whether Gillespie, Brown, and Hershberger should be held jointly and severally liable for Weather King's reasonable expenses.

One last point bears mentioning. Gillespie, Brown, and Hershberger also filed a Motion to Bifurcate Liability and Damages (ECF No. 245). Their argument was that the Court should try the liability claims against them separately from the damages claims against their Co-Defendants. They posit that trying the claims together might confuse the jury because the Court had already entered a default judgment against their Co-Defendants. The Court finds that its entry of default judgment against Gillespie, Brown, and Hershberger as a discovery sanction renders their Motion to Bifurcate moot. The Court therefore **DENIES** the Motion to Bifurcate.

## CONCLUSION

The Court holds that Weather King is entitled to the sanction of default judgment against Defendants Stephanie L. Gillespie, Ryan E. Brown, and Daniel J. Hershberger. Weather King is also entitled to an award of expenses and attorney's fees pursuant to Rule 37. The default judgment against these Defendants makes their Motion to Bifurcate Liability and Damages moot.

Therefore, Weather King's Motion for Sanctions is **GRANTED**. Defendants' Motion to Bifurcate is **DENIED**.

    **IT IS SO ORDERED.**

                                          **s/ S. Thomas Anderson**
                                          S. THOMAS ANDERSON
                                          UNITED STATES DISTRICT JUDGE

                                          Date: September 24, 2025.